System Generated Hearing Date: 6/11/2024 11:00 AM
Location: Court Room 0112
Judge: Evans, Carl Lamar, Jr.

Civil Action Cover Sheet (08/31/22) CCM 0520 A

FILED
4/19/2024 12:00 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
20244002591
Courtroom, 0112
27338966

FILED DATE: 4/19/2024 12:00 PM 20244002591

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

**MUNICIPAL DEPARTMENT/ fourth DISTRICT**

Derrick Winfrey
Plaintiff

v.

Village of Maywood
Defendant

Case No. ____________

Jury Demand ○ Yes ● No

☐ I need language help in court.

I speak ____________

## CIVIL ACTION COVER SHEET

A Civil Action Cover Sheet shall be filed with the complaint in all civil actions. The information contained herein is for administrative purposes only and cannot be introduced into evidence. Please check the box in front of the appropriate general category which best characterizes your action.

**Civil Case (A)**

- ☐ 0004 Tort not Personal Injury
- ☐ 1004 Tort not Personal Injury (Jury)
- ☐ 0007 Confession of Judgment
- ☐ 1007 Confession of Judgment (Jury)
- ☐ 0008 Replevin
- ☐ 1008 Replevin (Jury)
- ☐ 0017 Detinue
- ☐ 1017 Detinue (Jury Demand)
- ☐ 0031 Foreign Judgment Filing Out of State/Out of Country
- ☐ 0054 Registration of Administrative Judgment

**Tort/Personal Injury Case**

Any wrong or damage done to another person, such as, physical pain, illness, or any impairment of physical condition resulting from the careless or negligent actions of others. The most common cases involve auto accident injuries.

- ☐ 0027 Personal Injury Motor Vehicle
- ☐ 1027 Personal Injury Motor Vehicle (Jury)
- ☐ 0048 Dram Shop
- ☐ 1048 Dram Shop (Jury)
- ☐ 0049 Product Liability
- ☐ 1049 Product Liability (Jury)
- ☐ 0051 Personal Injury Subrogation
- ☐ 1051 Personal Injury Subrogation (Jury)
- ☐ 0057 Personal Injury Motor Vehicle Subrogation
- ☐ 1057 Personal Injury Motor Vehicle Subrogation (Jury)
- ☐ 0001 Personal Injury
- ☐ 1001 Personal Injury (Jury)
- ☐ 0063 Tort Intentional
- ☐ 1063 Tort Intentional (Jury)
- ☐ 0062 Property Damage
- ☐ 1062 Property Damage (Jury)

**Other Litigation Case**

(i.e. credit card agreements, any contract between two or more individuals)

- ☐ 0002 Breach of Contract
- ☐ 1002 Breach of Contract (Jury)
- ☐ 0071 Fraud
- ☐ 1071 Fraud (Jury)
- ☐ 0072 Consumer Fraud
- ☐ 1072 Consumer Fraud (Jury)
- ☐ 0073 Breach of Warranty
- ☐ 1073 Breach of Warranty (Jury)
- ✔ 0074 Statutory Action Complaint
- ☐ 1074 Statutory Action Complaint (Jury)
- ☐ 0068 Consumer Debt Complaint
- ☐ 1068 Consumer Debt Complaint (Jury)

**Civil Case (B)**

- ☐ Filing an Illinois Court Judgment
- ☐ 0100 Petition for Discovery
  A Petition to take depositions or subpoena records before a case is filed.
- ☐ 0009 Name Change (Suburban Districts only)

FILED DATE: 4/19/2024 12:00 PM 20244002591

**Civil Housing Case**

(i.e. condominium conversion, conservation, demolition/objection to fast track, exterior walls/ facades, fire protection, heat call (including Unincorporated Cook County), lead paint new developments, public nuisance, public places of amusement, strategic task force inspections)

- ☐ 0038 Housing
- ☐ 0086 Objection to Fast Track
- ☐ 0044 Criminal Ordinance Violation
- ☐ 0037 Heat Case
- ☐ 0034 Vacant Building

**Pro Se Case Type (First Municipal Civil Division only)**

The Pro Se Court section of the Civil Division resolves disputes between parties where the amount at issue does not exceed $5,000. The party may act as their own attorney. Forms can be completed at the Pro Se desk in Room 602.

- ☐ 0050 Pro Se ($5,000 or less)

**Eviction Case/Civil Eviction/CHA Eviction**

A summary proceeding in which the landlord seeks to restore possession of the premises or payment of rent when the tenant has wrongfully withheld rent or possession of the premises.

- ☐ 0095 Eviction - Commercial Complaint filed
- ☐ 1095 Eviction - Commercial Complaint filed (Jury Demand)
- ☐ 0096 Eviction - Residential Complaint filed
- ☐ 1096 Eviction - Residential Complaint filed (Jury Demand)
- ☐ 0097 Eviction Joint Action - Commercial Complaint filed
- ☐ 1097 Eviction Joint Action - Commercial Complaint filed (Jury Demand)
- ☐ 0098 Eviction Joint Action - Residential Complaint filed
- ☐ 1098 Eviction Joint Action - Residential Complaint filed (Jury Demand)
- ☐ 0018 Distress for Rent
- ☐ 1018 Distress for Rent (Jury)
- ☐ 0023 Mortgage Foreclosure Eviction
- ☐ 1023 Mortgage Foreclosure Eviction (Jury)
- ☐ 0024 Mortgage Foreclosure Eviction - Joint Action
- ☐ 1024 Mortgage Foreclosure Eviction - Joint Action (Jury)
- ☐ 0021 CHA Eviction
- ☐ 1021 CHA Eviction (Jury)
- ☐ 0022 CHA Joint Action
- ☐ 1022 CHA Joint Action (Jury)

◉ Atty. No.: 65698 ○ Pro Se 99500

Atty Name: Beyond Legal Aid

Atty. for: Derrick Winfrey

Address: 17 N. State St., #1380

City: Chicago State: IL

Zip: 60602

Telephone: 312-678-3508

Primary Email: Mdrake1@beyondlegalaid.org

Pro Se Only: ☐ I have read and agree to the terms of the Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address:

Email: ______________________

FILED DATE: 4/19/2024 12:00 PM 20244002591

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**MUNICIPAL DEPARTMENT – FOURTH DISTRICT**

| | | |
|---|---|---|
| Derrick Winfrey, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No.: |
| Village of Maywood, | ) | |
| Defendant. | ) | |

## COMPLAINT

NOW COMES Plaintiff, Derrick Winfrey, by and through Counsel, Beyond Legal Aid, and seeks judicial review of an administrative judgment from Defendant Village of Maywood pursuant to 735 ILCS 5/3-103. In support of such, he states the following:

## PRELIMINARY STATEMENT

This lawsuit involves a law-abiding resident who had his vehicle illegally seized and who was, himself, violently detained, based on the report of one Maywood Police Officer regarding an incident that occurred 46 days prior to Plaintiff's seizure – absent any judicial oversight, criminal charges, warrant, due process, or exigent circumstances. Plaintiff has exhausted administrative remedies. Plaintiff seeks damages. Plaintiff seeks declaratory relief to ensure that other law-abiding citizens are not subjected to the abuses to which he has suffered. As such, he is asking this Court to declare Maywood Village Ordinance § 99.26 unconstitutional on its face; alternatively, Plaintiff seeks declaratory relief that the ordinance is unconstitutional as applied to him.

## INTRODUCTION

1. In the early morning hours of November 5, 2023, an unknown individual was driving Plaintiff's vehicle in Maywood. Plaintiff was not driving his vehicle during that time; Plaintiff did not consent to anyone driving his vehicle at that time; and, Plaintiff denies that anyone that Plaintiff has a relationship with was driving his vehicle without his permission.

2. Maywood Police Officer Nunez attempted to initiate a traffic stop; the unidentified driver did not comply, and Officer Nunez terminated his pursuit. Officer Nunez then drafted a report and put out a felony vehicle alert in Law Enforcement Agency Data System ("LEADS").

3. On December 21, 2023, Plaintiff, a 70-year-old black man, was driving through Cicero on the way to a store with his close friend, George Woods, a 73-year-old black man.

FILED DATE: 4/19/2024 12:00 PM 20244002591

4. For reasons then-unknown to Plaintiff, between six and eight unidentified, white Cicero Police Officers in multiple police vehicles surrounded Plaintiff, removed him from his vehicle, handcuffed him, searched his vehicle, and detained Plaintiff and Mr. Woods for approximately forty-five minutes.

5. Upon their release from detention, Plaintiff and Mr. Woods had to call an Uber from the scene as unidentified Cicero Police Officers informed Plaintiff that his vehicle was being seized by Maywood.

6. Maywood Police Officers confiscated and towed Plaintiff's vehicle – from Cicero – without arresting, interrogating, charging, or detaining Plaintiff.

7. Five days and two holidays later, Plaintiff was able to recover his vehicle after being forced to pay $1,475 as ransom for an unsubstantiated violation of a local ordinance.

8. The fabricated justification for Plaintiff vehicle's seizure was an alleged violation of Maywood Village Code ("MVC") § 99.26 which allegedly occurred 46 days prior to Plaintiff's violent detention.

9. Under the plain text and Defendant's application of MVC § 99.26, any vehicle, anywhere in the State of Illinois, is subject to confiscation and towing based solely on the word of a single police officer – absent any supervisory oversight, judicial oversight, due process, warrant, or exigent circumstances.

10. Under the plain text and Defendant's application of MVC § 99.26, it does not matter whether the vehicle's owner was operating the vehicle at the time of the alleged violation. Nor does it matter if the vehicle's owner consented to – or had any type of privity with – the individual driving the vehicle at the time of the alleged violation.

11. Both the plain text and Defendant's application of MVC § 99.26 violate the Illinois Constitution.

12. Defendant's constitutional violations have caused harm to Plaintiff.

13. As a direct result of Defendant's unconstitutional conduct, Plaintiff seeks damages to be made whole for Defendant's constitutional violations.

14. Further, because Defendant's constitutional violations are willful and wanton, Plaintiff seeks exemplary damages to dissuade future similar conduct by other similarly situated law enforcement officers and municipalities. Such deterrence is necessary in the Chicago area due to rampant violations of constitutional rights as highlighted by this Court's docket, as well as the docket of the United States District Court for the Northern District of Illinois.

FILED DATE: 4/19/2024 12:00 PM 20244002591

15. Finally, on its face, MVC § 99.26 violates multiple provisions of the Illinois Constitution and, as such, the ordinance should be declared unconstitutional and stricken in its entirety.

16. Defendant, through rules of its own making, has flaunted multiple provisions of this State's Constitution. This Complaint seeks redress.

## PARTIES

17. Plaintiff Derrick Winfrey is a retired laborer who worked for the City of Chicago for 37 years. Prior to November 5, 2024, Plaintiff had never been charged with a crime, convicted of a crime, or even arrested. Plaintiff is a resident of Cook County, Illinois.

18. Defendant Village of Maywood is a municipal corporation duly incorporated under the laws of the State of Illinois.

## JURISDICTION

19. This Court has jurisdiction pursuant to 735 ILCS 5/3-103.

20. Venue is proper as the events giving rise to the claims asserted herein occurred within Cook County, Illinois.

## FACTUAL BACKGROUND

21. On November 5, 2023, Derrick Winfrey owned a black 2019 Chevrolet sports utility vehicle registered in Illinois with the license plate DT24013 and had never given permission to any other person to utilize said vehicle.

22. On that date, Maywood Police Officer Jacob Nunez (#327) observed a black 2019 Chevrolet sports utility vehicle, license plate DT24013, driving in the vicinity of 17th Avenue and Madison.[1]

23. Office Nunez attempted to make a traffic stop.

24. The driver of the vehicle did not comply.

25. At some point, Officer Nunez terminated his pursuit.

26. Officer Nunez, with no additional review, entered a felony vehicle alert into LEADS pursuant to MVC § 99.26.

[1] For purposes of this Complaint, the facts as determined by the Administrative Judge are not in dispute.

FILED DATE: 4/19/2024 12:00 PM 20244002591

27. MVC § 99.26 reads as follows:

> (A) A motor vehicle used to commit the offense of aggravated fleeing or attempting to elude a peace officer is subject to seizure and impoundment. The offense of aggravated fleeing or attempting to elude a peace officer is committed by any driver or operator of a motor vehicle who, having been given a visual or audible signal by a peace officer directing such driver or operator to bring his or her vehicle to a stop, willfully fails or refuses to obey such direction, increases his or her speed, extinguishes his or her lights, or otherwise flees or attempts to elude the officer, and either: (1) drives at a rate of speed at least 21 miles per hour over the legal speed limit; (2) causes bodily injury to any individual; (3) causes damage in excess of $300 to property; (4) involves disobedience of two or more official traffic control devices; or (5) involves the concealing or altering of the vehicle's registration plate or digital registration plate. The signal given by the peace officer may be by hand, voice, siren, or red or blue light; provided that the officer giving such signal shall be in police uniform, and, if driving a vehicle, such vehicle shall display illuminated oscillating, rotating or flashing red or blue lights which, when used in conjunction with an audible horn or siren, would indicate the vehicle to be an official police vehicle. Such requirement shall not preclude the use of amber or white oscillating, rotating or flashing lights in conjunction with red or blue oscillating, rotating or flashing lights as required in Section 12-215 of Chapter 12 of the Illinois Vehicle Code (625 ILCS 5/12-215). The owner of record of any vehicle subject to seizure and impoundment under this division shall be liable to the Village for an administrative penalty in the amount of $1,000 plus any applicable fees for the towing and storage of the vehicle.
>
> (B) Whenever a peace officer has probable cause to believe that a vehicle is subject to seizure and impoundment pursuant to this section, the peace officer shall provide for the towing of the vehicle to a facility controlled by the Village or its agents. When the vehicle is towed, the peace officer shall notify any person who is found to be in control of the vehicle at the time of the alleged violation, if there is such a person, of the fact of the seizure and of the vehicle owner's right to request a hearing pursuant to § 39.14 of this code.
>
> (C) The provisions of § 39.14 shall apply whenever any motor vehicle is seized and impounded pursuant to this section.

28. Over a month later, on December 21, 2023, Plaintiff was driving his vehicle with his friend George Woods through Cicero.

FILED DATE: 4/19/2024 12:00 PM 20244002591

29. For reasons unknown to Plaintiff, upon information and belief, unidentified Cicero Police Officers ran Plaintiff's license plate through the LEADS System.

30. Upon information and belief, unidentified Cicero Police Officers viewed the LEADS felony vehicle alert entered by Officer Nunez.

31. Unidentified Cicero Police Officers surrounded Plaintiff's vehicle with multiple vehicles, forced Plaintiff out of his vehicle, made him kneel on the side of a busy road, handcuffed him, searched his vehicle, and detained him and Mr. Woods for approximately 45 minutes.

32. Approximately 45 minutes after Unidentified Cicero Police Officers violently detained Plaintiff, he was allowed to call an Uber for himself and Mr. Woods.

33. At some point after Plaintiff and Mr. Woods left the scene, Maywood Police Officers towed the vehicle from Cicero to Maywood. See Ex. A.

34. Officer Nunez made written representations, upon information and belief, in a regularly used form in the Village of Maywood to tow Plaintiff's vehicle. See Ex. A. On the form, Officer Nunez crossed out "Maywood", which is typed onto the form, and handwrote in "Cicero". Ex. A.

35. Neither Cicero nor Maywood police ever arrested Plaintiff.

36. Neither Cicero nor Maywood ever sought to charge Plaintiff for any crime.

37. Hours after his vehicle was towed, Plaintiff escorted his son and grandson – both of whom live with Plaintiff – to Maywood Police Station and asked Officer Nunez if either of them was driving his vehicle in the early morning of November 5, 2023.

38. Officer Nunez was unable to identify either Plaintiff, his son, nor his grandson as the driver on November 5, 2023.

39. Throughout this entire process, Plaintiff maintained that he was not driving the vehicle; that he did not give anyone permission to drive the vehicle; and, that he was not aware that anyone was driving the vehicle on November 5, 2023 until his violent detention on December 21, 2023.

FILED DATE: 4/19/2024 12:00 PM 20244002591

40. Plaintiff was unable to recover his vehicle on December 21, 2023, as the towing company was closed for the evening by the time Plaintiff was able to travel to the Maywood Police Station.

41. Plaintiff was unable to recover his vehicle over the next few days due to the holidays.

42. On December 26, 2023, Plaintiff paid Defendant the towing fine of $1,000 as provided by MCV § 99.26(A). Ex. A.

43. On December 26, 2023, Plaintiff paid Area Towing $475 for the storage and towing of his vehicle upon Defendant's direction and control. Ex. B.

44. Defendant provided Plaintiff notice of his right to contest the violation – after payment – at Defendant's monthly administrative hearings. See MCV § 39.14. The next available administrative hearing – held the first Friday of every month – was January 5, 2024.

45. Plaintiff requested additional time to obtain Counsel.

46. Plaintiff, represented by Counsel, contested his liability under MCV § 99.26 under the applicable procedures of MCV § 39.14 on February 2, 2024.

47. At that hearing,[2] Plaintiff began by stating that he had multiple constitutional challenges to raise but was advised by Counsel for Defendant that the Administrative Court would not entertain constitutional challenges and that the proper venue for such challenges would be in the Circuit Court of Cook County.

48. Defendant presented evidence including testimony from a Maywood Detective.

49. The Detective who testified on behalf of Defendant was not involved, in any capacity, in the determination that Plaintiff's vehicle violated MVC § 99.26, nor was he involved in the towing and confiscation of Plaintiff's vehicle.

50. The Detective had no direct knowledge of any facts at issue in this matter and any purported knowledge he had was hearsay.

[2] Without access to the record, Plaintiff's recollection of the hearing is based on memory, Plaintiff will motion to amend his Complaint if necessary upon receipt of the proceedings transcripts.

FILED DATE: 4/19/2024 12:00 PM 20244002591

51. The Detective testified that, pursuant to MCV § 99.26, when a Maywood Police Officer believes that an individual has committed aggravated fleeing and eluding of a vehicle, they enter a felony vehicle alert into LEADS.

52. The Detective testified that this was common procedure.

53. The Detective stated, in the administrative hearing, on cross examination, that there is no oversight of this determination – it is solely at an officer's discretion.

54. The Detective testified that it was common for Maywood Police to confiscate a vehicle over a month after an alleged ordinance violation – i.e., absent any exigent circumstances.

55. At close, Plaintiff argued that – notwithstanding additional constitutional challenges – under Defendant's ordinance, Defendant's agents had the authority to impound and tow Defendant's vehicle: In Maywood.

56. Plaintiff argued that by entering the felony alert into LEADS and by confiscating and towing Plaintiff's vehicle in another municipality, Defendant had exceeded its home-rule authority under the Illinois Constitution.

57. The Administrative Law Judge held that Defendant had proved by a preponderance of the evidence that Plaintiff's vehicle had committed Aggravated Fleeing and Eluding of a Police Officer and was subject to towing and seizure. This is despite the fact that there was no finding of fact by the Administrative Law Judge that either Plaintiff or any aurthorized representative was operating Plaintiff's vehicle during the violation.

58. The Administrative Law Judge stated further that the Administrative Court would need to do additional research into Plaintiff's home-rule argument. The parties offered to submit briefs.

59. Both parties submitted briefs on the issue on March 1, 2024. Ex. C.

60. The Administrative Court issued its ruling, via email to Counsels for the parties, on March 15, 2024. Ex. D.

61. This Complaint for Review follows.

FILED DATE: 4/19/2024 12:00 PM 2024002591

**COUNT I**
**(Violation of Ill. Const. art. I, § 2 – Due Process)**
**[As Applied Challenge]**

62. Plaintiff incorporates all paragraphs of this Complaint herein as if stated in full.

63. Article I, § 2 of the Illinois Constitution reads as follows: "No person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws."

64. Defendant required Plaintiff to pay $1,000 to Defendant, in addition to $475 to a towing company hand-selected by Defendant, before returning Plaintiff's vehicle.

65. This fine was levied before Defendant afforded Plaintiff any opportunity to contest the facts in violation of art. I, § 2 of the Illinois Constitution.

66. Further, at the February 2 hearing, Defendant did not produce the officer that made the initial report on November 5, 2023 and the subsequent towing report in December 21, 2023 – Officer Nunez.

67. Defendant violated Plaintiff's rights under art. I, § 2 of the Illinois Constitution by denying Plaintiff the right to cross examine Officer Nunez and by holding him liable for a fine under MCV § 99.26 based on generalized testimony and documents authenticated by an uninvolved officer.

68. Defendant's violations of art. I, § 2 of the Illinois Constitution harmed Plaintiff.

69. Plaintiff is entitled to actual and exemplary damages for Defendant's constitutional violation.

WHEREFORE, Plaintiff requests that this Honorable Court award him actual and exemplary damages for Defendant's violation of Ill. Const. art. I, § 2.

**COUNT II**
**(Violation of Ill. Const. art. I, § 2 – Due Process)**
**[Facial challenge]**

70. Plaintiff incorporates all paragraphs of this Complaint herein as if set forth in full.

71. Unlike other towing ordinances that have been upheld under a due process analysis, see, e.g., *Jackson v. City of Chicago*, 2012 IL App (1st) 111044, *Bennis v. Michigan*, 516

FILED DATE: 4/19/2024 12:00 PM 20244002591

U.S. 442 (1996),[3] MCV § 99.26 is devoid of any language requiring some type of consent from the vehicle owner, knowledge that someone was utilizing the owner's vehicle, or privity between the owner and driver.

72. The text of MVC § 99.26 holds a vehicle owner liable for *any* violation of Defendant's code regardless of individual innocence, knowledge, consent, or privity between the owner and operator.

73. The broad, all-encompassing language of MVC § 99.26 violates art. I, § II of the Illinois Constitution on its face. As such, MVC § 99.26 should be stricken in its entirety.

WHEREFORE, Plaintiff requests that this Honorable Court declare that MVC § 99.26 is unconstitutional on its face as a violation of Ill. Const. art. I, § II.

**COUNT III**
**(Violation of Ill. Const. art. I, § 6 – Searches, Seizures, Privacy and Interceptions)**
**[As Applied Challenge]**

74. Plaintiff incorporates all paragraphs of this Complaint herein as if set forth in full.

75. Article I, § 6 of the Illinois Constitution provides:

> The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, invasions of privacy or interceptions of communications by eavesdropping devices or other means. No warrant shall issue without probable cause, supported by affidavit particularly describing the place to be searched and the persons or things to be seized.

76. In this case, Defendant seized Plaintiff's vehicle more than a month after the alleged justification for the seizure occurred.

77. In that time, Defendant did not investigate the incident; Defendant did not contact Plaintiff; Defendant did not file a criminal complaint; Defendant did not seek a grand jury indictment; nor did Defendant seek a warrant.

---

[3] See also, Brennan, *State Constitutions and the Protections of Individual Rights*, 90 HARV. L. REV. 489, 495 (1977), *available at* https://www.law.berkeley.edu/wp-content/uploads/2017/07/Brennan-90_HVLR_489.pdf (explaining that, as early as 1977: "[M]ore and more state courts are construing state constitutional counterparts of provisions of the Bill of Rights as guaranteeing citizens of their states even more protection than the federal provisions, even those identically phrased.").

FILED DATE: 4/19/2024 12:00 PM 20244002591

78. Based solely on the unsubstantiated statements of one Maywood Police Officer, Plaintiff's vehicle was seized by police from another municipality, without a warrant or exigent circumstances – in violation of art. I, § 6 of the Illinois Constitution.

79. Defendant's violation of art. 1, § 6 of the Illinois Constitution harmed Plaintiff.

80. As such, Plaintiff is entitled to actual and exemplary damages.

WHEREFORE, Plaintiff requests that this Honorable Court award Plaintiff actual and exemplary damages for Defendant's violation of Ill. Const. art. I, § 6.

**COUNT IV**
**(Violation of Ill. Const. art. I, § 6 – Searches, Seizures, Privacy and Interceptions)**
**[Facial Challenge]**

81. Plaintiff incorporates all paragraphs of this Complaint herein as if set forth in full.

82. The text of MVC § 99.26 allows for the seizure of any vehicle, at any time, by any municipality, regardless of the existence of a warrant, probable cause, or exigent circumstances in violation of art. I, § 6 of the Illinois Constitution.

83. As such, MVC § 99.26 should be stricken in its entirety.

WHEREFORE, Plaintiff requests that this Honorable Court declare MVC § 99.26 unconstitutional on its face as a violation of Ill. Const. art. I, § 6.

**COUNT V**
**(Violation of Ill. Const. art. VII, § 6(a) – Extraterritorial Enforcement of MVC § 99.26)**
**[As Applied Challenge]**

84. Plaintiff incorporates all paragraphs of this Complaint herein as if set forth in full.

85. Article VII, § 6(a) provides, in relevant part:

> Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt.

86. Defendant is a home-rule unit.

FILED DATE: 4/19/2024 12:00 PM 20244002591

87. With very few exceptions not applicable here, a home-rule unit violates its authority when it enforces its ordinances outside of its own jurisdiction. E.g., *City of Carbondale v. Van Natta*, 61 Ill. 2d 483 (1975).

88. Here, Defendant promoted the subjection of Plaintiff to detention by Cicero Police Officers, in Cicero, based solely on a Maywood Ordinance in violation of art. VII, § 6(a) of the Illinois Constitution.

89. Defendant's constitutional violation has harmed Plaintiff.

90. Plaintiff is entitled to actual and exemplary damages for Defendant's constitutional violations.

WHEREFORE, Plaintiff requests that this Honorable Court award him damages for Defendant's violation of Ill. Const. art. VII, § 6(a).

**COUNT VI**
**(Violation of Ill. Const. art. VII, § 6(e) – Raising Revenue through Police Powers)**
**[As Applied Challenge]**

91. Plaintiff incorporates all paragraphs of this Complaint herein as if set forth in full.

92. Article VII, § 6(e) of the Illinois constitution provides: "A home rule unit shall have only the power that the General Assembly may provide by law (1) to punish by imprisonment for more than six months or (2) to license for revenue or impose taxes upon or measured by income or earnings or upon occupations."

93. A home-rule unit is forbidden from raising revenue under the guise of police power. E.g., *Paper Supply Co., v. City of Chicago*, 57 Ill 2d 553 (1974).

94. Here, Defendant's conduct bears no relation to the legitimate exercise of its police powers.

95. Defendant's officers did not confiscate and tow Plaintiff's vehicle during the commission of a crime, nor on the same day as the commission of a crime, nor even within the same month of the commission of a crime.

96. Without ever appealing to Cook County Prosecutors for enforcement of the state statute under which Defendant justifies its ordinance, Officer Nunez put out a felony vehicle alert on Plaintiff's vehicle. See 625 ILCS 5/11-204.1. In making this claim Plaintiff does not waive his right to sue Defendant or law enforcement representatives who

FILED DATE: 4/19/2024 12:00 PM 20244002591

unconstitutionally detained him to sue on behalf of their independently actionable conduct.

97. After seizing Plaintiff's vehicle – in Cicero – none of Defendant's agents arrested, interrogated, or engaged in any conduct with a reasonable relationship to its police powers.

98. Instead, Defendant seized and towed Plaintiff's vehicle – immediately returning it upon Plaintiff's payment to Defendant's self-chosen towing service and Defendant itself.

99. Defendant is utilizing its police powers for the purpose of raising revenue in violation of art. VII, § 6(e) of the Illinois Constitution.

100. Defendant's conduct has harmed Plaintiff.

101. Plaintiff is entitled to actual and exemplary damages for Defendant's constitutional violation.

WHEREFORE, Plaintiff requests that this Honorable Court award him damages for Defendant's violation of Ill. Const. art. VII, § 6(e).

**COUNT VII**
**(Violation of Ill. Const. art. VII, § 6(e) – Raising Revenue through Police Powers)**
**[Facial Challenge]**

102. Plaintiff incorporates all paragraphs of this Complaint herein as if set forth in full.

103. The text of MVC § 99.26 fails to provide any time frame for seizure nor language determining whom – or what entity – may determine whether a violation of 625 ILCS 5/11-204.1 occurred.

104. The text of MVC § 99.26 allows for Defendant to determine – without any due process or oversight – whether a violation of State law occurred. Notably, Defendant is unable to prosecute this crime under the Illinois Constitution. Ill. Const. art. VII, § 6(e).

105. Thus, on its face MVC § 99.26 violates art. VII, § 6(e) of the Illinois Constitution and should be stricken in its entirety.

WHEREFORE, Plaintiff requests that this Honorable Court declare MVC § 99.26 unconstitutional on its face as a violation of Ill. Const. art. VII, § 6(e).

FILED DATE: 4/19/2024 12:00 PM 20244002591

## CONCLUSION

WHEREFORE Plaintiff, Derrick Winfrey, respectfully moves this Honorable Court for an order:

A. Awarding him actual damages for Defendant's constitutional violations;

B. Awarding him exemplary damages for Defendant's constitutional violations;

C. Declaring MVC § 99.26 unconstitutional on its face;

D. Striking MVC § 99.26 in its entirety;

E. Awarding him reasonable attorneys' fees to the extent permitted by law;

F. And, awarding any such further relief this Court deems just given the circumstances.

Respectfully submitted,

/s/ *Michael Drake*
*One of Plaintiff's Attorneys*

## VERIFICATION BY CERTIFICATION

Under penalties of perjury as provided by law pursuant to Section 1-109 of the Code of Civil Procedure (735 ILCS 5/1-109), the undersigned certifies that the statements set forth in this instrument are true and correct, except as to such matters therein stated to be on information and belief and as to such matters, the undersigned certified as aforesaid that I verily believe the same to be true.

/s/ *Derrick Winfrey*
Plaintiff

Michael Drake
Natalie Lundak
Beyond Legal Aid
17 N. State St., #1380
Chicago, Illinois 60602
(312) 678-3508
Mdrake1@beyondlegalaid.org
Nlundak@beyondlegalaid.org
65698

Ex. A

FILED DATE: 4/19/2024 12:00 PM 20244002591

FILED
4/19/2024 12:00 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
20244002591
Courtroom, 0112
27338966

Village of
# MAYWOOD

POLICE DEPARTMENT

VILLAGE OF ETERNAL LIGHT • MAYWOOD • 1881

125 SOUTH FIFTH AVENUE • MAYWOOD, ILLINOIS 60153 • (708) 450-4470

## SEIZED & IMPOUNDED VEHICLES

Post-Tow Incident Report

**CERTIFIED MAIL** **Report #:** 23-21461

| | Register Owner Information | Arrestee's Information |
|---|---|---|
| NAME Last, First | WINFREY, DERRICK | |
| Address | 1977 N. 19TH APT# 2 | |
| City/State/Zip | MELROSE PARK, IL 60160 | |

## POST-TOW NOTICE

You, DERRICK WINFREY, are listed as the Registered Owner or you are the person entitled to possession of the following described vehicles:

| | Vehicle Description | TOW COMPLETED BY | |
|---|---|---|---|
| License Plate/State | DT24013 | Officer Name: | Tenuto#? / OFC. NUNEZ |
| Year | 2019 | Badge: | 271 / 327 |
| Make | CHEVY | Duty Supervisor: | DENT |
| Model | SUV | *Certified Letter date sent:* | 12-22-23 |
| VIN # | 2GNAZZEVIK6223002 | *Mailed by:* | H. Refuler |

Which is impounded at: ☑ **Area Towing**—1401 N. 1st Ave., Melrose Park, IL 60160

*(Please Check the box that applies)* ☐ ______________________

*(Other location)*

The vehicle was towed from [scribbled out] CICERO, ~~Maywood, IL 60153 on~~

*(Location of the vehicle for the tow)*

21 / DEC / 23 at (Time): 1539 HRS.

By authority of the Village of Maywood, as an unlawful vehicle, for the following reasons:

______________________

(Synopsis of facts forming of tow)

The towing was authorized by ________ 99. 26, which provides that:

(Ordinance of Statutory Action)

AGG. FLEEING + ELUDING

**OFFICER REQUESTING TOW SIGNATURE/BADGE:** [signature]

**ORDINANCE FEE AMOUNT TO BE PAID:** $ 1,000.00 **AMOUNT PAID:** $1000.00

**FEES RECEIVED BY/NAME & BADGE:** [signature] #271 **PAYMENT DATE:** 26 DEC 23

**You have the rights and payment obligations as set forth in Chapter 99 of the Maywood Village Code. If you want to request a hearing to contest this vehicle seizure and impoundment, contact the Administrative Hearings Clerk at (708) 450-4414, Monday thru Friday between the hours of 8:30 a.m. until 5:00 p.m. Also attached is a memo regarding the steps to follow for a Vehicle Impoundment Hearing.**

| White—Original Copy, Records | Yellow—Case Jacket | Pink—Owner Copy, to be mailed | Gold—Court Officer |
|---|---|---|---|

353106_1

 Ex. A

FILED DATE: 4/19/2024 12:00 PM 20244002591

# MAYWOOD POLICE DEPARTMENT
# TOWED VEHICLE RELEASE FORM

The release of this vehicle indicates that the Maywood Police Department no longer has an interest in the vehicle. The vehicle may be redeemed from the tow company with the proper identification, Owner's License and insurance.

**Date Vehicle Released:** 26 DECEMBER 23 **Case #:** 23-21461

**Tow Company:** AREA TOWING

| | Vehicle Description |
|---|---|
| License Plate/State | DT 24013 |
| Year | 2019 |
| Make | CHEVY |
| Model | SUV |
| Vin # | 2GNAZZEV1K6223002 |

| | Registered Vehicle Owner |
|---|---|
| Name | WINFREY, DERRICK |
| Address | 1977 N. 19TH APT #2 |
| City, State, Zip | MELROSE PARK, IL 60160 |
| Telephone # | X (773) 473-0825 or (708) 368-3600 CELL NO 312-538-2960 |

**Owner Signature:** X Derrick Winfrey **Officer Releasing Signature:** [signature] #271

**Supervisor Name/Badge:** LT. E. DENT #271

**Date Removed from LEADS:** ____________________

**Removed from LEADS by:** ____________________

| ATTACH DRIVER'S LICENSE HERE TO MAKE COPY<br><br>**OTHER VALID DRIVER** | ATTACH DRIVER'S LICENSE HERE TO MAKE COPY<br><br>**REGISTERED OWNER** |
|---|---|

Ex. B

FILED DATE: 4/19/2024 12:00 PM 20244002591

# Area Towing, Inc.

1401 N. 1st Avenue, Melrose Park IL 60160
Phone: (708) 345-4665

Impou...

Pri...

| | | | |
|---|---|---|---|
| Released To | DERRICK WINFREY | 1977 N 19TH AVE MELROSE PK IL 60160 | |
| Call # | 27082 | | |
| Stock # | 17043784 | Reason for Impound | Arrest |
| Account | Maywood PD | VIN Number | 2GNAXXEV1K6223002 |
| Date/Time Impounded: | 12/21/2023 12:00 AM | Model | 2019 Chevrolet Equinox (Black) |
| Date/Time Released: | 12/26/2023 2:50 PM | License Plate | DT24013 (IL) |
| Days Held in Impound | 6 days | Drivable | Yes |
| | | Keys | Yes |
| | | Towed from | 5900 ROOSEVELT ROAD CICERO |
| | | Stored at | Main Location 1401 N 1st Ave, Melrose Park IL 60160 |

| Storage charges | Quantity | Price | Line Total |
|---|---|---|---|
| (Storage - Administrative Fees) Admin Fee | 1 | $40.00 | $40.00 |
| (Storage) Standard Storage Rates | 5 | $40.00 | $200.00 |

| Towing charges | Quantity | Price | Line Total |
|---|---|---|---|
| (Towing) Maywood Regular Tow | 1 | $170.00 | $170.00 |
| (Towing) Maywood Village Service Fee | 1 | $25.00 | $25.00 |
| (Towing) Flatbed | 1 | $40.00 | $40.00 |

| | |
|---|---|
| Towing SubTotal | $235.00 |
| Storage SubTotal | $200.00 |
| Storage - Administrative Fees SubTotal | $40.00 |
| Subtotal | $475.00 |
| Taxes | $0.00 |
| Grand Total | $475.00 |
| **Amount Due:** | **$475.00** |

Area Towing, Inc. appreciates your business; if you have any questions regarding this invoice, please contact us at (708) 345-4665.

Signature: ____________________ Date: ____________

PAID

 Ex. C

FILED DATE: 4/19/2024 12:00 PM 20244002591

**IN THE VILLAGE OF MAYWOOD, ILLINOIS**
**DEPARTMENT OF ADMINISTRATIVE HEARINGS**

In re: Derrick Winfrey
Tow Hearing

This brief is submitted by the Village of Maywood ("Village") by and through their attorneys, Klein, Thorpe & Jenkins, Ltd. and, in support of the Village's position that the Court should deny Derrick Winfery's ("Winfrey" or "Respondent") request for a refund of towing fees and costs, state as follows:

***Introduction***

The narrow and limited issue before this Court is if the Village of Maywood Police Department ("MPD") had the right to tow and/or order the vehicle owned by Winfrey, with license plate DT24013 (the "Vehicle") from Cicero on December 21, 2023 and if Winfrey is responsible for the costs of the tow. Pursuant to Illinois law, because a law enforcement agency authorized the tow, the owner, Derrick Winfrey, is responsible for the costs of the tow. See 625 ILCS 5/4-203(g)(2).

This brief is presented by order of Administrative Hearing Officer Megan Lafata ("Hearing Officer" or "Hearing Officer Lafata") on the narrow issue of the Village's authority to tow the Vehicle from another jurisdiction. On February 2, 2024, Hearing Officer Lafata found the following facts: that the Vehicle was used to elude and flee Village police on November 5, 2023 pursuant to the elements of eluding and fleeing set forth in the Maywood Village Code ("MVC") §99.26(a)(4)[1]; due to the use of the vehicle to elude and flee police, the Vehicle met the definition of a "hazardous vehicle" as set forth in MVC §99.01; and the Village possessed the authority to tow pursuant to MVC §99.02(A)(1) and §99.26(a).

---

[1] Maywood Village Code §99.26(a)(4) mirrors the definition of fleeing and eluding police under the Illinois Vehicle Code. See 625 ILCS 5/11-204.1.

FILED DATE: 4/19/2024 12:00 PM 20244002591

Village's **Exhibit 1**, which the Hearing Officer entered as evidence at the hearing is attached to this brief. Village's **Exhibits 2 through 7** are audio recordings from the date the Vehicle was used to flee and elude police. Those Exhibits are not attached, nor referred to in this brief, as the Court has determined the Vehicle was used to flee and elude police.

## ***Argument***

This brief will explain the law which authorizes the tow, why Winfrey is responsible for the cost of the tow, and MPD's relationship with the Law Enforcement Data System.

### *1. Derrick Winfrey is Responsible for the Fee Associated with the Tow.*

When a tow authorized by a law enforcement agency, "the owner of the vehicle shall be responsible for all towing and storage charges." 625 ILCS 5/4-203(g)(2). Here, a law enforcement agency, the MPD, authorized the tow. Therefore, Winfrey's request to be refunded the fee associated with the tow should be denied.

While the matter of *King Auto Sales, Inc. v. Act Now Towing*, concerns a civil lawsuit, the court in that matter examined the language contained in the Illinois Vehicle Code, specifically 625 ILCS 5/4-203(g)(2), which provides that if a law enforcement agency authorized a tow, the owner of the vehicle is responsible for the tow and storage charges. *King Auto Sales, Inc. v. Act Now Towing*, 2021 IL App (5th) 200143, ¶19. The court determined the language of 203(g)(2) is "clear and unambiguous." *Id*. at ¶26. "There is no language limiting the provision of based on the purpose for which law enforcement authorized the tow." *Id.* Further, "[r]eading subsection (g) in its entirety, it is clear that the legislature intended each paragraph to only have the distinct limitations stated within the paragraph." *Id*. at ¶21.

When examining the language of a statute, the court is to use the plain and ordinary meaning of the language. *Lintzeris v. City of Chicago*, 2023 IL 1277547, ¶26 (citation omitted).

FILED DATE: 4/19/2024 12:00 PM 20244002591

When the language of a statute is clear and unambiguous, the court should not consider exceptions, conditions, or limitations not included in the statute. *Id*. It is clear and unambiguous that the language of 625 ILCS 5/4-203(g)(2) requires the owners of vehicles towed with the authorization of a law enforcement agency to be responsible for the costs and fees.

The Village is a home rule jurisdiction. See attached **Exhibit 8**, Resolution No. R-2022-53, A Resolution Ratifying the Approval and Execution of Understanding (MOU) with the Illinois State Police for Transmittal, Receiving and Storing of LEADS, NCIC and SOS Information and Data (the "Resolution"). The Resolution, with the attached and agreed Memorandum of Understanding ("MOU") is attached as **Exhibit 8**. The Village asks this Court to admit **Exhibit 8**, into the record as evidence, as a public resolution and a MOU concerning agreements between law enforcement agencies would be relied upon by a reasonable person. Evidence, including hearsay, may be admitted in an administrative court if it is "a type commonly relied upon by reasonably prudent persons in the conduct of their affairs." 65 ILCS 5/1-2.1-6; see also *Zollar v. City of Chicago Department of Administrative Hearings*, 2015 IL App (1st) 143426, ¶6.

The powers of home rule units should be construed liberally. Ill. Const. 1970, art. VII, §6(m); see also *Lintzeris*, 2023 IL 1277547 at ¶5. Home rule units, like the Village, are permitted to enact ordinances which require a fee for the cost of a tow. *Lintzeris*, 2023 IL 1277547, ¶34-35; see also 625 ILCS 5/11-208.7(a). Home rule units may adopt traffic regulations, like those related to the towing of vehicles, as long as the regulations do not conflict with the Illinois Vehicle Code. *Id*. at ¶7-8.

The MPD's power to authorize the tow of the Vehicle is derived from MVC §99.02(A)(1), which provides that the Village Code Enforcement and the MPD may tow any

FILED DATE: 4/19/2024 12:00 PM 20244002591

vehicle which meets the definition of a "hazardous vehicle" as defined in MVC §99.01. A "hazardous vehicle" includes any vehicle which, among other things, "presents an immediate danger to the health, safety or welfare of the members of the public." MVC §99.01. A vehicle used to flee and elude the police or a law enforcement agency in Maywood is subject to seizure and impoundment. MVC §99.26(a). This Court determined the Vehicle was used to flee and elude the police. Therefore, under the MVC, the authorization of the tow of the Vehicle was proper.

There is nothing within 625 ILCS 5/4-203(g)(2) which limits the jurisdiction of a tow or that prevents a municipality from entering another jurisdiction to tow a vehicle or that prevents one municipality ordering or causing a vehicle to be towed on behalf of another municipality. There is no language which requires an arrest of the owner or a conviction of the owner – merely that law enforcement authorized the tow. There is no question the MPD authorized the tow of the Vehicle. See **Ex. 1**, Department of Police Tow Report. The law is clear – the owner of the vehicle is responsible for the tow and storage charges if any law enforcement agency authorizes the tow and therefore, Winfrey's request to be refunded the tow fee should be denied.

***2. The Maywood Police Department Participates in the Law Enforcement Agency Data System***

One fact established during the hearing is that the Vehicle was entered into the Law Enforcement Agency Data System ("LEADS"), which lead to the tow of the Vehicle from Cicero. LEADS "is a statewide, computerized telecommunications system designed to provide services, information and capabilities to law enforcement and criminal justice community in the State of Illinois." 20 Ill. Adm. Code 1240.10; Illinois LEADS Reference Manual 2021, page REGS-1. (The LEADS Reference Manual is available online at isp.illinois.gov or can be

FILED DATE: 4/19/2024 12:00 PM 20244002591

provided to the Court upon request). Data entry and maintenance by law enforcement agencies in LEADS is required by several sections of the Illinois Criminal Code. (See e.g. the Illinois Domestic Violence Act of 1986, 750 ILCS 60/302; the Sex Offender Registration Act, 730 ILCS 150/8). Law enforcement, like police officers, are required only to use LEADS for law enforcement purposes, as misuse of the system could result in a criminal felony charge. See 20 Ill. Adm. Code § 1240.80 and *People v. Samel*, 115 Ill.App.3d 905, 908, 912 (2nd Dist. 1983). Additionally, if a law enforcement agency uses LEADS services in a manner non-compliant with laws, rules, regulations, or procedures, the Department of Law Enforcement may suspend all or any portion of LEADS service. See 20 Ill. Adm. Code § 1240.110. The Department of Law Enforcement may conduct routine audits of any agency participating in LEADS to ensure compliance with rules, regulations, and laws. See 20 Ill. Adm. Code § 1240.120. LEADS records in the computerized files "must be supported by an investigative document, active warrant, or complaint." See 20 Ill. Adm. Code § 1240.60(a)(2). The records in the system must be available to any LEADS terminal operator at all times for several purposes, including verification and validation. See Id. Therefore, LEADS is a reliable system for law enforcement use.

Illinois law "evidences a public policy of encouraging municipalities to agree to assist one another in carrying out law enforcement objectives." *People v. Vargas*, 277 Ill.App.3d 289, 297 (1st Dist. 1995). The Village of Maywood participates in LEADS and was a participant on November 5, 2023 (the date Mr. Winfrey's vehicle was used to elude police) through December 21, 2023 (the date of the legal tow). The Village's President and Board of Trustees, operating as a home rule entity, approved the Resolution, which ratified the approval and execution of the MOU. See **Exhibit 8**. The Village Clerk certified the Resolution on December 7, 2022. See **Id.**

FILED DATE: 4/19/2024 12:00 PM 20244002591

There is no expiration date for the MOU and per testimony presented at the hearing, the Village Police Department continues to utilize LEADS.

Any objection or argument Winfrey presents in opposition of the use of LEADS should be rejected, as the MPD has the authority to utilize the system. Additionally, there is a public interest in allowing municipalities to assist one another in carrying out law enforcement objectives. Prohibiting municipalities and law enforcement agencies from utilizing LEADS to tow vehicles from outside jurisdictions would frustrate the purpose of LEADS and would go against the public interest. It was proper for the Vehicle to be towed from Cicero and Winfrey should therefore be responsible for the fee associated with the tow.

## ***Conclusion***

It is undisputed Derrick Winfrey's Vehicle was used to flee and elude police on November 5, 2023. This Court has already determined that Maywood Police Department possessed the authority to authorize the tow of the vehicle. The Maywood Police Department had the authority to utilize LEADS in the investigation of the fleeing and eluding incident. As the authorization of the tow was proper, Derrick Winfrey, as the owner, is responsible for the tow fees and charges and therefore should not be refunded the money he paid to retrieve the Vehicle.

Respectfully submitted,
VILLAGE OF MAYWOOD

By: *Carrie A. Winteregg*
One of its Attorneys

Carrie A. Winteregg (cawinteregg@ktjlaw.com)
KLEIN, THORPE AND JENKINS, LTD.
120 S. LaSalle Street, Suite 1710
Chicago, Illinois 60602
(312) 984-6400
Atty No: 90446

FILED DATE: 4/19/2024 12:00 PM 20244002591

Ex. C

FILED DATE: 4/19/2024 12:00 PM 20244002591

**IN THE VILLAGE OF MAYWOOD, ILLINOIS**
**DEPARTMENT OF ADMINISTRATIVE HEARINGS**

| | | |
|---|---|---|
| Village of Maywood, | ) | |
| Plaintiff, | ) | |
| v. | ) | Report No.: 23-21561 |
| Derrick Winfrey, | ) | |
| Respondent. | ) | |

**RESPONDENT'S BRIEF IN SUPPORT OF DISMISSAL**

NOW COMES Respondent, Derrick Winfrey, by and through Counsel, Beyond Legal Aid, and moves this Administrative Court for dismissal. In support of such, he states the following:

**INTRODUCTION**

A hearing on this matter was held on February 2, 2024, at the Village of Maywood ("the Village") Police Station. There, this Court held that the Village had proved its case by a preponderance of the evidence but requested that the parties provide briefs on whether the Village had the authority to tow the vehicle from Cicero. Thus, no facts are in dispute at this time.

The relevant facts for the purposes of this brief are as follows. On November 5, 2023, Officer Nunez of the Maywood Police Department entered a Felony Vehicle Alert in the Law Enforcement Agency Data System ("LEADS") for a vehicle owned by Respondent. On December 21, 2023, Respondent was pulled over and detained in Cicero by officers of the Cicero Police Department. Officers from the Maywood Police Department then towed the vehicle from Cicero to Maywood. The vehicle was released to Respondent on December 26, 2023, after Respondent paid the fine. Respondent was never arrested by either police department.

FILED DATE: 4/19/2024 12:00 PM 20244002591

**ARGUMENT**

Respondent raises a single argument in this brief: The Village exceeded its home-rule authority by enforcing MVC § 99.26 extraterritorially. As such, this matter should be dismissed, and Respondent should be fully refunded for his fine and other fees related to towing and storage.

Article VII, section 6(a) of the Illinois Constitution provides, in relevant part:

> Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt.

Ill. Const., art. VII, § 6(a). A home-rule municipality[1] does not have the authority to enforce its ordinances outside of its jurisdictional limits. *Village of Sauget v. Cohn*, 241 Ill. App. 3d 640, 645 (5th Dist. 1993). "'[A]n examination of the [Record of Proceedings of the Sixth Illinois Constitutional Convention] shows that the intention was not to confer extraterritorial sovereign or governmental powers directly on home-rule units. The intendment shown is that whatever extraterritorial governmental powers home-rule units may exercise were to be granted by the legislature.'". *Village of Orland Hills v. Citizens Utilities Co.*, 347 Ill. App. 3d 504, 520-21 (1st Dist. 2004) (quoting *City of Carbondale v. Van Natta*, 61 Ill. 2d 483, 485 (1975)).

Here, the Village enforced MVC § 99.26 extraterritorially. The Village contends that it had authority under MVC § 99.26 to impound Respondent's vehicle and charge him the relevant fine. Respondent does not dispute that is the case[2] *within the limits of Maywood.* However, in

---

[1] There is no dispute that Maywood is a home-rule municipality.

[2] While Respondent has multiple constitutional issues with the ordinance in question, Respondent is assuming that the ordinance is valid for the purposes of the February 2, 2024 administrative hearing and this brief as Respondent was advised that this was the improper venue for constitutional challenges.

FILED DATE: 4/19/2024 12:00 PM 20244002591

this matter, Maywood police officers entered Cicero after Cicero Police Officers detained Respondent and impounded his vehicle pursuant to MVC § 99.26.

The Village does not contend that it had authority to tow Respondent's vehicle from Cicero under any state law – only by Village ordinance. Outside of an applicable state law, the Village cannot tow vehicles extraterritorially. Indeed, the Village's "Seized and Impounded Vehicles" form recognizes this. See Ex. 1. On the form the Village provided to Respondent, "Maywood, IL 60153" is crossed out and "Cicero" is handwritten in as the location of the vehicle for the tow. Ex. 1. By providing "Maywood, IL 60153" as the standard ending of the location of the tow in the form, the Village shows that it assumes vehicles towed under its ordinance are done so within its jurisdiction. That is not that case here. Because the Village exceeded its home-rule authority by towing Respondent's vehicle outside of its jurisdiction, this matter should be dismissed, and the Village should provide Respondent with a full refund for all fines and fees he incurred.

WHEREFORE, Respondent, Derrick Winfrey, respectfully moves this Administrative Court for an order dismissing the ordinance violation and refunding him all money paid in fines and fees.

Respectfully submitted,

/s/ Michael Drake
*Attorney for Respondent*

Michael Drake
Beyond Legal Aid
17 N. State St., #1380
Chicago, Illinois 60602
(312) 678-3508
Mdrake1@beyondlegalaid.org
65698

 Ex. D

FILED DATE: 4/19/2024 12:00 PM 20244002591

**IN THE VILLAGE OF MAYWOOD, ILLINOIS**

**DEPARTMENT FO ADMINISTRATIVE HEARINGS**

| | | |
|---|---|---|
| **Village of Maywood,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Report No.: 23-21561** |
| | ) | |
| **v.** | ) | |
| **Derrick Winfrey,** | ) | |
| | ) | |
| **Respondent** | ) | |

**ORDER**

After a hearing on February 2, 2024, Administrative Hearing Officer Lafata found that the vehicle in question was used to flee and elude police Village Police Officer's within the Village of Maywood and therefore granting the Village of Maywood the authority to tow the vehicle pursuant to MVC §99.02(A)(1) and §99.26(a). The Administrative Hearing Officer sought time to determine if the Village of Maywood's authority to tow the vehicle was limited to the city limits of Maywood, or if the Village had the authority to tow the vehicle from Cicero, a neighboring jurisdiction.

After reviewing briefs submitted by both parties, the Hearing Officer finds that the plain language of the 625 ILCS 5/4-203(g)(2), is clear and unambiguous. The statute reads, "when a vehicle removal from either public or private property is authorized by a law enforcement agency, the owner of the vehicle shall be responsible for all towing and storage charges". The statute does not specify that the tow must take place within the city limits of where the violation was committed.

It would seem to frustrate the purpose of the statute to determine that because an individual operating the motor vehicle in question was able to successfully use the motor vehicle to flee and elude a law enforcement agency, they should not be responsible for the costs of a tow authorized by those actions.

For the foregoing reasons, the Hearing Officer finds that the Village of Maywood had the authority to tow the Respondent's vehicle, regardless of the location of the vehicle at the time of the tow, as it was used to flee and elude Maywood Police Officers and pursuant to 625 ILCS 5/4-203(g)(2), Respondent shall be responsible for all towing and storage charges.

**Entered: March 15, 2024**

Megan Lafata

**Administrative Hearing Officer Megan Lafata**

**2877 Certification of Representation Filed** **(Rev. 12/01/20) CCG 0642**

FILED
4/19/2024 12:00 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
20244002591
Courtroom, 0112
27338966

FILED DATE: 4/19/2024 12:00 PM 20244002591

**IN THE CIRCUIT COURT OF THE COOK COUNTY, ILLINOIS**

Municipal **DEPARTMENT**

Derrick Winfrey

v.

Village of Maywood

**No.** ______________

## RULE 298 CERTIFICATION FOR WAIVER OF FEES REPRESENTATION BY CIVIL LEGAL SERVICES PROVIDER OR COURT-SPONSORED PRO BONO PROGRAM

Pursuant to Supreme Court Rule 298, the undersigned counsel hereby certifies that s/he is an attorney for Beyond Legal Aid,
*(name of organization or court program)*
a civil legal services provider or court-sponsored pro bono program as defined in 735 ILCS 5/5-105.5(a), and that Beyond Legal Aid
*(name of organization or court program)*
has made the determination that Derrick Winfrey
*(name of party)*
has income of 125% or less of the current official poverty guidelines or is otherwise eligible to receive services under the eligibility guidelines of the civil legal services provider or court-sponsored pro bono program. As a result, under Supreme Court Rule 298, Derrick Winfrey
*(name of party)*
is eligible to sue or defend without payment of fees, costs or charges as defined at 735 ILCS 5/5-105(a)(1).

/s/ Michael Drake
**Attorney Certification**

**Name of Organization or Court Program:** Beyond Legal Aid
**Atty. No.:** 65698
**Name:** Michael Drake
**Address:** 17 N. State St., #1380
**City/State/Zip Code:** Chicago, IL 60602
**Telephone:** (312) 678-3508

Filer Selected Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Courtroom, 0112
System Generated Hearing Date: 6/11/2024 11:00 AM
Location: Court Room 0112
Judge: Evans, Carl Lauras, Jr.

FILED
4/19/2024 12:43 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
20244002591
Courtroom, 0112
27340213

FILED DATE: 4/19/2024 12:43 PM 20244002591

**Summons In Administrative Review** **(03/15/21) CCG 0124 A**

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

**MUNICIPAL DEPARTMENT** Fourth **DISTRICT**

Derrick Winfrey
Plaintiff(s)
v.
Village of Maywood
Defendant(s)
Village/Township
of: Maywood
Department of Administrative Hearings
________________ Department

Case No. 20244002591
Court Date: ____________
Room: ____________
Court Time: __________ ○ AM ○ PM

**SUMMONS IN ADMINISTRATIVE REVIEW**

To each Defendant:

YOU ARE HEREBY SUMMONED and required to file an answer in this case or otherwise file your appearance within 35 days after the date of this summons.

**FILING AN APPEARANCE:** **Your appearance date is NOT a court date.** It is the deadline for filing your appearance/answer. To file your appearance/answer **YOU DO NOT NEED TO COME TO THE COURTHOUSE, unless you are unable to eFile your appearance/answer.** You can download an Appearance form at http://www.illinoiscourts.gov/Forms/approved/procedures/appearance.asp. After completing and saving your Appearance form, you can electronically file (e-File) it with the circuit clerk's office.

**E-FILING:** E-filing is now mandatory with limited exemptions. To e-File, you must first create an account with an e-Filing service provider. Visit http://efile.illinoiscourts.gov/ service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-Filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org.

**FEE WAIVER:** If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also ask your local circuit clerk's office for a fee waiver application.

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**

FILED DATE: 4/19/2024 12:43 PM 20244002591

**COURT DATE:** Your court date will be sent to your e-File email account or the email address you provided to the clerk's office. You can also call or email the clerk's office to request your next court date. You will need to provide your case number OR, if unknown, the name of the Plaintiff or Defendant. For criminal case types, you will also need to provide the Defendant's birthdate.

**REMOTE APPEARANCE:** You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance". Call the Circuit Clerk at (312) 603-5030 or visit their website at www.cookcountyclerkofcourt.org to find out how to do this.

Contact information for each of the Clerk's Office locations is included with this summons. The Clerk's office is open Mon - Fri, 8:30 am - 4:30 pm, except for court holidays.

4/19/2024 12:43 PM IRIS Y. MARTINEZ

Witness Date: ________ Clerk of Court ________

CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Atty. No.: 65698

Atty Name: Beyond Legal Aid

Atty. for: Derrick Winfrey

Address: 17 N. State St., #1380

City: Chicago

State: IL Zip: 60602

Telephone: 312-678-3508

Primary Email: Mdrake1@beyondlegalaid.org

## CERTIFICATE OF SERVICE

I, Michael Drake, certify under penalties as provided in 735 ILCS 1-109 that I served the following parties by registered or certified mail on //24

Date: //24 Signature *Michael Drake*

## SERVICE LIST

1. Village of: Maywood
2. Other: ________

FILED DATE: 4/19/2024 12:43 PM 20244002591

## GET YOUR COURT DATE BY CALLING IN OR BY EMAIL

**CALL OR SEND AN EMAIL MESSAGE** to the telephone number or court date email address below for the appropriate division, district or department to request your next court date. Email your case number, or, if you do not have your case number, email the Plaintiff or Defendant's name for civil case types, or the Defendant's name and birthdate for a criminal case.

### CHANCERY DIVISION

**Court date EMAIL:** ChanCourtDate@cookcountycourt.com
Gen. Info: (312) 603-5133

### CIVIL DIVISION

**Court date EMAIL:** CivCourtDate@cookcountycourt.com
Gen. Info: (312) 603-5116

### COUNTY DIVISION

**Court date EMAIL:** CntyCourtDate@cookcountycourt.com
Gen. Info: (312) 603-5710

### DOMESTIC RELATIONS/CHILD SUPPORT DIVISION

**Court date EMAIL:** DRCourtDate@cookcountycourt.com
OR
ChildSupCourtDate@cookcountycourt.com
Gen. Info: (312) 603-6300

### DOMESTIC VIOLENCE

**Court date EMAIL:** DVCourtDate@cookcountycourt.com
Gen. Info: (312) 325-9500

### LAW DIVISION

**Court date EMAIL:** LawCourtDate@cookcountycourt.com
Gen. Info: (312) 603-5426

### PROBATE DIVISION

**Court date EMAIL:** ProbCourtDate@cookcountycourt.com
Gen. Info: (312) 603-6441

### ALL SUBURBAN CASE TYPES

### DISTRICT 2 - SKOKIE

**Court date EMAIL:** D2CourtDate@cookcountycourt.com
Gen. Info: (847) 470-7250

### DISTRICT 3 - ROLLING MEADOWS

**Court date EMAIL:** D3CourtDate@cookcountycourt.com
Gen. Info: (847) 818-3000

### DISTRICT 4 - MAYWOOD

**Court date EMAIL:** D4CourtDate@cookcountycourt.com
Gen. Info: (708) 865-6040

### DISTRICT 5 - BRIDGEVIEW

**Court date EMAIL:** D5CourtDate@cookcountycourt.com
Gen. Info: (708) 974-6500

### DISTRICT 6 - MARKHAM

**Court date EMAIL:** D6CourtDate@cookcountycourt.com
Gen. Info: (708) 232-4551

Filer Selected Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Courtroom, 0112
System Generated Hearing Date: 6/11/2024 11:00 AM
Location: Court Room 0112
Judge: Evans, Carl Lauras, Jr.

FILED
4/26/2024 10:19 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
20244002591
Courtroom, 0112
27437392

FILED DATE: 4/26/2024 10:19 AM 20244002591

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**MUNICIPAL DEPARTMENT – FOURTH DISTRICT**

Derrick Winfrey,

Plaintiff,

v.

Village of Maywood,

Defendant.

Case No.20244002591

## NOTICE OF SERVICE

I, the undersigned attorney, certify, under penalty of perjury as provided by law pursuant to 735 ILCS 5/1-109, that on April 19, 2024, I caused a true and correct copy of Plaintiff's Complaint, Exhibits, and Summons to be served on Defendant via certified mail at the below listed address:

Village Clerk of Maywood
40 Madison Street
Maywood, IL 60153

Respectfully Submitted,

/s/ Michael Drake
Attorney for Plaintiff

Michael Drake
Beyond Legal Aid (Firm# 65698)
17 N. State St., Suite 1380
Chicago, Illinois 60602
Phone: (312) 678-3509
Fax: (312) 999-0076
MDrake1@Beyondlegalaid.org

Filer Selected Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Courtroom, 0112
System Generated Hearing Date: 6/11/2024 11:00 AM
Location: Court Room 0112
Judge: Evans, Carl Lauras, Jr

FILED DATE: 5/13/2024 7:16 AM 20244002591

**This form is approved by the Illinois Supreme Court and is required to be accepted in all Illinois Circuit Courts.**

**STATE OF ILLINOIS,**
**CIRCUIT COURT**
Cook **COUNTY**

# APPEARANCE

*For Court Use Only*

FILED
5/13/2024 7:16 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
20244002591
Courtroom, 0112
27654359

**Instructions ▾**

Directly above, enter the name of the county where the case was filed.

Enter the name of the person or company that filed this case as Plaintiff/Petitioner.

Enter the name of the Defendant/Respondent.

Enter the Case Number given by the Circuit Clerk.

Derrick Winfrey,
**Plaintiff / Petitioner** *(First, middle, last name or Company)*

v.

Village of Maywood,
**Defendant / Respondent** *(First, middle, last name)*

20244002591
**Case Number**

In **1**, check the box next to "Myself," if you are not an attorney. If you are an attorney, enter the name of your client in **1**, check the box next to "Their attorney," and enter your attorney or firm name in the blank.

**1. The appearance of** Village of Maywood **is entered in this case by:**
*First Middle Last*

☐ Myself
☑ Their attorney: Daniel W. Bourgault, Kaylee M. Hartman and Carmen P. Forte
*Attorney or Firm Name*

**2. I would like a trial with** *(check only one; you do not have a right to jury trial in every case)*:
☑ a judge ☐ a judge and a 6-person jury ☐ a judge and a 12-person jury

**IMPORTANT:** If you are requesting a trial by jury and e-filing the form, you may need to e-file this form two separate times, once as an Appearance and once as a Jury Demand. Check with Illinois Court Help at ilcourthelp.gov or call (833) 411-1121. You can also check with your local Circuit Clerk's office.

Under Illinois Supreme Court Rule 137, your signature means that you have read the document, that to the best of your belief, it is true and correct and that you are not filing it for an improper purpose, such as to cause delay.

If you are completing this form on a computer, sign your name by typing it. If you are completing it by hand, sign and print your name.

Enter your complete address, telephone number, and email address, if you have one.

If you are an attorney, enter your firm name and attorney number.

/s/ Daniel W. Bourgault
*Your Signature*

120 S. LaSalle Street, Suite 1710
*Street Address*

Daniel W. Bourgault
*Your Name*

Chicago, IL 60603
*City, State, ZIP*

(312) 984-6400
*Telephone*

dwbourgault@ktjlaw.com
*Email*

Klein, Thorpe and Jenkins, Ltd.
*Firm Name (if any)*

90446
*Attorney # (if any)*

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

Enter the Case Number given by the Circuit Clerk: 20244002591

FILED DATE: 5/13/2024 7:16 AM 20244002591

## PROOF OF DELIVERY

In **1a**, enter the name, mailing address, and email address of the party you are sending the document to. If they have a lawyer, you **must** enter the lawyer's information.

In **1b**, check the box to show how you are sending the document.

**CAUTION:** If you and the person you are sending the document to have an email address, you **must** use one of the first two options. Otherwise, you may use one of the other options.

In **c**, fill in the date and time that you are sending the document.

**1.** I am sending the *Appearance*

a. To:

Name: Beyond Legal Aid
*First* *Middle* *Last*

Address: ______
*Street, Apt #* *City* *State* *ZIP*

Email address: mdrake1@beyondlegalaid.org

b. By:

☑ An approved electronic filing service provider (EFSP)
☐ Email *(not through an EFSP)*

*Only use one of the methods below if you do not have an email address, or the person you are sending the document to does not have an email address.*

☐ Personal hand delivery to:
- ☐ The party
- ☐ The party's family member who is 13 or older, at the party's residence
- ☐ The party's lawyer
- ☐ The party's lawyer's office

☐ Mail or third-party carrier

c. On: 05/13/2024 at: ______ ☐ a.m. ☐ p.m.
*Date* *Time*

In **2**, if you are sending the document to more than 1 party or lawyer, fill in **a**, **b**, and **c**. Otherwise leave **2** blank.

In **2a**, enter the name, mailing address, and email address of the party you are sending the document to. If they have a lawyer, you **must** enter the lawyer's information.

In **2b**, check the box to show how you are sending the document.

**CAUTION:** If you and the person you are sending the document to have an email address, you **must** use one of the first two options. Otherwise, you may use one of the

In **c**, fill in the date and time that you are sending the document.

**2.** I am sending the *Appearance*

a. To:

Name: ______
*First* *Middle* *Last*

Address: ______
*Street, Apt #* *City* *State* *ZIP*

Email address: ______

b. By:

☐ An approved electronic filing service provider (EFSP)
☐ Email *(not through an EFSP)*

*Only use one of the methods below if you do not have an email address, or the person you are sending the document to does not have an email address.*

☐ Personal hand delivery to:
- ☐ The party
- ☐ The party's family member who is 13 or older, at the party's residence
- ☐ The party's lawyer
- ☐ The party's lawyer's office

☐ Mail or third-party carrier

c. On: ______ at: ______ ☐ a.m. ☐ p.m.
*Date* *Time*

FILED DATE: 5/13/2024 7:16 AM 20244002591

| | |
|---|---|
| If you are sending your document to more than 2 parties or lawyers, check the box and file the *Additional Proof of Delivery* with this form. | ☐ I have completed an *Additional Proof of Delivery* form. |
| Under the Code of Civil Procedure, 735 ILCS 5/1-109, making a statement on this form that you know to be false is perjury, a Class 3 Felony. | **I certify that everything in the *Proof of Delivery* is true and correct. I understand that a false statement on this form is perjury and has penalties provided by law under 735 ILCS 5/1-109.** |
| If you are completing this form on a computer, sign your name by typing it. If you are completing it by hand, sign and print your name. | /s/ Daniel W. Bourgault<br>*Your Signature*<br><br>120 S. LaSalle Street, Suite 1710<br>*Street Address*<br><br>Daniel W. Bourgault<br>*Print Your Name*<br><br>Chicago, IL 60603<br>*City, State, ZIP* |
| Enter your complete address, telephone number, and email address, if you have one. | (312) 984-6400<br>*Telephone*<br><br>dwbourgault@ktjlaw.com<br>*Email*<br><br>Klein, Thorpe and Jenkins, Ltd.<br>*Firm Name (if any)*<br><br>90446<br>*Attorney # (if any)* |

**GETTING COURT DOCUMENTS BY EMAIL:** You should use an email account that you do not share with anyone else and that you check every day. If you do not check your email every day, you may miss important information, notice of court dates, or documents from other parties.

Filer Selected Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Courtroom, 0112
System Generated Hearing Date: 6/11/2024 11:00 AM
Location: Court Room 0112
Judge: Evans, Carl Lauras, Jr.

FILED
5/13/2024 7:16 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
20244002591
Courtroom, 0112
27654359

FILED DATE: 5/13/2024 7:16 AM 20244002591

**Fee Exempt and Reduced Fee Agency Cover Sheet** **(08/02/21) CCG 0020 A**

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

Derrick Winfrey,

v.

Village of Maywood,

Case No. 20244002591

**FEE EXEMPT AND REDUCED FEE AGENCY COVER SHEET**

In order to ensure the proper collection of fees, a Fee Exemption Cover Sheet shall be filed with the initial pleading by a party in all civil actions filed by a law enforcement agency or unit of local government wherein such agency seeks a fee exemption. The information contained herein is for administrative purposes only and cannot be introduced into evidence. Please mark the classification exempting the agency filing this action from the full amount of statutory fees, and sign the cover sheet as indicated on the reverse side.

**Exemptions pursuant to 705 ILCS 105/27.1b(z):**

- ☐ Illinois Attorney General
- ☐ Illinois State Appellate Defender
- ☐ Illinois Office of the Appellate Prosecutor
- ☐ Illinois County Public Defender's Office
- ☐ Illinois County State's Attorney's Office
- ☐ Illinois State Police
- ☐ Illinois Department of Corrections
- ☐ Municipal Police
- ☐ Sheriff's Dept within the State of Illinois
- ☐ CHA Police
- ☐ CTA Police
- ☐ Cook County Forest Preserve Police
- ☐ University/College Police
- ☐ Metra Police
- ☐ Park District Police
- ☐ Illinois Gaming Board Special Agents
- ☐ Other ______________________ (Name of Agency)

**Other agencies/case types exempt from fees:**

- ☐ The Director of the Department of Insurance under 215 ILCS 5/203
- ☐ The Illinois Department of Revenue under 35 ILCS 5/1106
- ☐ Any action instituted under 65 ILCS 5/11-31-1(b) by a private owner or tenant of real property
- ☐ Party represented by a civil legal services provider or attorney in a court-sponsored pro bono program, with certification filed (Supreme Court Rule 298 (d); 735 ILCS 5/5-105.5).
- ☐ The Illinois Department of Children and Family Services, the Office of State Guardian, the Public Guardian, or an Adult Protective Services Agency of the Illinois Department on Aging, as petitioner for appointment as guardian under 755 ILCS 5/11-11, 755 ILCS 5/11a-10 (c) or 755 ILCS 5/11a-13 (the Probate Act of 1975).

FILED DATE: 5/13/2024 7:16 AM 20244002591

- ☐ Any other public officer seeking appointment as a guardian under 755 ILCS 5/11-11 (the Probate Act of 1975).

  Name of agency: Village of Maywood .

- ☐ A petitioner for appointment as guardian of a person, whose personal estate does not exceed $1,000.00 and who resides in a State mental health or developmental disabilities facility, for the management of the estate of the person under 755 ILCS 5/11-11 or 755 ILCS 5/11a-13 (the Probate Act of 1975).
- ☐ Any commitment petition or petition for an order authorizing the administration of psychotropic medication or electroconvulsive therapy under the Mental Health and Developmental Disabilities Code. (705 ILCS 105/27.1b (z)(C)).
- ☐ A petitioner in any order of protection proceeding including, but not limited to, fees for filing, modifying, withdrawing, certifying, or photocopying petitions for orders of protection, issuing alias summons, any related filing service, or certifying, modifying, vacating, or photocopying and orders of protection. (705 ILCS 105/27.1b (z)(D)).
- ☐ Proceedings for the appointment of a confidential intermediary under the Adoption Act. . (705 ILCS 105/27.1b (z)(E)).
- ☐ Claimants in proceedings under the Unemployment Insurance Act, 820 ILCS 405/1200
- ☐ An action under 35 ILCS 200/22-35 for reimbursement of a municipality before issuance of a tax deed other agencies/case types exempt from fee. (continued from page 1).
- ☐ The investigative arm of the Attorney Registration and Disciplinary Commission
- ☐ Cook County officials, departments and agencies pursuant to Cook County, Illinois, Code of Ordinances, Part I, Chapter 18, Article II, Sec. 31 (b)

**Local government exemptions pursuant to 705 ILCS 105/27.1b(z):**

- ☐ City of Chicago
- ☑ Municipality/Township
- ☐ Road District
- ☐ Fire Protection District
- ☐ Park District
- ☐ Mosquito Abatement District
- ☐ Public Health District
- ☐ Airport Authority
- ☐ City Colleges of Chicago
- ☐ Hospital District
- ☐ Chicago Housing Authority
- ☐ Department of Public Works
- ☐ CTA
- ☐ Metra
- ☐ Pace
- ☐ Regional Transit Authority
- ☐ Municipal License Appeal Commission
- ☐ Chicago Board of Education
- ☐ School District
- ☐ Library District
- ☐ Metropolitan Water Reclamation District
- ☐ Conservation District
- ☐ Other: ____________________ (Name of Agency)

By: /s/ Daniel W. Bourgault (Signature) — Daniel W. Bourgault (Printed Name)

Attorney (Affiliation with Agency) — Attorney (Title if with Agency, Attorney, etc.)

On behalf of Village of Maywood (Agency)

and the Agency Head (Director, CIO, etc.), ____________________ (Printed Name)

FILED DATE: 5/13/2024 7:16 AM 20244002591

Atty. No.: 90446

Atty Name: Daniel W. Bourgault

Atty. for: Village of Maywood

Address: 120 S. LaSalle St, Suite 1710

City: Chicago

State: IL Zip: 60603

Telephone: 312-984-6400

Primary Email: dwbourgault@ktjlaw.com

Filer Selected Hearing Date: 6/4/2024 9:30 AM - 9:35 AM
Location: <<CourtRoomNumber>>
Judge: Courtroom, 0112
System Generated Hearing Date: 6/4/2024 9:30 AM
Location: Court Room 0112
Judge: Evans, Carl Lauras, Jr.

FILED
5/31/2024 4:44 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
20244002591
Courtroom, 0112
27931350

FILED DATE: 5/31/2024 4:44 PM 20244002591

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**FOURTH MUNICIPAL DISTRICT - CIVIL DIVISION**

| | | |
|---|---|---|
| **DERRICK WINFREY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.: 2024 400 2591** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **VILLAGE OF MAYWOOD, a Municipal Corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**NOTICE OF MOTION**

TO: **Mike Drake**
**Beyond Legal Aid**
**17 N. State St., Suite 1380**
**Chicago, IL 60602**
**Mdrake!@beyondlegalaid.org**

PLEASE TAKE NOTICE that on **June 4, 2024** at **9:30 a.m.** or as soon thereafter as counsel may be heard, we shall appear **Via Zoom** before the Honorable Carl Laura Evans, or anyone sitting in her stead, in Court Room 112, of the Cook County Circuit Court located at 1500 Maywood Drive, Maywood, Illinois, and present **Village of Maywood's Motion to Strike and Motion to Dismiss Plaintiff's Complaint for Administrative Review,** a true and correct copy of which is attached hereto and hereby served upon you.

(Zoom Id: 914 3462 0283; Password: 988648)

KLEIN, THORPE AND JENKINS, LTD.

By: /s/Kaylee Hartman
One of their attorneys

Allen Wall (jawall@ktjlaw.com)
Kaylee M. Hartman (kmhartman@ktjlaw.com)
KLEIN, THORPE & JENKINS, LTD.
120 S. LaSalle Street, Suite 1710
Chicago, Illinois 60602
(312) 984-6400
Attorney No. 90446

FILED DATE: 5/31/2024 4:44 PM 20244002591

## CERTIFICATE OF SERVICE

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies as true and correct, that she served this Motion and Notice of Motion, upon the parties of record by the Court's EFSP, Odyssey eFileIL on May 31, 2024

By: /s/ Kaylee M. Hartman.
One of their attorneys

Filer Selected Hearing Date: 6/4/2024 9:30 AM - 9:30 AM
Location: <<CourtRoomNumber>>
Judge: Courtroom, 0112
System Generated Hearing Date: 6/4/2024 9:30 AM
Location: Court Room 0112
Judge: Evans, Carl Lauras, Jr.

FILED
5/31/2024 4:44 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
20244002591
Courtroom, 0112
27931350

FILED DATE: 5/31/2024 4:44 PM 20244002591

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**FOURTH MUNICIPAL DISTRICT - CIVIL DIVISION**

| | | |
|---|---|---|
| **DERRICK WINFREY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.: 2024 400 2591** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **VILLAGE OF MAYWOOD, a Municipal Corporation,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**VILLAGE OF MAYWOOD'S MOTION TO STRIKE AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR ADMINISTRATIVE REVIEW**

NOW COMES the Defendant, Village of Maywood (the "Village") by and through its attorneys, Klein, Thorpe, & Jenkins, Ltd., and hereby moves to strike and dismiss Plaintiff's Complaint for Administrative Review pursuant to 735 ILCS 5/2-615 of the Illinois Code of Civil Procedure. In support thereof, the Village states as follows:

**OVERVIEW**

On April 19, 2024, Plaintiff, Derrick Winfrey ("Plaintiff") filed a complaint seeking "judicial review of an administrative judgment from Defendant Village of Maywood pursuant to 735 ILCS 5/3-103." *See Complaint*, attached as **Exhibit A**. The Complaint alleges seven (7) separate counts, each based on various sections of the Illinois Constitution. *See* **Ex. A**, at ¶¶ 68, 73, 79, 83, 88, 99, 104.

The underlying administrative judgment occurred in two parts: an in-person hearing before an Administrative Law Judge ("ALJ") on February 2, 2024, and an Administrative Order issued on March 15, 2024. *See Administrative Order*, attached as **Exhibit B.** At the February 2, 2024 hearing, the ALJ determined that, by a preponderance of the evidence, "the vehicle in

FILED DATE: 5/31/2024 4:44 PM 20244002591

question was used to flee and elude [. . .] Village Police Officer's within the Village of Maywood and therefore grant[ed] the Village of Maywood the authority to tow the vehicle pursuant to [Maywood Village Code] § 99.02(A)(1) and § 99.26(a). **Ex. B.**

The sole issue addressed in the March 15, 2024 order was, "if the Village of Maywood's authority to tow the vehicle was limited to the city limits of Maywood, or if the Village had the authority to tow the vehicle from Cicero, a neighboring jurisdiction." **Ex. B.** The parties briefed this specific issue, which Plaintiff attaches as "Exhibit C" to the Complaint. *See* **Ex. A** at 20 - 29. The ALJ determined that the Village "had the authority to tow the [Plaintiff's] vehicle, regardless of the location of the vehicle at the time of the tow." **Ex. B.** Plaintiff was deemed responsible for towing and storage charges levied pursuant to the Maywood Village Code ("MVC"). *Id.*

Section 39.15 of the MVC provides an express reference to the Illinois Administrative Review Law ("ARL") that permits judicial review of "any decision by a Hearing Officer that a code violation does or does not exist." *MVC § 39.15*; 735 ILCS 5/3-102. As discussed below, administrative review is limited to the record before the administrative body. The Complaint goes far beyond the administrative record, requiring outright dismissal and striking of designated immaterial matter.

## **<u>SECTION 2-615 STANDARD</u>**

Complaints for administrative review permit motions to dismiss or strike in lieu of filing an answer. *See* 735 ILCS 5/3-106; *Winston v. Zoning Bd. Of Appeals of Peoria County*, 407 Ill. 588, 591 (1950). Under the Illinois Code of Civil Procedure, a Section 2-615 motion should request appropriate relief, which includes dismissing or striking designated immaterial matter. 735 ILCS 5/2-615. A Section 2-615 motion to dismiss "tests the legal sufficiency of the

FILED DATE: 5/31/2024 4:44 PM 20244002591

complaint based on defects apparent on its face." *Lintzeris v. City of Chicago*, 2023 IL 127547, ¶ 18 (2023).

## ARGUMENT

### I. The Complaint Exceeds the Scope of Administrative Review Law.

When seeking review pursuant to ARL, "the complaint shall contain a statement of the decision or part of the decision sought to be reviewed." 735 ILCS 5/3-108. It must also "specify whether the transcript of evidence, if any, or what portion thereof, shall be filed by the agency as part of the record." *Id.* Additionally, the scope of review for any final administrative hearing is limited to "all questions of law and fact presented by the entire record before the court." 735 ILCS 5/3-110. No new or additional information may be presented to the court when reviewing an administrative decision. *Id.* Only the administrative record may be presented to the reviewing court. *Id.*

#### *A. New and Additional Information Not Reflected in the Administrative Record Should be Stricken from the Complaint.*

Here, the Complaint contains new and additional information not presented to the administrative body. Many of the paragraphs in Plaintiff's Introduction and Factual Background section provide information not present in the administrative record. Because the scope of administrative review is clearly limited by ARL, all new and additional information provided in the Complaint is improper and should not be considered.

Specifically, paragraphs 3 – 7, 9 – 17, 28 – 33, 37 – 38, 40 – 41, 47, and 55 - 57 of the Complaint consist of information not included in the administrative record.[1] *See* **Ex. A.** The scope of administrative review is clearly limited to preclude "new or additional evidence in

[1] If requested, the Village will file the administrative record to demonstrate the information in these paragraphs do not appear in the administrative record.

FILED DATE: 5/31/2024 4:44 PM 20244002591

support of or in opposition to any finding, order, determination or decision of the administrative agency." 735 ILCS 5/3-110. The new and additional information asserted in paragraphs 3 – 7, 9 – 17, 28 – 33, 37 – 38, 40 – 41, 47, and 55 – 57 of the Complaint should be stricken as immaterial matter outside the administrative record.

*B. The Complaint is Defective on Its Face Because It Exceeds the Scope of Administrative Review Law.*

In this instance, the administrative body explicitly rendered two decisions: (1) that Plaintiff's vehicle was used to flee and elude a Maywood Police Officer; and (2) that the Village had the authority to tow Plaintiff's vehicle, regardless of the vehicle's location at the time of the tow. **Ex. B.**

Under the ARL, the circuit court "is limited to ascertaining if the findings and decision of the administrative agency are against the manifest weight of the evidence." *Warren v. Zoning Bd. Of Appeals of City of Fairfield*, 255 Ill.App.3d 482, 489 (5th Dist. 1994). The Complaint does not allege that the ALJ's findings were against the manifest weight of the evidence. Instead, Plaintiff presents constitutional challenges that fall outside the administrative record. All portions of the Complaint that go beyond providing a statement of the decision or part of the decision to be reviewed, as mandated under Section 3-108, should be stricken. 735 ILCS 5/3-108. Plaintiff is entitled to a review of the administrative record and improperly asserts claims and relief that are outside the scope of administrative relief.

Additionally, the requested relief exceeds the powers of the circuit court set forth in ARL. Upon review of an administrative decision, the circuit court has the power to, *inter alia*, affirm or reverse the decision of the ALJ in whole or in part, or to reverse and remand the decision in whole or in part, with instructions on which issues require further proceedings. 735 ILCS 5/3-111. The enumerated powers in Section 3-111 do not include the power to declare a municipal

FILED DATE: 5/31/2024 4:44 PM 20244002591

ordinance unconstitutional and such challenges should be raised outside of administrative review. *See Lintzeris*, 2023 IL 127547, at ¶ 1 (challenging an impoundment ordinance directly in circuit court, and outside of administrative review).

Here, the requested relief exceeds the powers of the circuit court and should be stricken. While the circuit court may choose to reverse and remand the ALJ's findings and decision, the powers of the circuit court in an administrative review action "generally 'do not extend to granting or denying relief but are essentially limited to reviewing the decision of the administrative agency.'" *AT&T Teleholdings, Inc. v. Department of Revenue*, 2012 IL App (1st) 113053, ¶ 73 (quoting *American Nat. Bank & Trust Co. v. Department of Revenue*, 242 Ill.App.3d 716, 719 (2d Dist. 1993)).

Plaintiff's requested relief seeks actual damages, exemplary damages, and declaratory relief– all of which fall outside the authority of the ALJ as well as the powers of the circuit court in administrative review. Under the MVC, if the ALJ finds that the grounds for the alleged violation were not supported by a preponderance of the evidence, the vehicle owner is entitled to a return of any administrative penalties and towing costs paid. *MVC § 39.14*. The ALJ is *not* authorized to impose fines beyond the applicable ordinance and is *not* authorized to impose exemplary damages on either party. *See MVC § 39.05* (providing the powers of the ALJ); *MVC § 39.14* (detailing the potential outcomes of a vehicle confiscation hearing).

Neither the ALJ nor the circuit court has the authority to award the relief sought by the Plaintiff and such immaterial matter should be stricken from the Complaint. The circuit court's power in administrative review is clearly set forth in Section 3-111 of the ARL. 735 ILCS 5/3-111. Specifically, Counts I, III, V, and VI and the Complaint's "Conclusion" section consist of

FILED DATE: 5/31/2024 4:44 PM 20244002591

relief outside the scope of administrative review and should be stricken and dismissed entirely. **Ex. A.**

## II. Counts I, III, and VI Should Be Dismissed Because Plaintiff Did Not Raise the Issue Before the Administrative Agency.

Counts I, III, and VI allege as-applied challenges to the MVC based on purported state constitutional violations. These challenges were not asserted before the administrative agency and, "issues or defenses not raised before the administrative agency are deemed waived and cannot be raised for the first time on administrative review." *Arvia*, 209 Ill.2d at 526. Even though an administrative agency cannot decide constitutional issues, this rule still applies. *Id.* (citing *Texaco-Cities Service Pipeline Co. v. McGaw*, 182 Ill.2d 262, 278 (1998)); *see also S.W. v. Department of Children and Family Services*, 276, Ill.App.3d, 672, 679 (1st Dist. 1995) (stating, "the waiver rule applies equally to issues involving constitutional due process rights").

Here, Plaintiff was represented by counsel at the February 2, 2024 hearing. *See In the Matter of: Audio File Maywood v. Winfrey*, attached as **Exhibit C.** At the hearing, Plaintiff's counsel stated, "I have a few, you know, constitutional issues with this facially as it applies, but since this is an Administrative Court, I'm going to save everybody the time." **Ex. C**, at 32:8-11. This vague statement fails to assert a constitutional issue before the administrative agency and constitutes a waiver of the as-applied challenges raised in Counts I, III, and VI of the Complaint.

No due process argument regarding the right to cross-examination was raised, nor does the administrative hearing proceeding transcript show Plaintiff objected to the documents and testimony admitted in the administrative hearing. *See* **Ex. C**, at 17:11-12; 21:20-21**.** This failure requires dismissal of the as-applied due process challenge in Count I.

No argument was made that the impoundment of Plaintiff's vehicle constituted an unlawful seizure. This failure requires dismissal of the as-applied seizure challenge in Count III.

FILED DATE: 5/31/2024 4:44 PM 20244002591

No argument was made that the towing costs or administrative penalty levied by the Village lacked a relationship to the exercise of legitimate police powers. No argument was made that the Village utilized police powers to raise revenue. This failure requires dismissal of the as-applied challenge in Count VI.

This failure to assert the basis for the constitutional violations means that the Village was unable to fully develop the administrative record to address these purported issues. *See Carpetland*, 201 Ill.2d at 397 (2002) (finding the constitutional claim waived "for failure to raise it at the first opportunity"). The statement made by Plaintiff's counsel is insufficient to preserve constitutional issues for administrative review because it does not inform the Village nor the ALJ of the constitutional grounds.

By failing to assert the constitutional issues in the administrative proceeding, Plaintiff prevented the Village from, "the opportunity to build a record in response to the constitutional challenge." *Id.* Instead, this opens the door to the very type of "piecemeal litigation" that the Illinois Supreme Court cautions against and denies the Village "a full opportunity to present evidence to refute the constitutional challenge." *Texaco-Cities Service Pipeline Co. v. McGaw*, 192 Ill.2d 262, 279 (1998). Pursuant to Section 2-615, this waiver warrants dismissal of Counts I, III, and VI.

**III. Counts II, IV, and VII Are Legally Insufficient to State a Facial Challenge.**

Counts II, IV, and VII allege that MVC § 99.26 is unconstitutional on its face. However, Plaintiff does not sufficiently allege that there are *no* set of facts where the ordinance is invalid under the cited constitutional provisions, and thus fails to state a legally sufficient facial challenge. The defects apparent on the face of the Complaint warrants dismissal pursuant to Section 2-615. *See Lintzeris v. City of Chicago*, 2023 IL 127547, at ¶ 18.

FILED DATE: 5/31/2024 4:44 PM 20244002591

A facial challenge asserts an ordinance or statute possesses "an inescapable flaw that renders the * * * statute unconstitutional under every circumstance." *Jackson*, 2012 IL App (1st) 111044, ¶ 25 (quoting *One 1998 GMC*, 2011 IL 110236, ¶ 25)). Declaring an ordinance facially unconstitutional is "employed by the court sparingly and only as a last resort." *Id.* (internal quotations and citations omitted).

*A. The Allegations in Count II are Directly Contradicted by the Complaint.*

Plaintiff's Count II states that MVC § 99.26 contains "broad, all-encompassing language" that "holds a vehicle owner liable for *any* violation of [the Village's] code." **Ex. A**, at ¶¶ 72-73. Count II alleges that MVC § 99.26 somehow denies individuals of due process – but the Complaint demonstrates exactly what process is provided. *See* **Ex. A**, at ¶¶ 44 – 46 (admitting Plaintiff received notice and an opportunity to be heard).

A facial challenge is defeated if "there is necessarily at least one circumstance in which the statute or ordinance is constitutional." *Jackson* 2012 IL App (1st) 111044, ¶ 25 (citing *Horvath v. White*, 358 Ill.App.3d 844, 854 (1st Dist. 2005)). Here, Count II is legally insufficient because it is contradicted by Plaintiff's factual allegations that demonstrate at least one circumstance where the ordinance provides adequate due process. **Ex. A**, at ¶¶ 44 – 46.

As quoted in Plaintiff's Complaint, MVC § 99.26 applies if a motor vehicle is "used to commit the offense of aggravated fleeing or attempting to elude a police officer. *See id.* at ¶ 27; *MVC § 99.26*. It then provides the exact criteria the officer must use in deciding if there is probable cause to seize and impound a vehicle for aggravated fleeing or attempting to elude a police officer. **Ex. A**, at ¶ 27; *MVC § 99.26.* If seized and impounded, MVC § 39.14 activates – which provides the exact notice, procedure, and rights available to the owner of record. *See MVC § 99.26(C)*; *MVC § 39.14.*

FILED DATE: 5/31/2024 4:44 PM 20244002591

Count II paints MVC § 99.26 with a broad brush – but misses the mark in asserting the ordinance is facially unconstitutional and ignores the due process procedures afforded to Plaintiff under MVC § 39.14. The Complaint fails to allege that MVC § 99.26 is "unconstitutional in every context." *Jackson*, 2012 IL App (1st) 111044, ¶ 25 (quoting *One 1998 GMC*, 2011 IL 110236, ¶ 25)). Because of Count II's legal insufficiency, the claim should be dismissed.

*B. Count IV Overstates the Scope of MVC § 99.26.*

Plaintiff again attacks MVC § 99.26 in Count IV, alleging the language "allows for the seizure of any vehicle, at any time, by any municipality, regardless of the existence of a warrant, probable cause, or exigent circumstances." **Ex. A**, at ¶ 82. Plaintiff alleges that "the text of MVC § 99.26" violates the search and seizure clause of the Illinois Constitution. **Ex. A**, at ¶ 82; ILL. CONST. art. I, § 6.

The burden of proving – or at this stage, sufficiently alleging – that "no situation exists in which the ordinance would be valid" is on Plaintiff. *Jackson*, 2012 IL App (1st) 111044, ¶ 30 (quoting *One 1998 GMC*, 2011 IL 110236, ¶ 20)). Count IV does not sufficiently allege that MVC § 99.26 results in an unconstitutional search and seizure in every circumstance. Instead, it overstates the reach of MVC § 99.26 and seeks to strike the Village's ordinance based on an overbroad reading of the Village Code. The ordinance does not apply to "any vehicle," but rather only to those that meet the criteria established in MVC § 99.26. **Ex. A**, at ¶ 27. That criterion includes a finding of probable cause by a peace officer. *MVC § 99.26(B)*.

Due to the legal insufficiency of the claim, Count IV should be dismissed.

*C. Count VII Does Not State a Legally Sufficient Facial Challenge to MVC § 99.26.*

Count VII alleges that MVC § 99.26 violates Article VII, Section 6(e) of the Illinois Constitution as an attempt to raise revenue under police powers. **Ex. A**, at ¶ 102-105. However,

FILED DATE: 5/31/2024 4:44 PM 20244002591

Plaintiff does not allege that MVC § 99.26 seeks "to punish by imprisonment for more than six months;" or "to license for revenue or impose taxes upon or measured by income or earnings or upon occupations." *See* ILL. CONST. art. VII, § 6(e).

Plaintiff overstates MVC § 99.26 as a "crime," when it is an impoundment ordinance that applies when a peace officer has probable cause to believe the vehicle was used to flee or attempt to elude a peace officer. *See* **Ex. A**, at ¶¶ 27, 104; *MVC* § *99.26.* A violation of MVC § 99.26 may result in "an administrative penalty in the amount of $1,000 plus any applicable fees for the towing and storage of the vehicle." **Ex. A**, at ¶ 27, *MVC § 99.26.* A violation of MVC § 99.26 does not result in imprisonment for more than six months. A violation of MVC § 99.26 does not result in licensing for revenue, income taxes, or occupational taxes.

Count VII is deficiently pled because it does not sufficiently allege that the administrative penalty and other applicable fees under MVC § 99.26 fall under the contemplated scope of Article VII, Section 6(e). Instead, the penalties and costs assessed here are of the same type Illinois courts have repeatedly upheld. *See, e.g.*, *Lintzeris*, 2023 IL 1277547, at ¶ 55; *King Auto Sales Inc. v. Act Now Towing*, 2021 IL App (5th) 200143, ¶ 19; *Towers v. City of Chicago*, 173 F.3d 619, 626 (7th Cir. 1999).

Due to the legally insufficient facial challenge, Count VII should be dismissed.

**WHEREFORE** Defendant, VILLAGE OF MAYWOOD, respectfully requests that this Honorable Court enter an Order as follows:

A. Striking paragraphs 3 – 7, 9 – 17, 28 – 33, 37 – 38, 40 – 41, 47, and 55 – 57 of Plaintiff's Complaint as new and additional information outside the scope of the administrative record;

FILED DATE: 5/31/2024 4:44 PM 20244002591

B. Striking and dismissing Counts I, III, V, and VI and the "Conclusion" section of Plaintiff's Complaint as relief outside the scope of administrative review;

C. Dismissing Counts I, III, and VI as claims outside the scope of the administrative record;

D. Dismissing Counts II, IV, and VII as deficiently pled; and

E. Granting the Village such other and further relief as the Court deems just and equitable in the circumstances.

Respectfully submitted,
VILLAGE OF MAYWOOD

By: /s/Kaylee Hartman
One of their attorneys

Allen Wall (jawall@ktjlaw.com)
Kaylee M. Hartman (kmhartman@ktjlaw.com)
KLEIN, THORPE & JENKINS, LTD.
120 S. LaSalle Street, Suite 1710
Chicago, Illinois 60602
(312) 984-6400
Atty No: 90446

FILED DATE: 5/31/2024 4:44 PM 20244002591

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**FOURTH MUNICIPAL DISTRICT - CIVIL DIVISION**

| | | |
|---|---|---|
| **DERRICK WINFREY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.: 2024 400 2591** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **VILLAGE OF MAYWOOD, a Municipal Corporation,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**VILLAGE OF MAYWOOD'S**
**EXHIBIT A**

**Plaintiff's Complaint (with Exhibits As Filed)**

**Civil Action Cover Sheet** **(08/31/22) CCM 0520 A**

FILED
4/19/2024 12:00 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
20244002591
Courtroom, 0112
27338966

FILED DATE: 4/19/2024 12:00 PM 20244002591

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

**MUNICIPAL DEPARTMENT/** fourth **DISTRICT**

Derrick Winfrey
Plaintiff

v.

Village of Maywood
Defendant

Case No. ____

Jury Demand ○ Yes ● No

☐ I need language help in court.

I speak ____

## CIVIL ACTION COVER SHEET

A Civil Action Cover Sheet shall be filed with the complaint in all civil actions. The information contained herein is for administrative purposes only and cannot be introduced into evidence. Please check the box in front of the appropriate general category which best characterizes your action.

**Civil Case (A)**

- ☐ 0004 Tort not Personal Injury
- ☐ 1004 Tort not Personal Injury (Jury)
- ☐ 0007 Confession of Judgment
- ☐ 1007 Confession of Judgment (Jury)
- ☐ 0008 Replevin
- ☐ 1008 Replevin (Jury)
- ☐ 0017 Detinue
- ☐ 1017 Detinue (Jury Demand)
- ☐ 0031 Foreign Judgment Filing Out of State/Out of Country
- ☐ 0054 Registration of Administrative Judgment

**Tort/Personal Injury Case**

Any wrong or damage done to another person, such as, physical pain, illness, or any impairment of physical condition resulting from the careless or negligent actions of others. The most common cases involve auto accident injuries.

- ☐ 0027 Personal Injury Motor Vehicle
- ☐ 1027 Personal Injury Motor Vehicle (Jury)
- ☐ 0048 Dram Shop
- ☐ 1048 Dram Shop (Jury)
- ☐ 0049 Product Liability
- ☐ 1049 Product Liability (Jury)
- ☐ 0051 Personal Injury Subrogation
- ☐ 1051 Personal Injury Subrogation (Jury)
- ☐ 0057 Personal Injury Motor Vehicle Subrogation
- ☐ 1057 Personal Injury Motor Vehicle Subrogation (Jury)
- ☐ 0001 Personal Injury
- ☐ 1001 Personal Injury (Jury)
- ☐ 0063 Tort Intentional
- ☐ 1063 Tort Intentional (Jury)
- ☐ 0062 Property Damage
- ☐ 1062 Property Damage (Jury)

**Other Litigation Case**

(i.e. credit card agreements, any contract between two or more individuals)

- ☐ 0002 Breach of Contract
- ☐ 1002 Breach of Contract (Jury)
- ☐ 0071 Fraud
- ☐ 1071 Fraud (Jury)
- ☐ 0072 Consumer Fraud
- ☐ 1072 Consumer Fraud (Jury)
- ☐ 0073 Breach of Warranty
- ☐ 1073 Breach of Warranty (Jury)
- ☑ 0074 Statutory Action Complaint
- ☐ 1074 Statutory Action Complaint (Jury)
- ☐ 0068 Consumer Debt Complaint
- ☐ 1068 Consumer Debt Complaint (Jury)

**Civil Case (B)**

- ☐ Filing an Illinois Court Judgment
- ☐ 0100 Petition for Discovery
  A Petition to take depositions or subpoena records before a case is filed.
- ☐ 0009 Name Change (Suburban Districts only)

FILED DATE: 4/9/2024 12:00 PM 2024400259

### Civil Housing Case

(i.e. condominium conversion, conservation, demolition/objection to fast track, exterior walls/ facades, fire protection, heat call (including Unincorporated Cook County), lead paint new developments, public nuisance, public places of amusement, strategic task force inspections)

- ☐ 0038 Housing
- ☐ 0086 Objection to Fast Track
- ☐ 0044 Criminal Ordinance Violation
- ☐ 0037 Heat Case
- ☐ 0034 Vacant Building

### Pro Se Case Type (First Municipal Civil Division only)

The Pro Se Court section of the Civil Division resolves disputes between parties where the amount at issue does not exceed $5,000. The party may act as their own attorney. Forms can be completed at the Pro Se desk in Room 602.

- ☐ 0050 Pro Se ($5,000 or less)

### Eviction Case/Civil Eviction/CHA Eviction

A summary proceeding in which the landlord seeks to restore possession of the premises or payment of rent when the tenant has wrongfully withheld rent or possession of the premises.

- ☐ 0095 Eviction - Commercial Complaint filed
- ☐ 1095 Eviction - Commercial Complaint filed (Jury Demand)
- ☐ 0096 Eviction - Residential Complaint filed
- ☐ 1096 Eviction - Residential Complaint filed (Jury Demand)
- ☐ 0097 Eviction Joint Action - Commercial Complaint filed
- ☐ 1097 Eviction Joint Action - Commercial Complaint filed (Jury Demand)
- ☐ 0098 Eviction Joint Action - Residential Complaint filed
- ☐ 1098 Eviction Joint Action - Residential Complaint filed (Jury Demand)
- ☐ 0018 Distress for Rent
- ☐ 1018 Distress for Rent (Jury)
- ☐ 0023 Mortgage Foreclosure Eviction
- ☐ 1023 Mortgage Foreclosure Eviction (Jury)
- ☐ 0024 Mortgage Foreclosure Eviction - Joint Action
- ☐ 1024 Mortgage Foreclosure Eviction - Joint Action (Jury)
- ☐ 0021 CHA Eviction
- ☐ 1021 CHA Eviction (Jury)
- ☐ 0022 CHA Joint Action
- ☐ 1022 CHA Joint Action (Jury)

◉ Atty. No.: 65698 ○ Pro Se 99500

Atty Name: Beyond Legal Aid

Atty. for: Derrick Winfrey

Address: 17 N. State St., #1380

City: Chicago State: IL

Zip: 60602

Telephone: 312-678-3508

Primary Email: Mdrake1@beyondlegalaid.org

Pro Se Only: ☐ I have read and agree to the terms of the Clerk's Office Electronic Notice Policy and choose to opt in to electronic notice from the Clerk's office for this case at this email address:

Email: ______________________

FILED DATE: [illegible] PM 20244002591

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**MUNICIPAL DEPARTMENT – FOURTH DISTRICT**

| | | |
|---|---|---|
| Derrick Winfrey, | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No.: |
| Village of Maywood, | ) | |
| Defendant. | ) | |

## COMPLAINT

NOW COMES Plaintiff, Derrick Winfrey, by and through Counsel, Beyond Legal Aid, and seeks judicial review of an administrative judgment from Defendant Village of Maywood pursuant to 735 ILCS 5/3-103. In support of such, he states the following:

## PRELIMINARY STATEMENT

This lawsuit involves a law-abiding resident who had his vehicle illegally seized and who was, himself, violently detained, based on the report of one Maywood Police Officer regarding an incident that occurred 46 days prior to Plaintiff's seizure – absent any judicial oversight, criminal charges, warrant, due process, or exigent circumstances. Plaintiff has exhausted administrative remedies. Plaintiff seeks damages. Plaintiff seeks declaratory relief to ensure that other law-abiding citizens are not subjected to the abuses to which he has suffered. As such, he is asking this Court to declare Maywood Village Ordinance § 99.26 unconstitutional on its face; alternatively, Plaintiff seeks declaratory relief that the ordinance is unconstitutional as applied to him.

## INTRODUCTION

1. In the early morning hours of November 5, 2023, an unknown individual was driving Plaintiff's vehicle in Maywood. Plaintiff was not driving his vehicle during that time; Plaintiff did not consent to anyone driving his vehicle at that time; and, Plaintiff denies that anyone that Plaintiff has a relationship with was driving his vehicle without his permission.

2. Maywood Police Officer Nunez attempted to initiate a traffic stop; the unidentified driver did not comply, and Officer Nunez terminated his pursuit. Officer Nunez then drafted a report and put out a felony vehicle alert in Law Enforcement Agency Data System ("LEADS").

3. On December 21, 2023, Plaintiff, a 70-year-old black man, was driving through Cicero on the way to a store with his close friend, George Woods, a 73-year-old black man.

FILED DATE: 4/19/2024 12:00 PM 2024L002591

4. For reasons then-unknown to Plaintiff, between six and eight unidentified, white Cicero Police Officers in multiple police vehicles surrounded Plaintiff, removed him from his vehicle, handcuffed him, searched his vehicle, and detained Plaintiff and Mr. Woods for approximately forty-five minutes.

5. Upon their release from detention, Plaintiff and Mr. Woods had to call an Uber from the scene as unidentified Cicero Police Officers informed Plaintiff that his vehicle was being seized by Maywood.

6. Maywood Police Officers confiscated and towed Plaintiff's vehicle – from Cicero – without arresting, interrogating, charging, or detaining Plaintiff.

7. Five days and two holidays later, Plaintiff was able to recover his vehicle after being forced to pay $1,475 as ransom for an unsubstantiated violation of a local ordinance.

8. The fabricated justification for Plaintiff vehicle's seizure was an alleged violation of Maywood Village Code ("MVC") § 99.26 which allegedly occurred 46 days prior to Plaintiff's violent detention.

9. Under the plain text and Defendant's application of MVC § 99.26, any vehicle, anywhere in the State of Illinois, is subject to confiscation and towing based solely on the word of a single police officer – absent any supervisory oversight, judicial oversight, due process, warrant, or exigent circumstances.

10. Under the plain text and Defendant's application of MVC § 99.26, it does not matter whether the vehicle's owner was operating the vehicle at the time of the alleged violation. Nor does it matter if the vehicle's owner consented to – or had any type of privity with – the individual driving the vehicle at the time of the alleged violation.

11. Both the plain text and Defendant's application of MVC § 99.26 violate the Illinois Constitution.

12. Defendant's constitutional violations have caused harm to Plaintiff.

13. As a direct result of Defendant's unconstitutional conduct, Plaintiff seeks damages to be made whole for Defendant's constitutional violations.

14. Further, because Defendant's constitutional violations are willful and wanton, Plaintiff seeks exemplary damages to dissuade future similar conduct by other similarly situated law enforcement officers and municipalities. Such deterrence is necessary in the Chicago area due to rampant violations of constitutional rights as highlighted by this Court's docket, as well as the docket of the United States District Court for the Northern District of Illinois.

FILED DATE: 4/29/2024 12:00 PM 2024CH02591

15. Finally, on its face, MVC § 99.26 violates multiple provisions of the Illinois Constitution and, as such, the ordinance should be declared unconstitutional and stricken in its entirety.

16. Defendant, through rules of its own making, has flaunted multiple provisions of this State's Constitution. This Complaint seeks redress.

**PARTIES**

17. Plaintiff Derrick Winfrey is a retired laborer who worked for the City of Chicago for 37 years. Prior to November 5, 2024, Plaintiff had never been charged with a crime, convicted of a crime, or even arrested. Plaintiff is a resident of Cook County, Illinois.

18. Defendant Village of Maywood is a municipal corporation duly incorporated under the laws of the State of Illinois.

**JURISDICTION**

19. This Court has jurisdiction pursuant to 735 ILCS 5/3-103.

20. Venue is proper as the events giving rise to the claims asserted herein occurred within Cook County, Illinois.

**FACTUAL BACKGROUND**

21. On November 5, 2023, Derrick Winfrey owned a black 2019 Chevrolet sports utility vehicle registered in Illinois with the license plate DT24013 and had never given permission to any other person to utilize said vehicle.

22. On that date, Maywood Police Officer Jacob Nunez (#327) observed a black 2019 Chevrolet sports utility vehicle, license plate DT24013, driving in the vicinity of 17th Avenue and Madison.[1]

23. Office Nunez attempted to make a traffic stop.

24. The driver of the vehicle did not comply.

25. At some point, Officer Nunez terminated his pursuit.

26. Officer Nunez, with no additional review, entered a felony vehicle alert into LEADS pursuant to MVC § 99.26.

[1] For purposes of this Complaint, the facts as determined by the Administrative Judge are not in dispute.

FILED DATE: 5/9/2024 1:00 PM 20244002591

27. MVC § 99.26 reads as follows:

> (A) A motor vehicle used to commit the offense of aggravated fleeing or attempting to elude a peace officer is subject to seizure and impoundment. The offense of aggravated fleeing or attempting to elude a peace officer is committed by any driver or operator of a motor vehicle who, having been given a visual or audible signal by a peace officer directing such driver or operator to bring his or her vehicle to a stop, willfully fails or refuses to obey such direction, increases his or her speed, extinguishes his or her lights, or otherwise flees or attempts to elude the officer, and either: (1) drives at a rate of speed at least 21 miles per hour over the legal speed limit; (2) causes bodily injury to any individual; (3) causes damage in excess of $300 to property; (4) involves disobedience of two or more official traffic control devices; or (5) involves the concealing or altering of the vehicle's registration plate or digital registration plate. The signal given by the peace officer may be by hand, voice, siren, or red or blue light; provided that the officer giving such signal shall be in police uniform, and, if driving a vehicle, such vehicle shall display illuminated oscillating, rotating or flashing red or blue lights which, when used in conjunction with an audible horn or siren, would indicate the vehicle to be an official police vehicle. Such requirement shall not preclude the use of amber or white oscillating, rotating or flashing lights in conjunction with red or blue oscillating, rotating or flashing lights as required in Section 12-215 of Chapter 12 of the Illinois Vehicle Code (625 ILCS 5/12-215). The owner of record of any vehicle subject to seizure and impoundment under this division shall be liable to the Village for an administrative penalty in the amount of $1,000 plus any applicable fees for the towing and storage of the vehicle.
>
> (B) Whenever a peace officer has probable cause to believe that a vehicle is subject to seizure and impoundment pursuant to this section, the peace officer shall provide for the towing of the vehicle to a facility controlled by the Village or its agents. When the vehicle is towed, the peace officer shall notify any person who is found to be in control of the vehicle at the time of the alleged violation, if there is such a person, of the fact of the seizure and of the vehicle owner's right to request a hearing pursuant to § 39.14 of this code.
>
> (C) The provisions of § 39.14 shall apply whenever any motor vehicle is seized and impounded pursuant to this section.

28. Over a month later, on December 21, 2023, Plaintiff was driving his vehicle with his friend George Woods through Cicero.

FILED DATE: PM 20244002591

29. For reasons unknown to Plaintiff, upon information and belief, unidentified Cicero Police Officers ran Plaintiff's license plate through the LEADS System.

30. Upon information and belief, unidentified Cicero Police Officers viewed the LEADS felony vehicle alert entered by Officer Nunez.

31. Unidentified Cicero Police Officers surrounded Plaintiff's vehicle with multiple vehicles, forced Plaintiff out of his vehicle, made him kneel on the side of a busy road, handcuffed him, searched his vehicle, and detained him and Mr. Woods for approximately 45 minutes.

32. Approximately 45 minutes after Unidentified Cicero Police Officers violently detained Plaintiff, he was allowed to call an Uber for himself and Mr. Woods.

33. At some point after Plaintiff and Mr. Woods left the scene, Maywood Police Officers towed the vehicle from Cicero to Maywood. See Ex. A.

34. Officer Nunez made written representations, upon information and belief, in a regularly used form in the Village of Maywood to tow Plaintiff's vehicle. See Ex. A. On the form, Officer Nunez crossed out "Maywood", which is typed onto the form, and handwrote in "Cicero". Ex. A.

35. Neither Cicero nor Maywood police ever arrested Plaintiff.

36. Neither Cicero nor Maywood ever sought to charge Plaintiff for any crime.

37. Hours after his vehicle was towed, Plaintiff escorted his son and grandson – both of whom live with Plaintiff – to Maywood Police Station and asked Officer Nunez if either of them was driving his vehicle in the early morning of November 5, 2023.

38. Officer Nunez was unable to identify either Plaintiff, his son, nor his grandson as the driver on November 5, 2023.

39. Throughout this entire process, Plaintiff maintained that he was not driving the vehicle; that he did not give anyone permission to drive the vehicle; and, that he was not aware that anyone was driving the vehicle on November 5, 2023 until his violent detention on December 21, 2023.

FILED DATE 2024L002591

40. Plaintiff was unable to recover his vehicle on December 21, 2023, as the towing company was closed for the evening by the time Plaintiff was able to travel to the Maywood Police Station.

41. Plaintiff was unable to recover his vehicle over the next few days due to the holidays.

42. On December 26, 2023, Plaintiff paid Defendant the towing fine of $1,000 as provided by MCV § 99.26(A). Ex. A.

43. On December 26, 2023, Plaintiff paid Area Towing $475 for the storage and towing of his vehicle upon Defendant's direction and control. Ex. B.

44. Defendant provided Plaintiff notice of his right to contest the violation – after payment – at Defendant's monthly administrative hearings. See MCV § 39.14. The next available administrative hearing – held the first Friday of every month – was January 5, 2024.

45. Plaintiff requested additional time to obtain Counsel.

46. Plaintiff, represented by Counsel, contested his liability under MCV § 99.26 under the applicable procedures of MCV § 39.14 on February 2, 2024.

47. At that hearing,[2] Plaintiff began by stating that he had multiple constitutional challenges to raise but was advised by Counsel for Defendant that the Administrative Court would not entertain constitutional challenges and that the proper venue for such challenges would be in the Circuit Court of Cook County.

48. Defendant presented evidence including testimony from a Maywood Detective.

49. The Detective who testified on behalf of Defendant was not involved, in any capacity, in the determination that Plaintiff's vehicle violated MVC § 99.26, nor was he involved in the towing and confiscation of Plaintiff's vehicle.

50. The Detective had no direct knowledge of any facts at issue in this matter and any purported knowledge he had was hearsay.

[2] Without access to the record, Plaintiff's recollection of the hearing is based on memory, Plaintiff will motion to amend his Complaint if necessary upon receipt of the proceedings transcripts.

FILED DATE: 4/19/2024 12:00 PM 20244002591

51. The Detective testified that, pursuant to MCV § 99.26, when a Maywood Police Officer believes that an individual has committed aggravated fleeing and eluding of a vehicle, they enter a felony vehicle alert into LEADS.

52. The Detective testified that this was common procedure.

53. The Detective stated, in the administrative hearing, on cross examination, that there is no oversight of this determination – it is solely at an officer's discretion.

54. The Detective testified that it was common for Maywood Police to confiscate a vehicle over a month after an alleged ordinance violation – i.e., absent any exigent circumstances.

55. At close, Plaintiff argued that – notwithstanding additional constitutional challenges – under Defendant's ordinance, Defendant's agents had the authority to impound and tow Defendant's vehicle: In Maywood.

56. Plaintiff argued that by entering the felony alert into LEADS and by confiscating and towing Plaintiff's vehicle in another municipality, Defendant had exceeded its home-rule authority under the Illinois Constitution.

57. The Administrative Law Judge held that Defendant had proved by a preponderance of the evidence that Plaintiff's vehicle had committed Aggravated Fleeing and Eluding of a Police Officer and was subject to towing and seizure. This is despite the fact that there was no finding of fact by the Administrative Law Judge that either Plaintiff or any aurthorized representative was operating Plaintiff's vehicle during the violation.

58. The Administrative Law Judge stated further that the Administrative Court would need to do additional research into Plaintiff's home-rule argument. The parties offered to submit briefs.

59. Both parties submitted briefs on the issue on March 1, 2024. Ex. C.

60. The Administrative Court issued its ruling, via email to Counsels for the parties, on March 15, 2024. Ex. D.

61. This Complaint for Review follows.

FILED DATE: 5/9/2024 12:00 PM 2024002591

**<u>COUNT I</u>**
**(Violation of Ill. Const. art. I, § 2 – Due Process)**
**[As Applied Challenge]**

62. Plaintiff incorporates all paragraphs of this Complaint herein as if stated in full.

63. Article I, § 2 of the Illinois Constitution reads as follows: "No person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws."

64. Defendant required Plaintiff to pay $1,000 to Defendant, in addition to $475 to a towing company hand-selected by Defendant, before returning Plaintiff's vehicle.

65. This fine was levied before Defendant afforded Plaintiff any opportunity to contest the facts in violation of art. I, § 2 of the Illinois Constitution.

66. Further, at the February 2 hearing, Defendant did not produce the officer that made the initial report on November 5, 2023 and the subsequent towing report in December 21, 2023 – Officer Nunez.

67. Defendant violated Plaintiff's rights under art. I, § 2 of the Illinois Constitution by denying Plaintiff the right to cross examine Officer Nunez and by holding him liable for a fine under MCV § 99.26 based on generalized testimony and documents authenticated by an uninvolved officer.

68. Defendant's violations of art. I, § 2 of the Illinois Constitution harmed Plaintiff.

69. Plaintiff is entitled to actual and exemplary damages for Defendant's constitutional violation.

WHEREFORE, Plaintiff requests that this Honorable Court award him actual and exemplary damages for Defendant's violation of Ill. Const. art. I, § 2.

**<u>COUNT II</u>**
**(Violation of Ill. Const. art. I, § 2 – Due Process)**
**[Facial challenge]**

70. Plaintiff incorporates all paragraphs of this Complaint herein as if set forth in full.

71. Unlike other towing ordinances that have been upheld under a due process analysis, see, e.g., *Jackson v. City of Chicago*, 2012 IL App (1st) 111044, *Bennis v. Michigan*, 516

FILED DATE: 4/19/2024 4:09 PM 20244002591

U.S. 442 (1996),[3] MCV § 99.26 is devoid of any language requiring some type of consent from the vehicle owner, knowledge that someone was utilizing the owner's vehicle, or privity between the owner and driver.

72. The text of MVC § 99.26 holds a vehicle owner liable for *any* violation of Defendant's code regardless of individual innocence, knowledge, consent, or privity between the owner and operator.

73. The broad, all-encompassing language of MVC § 99.26 violates art. I, § II of the Illinois Constitution on its face. As such, MVC § 99.26 should be stricken in its entirety.

WHEREFORE, Plaintiff requests that this Honorable Court declare that MVC § 99.26 is unconstitutional on its face as a violation of Ill. Const. art. I, § II.

**COUNT III**
**(Violation of Ill. Const. art. I, § 6 – Searches, Seizures, Privacy and Interceptions)**
**[As Applied Challenge]**

74. Plaintiff incorporates all paragraphs of this Complaint herein as if set forth in full.

75. Article I, § 6 of the Illinois Constitution provides:

> The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, invasions of privacy or interceptions of communications by eavesdropping devices or other means. No warrant shall issue without probable cause, supported by affidavit particularly describing the place to be searched and the persons or things to be seized.

76. In this case, Defendant seized Plaintiff's vehicle more than a month after the alleged justification for the seizure occurred.

77. In that time, Defendant did not investigate the incident; Defendant did not contact Plaintiff; Defendant did not file a criminal complaint; Defendant did not seek a grand jury indictment; nor did Defendant seek a warrant.

[3] See also, Brennan, *State Constitutions and the Protections of Individual Rights*, 90 HARV. L. REV. 489, 495 (1977), *available at* https://www.law.berkeley.edu/wp-content/uploads/2017/07/Brennan-90_HVLR_489.pdf (explaining that, as early as 1977: "[M]ore and more state courts are construing state constitutional counterparts of provisions of the Bill of Rights as guaranteeing citizens of their states even more protection than the federal provisions, even those identically phrased.").

FILED DATE: 4/9/2024 1:09 PM 2024400259

78. Based solely on the unsubstantiated statements of one Maywood Police Officer, Plaintiff's vehicle was seized by police from another municipality, without a warrant or exigent circumstances – in violation of art. I, § 6 of the Illinois Constitution.

79. Defendant's violation of art. 1, § 6 of the Illinois Constitution harmed Plaintiff.

80. As such, Plaintiff is entitled to actual and exemplary damages.

WHEREFORE, Plaintiff requests that this Honorable Court award Plaintiff actual and exemplary damages for Defendant's violation of Ill. Const. art. I, § 6.

**COUNT IV**
**(Violation of Ill. Const. art. I, § 6 – Searches, Seizures, Privacy and Interceptions)**
**[Facial Challenge]**

81. Plaintiff incorporates all paragraphs of this Complaint herein as if set forth in full.

82. The text of MVC § 99.26 allows for the seizure of any vehicle, at any time, by any municipality, regardless of the existence of a warrant, probable cause, or exigent circumstances in violation of art. I, § 6 of the Illinois Constitution.

83. As such, MVC § 99.26 should be stricken in its entirety.

WHEREFORE, Plaintiff requests that this Honorable Court declare MVC § 99.26 unconstitutional on its face as a violation of Ill. Const. art. I, § 6.

**COUNT V**
**(Violation of Ill. Const. art. VII, § 6(a) – Extraterritorial Enforcement of MVC § 99.26)**
**[As Applied Challenge]**

84. Plaintiff incorporates all paragraphs of this Complaint herein as if set forth in full.

85. Article VII, § 6(a) provides, in relevant part:

> Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt.

86. Defendant is a home-rule unit.

FILED DATE: 5/9/2024 12:00 PM 20244002591

87. With very few exceptions not applicable here, a home-rule unit violates its authority when it enforces its ordinances outside of its own jurisdiction. E.g., *City of Carbondale v. Van Natta*, 61 Ill. 2d 483 (1975).

88. Here, Defendant promoted the subjection of Plaintiff to detention by Cicero Police Officers, in Cicero, based solely on a Maywood Ordinance in violation of art. VII, § 6(a) of the Illinois Constitution.

89. Defendant's constitutional violation has harmed Plaintiff.

90. Plaintiff is entitled to actual and exemplary damages for Defendant's constitutional violations.

WHEREFORE, Plaintiff requests that this Honorable Court award him damages for Defendant's violation of Ill. Const. art. VII, § 6(a).

**COUNT VI**
**(Violation of Ill. Const. art. VII, § 6(e) – Raising Revenue through Police Powers)**
**[As Applied Challenge]**

91. Plaintiff incorporates all paragraphs of this Complaint herein as if set forth in full.

92. Article VII, § 6(e) of the Illinois constitution provides: "A home rule unit shall have only the power that the General Assembly may provide by law (1) to punish by imprisonment for more than six months or (2) to license for revenue or impose taxes upon or measured by income or earnings or upon occupations."

93. A home-rule unit is forbidden from raising revenue under the guise of police power. E.g., *Paper Supply Co., v. City of Chicago*, 57 Ill 2d 553 (1974).

94. Here, Defendant's conduct bears no relation to the legitimate exercise of its police powers.

95. Defendant's officers did not confiscate and tow Plaintiff's vehicle during the commission of a crime, nor on the same day as the commission of a crime, nor even within the same month of the commission of a crime.

96. Without ever appealing to Cook County Prosecutors for enforcement of the state statute under which Defendant justifies its ordinance, Officer Nunez put out a felony vehicle alert on Plaintiff's vehicle. See 625 ILCS 5/11-204.1. In making this claim Plaintiff does not waive his right to sue Defendant or law enforcement representatives who

FILED DATE: 4/9/2024 12:00 PM 20244002591

unconstitutionally detained him to sue on behalf of their independently actionable conduct.

97. After seizing Plaintiff's vehicle – in Cicero – none of Defendant's agents arrested, interrogated, or engaged in any conduct with a reasonable relationship to its police powers.

98. Instead, Defendant seized and towed Plaintiff's vehicle – immediately returning it upon Plaintiff's payment to Defendant's self-chosen towing service and Defendant itself.

99. Defendant is utilizing its police powers for the purpose of raising revenue in violation of art. VII, § 6(e) of the Illinois Constitution.

100. Defendant's conduct has harmed Plaintiff.

101. Plaintiff is entitled to actual and exemplary damages for Defendant's constitutional violation.

WHEREFORE, Plaintiff requests that this Honorable Court award him damages for Defendant's violation of Ill. Const. art. VII, § 6(e).

## COUNT VII
**(Violation of Ill. Const. art. VII, § 6(e) – Raising Revenue through Police Powers)**
**[Facial Challenge]**

102. Plaintiff incorporates all paragraphs of this Complaint herein as if set forth in full.

103. The text of MVC § 99.26 fails to provide any time frame for seizure nor language determining whom – or what entity – may determine whether a violation of 625 ILCS 5/11-204.1 occurred.

104. The text of MVC § 99.26 allows for Defendant to determine – without any due process or oversight – whether a violation of State law occurred. Notably, Defendant is unable to prosecute this crime under the Illinois Constitution. Ill. Const. art. VII, § 6(e).

105. Thus, on its face MVC § 99.26 violates art. VII, § 6(e) of the Illinois Constitution and should be stricken in its entirety.

WHEREFORE, Plaintiff requests that this Honorable Court declare MVC § 99.26 unconstitutional on its face as a violation of Ill. Const. art. VII, § 6(e).

FILED DATE: 4/9/2024 12:00 PM 20244002591

## CONCLUSION

WHEREFORE Plaintiff, Derrick Winfrey, respectfully moves this Honorable Court for an order:

A. Awarding him actual damages for Defendant's constitutional violations;

B. Awarding him exemplary damages for Defendant's constitutional violations;

C. Declaring MVC § 99.26 unconstitutional on its face;

D. Striking MVC § 99.26 in its entirety;

E. Awarding him reasonable attorneys' fees to the extent permitted by law;

F. And, awarding any such further relief this Court deems just given the circumstances.

Respectfully submitted,

/s/ *Michael Drake*
*One of Plaintiff's Attorneys*

## VERIFICATION BY CERTIFICATION

Under penalties of perjury as provided by law pursuant to Section 1-109 of the Code of Civil Procedure (735 ILCS 5/1-109), the undersigned certifies that the statements set forth in this instrument are true and correct, except as to such matters therein stated to be on information and belief and as to such matters, the undersigned certified as aforesaid that I verily believe the same to be true.

/s/ *Derrick Winfrey*
Plaintiff

Michael Drake
Natalie Lundak
Beyond Legal Aid
17 N. State St., #1380
Chicago, Illinois 60602
(312) 678-3508
Mdrake1@beyondlegalaid.org
Nlundak@beyondlegalaid.org
65698

Ex. A

System Generated Hearing Date: 6/11/2024 11:00 AM
Location: Court Room 0112
Judge: Evans, Carl Lauras, Jr.

FILED
4/19/2024 12:00 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
20244002591
Courtroom, 0112
27338966

FILED DATE: 4/19/2024 12:00 PM 20244002591

Village of
# MAYWOOD

POLICE DEPARTMENT

125 SOUTH FIFTH AVENUE • MAYWOOD, ILLINOIS 60153 • (708) 450-4470

## SEIZED & IMPOUNDED VEHICLES

Post-Tow Incident Report

**CERTIFIED MAIL** **Report #:** 23-21461

| | Register Owner Information | Arrestee's Information |
|---|---|---|
| NAME Last, First | WINFREY, DERRICK | |
| Address | 1977 N. 19TH APT# 2 | |
| City/State/Zip | MELROSE PARK, IL 60160 | |

## POST-TOW NOTICE

You, DERRICK WINFREY, are listed as the Registered Owner or you are the person entitled to possession of the following described vehicles:

| | Vehicle Description | TOW COMPLETED BY | |
|---|---|---|---|
| License Plate/State | DT24013 | Officer Name: | Tarr #221 / OFC. NUNEZ |
| Year | 2019 | Badge: | 271 / 327 |
| Make | CHEVY | Duty Supervisor: | Dent |
| Model | SUV | *Certified Letter date sent:* | 12-22-23 |
| VIN # | 2GNAZZEVIK6223002 | *Mailed by:* | H. Kefuta |

Which is impounded at: ☑ **Area Towing**—1401 N. 1st Ave., Melrose Park, IL 60160

*(Please Check the box that applies)* ☐ ____________________
*(Other location)*

The vehicle was towed from ~~[illegible]~~ CICERO, ~~Maywood, IL 60153 on~~
*(Location of the vehicle for the tow)*

21 / DEC / 23 at (Time): 1539 HRS.

By authority of the Village of Maywood, as an unlawful vehicle, for the following reasons:

____________________
*(Synopsis of facts forming of tow)*

The towing was authorized by ________ 99. 26 , which provides that:
*(Ordinance of Statutory Action)*

AGG. FLEEING + ELUDING

**OFFICER REQUESTING TOW SIGNATURE/BADGE:** Tarr #271

**ORDINANCE FEE AMOUNT TO BE PAID:** $ 1,000.00 **AMOUNT PAID:** $1000.00
**FEES RECEIVED BY/NAME & BADGE:** L. Tarr #271 **PAYMENT DATE:** 26 DEC 23

**You have the rights and payment obligations as set forth in Chapter 99 of the Maywood Village Code. If you want to request a hearing to contest this vehicle seizure and impoundment, contact the Administrative Hearings Clerk at (708) 450-4414, Monday thru Friday between the hours of 8:30 a.m. until 5:00 p.m. Also attached is a memo regarding the steps to follow for a Vehicle Impoundment Hearing.**

| White—Original Copy, Records | Yellow—Case Jacket | Pink—Owner Copy, to be mailed | Gold—Court Officer |
|---|---|---|---|

353106_1

 Ex. A

FILED DATE: 5/9/2024 12:00 PM 2024L002591

# MAYWOOD POLICE DEPARTMENT
# TOWED VEHICLE RELEASE FORM

The release of this vehicle indicates that the Maywood Police Department no longer has an interest in the vehicle. The vehicle may be redeemed from the tow company with the proper identification, Owner's License and insurance.

**Date Vehicle Released:** 26 DECEMBER 23 **Case #:** 23-21461

**Tow Company:** AREA TOWING

| | Vehicle Description |
|---|---|
| License Plate/State | DT 24013 |
| Year | 2019 |
| Make | CHEVY |
| Model | SUV |
| Vin # | 2GNAZZEV1KL6223002 |

| | Registered Vehicle Owner |
|---|---|
| Name | WINFREY, DERRICK |
| Address | 1977 N. 19TH APT #2 |
| City, State, Zip | MELROSE PARK, IL 60160 |
| Telephone # | X (773) 473-0825 or (708) 368-3600 CELL 312-538-2460 NO |

**Owner Signature:** X Derrick Winfrey **Officer Releasing Signature:** [signature] #271

**Supervisor Name/Badge:** LT. E. DENT #271

**Date Removed from LEADS:** ____________________

**Removed from LEADS by:** ____________________

| ATTACH DRIVER'S LICENSE HERE TO MAKE COPY<br><br>**OTHER VALID DRIVER** | ATTACH DRIVER'S LICENSE HERE TO MAKE COPY<br><br>**REGISTERED OWNER** |
|---|---|

Ex. B

FILED DATE: 4/3/2024 12:00 PM 2024400259

# Area Towing, Inc.

1401 N. 1st Avenue, Melrose Park IL 60160
Phone: (708) 345-4665

Impoun

Pri

| | | | |
|---|---|---|---|
| Released To | DERRICK WINFREY | 1977 N 19TH AVE MELROSE PK IL 60160 | |
| Call # | 27082 | Reason for Impound | Arrest |
| Stock # | 17043784 | VIN Number | 2GNAXXEV1K6223002 |
| Account | Maywood PD | Model | 2019 Chevrolet Equinox (Black) |
| Date/Time Impounded: | 12/21/2023 12:00 AM | License Plate | DT24013 (IL) |
| Date/Time Released: | 12/26/2023 2:50 PM | Drivable | Yes |
| Days Held in Impound | 6 days | Keys | Yes |
| | | Towed from | 5900 ROOSEVELT ROAD CICERO |
| | | Stored at | Main Location 1401 N 1st Ave, Melrose Park IL 60160 |

| Storage charges | Quantity | Price | Line Total |
|---|---|---|---|
| (Storage - Administrative Fees) Admin Fee | 1 | $40.00 | $40.00 |
| (Storage) Standard Storage Rates | 5 | $40.00 | $200.00 |

| Towing charges | Quantity | Price | Line Total |
|---|---|---|---|
| (Towing) Maywood Regular Tow | 1 | $170.00 | $170.00 |
| (Towing) Maywood Village Service Fee | 1 | $25.00 | $25.00 |
| (Towing) Flatbed | 1 | $40.00 | $40.00 |

| | |
|---|---|
| Towing SubTotal | $235.00 |
| Storage SubTotal | $200.00 |
| Storage - Administrative Fees SubTotal | $40.00 |
| Subtotal | $475.00 |
| Taxes | $0.00 |
| Grand Total | $475.00 |
| **Amount Due:** | **$475.00** |

Area Towing, Inc. appreciates your business; if you have any questions regarding this invoice, please contact us at (708) 345-4665.

Signature: ______________________ Date: ______________

PAID

 Ex. C

FILED DATE: 4/9/2024 12:00 PM 20244002591

**IN THE VILLAGE OF MAYWOOD, ILLINOIS**
**DEPARTMENT OF ADMINISTRATIVE HEARINGS**

In re: Derrick Winfrey
Tow Hearing

This brief is submitted by the Village of Maywood ("Village") by and through their attorneys, Klein, Thorpe & Jenkins, Ltd. and, in support of the Village's position that the Court should deny Derrick Winfery's ("Winfrey" or "Respondent") request for a refund of towing fees and costs, state as follows:

***Introduction***

The narrow and limited issue before this Court is if the Village of Maywood Police Department ("MPD") had the right to tow and/or order the vehicle owned by Winfrey, with license plate DT24013 (the "Vehicle") from Cicero on December 21, 2023 and if Winfrey is responsible for the costs of the tow. Pursuant to Illinois law, because a law enforcement agency authorized the tow, the owner, Derrick Winfrey, is responsible for the costs of the tow. See 625 ILCS 5/4-203(g)(2).

This brief is presented by order of Administrative Hearing Officer Megan Lafata ("Hearing Officer" or "Hearing Officer Lafata") on the narrow issue of the Village's authority to tow the Vehicle from another jurisdiction. On February 2, 2024, Hearing Officer Lafata found the following facts: that the Vehicle was used to elude and flee Village police on November 5, 2023 pursuant to the elements of eluding and fleeing set forth in the Maywood Village Code ("MVC") §99.26(a)(4)[1]; due to the use of the vehicle to elude and flee police, the Vehicle met the definition of a "hazardous vehicle" as set forth in MVC §99.01; and the Village possessed the authority to tow pursuant to MVC §99.02(A)(1) and §99.26(a).

---

[1] Maywood Village Code §99.26(a)(4) mirrors the definition of fleeing and eluding police under the Illinois Vehicle Code. See 625 ILCS 5/11-204.1.

FILED DATE: 5/9/2024 12:00 PM 20244002591

Village's **Exhibit 1**, which the Hearing Officer entered as evidence at the hearing is attached to this brief. Village's **Exhibits 2 through 7** are audio recordings from the date the Vehicle was used to flee and elude police. Those Exhibits are not attached, nor referred to in this brief, as the Court has determined the Vehicle was used to flee and elude police.

***Argument***

This brief will explain the law which authorizes the tow, why Winfrey is responsible for the cost of the tow, and MPD's relationship with the Law Enforcement Data System.

***1. Derrick Winfrey is Responsible for the Fee Associated with the Tow.***

When a tow authorized by a law enforcement agency, "the owner of the vehicle shall be responsible for all towing and storage charges." 625 ILCS 5/4-203(g)(2). Here, a law enforcement agency, the MPD, authorized the tow. Therefore, Winfrey's request to be refunded the fee associated with the tow should be denied.

While the matter of *King Auto Sales, Inc. v. Act Now Towing*, concerns a civil lawsuit, the court in that matter examined the language contained in the Illinois Vehicle Code, specifically 625 ILCS 5/4-203(g)(2), which provides that if a law enforcement agency authorized a tow, the owner of the vehicle is responsible for the tow and storage charges. *King Auto Sales, Inc. v. Act Now Towing*, 2021 IL App (5th) 200143, ¶19. The court determined the language of 203(g)(2) is "clear and unambiguous." *Id*. at ¶26. "There is no language limiting the provision of based on the purpose for which law enforcement authorized the tow." *Id.* Further, "[r]eading subsection (g) in its entirety, it is clear that the legislature intended each paragraph to only have the distinct limitations stated within the paragraph." *Id*. at ¶21.

When examining the language of a statute, the court is to use the plain and ordinary meaning of the language. *Lintzeris v. City of Chicago*, 2023 IL 1277547, ¶26 (citation omitted).

FILED DATE: 4/9/2024 12:00 PM 20244002591

When the language of a statute is clear and unambiguous, the court should not consider exceptions, conditions, or limitations not included in the statute. *Id*. It is clear and unambiguous that the language of 625 ILCS 5/4-203(g)(2) requires the owners of vehicles towed with the authorization of a law enforcement agency to be responsible for the costs and fees.

The Village is a home rule jurisdiction. See attached **Exhibit 8**, Resolution No. R-2022-53, A Resolution Ratifying the Approval and Execution of Understanding (MOU) with the Illinois State Police for Transmittal, Receiving and Storing of LEADS, NCIC and SOS Information and Data (the "Resolution"). The Resolution, with the attached and agreed Memorandum of Understanding ("MOU") is attached as **Exhibit 8**. The Village asks this Court to admit **Exhibit 8**, into the record as evidence, as a public resolution and a MOU concerning agreements between law enforcement agencies would be relied upon by a reasonable person. Evidence, including hearsay, may be admitted in an administrative court if it is "a type commonly relied upon by reasonably prudent persons in the conduct of their affairs." 65 ILCS 5/1-2.1-6; see also *Zollar v. City of Chicago Department of Administrative Hearings*, 2015 IL App (1st) 143426, ¶6.

The powers of home rule units should be construed liberally. Ill. Const. 1970, art. VII, §6(m); see also *Lintzeris*, 2023 IL 1277547 at ¶5. Home rule units, like the Village, are permitted to enact ordinances which require a fee for the cost of a tow. *Lintzeris*, 2023 IL 1277547, ¶34-35; see also 625 ILCS 5/11-208.7(a). Home rule units may adopt traffic regulations, like those related to the towing of vehicles, as long as the regulations do not conflict with the Illinois Vehicle Code. *Id*. at ¶7-8.

The MPD's power to authorize the tow of the Vehicle is derived from MVC §99.02(A)(1), which provides that the Village Code Enforcement and the MPD may tow any

FILED DATE: 4/9/2024 12:00 PM 2024400259

vehicle which meets the definition of a "hazardous vehicle" as defined in MVC §99.01. A "hazardous vehicle" includes any vehicle which, among other things, "presents an immediate danger to the health, safety or welfare of the members of the public." MVC §99.01. A vehicle used to flee and elude the police or a law enforcement agency in Maywood is subject to seizure and impoundment. MVC §99.26(a). This Court determined the Vehicle was used to flee and elude the police. Therefore, under the MVC, the authorization of the tow of the Vehicle was proper.

There is nothing within 625 ILCS 5/4-203(g)(2) which limits the jurisdiction of a tow or that prevents a municipality from entering another jurisdiction to tow a vehicle or that prevents one municipality ordering or causing a vehicle to be towed on behalf of another municipality. There is no language which requires an arrest of the owner or a conviction of the owner – merely that law enforcement authorized the tow. There is no question the MPD authorized the tow of the Vehicle. See **Ex. 1**, Department of Police Tow Report. The law is clear – the owner of the vehicle is responsible for the tow and storage charges if any law enforcement agency authorizes the tow and therefore, Winfrey's request to be refunded the tow fee should be denied.

***2. The Maywood Police Department Participates in the Law Enforcement Agency Data System***

One fact established during the hearing is that the Vehicle was entered into the Law Enforcement Agency Data System ("LEADS"), which lead to the tow of the Vehicle from Cicero. LEADS "is a statewide, computerized telecommunications system designed to provide services, information and capabilities to law enforcement and criminal justice community in the State of Illinois." 20 Ill. Adm. Code 1240.10; Illinois LEADS Reference Manual 2021, page REGS-1. (The LEADS Reference Manual is available online at isp.illinois.gov or can be

FILED DATE: 5/9/2024 4:00 PM 20244002591

provided to the Court upon request). Data entry and maintenance by law enforcement agencies in LEADS is required by several sections of the Illinois Criminal Code. (See e.g. the Illinois Domestic Violence Act of 1986, 750 ILCS 60/302; the Sex Offender Registration Act, 730 ILCS 150/8). Law enforcement, like police officers, are required only to use LEADS for law enforcement purposes, as misuse of the system could result in a criminal felony charge. See 20 Ill. Adm. Code § 1240.80 and *People v. Samel*, 115 Ill.App.3d 905, 908, 912 (2nd Dist. 1983). Additionally, if a law enforcement agency uses LEADS services in a manner non-compliant with laws, rules, regulations, or procedures, the Department of Law Enforcement may suspend all or any portion of LEADS service. See 20 Ill. Adm. Code § 1240.110. The Department of Law Enforcement may conduct routine audits of any agency participating in LEADS to ensure compliance with rules, regulations, and laws. See 20 Ill. Adm. Code § 1240.120. LEADS records in the computerized files "must be supported by an investigative document, active warrant, or complaint." See 20 Ill. Adm. Code § 1240.60(a)(2). The records in the system must be available to any LEADS terminal operator at all times for several purposes, including verification and validation. See Id. Therefore, LEADS is a reliable system for law enforcement use.

Illinois law "evidences a public policy of encouraging municipalities to agree to assist one another in carrying out law enforcement objectives." *People v. Vargas*, 277 Ill.App.3d 289, 297 (1st Dist. 1995). The Village of Maywood participates in LEADS and was a participant on November 5, 2023 (the date Mr. Winfrey's vehicle was used to elude police) through December 21, 2023 (the date of the legal tow). The Village's President and Board of Trustees, operating as a home rule entity, approved the Resolution, which ratified the approval and execution of the MOU. See **Exhibit 8**. The Village Clerk certified the Resolution on December 7, 2022. See **Id.**

FILED DATE: 5/9/2024 1:00 PM 20244002591

There is no expiration date for the MOU and per testimony presented at the hearing, the Village Police Department continues to utilize LEADS.

Any objection or argument Winfrey presents in opposition of the use of LEADS should be rejected, as the MPD has the authority to utilize the system. Additionally, there is a public interest in allowing municipalities to assist one another in carrying out law enforcement objectives. Prohibiting municipalities and law enforcement agencies from utilizing LEADS to tow vehicles from outside jurisdictions would frustrate the purpose of LEADS and would go against the public interest. It was proper for the Vehicle to be towed from Cicero and Winfrey should therefore be responsible for the fee associated with the tow.

***Conclusion***

It is undisputed Derrick Winfrey's Vehicle was used to flee and elude police on November 5, 2023. This Court has already determined that Maywood Police Department possessed the authority to authorize the tow of the vehicle. The Maywood Police Department had the authority to utilize LEADS in the investigation of the fleeing and eluding incident. As the authorization of the tow was proper, Derrick Winfrey, as the owner, is responsible for the tow fees and charges and therefore should not be refunded the money he paid to retrieve the Vehicle.

Respectfully submitted,
VILLAGE OF MAYWOOD

By: *Carrie A. Winteregg*
One of its Attorneys

Carrie A. Winteregg (cawinteregg@ktjlaw.com)
KLEIN, THORPE AND JENKINS, LTD.
120 S. LaSalle Street, Suite 1710
Chicago, Illinois 60602
(312) 984-6400
Atty No: 90446

FILED DATE: 5/9/2024 1:09 PM 20244002591

Ex. C

FILED DATE: [illegible] PM 20244002591

**IN THE VILLAGE OF MAYWOOD, ILLINOIS**
**DEPARTMENT OF ADMINISTRATIVE HEARINGS**

| | | |
|---|---|---|
| Village of Maywood, | ) | |
| Plaintiff, | ) | |
| v. | ) | Report No.: 23-21561 |
| Derrick Winfrey, | ) | |
| Respondent. | ) | |

**RESPONDENT'S BRIEF IN SUPPORT OF DISMISSAL**

NOW COMES Respondent, Derrick Winfrey, by and through Counsel, Beyond Legal Aid, and moves this Administrative Court for dismissal. In support of such, he states the following:

**INTRODUCTION**

A hearing on this matter was held on February 2, 2024, at the Village of Maywood ("the Village") Police Station. There, this Court held that the Village had proved its case by a preponderance of the evidence but requested that the parties provide briefs on whether the Village had the authority to tow the vehicle from Cicero. Thus, no facts are in dispute at this time.

The relevant facts for the purposes of this brief are as follows. On November 5, 2023, Officer Nunez of the Maywood Police Department entered a Felony Vehicle Alert in the Law Enforcement Agency Data System ("LEADS") for a vehicle owned by Respondent. On December 21, 2023, Respondent was pulled over and detained in Cicero by officers of the Cicero Police Department. Officers from the Maywood Police Department then towed the vehicle from Cicero to Maywood. The vehicle was released to Respondent on December 26, 2023, after Respondent paid the fine. Respondent was never arrested by either police department.

FILED DATE: [illegible] PM 2024002591

## ARGUMENT

Respondent raises a single argument in this brief: The Village exceeded its home-rule authority by enforcing MVC § 99.26 extraterritorially. As such, this matter should be dismissed, and Respondent should be fully refunded for his fine and other fees related to towing and storage.

Article VII, section 6(a) of the Illinois Constitution provides, in relevant part:

> Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt.

Ill. Const., art. VII, § 6(a). A home-rule municipality[1] does not have the authority to enforce its ordinances outside of its jurisdictional limits. *Village of Sauget v. Cohn*, 241 Ill. App. 3d 640, 645 (5th Dist. 1993). "'[A]n examination of the [Record of Proceedings of the Sixth Illinois Constitutional Convention] shows that the intention was not to confer extraterritorial sovereign or governmental powers directly on home-rule units. The intendment shown is that whatever extraterritorial governmental powers home-rule units may exercise were to be granted by the legislature.'". *Village of Orland Hills v. Citizens Utilities Co.*, 347 Ill. App. 3d 504, 520-21 (1st Dist. 2004) (quoting *City of Carbondale v. Van Natta*, 61 Ill. 2d 483, 485 (1975)).

Here, the Village enforced MVC § 99.26 extraterritorially. The Village contends that it had authority under MVC § 99.26 to impound Respondent's vehicle and charge him the relevant fine. Respondent does not dispute that is the case[2] *within the limits of Maywood.* However, in

---

[1] There is no dispute that Maywood is a home-rule municipality.

[2] While Respondent has multiple constitutional issues with the ordinance in question, Respondent is assuming that the ordinance is valid for the purposes of the February 2, 2024 administrative hearing and this brief as Respondent was advised that this was the improper venue for constitutional challenges.

FILED DATE: 5/9/2024 1:00 PM 20244002591

this matter, Maywood police officers entered Cicero after Cicero Police Officers detained Respondent and impounded his vehicle pursuant to MVC § 99.26.

The Village does not contend that it had authority to tow Respondent's vehicle from Cicero under any state law – only by Village ordinance. Outside of an applicable state law, the Village cannot tow vehicles extraterritorially. Indeed, the Village's "Seized and Impounded Vehicles" form recognizes this. See Ex. 1. On the form the Village provided to Respondent, "Maywood, IL 60153" is crossed out and "Cicero" is handwritten in as the location of the vehicle for the tow. Ex. 1. By providing "Maywood, IL 60153" as the standard ending of the location of the tow in the form, the Village shows that it assumes vehicles towed under its ordinance are done so within its jurisdiction. That is not that case here. Because the Village exceeded its home-rule authority by towing Respondent's vehicle outside of its jurisdiction, this matter should be dismissed, and the Village should provide Respondent with a full refund for all fines and fees he incurred.

WHEREFORE, Respondent, Derrick Winfrey, respectfully moves this Administrative Court for an order dismissing the ordinance violation and refunding him all money paid in fines and fees.

Respectfully submitted,

/s/ Michael Drake
*Attorney for Respondent*

Michael Drake
Beyond Legal Aid
17 N. State St., #1380
Chicago, Illinois 60602
(312) 678-3508
Mdrake1@beyondlegalaid.org
65698

 Ex. D

FILED DATE: 4/9/2024 1:00 PM 2024L002591

**IN THE VILLAGE OF MAYWOOD, ILLINOIS**

**DEPARTMENT FO ADMINISTRATIVE HEARINGS**

| | | |
|---|---|---|
| **Village of Maywood,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Report No.: 23-21561** |
| | ) | |
| **v.** | ) | |
| **Derrick Winfrey,** | ) | |
| | ) | |
| **Respondent** | ) | |

**ORDER**

After a hearing on February 2, 2024, Administrative Hearing Officer Lafata found that the vehicle in question was used to flee and elude police Village Police Officer's within the Village of Maywood and therefore granting the Village of Maywood the authority to tow the vehicle pursuant to MVC §99.02(A)(1) and §99.26(a). The Administrative Hearing Officer sought time to determine if the Village of Maywood's authority to tow the vehicle was limited to the city limits of Maywood, or if the Village had the authority to tow the vehicle from Cicero, a neighboring jurisdiction.

After reviewing briefs submitted by both parties, the Hearing Officer finds that the plain language of the 625 ILCS 5/4-203(g)(2), is clear and unambiguous. The statute reads, "when a vehicle removal from either public or private property is authorized by a law enforcement agency, the owner of the vehicle shall be responsible for all towing and storage charges". The statute does not specify that the tow must take place within the city limits of where the violation was committed.

It would seem to frustrate the purpose of the statute to determine that because an individual operating the motor vehicle in question was able to successfully use the motor vehicle to flee and elude a law enforcement agency, they should not be responsible for the costs of a tow authorized by those actions.

For the foregoing reasons, the Hearing Officer finds that the Village of Maywood had the authority to tow the Respondent's vehicle, regardless of the location of the vehicle at the time of the tow, as it was used to flee and elude Maywood Police Officers and pursuant to 625 ILCS 5/4-203(g)(2), Respondent shall be responsible for all towing and storage charges.

**Entered: March 15, 2024**

Megan Lafata

**Administrative Hearing Officer Megan Lafata**

FILED DATE: 5/31/2024 4:44 PM 20244002591

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**FOURTH MUNICIPAL DISTRICT - CIVIL DIVISION**

| | | |
|---|---|---|
| **DERRICK WINFREY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.: 2024 400 2591** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **VILLAGE OF MAYWOOD, a Municipal Corporation,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**VILLAGE OF MAYWOOD'S**
**EXHIBIT B**

**Administrative Order (March 15, 2024)**

FILED DATE: 5/31/2024 4:44 PM 20244002591

**IN THE VILLAGE OF MAYWOOD, ILLINOIS**

**DEPARTMENT FO ADMINISTRATIVE HEARINGS**

| | | |
|---|---|---|
| **Village of Maywood,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Report No.: 23-21561** |
| | ) | |
| **v.** | ) | |
| **Derrick Winfrey,** | ) | |
| | ) | |
| **Respondent** | ) | |

**ORDER**

After a hearing on February 2, 2024, Administrative Hearing Officer Lafata found that the vehicle in question was used to flee and elude police Village Police Officer's within the Village of Maywood and therefore granting the Village of Maywood the authority to tow the vehicle pursuant to MVC §99.02(A)(1) and §99.26(a). The Administrative Hearing Officer sought time to determine if the Village of Maywood's authority to tow the vehicle was limited to the city limits of Maywood, or if the Village had the authority to tow the vehicle from Cicero, a neighboring jurisdiction.

After reviewing briefs submitted by both parties, the Hearing Officer finds that the plain language of the 625 ILCS 5/4-203(g)(2), is clear and unambiguous. The statute reads, "when a vehicle removal from either public or private property is authorized by a law enforcement agency, the owner of the vehicle shall be responsible for all towing and storage charges". The statute does not specify that the tow must take place within the city limits of where the violation was committed.

It would seem to frustrate the purpose of the statute to determine that because an individual operating the motor vehicle in question was able to successfully use the motor vehicle to flee and elude a law enforcement agency, they should not be responsible for the costs of a tow authorized by those actions.

For the foregoing reasons, the Hearing Officer finds that the Village of Maywood had the authority to tow the Respondent's vehicle, regardless of the location of the vehicle at the time of the tow, as it was used to flee and elude Maywood Police Officers and pursuant to 625 ILCS 5/4-203(g)(2), Respondent shall be responsible for all towing and storage charges.

**Entered: March 15, 2024**

Megan Lafata

**Administrative Hearing Officer Megan Lafata**

FILED DATE: 5/31/2024 4:44 PM 20244002591

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**FOURTH MUNICIPAL DISTRICT - CIVIL DIVISION**

| | | |
|---|---|---|
| **DERRICK WINFREY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.: 2024 400 2591** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **VILLAGE OF MAYWOOD, a Municipal Corporation,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**VILLAGE OF MAYWOOD'S**
**EXHIBIT C**

**In the Matter of: Audio File Maywood v. Winfrey**

FILED DATE: 5/31/2024 4:44 PM 20244002591

# IN THE MATTER OF:

# AUDIO FILE MAYWOOD v. WINFREY

# 23-21561

February 2, 2024

CYNTHIA A. PAVESICH & ASSOCIATES
(312) 214-1992
cagoodreporter@pavesich.com

FILED DATE: 5/31/2024 4:44 PM 20244002591



IN THE VILLAGE OF MAYWOOD, ILLINOIS
DEPARTMENT FOR ADMINISTRATIVE HEARINGS

VILLAGE OF MAYWOOD, )
Plaintiff, )
_ _ _ _ _ _ _ _ _ _ _ _ _ _ ) Report No. 23-21561
DERRICK WINFREY, )
Respondent. )

TRANSCRIPT of the recorded proceedings had at the hearing of the above-captioned matter on Friday, the 2nd day of February, 2024.



A P P E A R A N C E S

Present:

MS. MEGAN LAFATA,
appeared as Administrative Hearing Officer;

MS. CARRIE WINTEREGG,
appeared on behalf of the Village of Maywood;

MR. MICHAEL DRAKE,
appeared on behalf of Derick Winfrey;



I N D E X

Opening Statement......................05:10
By Ms. Winteregg

ILIR SHEMITRAKU
Direct Examination.....................12:07
By Ms. Winteregg
Cross-Examination......................17:11
By Mr. Drake

DERICK WINFREY
Direct Examination.....................22:14
By Mr. Drake

Closing Argument.......................29:22
By Ms. Winteregg
Closing Argument.......................32:06
By Mr. Drake
Rebuttal Argument......................34:04
By Ms. Winteregg

EXHIBITS PAGE:LINE
Exhibit No. 1, id......................08:10
(Police Report)
Exhibit No. 2, id......................08:10
(Radio Recording)
Exhibit No. 3, id......................09:05
(Radio Recording)
Exhibit No. 4, id......................09:14
(Radio Recording)
Exhibit No. 5, id......................09:21
(Radio Recording)
Exhibit No. 6, id......................10:09
(Radio Recording)
Exhibit No. 7, id......................10:23
(Radio Recording)
Exhibit No. 8, id......................14:01
(Vehicle Detector Reader)
Exhibit Nos. 1-7, admitted.............11:17
Exhibit No. 8, admitted................15:20



MS. LAFATA: All right, is this Derick Winfrey.

MS. WINTEREGG: Yes.

MS. LAFATA: All right, Case No. 23-21461. Will everyone just state your name for the record.

MS. WINTEREGG: Carrie Winteregg, W-i-n-t-e-r-e-g-g, for the Village of Maywood.

MR. DRAKE: Michael Drake for Derick Winfrey.

MS. LAFATA: All right, it looks like there's an issue with a tow that took place, and the Respondent is contesting the basis for the tow?

MR. DRAKE: Yes.

MS. LAFATA: All right, since it's the Village's burden by a preponderance of the evidence, what I'm going to do is I'm going to have the Village start.

They'll call their witnesses. You will have the opportunity to cross-examine any witnesses that they call.

From there, once the Village is done presenting evidence, they'll rest and then you

FILED DATE: 5/31/2024 4:44 PM 20244002591



can present any evidence that you have on behalf of your client, and we'll go right to argument, okay?

MS. WINTEREGG: Okay.

MS. LAFATA: All right.

MS. WINTEREGG: All right, the Village is -- We can just go into it and do an opening argument, your Honor.

MS. LAFATA: Okay.

OPENING STATEMENT

BY MS. WINTEREGG:

So we did produce -- sorry, submit a group of documents for your Honor to refer to. I would like to read into the record the Maywood Police Department report.

This report has also been given to opposing counsel, and the narrative on it, this is, let's see. The last time this report was modified was on November 6th, 2023.

And in the narrative it says: In summary, on the 5th of November 2023 at approximately 0231 hours responding officer, Officer Nunez, Star 327, observed a black 2019 Chevy utility bearing Illinois registration DT,



as in David Thomas, 24013 driving 45 miles per hour in a 30 mile per hour zone northbound 17th Avenue from Van Buren.

Responding officer caught up to the vehicle at 17th Avenue and Madison where responding officer attempted to conduct a traffic stop on the vehicle.

Upon illuminating Maywood unit star 122's lights and sirens, the vehicle began to flee eastbound Madison at a high rate of speed. The vehicle disregarded the stop sign at 12th Avenue and Madison and reached speeds of 80 miles per hour.

Due to the reckless driving, responding officer advised ITE dispatch that he was terminating the pursuit at 7th Avenue and Madison.

The vehicle continued eastbound Madison where disregarding the light at 5th Avenue and Madison, the vehicle was last seen southbound 1st Avenue from Madison.

The vehicle is registered at 1977 North 19th Avenue, Apartment 2, Melrose Park, 60160.

ITE dispatch entered the vehicle into



LEADS as a felony vehicle for aggravated fleeing and eluding, LEADS No. V, as in Victor, 23I7551. If located, the vehicle is to be towed on an administrative hold for aggravated fleeing and eluding, and the amount of $1,000 USD is to be placed on the vehicle. Nothing further.

And then, your Honor, we also have recordings from the dispatch which have also been provided to counsel. He did have a chance to review them.

I would like to play them into evidence for the record just to make it easier if we need to deal with this later. So the first one --

MR. SPEAKER: Put it by the microphone.

MS. LAFATA: Any objection?

MS. WINTEREGG: Okay.

MR. DRAKE: No.

MR. SPEAKER: (Inaudible) to your left.

MS. WINTEREGG: Oh, that one.

MS. LAFATA: Any objection to the police report being admitted into evidence?

MR. DRAKE: I don't believe the administrative rules (inaudible).

MS. LAFATA: Okay.



MS. WINTEREGG: So I'm going to read aloud each recording how it's marked. It's 07 underscore star com underscore main 202311523054 by start time.

MS. LAFATA: And that will be Exhibit 2. The police report will be exhibit -- marked as Exhibit 1.

MS. WINTEREGG: Exhibit 1. Yes, your Honor.

(Whereupon, Exhibit Nos. 1 & 2 were marked for identification.)

(Audio playing: (Inaudible) Chevy DT24013 eastbound Madison from 17th.

10-4 eastbound Madison from 17th.

Continuing eastbound. (Inaudible) I'm terminating at 7th and Madison.

10-4 terminating at 7th and Madison.

10-4 he just took the (inaudible).

Plate coming back clear and valid to a Derick Winfrey out of Melrose Park, 2019 Chevy utility, black in color, no 27 attached.

10-4 do you want to (inaudible).

10-4.)

MS. WINTEREGG: The next one is 09

FILED DATE: 5/31/2024 4:44 PM 20244002591



underscore star com main underscore 2023115023217.
MS. LAFATA: That will be Exhibit 3 for the record.
(Whereupon, Exhibit No. 3 was marked for identification.)
(Audio playing: (Inaudible.)
10-4.
Just for traffic, correct?
Yeah, 10-4.)
MS. WINTEREGG: The next one is 12 underscore star com underscore main 2023115023921 for Exhibit 4.
(Whereupon, Exhibit No. 4 was marked for identification.)
(Audio playing: Do you copy 27?
(Inaudible.)
60046002202240F Frank.)
MS. WINTEREGG: Next is 14 underscore star com underscore main 2023115024012 for Exhibit 5.
(Whereupon, Exhibit No. 5 was marked for identification.)
(Audio playing: (Inaudible) valid
Photo ID to a Jequan Farrow out of



Melrose Park. Be advised it looks like he has a 99 pending for weapons offenses.
(Inaudible.)
10-4.)
MS. WINTEREGG: For Exhibit 6, 16 underscore star com main underscore 2023115024750.
(Whereupon, Exhibit No. 6 was marked for identification.)
(Audio playing: (Inaudible.)
Go ahead.
I'm going to be transporting one to the station.
247.
10-4.
He's en route to the station.
10-4.)
MS. WINTEREGG: Okay, and the last, 17 underscore star com main underscore 2023115025118. Is that Exhibit 7 I think is the number? Yes, okay.
(Whereupon, Exhibit No. 7 was marked for identification.)



MS. LAFATA: Yeah. I'm sorry. Yes.
(Audio playing: (Inaudible.)
251.)
MS. WINTEREGG: For our next evidence, your Honor, we'd like to call a witness.
MS. LAFATA: Please state your name?
THE WITNESS: Detective Shemitraku, Star No. 315, Maywood Police Department, Investigation Bureau.
MS. WINTEREGG: Oh, before I -- Sorry, your Honor. Are Exhibits 2 through 7 entered into evidence?
MS. LAFATA: No objection; is that correct?
MR. DRAKE: No objection.
MS. LAFATA: Okay, yes, they will be admitted.
(Whereupon, said exhibits marked as Exhibit Nos. 1-7 were received in evidence.)
MS. WINTEREGG: Thank you. Sorry.
* * *



WHEREUPON:

ILIR SHEMITRAKU,

called as a witness herein, was examined and testified as follows:

DIRECT EXAMINATION
BY MS. WINTEREGG:

**Q. Can you please introduce yourself again?**
A. Detective Shemitraku, Star No. 315, Maywood Police Department, Investigations Unit.
**Q. Okay, how long have you been a detective?**
A. Detective, four years; police officer, ten.
**Q. Okay, and how long have you worked for the Village of Maywood?**
A. Ten years.
**Q. Are you familiar with license plates detectors?**
A. Yes.
**Q. Okay, can you just give us a very brief summary of how they work?**
A. So license plate readers are cameras that it's either -- they're either fixed which is they're mounted on the pole, and they're fixed at

FILED DATE: 5/31/2024 4:44 PM 2024002591



an intersection or wherever they -- they give that lot track.
Then you got the mobile ones where they're fixed on the -- on the squad car. As you're driving around, it captures plates of the passing cars.
**Q. Okay, so there's two kinds.**
**There's the fixed kind and the kind on a squad car?**
A. Correct.
**Q. Okay, and how do you use these license plate readers --**
A. So --
**Q. -- for the fixed ones?**
A. So the fixed ones, as they're placed either on a southbound lane or a northbound lane, they'll capture both lanes. It's the field of view, and it's capturing motion.
**Q. Okay, and then once they capture the motion, do they also capture the license plate?**
A. Yes.
**Q. Okay, I am going to show you a document. This has also been shown to opposing counsel. We we will introduce this as Exhibit 8.**



**(Whereupon, Exhibit No. 8 was marked for identification.)**
BY MS. WINTEREGG:
**Q. Can you please -- Do you recognize this document?**
A. Yes.
**Q. Can you please identify it?**
A. This is the program we use which is Vigilant. We have approximately about 14 to 15 cameras in town --
**Q. Okay.**
A. -- in different intersections.
**Q. When you say the program is Vigilant, what do you mean by that?**
A. That's the name of the program. It's called Vigilant. When you search for a vehicle, let's say we're searching for a license plate, it's going to populate wherever it's catching it --
**Q. Okay.**
A. -- on that date.
**Q. So this is not -- Is it software essentially?**
A. It's online based. So you gotta go through



their website. You enter your credentials, and there's also -- Before we use it, we go through training. It's a eight-hour training.
**Q. Okay, so essentially this is produced by a third-party contractor?**
A. Correct.
**Q. And do you use -- regularly use the vehicle -- the license plate readers in your course of being a detective?**
A. Yes.
**Q. Okay, is it something that you rely upon in your investigations?**
A. Yes.
MS. WINTEREGG: Okay, we would like to enter this vehicle detection report into evidence. Officer -- If there's no objection.
MS. LAFATA: Any objections?
MR. DRAKE: No objection.
MS. LAFATA: Okay.
(Whereupon said document marked as Exhibit No. 8 was received in evidence.)
BY MS. WINTEREGG:
**Q. Officer, could you please -- I'm sorry.**



**Detective, could you please read the date on this report?**
A. On this right here?
**Q. Yes.**
A. The date on here, it's 11-5 of 2023 at 2:31 a.m. in the morning.
**Q. Okay, and what's the license plate listed?**
A. It's David Tom 24013.
**Q. And where is the location where this was taken?**
A. The location, it is going to be at 1st Avenue and Quincy.
**Q. Okay, thank you. That's all I have.**
**Oh, I do have one other question for you.**
A. Sure.
**Q. So when you said it's 1st Avenue and Quincy, where is that in relation to 1st Avenue and Madison?**
A. I'll say approximately about five to six blocks south.
**Q. Southbound?**
A. Yes.
MS. WINTEREGG: Thank you. That's all I

FILED DATE: 5/31/2024 4:44 PM 20244002591



have. I'm going to tender it to the hearing officer.
All right, your Honor, that's all I have for that witness and as well for presenting evidence. I can reserve the argument for closing.
MS. LAFATA: All right, do you have any questions for the Detective?
MR. DRAKE: Briefly.
MS. LAFATA: Okay.
CROSS-EXAMINATION
BY MR. DRAKE:
**Q. Right here is fine. It's crowded but I don't wanna, like, you know. Thank you for being here with us today, Detective.**
A. No problem.
**Q. Just really briefly, do your squad cars have dashcams?**
A. Some of them do and some of us don't.
**Q. Can you give an estimation of how many do and how many don't?**
A. I'm in investigations. So I usually use an unmarked unit. We usually don't have cameras. I'll say about four or five maybe, approximately.



MS. LAFATA: Four or five don't or do?
THE WITNESS: Do.
MS. LAFATA: Do, okay.
BY MR. DRAKE:
**Q. You said you're in investigation.**
**So investigations don't generally have them?**
A. We don't have them, dashcams.
**Q. But a patrol officer generally would?**
A. It depends on the vehicle.
**Q. It depends on the vehicle?**
A. Correct.
**Q. Do you happen to know what kind of vehicle Officer Nunez was in on November 5th, 2023?**
A. I believe it's unit 122, and that's a -- that's a Ford sedan.
**Q. To your knowledge does that have a dashcam?**
A. I believe so. They're all equipped with dashcams. It depends if it's working or not.
**Q. How common is it they don't work?**
A. It's very common.
**Q. Very common?**
A. Yes.
**Q. I assume, Detective, that prior to your becoming detective you were a patrol officer in the Village of Maywood?**



A. Correct.
**Q. Have you ever -- Pursuant to that job did you ever impound vehicles?**
A. I have.
**Q. Generally how long after the crime was committed would you say you impound the vehicle?**
A. It depends, maybe a week. It could also be two weeks. It could be close to a year.
**Q. Close to a year?**
A. Correct. It was a felony, right? It was an aggravated fleeing and eluding?
**Q. Nothing is charged.**
A. Oh, no, no, no.
**Q. I mean, that's a -- that's a yes.**
A. Yes.
**Q. That was my next question, officer is:**
**Have you ever impounded a vehicle without making an arrest?**
A. Yes.
**Q. Is that common in the Village of Maywood as well?**
A. I think it's common in law enforcement for the crimes committed to definitely they're gonna grab that vehicle.



**Q. Is it common to put this into LEADS?**
A. Yes, officer safety, for other towns. I mean, it's a felonious vehicle. It took off on the officer. We don't know the basis, but you're gonna let everyone in law enforcement know that this vehicle is wanted.
**Q. Does the department have a review process for that or can any officer enter anything they want into LEADS?**
MS. WINTEREGG: Objection, it's a compound question, if you could break the question up.
BY MR. DRAKE:
**Q. Does the Village of Maywood have a policy as it relates to imputing information into the LEADS system?**
A. I believe any officer, any officer that's working the street, especially an officer that was involved in this is entitled to if he wants to or not.
**Q. They don't have to clear it with their supervisor?**
A. They really don't.

FILED DATE: 5/31/2024 4:44 PM 20244002591



MR. DRAKE: Okay, that's all I have.
MS. WINTEREGG: I have no questions, your Honor.
MS. LAFATA: All right, with the admission of Exhibits 1 through 9, do you rest?
MS. WINTEREGG: Yes. Sorry. 1 through 9? I have 1 through 8. I just want to make sure. For the record, Exhibit 1 was the police report and then I have Exhibits 2 through 7 as recordings.
MS. LAFATA: Okay, yep. Okay.
MS. WINTEREGG: And then Exhibit 8 as the vehicle detector reader.
MS. LAFATA: All right, my mistake.
MS. WINTEREGG: That's what I have. I could be wrong.
MS. LAFATA: No, no, you're not. Okay.
MS. WINTEREGG: Thank you, and we rest as it comes to evidence, your Honor.
MS. LAFATA: Okay, Exhibits 1 through 8 will be admitted without objection.
The Village rests. Counsel, do you have any witnesses that you would like to --
MR. DRAKE: I'm just going to call



Mr. Winfrey --
MS. LAFATA: Okay.
MR. DRAKE: -- briefly as well.
Do you want to come up here by the microphone where the officer was standing -- the detective was standing.
* * *
WHEREUPON:

DERICK WINFREY,

called as a witness herein, was examined and testified as follows:

DIRECT EXAMINATION
BY MR. DRAKE:

**Q. Can you please state your name for the record?**
A. My first name is Derick. My last name is Winfrey.
**Q. Can you spell that? Can you spell your names?**
A. D-e-r-i-c-k is the first name. Winfrey is the last name, W-i-n-f-r-e-y.
**Q. Mr. Winfrey, I'm going to ask you about two**



**different dates. So first I'm going to ask you about November 5th --**
A. All right.
**Q. -- 2023.**
**Were you driving your vehicle --**
A. No.
**Q. -- on that date?**
A. No.
**Q. Did you give anyone authorization --**
A. No.
**Q. -- to drive your vehicle on that date?**
**How many people do you live with?**
MS. WINTEREGG: Objection, relevance.
THE WITNESS: There's one; and my son, he's in and out. He's usually --
MS. LAFATA: Overruled.
THE WITNESS: -- with his girl -- He's usually at his girlfriend's house and goes to school.
MS. LAFATA: Just one second.
THE WITNESS: He works.
MS. LAFATA: If there's an objection, just pause your testimony.
THE WITNESS: Okay.



MS. LAFATA: I'll rule on whether or not you should continue to testify --
THE WITNESS: Right.
MS. LAFATA: -- regarding that specific question or whether that question is going to be --
THE WITNESS: Okay.
MS. LAFATA: -- you don't have to answer it, okay?
THE WITNESS: Okay.
MS. LAFATA: All right.
MR. DRAKE: Okay, thank you.
MS. LAFATA: His answer will be accepted.
BY MR. DRAKE:
**Q. I'll try to ask less questions here.**
**Did you give anybody in your house authority to drive your vehicle?**
A. No, no one has keys to my vehicle but myself.
**Q. So to your knowledge nobody would have been driving your vehicle that you gave authorization to --**
A. No one.
**Q. -- on November 5th, 2023?**

FILED DATE: 5/31/2024 4:44 PM 20244002591



**But did you file a police report on this incident?**
A. I didn't file a police report cuz I wasn't aware of what occurred November 5th. I wasn't -- I didn't know anything about this until I got stopped December the 21st in Cicero.
**Q. So between November 5th and December 21st --**
A. I had no knowledge.
**Q. -- no police officers reached out to you?**
A. No.
**Q. Did you get anything in the mail?**
A. No.
**Q. Any calls from Village administrators?**
A. No.
**Q. On December 21st what happened?**
**Where were you at the time you were detained (inaudible)?**
MS. WINTEREGG: Objection --
THE WITNESS: Okay --
MS. WINTEREGG: -- relevance. This is about --
THE WITNESS: -- I was --
MS. WINTEREGG: Sir.



MR. DRAKE: Mr. Winfrey.
MS. LAFATA: Hang on one second.
MS. WINTEREGG: This is about whether or not the police had the authorization to tow the vehicle. So any other dates or times outside -- outside of the incident are not relevant.
MS. LAFATA: That objection will be sustained.
MR. DRAKE: I can't ask him about where -- what town he was when he was -- when his vehicle was towed because from --
MS. LAFATA: Well, no, the subject of the -- We're contesting the basis for the tow.
MR. DRAKE: And I think that legally I'm not -- I'm not under the impression that this ordinance gives anybody authority -- gives the Village of Maywood the authority to tow a vehicle from Cicero if he was outside of Maywood.
MS. WINTEREGG: Again, that just goes to whether or not Maywood had the right to tow it.
MS. LAFATA: Okay.
MR. DRAKE: I think Maywood had the right to tow it in the Village of Maywood. I don't think the Village of Maywood had the authority to



go to Cicero --
MS. LAFATA: Right.
MR. DRAKE: -- to tow it. So then that was gonna be my --
MS. LAFATA: If that was one of the questions, go ahead and ask it. Go ahead.
BY MR. DRAKE:
**Q. Were you in Cicero at the time that you were detained?**
A. Yes, I was in Cicero December the 21st.
**Q. Were you detained by Cicero or -- Police Department or Maywood Police Department?**
A. I was detained by Cicero Police Department.
**Q. Did Maywood Police Department show up?**
A. I wasn't aware if they showed up anyway. I had left because it was cons -- They made me get out of my vehicle and lock it up --
MS. WINTEREGG: Objection, relevance.
THE WITNESS: -- and they told me that Maywood was coming to tow my vehicle.
BY MR. DRAKE:
**Q. So Maywood came to Cicero and towed it?**
MS. LAFATA: Okay.
MR. DRAKE: Oh, sorry, sorry. I apologize,



your Honor. I apologize, counsel.
MS. LAFATA: The objection is going to be -- The objection is going to be sustained. That will be stricken. Continue.
MS. WINTEREGG: Is the whole -- Just for the record, your Honor, is the whole answer stricken or just part of it?
MS. LAFATA: The whole answer to the last question asked by counsel is stricken.
MS. WINTEREGG: Thank you.
BY MR. DRAKE:
**Q. How much money did you pay to get your vehicle back?**
MS. WINTEREGG: Objection, relevance.
MS. LAFATA: Sustained.
MR. DRAKE: It goes directly to the ordinance. You have to bond the vehicle out. This is all --
MS. WINTEREGG: It goes --
MR. DRAKE: This is what is done. I mean, I --
MS. LAFATA: I understand that he had to pay to get his vehicle out, but he -- What we're contesting here is the basis for the tow.

FILED DATE: 5/31/2024 4:44 PM 20244002591



MR. DRAKE: Okay, understood.
BY MR. DRAKE:
**Q. Mr. Winfrey, have you ever been charged with fleeing and eluding a police officer?**
A. No.
**Q. Have you been charged with any crime-related offense?**
A. No.
**Q. Has anybody in your house been charged with any crime-related offense?**
A. No.
MR. DRAKE: Thank you. That's all.
MS. LAFATA: Any questions?
MS. WINTEREGG: No, your Honor.
MS. LAFATA: All right, any other evidence?
MR. DRAKE: That's all I have, your Honor.
MS. LAFATA: All right --
MR. DRAKE: I just have a closing.
MS. LAFATA: -- you rest?
MR. DRAKE: Correct.
MS. LAFATA: Argument?

CLOSING ARGUMENT
BY MS. WINTEREGG:

Your Honor, the basis for the tow, all



the Village needs to prove is by a preponderance of the evidence that the Village had the authorization to tow the vehicle.

This tow occurred under Maywood Village Code 99.62(a) which is -- which deals with eluding a police officer, and I'm only going to read portions of the Code into it.

It says: A motor vehicle used to commit the offense of aggravated fleeing or attempting to elude a police officer -- a peace officer is subject to seizure and impoundment.

The offense of aggravated fleeing or attempting to elude a police officer is committed by a driver or operator of a motor vehicle who, having been given a visual or audible signal by a peace officer directing such driver or operator to bring his vehicle to a stop, willfully fails or refuses to obey such direction, increases his or her speed, extinguishes his or her lights or otherwise flees or eludes -- attempts to elude the police officer and either, and I'm only going to read the section that is relevant here which is (4) involves disobedience of two or more official traffic control devices, and I won't



read the rest of the section.

At this point, your Honor, the Village has produced evidence that the vehicle, which notably it says a motor vehicle, it does not deal with who is driving the vehicle, with the license plate of DT24013 for the police report and the incriminating evidence did represent that he did -- this vehicle did go through at least two traffic control devices.

It was indicated that the officer did put on his lights and then the vehicle went through these traffic control devices and as well sped along.

It's the Village's position that they did have a right to tow this vehicle. Putting it out, there is nothing within the Maywood code that requires an arrest of any kind; and, again, your Honor, this is only related to the vehicle, not to who is driving it.

There has been no police report, nothing else to contradict the fact that this vehicle with this license plate DT24013 was not eluding the police.

In fact, all the evidence presented



indicates that this particular vehicle did, in fact, elude the police; and, therefore, the tow was proper. The Village did have the authorization to tow it. Thank you.

MS. LAFATA: Counsel, go ahead.

CLOSING ARGUMENT
BY MR. DRAKE:

Thank you. I have a few, you know, constitutional issues with this facially as it applies, but since this is an Administrative Court, I'm going to save everybody the time.

Counsel said in her close that no evidence was presented that we didn't -- that the vehicle did not elude police. It's not our burden to prove. It's their burden to prove that this occurred. I don't think they've met that burden, your Honor.

They've submitted a police report. The officer that allegedly witnessed this presented no testimony. An unrelated police officer was called. The unrelated test -- police officer stated that their vehicles -- I mean, I guess they do have dashcam sometimes. I don't know if this one did or didn't, but I didn't hear

FILED DATE: 5/31/2024 4:44 PM 20244002591



anything about video recorded evidence.

And Mr. Winfrey testified that he was not driving. Nobody in his home had the authority to drive this. All that they've presented that this did occur they said was the police report and they -- a picture that I guess occurred on that time.

I'm not very familiar with this vigilante system or how it operates, and I don't believe the record is sufficient for us to make any determination as to the truthfulness of that piece of evidence.

And finally, as the statute says, this gives the authority for the Village of Maywood to impound the vehicle found within its territory that it admits that it believes has violated one of the numerous ordinances.

This occurred outside of the Village of Maywood in which my client was in Cicero. He was detained. He was not arrested. His vehicle was towed, and he was fined for it.

So I would just ask this Court to find in favor of my client and refund him the bond that he has paid for the detainment of his



vehicle.

MS. LAFATA: All right, anything in rebuttal?

REBUTTAL ARGUMENT
BY MS. WINTEREGG:

Yes, your Honor. This is a preponderance of the evidence. That's 50 percent in the feather. The police reports are evidence here, and the police report distinctly says that this vehicle with that license plate eluded police under the tow.

As for the system, the vehicle detection reader, I do want to remind the Court that the rules of evidence don't necessarily apply. It only needs to be a piece of evidence on which a reasonable person would rely upon. That's within the Illinois Administrative Code, and this is coming in under an administrative code here.

As for, you know, Maywood Police are allowed to put things into LEADS which is something that the detective referred to, and therefore the tow was proper. Thank you.

MS. LAFATA: All right, I'm going to



address a few things here. All right, and I'm going to hold over my ruling because I do want to do a little bit of research on one issue.

So what I will address today though is the statute for live code for aggravated fleeing and eluding and the -- and officer's ability to tow a vehicle pursuant to any violation of aggravated fleeing and eluding.

I do believe that the Village has met their burden on that since it's a preponderance of the evidence.

There was no objection to the admission of the police report. The police report is certainly relevant and certainly reliable. A reasonable person would rely on the police report as documentation of what took place at the time.

So I am -- I'm giving deference to what's relayed in the police report. That being that the officer observed the vehicle in question with the license plate registration DT24013 traveling at 45 miles an -- 45 miles an hour in a 30 mile an hour zone. That there giving the officer probable cause to initiate the traffic stop.



On upon illuminating the lights and sirens of the vehicle, the vehicle took off at a high rate of speed disregarding a stop sign at 12th Avenue and Madison reaching speeds in excess -- and reached speeds of 80 miles an hour.

The vehicle, in the Court's eyes, certainly disregarded two traffic control devices; and additionally, the Court sees that the vehicle traveled at a rate of at least 25 -- 21 miles an hour over the speed limit.

So I think there's no issue with the basis of the stop based on the actions of the vehicle that day.

I do -- So the officer in question -- I don't believe there's any issue with the officer placing the vehicle into LEADS to be towed at a future date and time because there was -- he certainly had enough evidence that the vehicle committed the offense of aggravated fleeing and eluding.

I am -- I also believe the Vigilant system. There was no objection to its admission, to the foundation of it -- of how the system works. The report itself was not objected to. I

FILED DATE: 5/31/2024 4:44 PM 20244002591



-- Even if it was, I do believe that this is the system that is used within the Village of Maywood quite frequently.

The -- I do believe it to be relevant and reliable as well that I will note here that on Exhibit 8, which is the vehicle detection report, the license plate does match the license plate of the vehicle that was driven; although, it doesn't appear to be contested that this vehicle was driven that evening.

I haven't heard any evidence -- Well, I have heard evidence that the Respondent was not the driver of the vehicle. I have not heard any evidence that this vehicle was not driven on that evening.

This is -- It is the burden of the Village. The Village had met their burden at the close of their case-in-chief, that being a preponderance of the evidence.

Nothing -- No evidence provided by the Respondent has at this point -- No evidence -- There's no evidence submitted by the Respondent that would put the burden -- would shift the burden at this point.



The question that I would like to take a second to look -- take some time to look into is whether or not the Village of Maywood had the ability to tow the vehicle from Cicero. That is something that I would like to look into.

I need to, one, look into the fact of whether -- its relevance in this -- in this case; and if it is relevant in this case, what type of jurisdiction, and I believe this will all be pursuant to the Code.

So that's just the research I'd like to do, whether or not they had the authority to tow a vehicle from a neighboring jurisdiction which I believe -- I believe they do. I just want to confirm that before entering a finding today. So --

MS. WINTEREGG: Your Honor, if I may.

MS. LAFATA: Yes.

MS. WINTEREGG: We could also do short briefs if that would assist you within that issue of towing from Maywood or towing from Cicero simply just for preservation of the record to make sure that everything is --

MS. LAFATA: All right.



MS. WINTEREGG: -- considered that way.

MS. LAFATA: That's actually probably a good idea. So here's what I'll say. Let's take a look at the calendar here.

How much time would everyone need to submit just a short brief on that issue?

MR. DRAKE: Are we just -- just each side one brief or are we doing, like, replies and responses?

MS. LAFATA: Each -- If you would like to -- I'm not going to require replies and responses. I don't think it's necessary.

MR. DRAKE: I could have a brief in a week.

MS. LAFATA: I'm sorry?

MR. DRAKE: I could have a brief in a week.

MS. WINTEREGG: And I would need --

MS. LAFATA: We could do about -- I'm going to give you more time than that.

MS. WINTEREGG: I would need at least two weeks, your Honor, just because I'm going to be in court most of next week.

MR. DRAKE: I just want to clarify that this would put off, like, the final judgment, right? The final judgment wouldn't be until you



rule after the briefs because I don't want to miss, like --

MS. LAFATA: So here's --

MR. DRAKE: -- the window for judicial review.

MS. LAFATA: Yes. So the final judgment will not be put in place until I've reviewed the briefs, and we're going to come back here on Monday. We're not here on Mondays. Okay.

MR. SPEAKER: Our next hearing date is March 1st.

MS. LAFATA: Okay, so March 1st.

MR. DRAKE: I'm on trial March 1st.

MS. LAFATA: Okay.

MR. DRAKE: Which is why we didn't get the kick extension.

MR. SPEAKER: March 15th.

MS. LAFATA: All right.

MS. WINTEREGG: I just -- For March 15th, I just want to remind the Court that we do have the code enforcement that day. That's usually a pretty busy call.

I'm not opposed to it. I just -- I don't know if maybe we want to schedule it for

FILED DATE: 5/31/2024 4:44 PM 20244002591

41

like 11:00 or do it a little bit earlier.
MS. LAFATA: All right, here's what I'm going to do. I'm going to hold over for ruling -- I don't want to go into the -- I don't want to go too far out. So give me one moment.
MR. DRAKE: Is there a -- Can you issue it in absentia?
MS. LAFATA: I can.
MR. DRAKE: I wouldn't object.
MS. WINTEREGG: I would not object to that either.
MS. LAFATA: Okay, all right, so then let's do this. I will -- I'd like the issue briefed by March 1st, give everybody that much time to brief. So -- And I will get a response out to everybody by March 15th.
MR. DRAKE: And --
MS. LAFATA: And issue a ruling by March 15th.
MR. DRAKE: -- just submit those briefs by e-mail?
MS. LAFATA: Submit -- Yes. You can submit the brief to service, s-e-r-v-i-c-e, @ Lafata, L-a-f as in Frank a-t as in Thomas a law.com.

42

Just have them submitted by March 1st. I will then issue a ruling by March 15th.
MS. WINTEREGG: And, your Honor, just so we're clear for the record, page limit, five pages, seven pages?
MS. LAFATA: Five pages.
MS. WINTEREGG: Okay.
MS. LAFATA: I think that will be enough.
MR. DRAKE: Can we motion for a longer brief?
MS. LAFATA: If you guys want to agree on a page length, it does not matter to me.
MS. WINTEREGG: We can talk about it. I'm just trying to, like, make sure that we're on --
MS. LAFATA: All right, ten pages.
MS. WINTEREGG: -- the same page.
MS. LAFATA: Ten pages.
MR. DRAKE: Yeah, I can be pretty verbose. I'd prefer at least ten.
MS. LAFATA: All right.
MS. WINTEREGG: I just don't want, like, a, you know, 70 page brief.
MS. LAFATA: Ten pages.
MS. WINTEREGG: Ten pages, all right.

43

MS. LAFATA: It's the limited issue of whether Maywood has the authority to tow a vehicle from -- out from a different jurisdiction.
MR. DRAKE: Do you want a table of contents on this?
MS. LAFATA: No, we're good. Okay, all right, I'll issue a ruling by March 15th, and I will mail it. Make sure that you provide me with a mailing address that you would like it to be sent. So I'll mail it, but I will also send it in an e-mail to each of you as well.
MS. WINTEREGG: Thank you.
MR. DRAKE: Was it service@lafatalaw.com?
MS. LAFATA: Yes. Any issues with getting in contact with me I'm sure you can --
MR. DRAKE: Yes, she's been very communicative.
MS. LAFATA: Okay, all right, thank you everyone. Everyone did a very nice job today.
MS. WINTEREGG: Thank you.
MR. DRAKE: Thank you.
MS. LAFATA: I'm going to hold on -- Well, no, I'm going to tender the exhibits back. The

44

exhibits itself are not relevant to the issue that I want to research.
MS. WINTEREGG: Thank you.
(WHICH WERE ALL THE PROCEEDINGS HAD.)
* * *

FILED DATE: 5/31/2024 4:44 PM 20244002591



REPORTER'S CERTIFICATE

I, CYNTHIA A. PAVESICH GOOD, Certified Shorthand Reporter within and for the State of Illinois, do hereby certify that I reported in computerized shorthand the recorded proceedings had of the said cause, and that the foregoing is a true and correct transcript of my shorthand notes so taken as aforesaid.

C.A. Pavesich Good

Cynthia A. Pavesich Good, CSR
CSR License # 084-003483

FILED DATE: 5/31/2024 4:44 PM 20244002591


**A**

**a-t** 41:24
**a.m** 16:6
**ability** 35:6 38:4
**above-captioned** 1:10
**absentia** 41:7
**accepted** 24:13
**actions** 36:12
**additionally** 36:8
**address** 35:1,4 43:10
**administrative** 1:1 2:5 7:4,23 32:10 34:17,18
**administrators** 25:14
**admission** 21:4 35:12 36:22
**admits** 33:16
**admitted** 3:23,23 7:21 11:16 21:21
**advised** 6:15 10:1
**aforesaid** 45:10
**aggravated** 7:1,4 19:13 30:9,12 35:5,8 36:19
**agree** 42:11
**ahead** 10:12 27:6 27:6 32:5
**allegedly** 32:19
**allowed** 34:21
**aloud** 8:1
**amount** 7:5
**answer** 24:8,13 28:6,8
**anybody** 24:16 26:16 29:9
**anyway** 27:15
**Apartment** 6:23
**apologize** 27:24 28:1
**appear** 37:9
**appeared** 2:5,8 2:11
**applies** 32:10
**apply** 34:15
**approximately** 5:22 14:9 16:20 17:24
**argument** 3:10 3:11,12 5:2,8 17:5 29:21,22 32:6 34:4
**arrest** 19:20 31:17
**arrested** 33:20
**asked** 28:9
**assist** 38:20
**assume** 18:24
**attached** 8:21
**attempted** 6:6
**attempting** 30:10 30:13
**attempts** 30:20
**audible** 30:15
**Audio** 8:12 9:7 9:16,23 10:11 11:2
**authority** 24:17 26:16,17,24 33:4,14 38:12 43:2
**authorization** 23:9 24:21 26:4 30:3 32:4
**Avenue** 6:3,5,12 6:16,19,21,23 16:12,17,18 36:4
**aware** 25:4 27:15

**B**

**back** 8:19 28:13 40:8 43:24
**based** 14:24 36:12
**basis** 4:13 20:6 26:13 28:24 29:24 36:12
**bearing** 5:24
**becoming** 19:1
**began** 6:9
**behalf** 2:8,11 5:1
**believe** 7:22 18:15,18 20:18 33:10 35:9 36:15,21 37:1,4 38:9,14,14
**believes** 33:16
**bit** 35:3 41:1
**black** 5:23 8:21
**blocks** 16:21
**bond** 28:17 33:23
**break** 20:13
**brief** 12:20 39:6,8 39:13,15 41:15 41:23 42:10,22
**briefed** 41:13
**briefly** 17:9,17 22:3
**briefs** 38:20 40:1 40:8 41:20
**bring** 30:17
**burden** 4:17 32:15,15,17 35:10 37:16,17 37:23,24
**Bureau** 11:9
**Buren** 6:3
**busy** 40:22

**C**

**C** 2:1
**calendar** 39:4
**call** 4:20,22 11:5 21:24 40:22
**called** 12:5 14:16 22:12 32:21
**calls** 25:14
**cameras** 12:22 14:10 17:23
**capture** 13:17,19 13:20
**captures** 13:5
**capturing** 13:18
**car** 13:4,9
**Carrie** 2:7 4:7
**cars** 13:6 17:17
**case** 4:4 38:7,8
**case-in-chief** 37:18
**catching** 14:18
**caught** 6:4
**cause** 35:23 45:8
**certainly** 35:14 35:14 36:7,18
**CERTIFICATE** 45:1
**Certified** 45:5
**certify** 45:6
**chance** 7:9
**charged** 19:14 29:3,6,9
**Chevy** 5:24 8:12 8:20
**Cicero** 25:6 26:18 27:1,8,10 27:11,13,22 33:19 38:4,21
**clarify** 39:22
**clear** 8:19 20:22 42:4
**client** 5:2 33:19 33:23
**close** 19:10,11 32:12 37:18
**closing** 3:10,11 17:6 29:18,22 32:6
**code** 30:5,7 31:16 34:17,19 35:5 38:10 40:21
**color** 8:21
**com** 8:3 9:1,12,20 10:7,20
**come** 22:4 40:8
**comes** 21:19
**coming** 8:19 27:20 34:18
**commit** 30:9
**committed** 19:8 20:1 30:13 36:19
**common** 18:20 18:21,22 19:22 19:24 20:3
**communicative** 43:18
**compound** 20:12
**computerized** 45:7
**conduct** 6:6
**confirm** 38:15
**cons** 27:16
**considered** 39:1
**constitutional** 32:9
**contact** 43:16
**contents** 43:5
**contested** 37:9
**contesting** 4:13 26:13 28:24
**continue** 24:2 28:4
**continued** 6:18
**Continuing** 8:15
**contractor** 15:5
**contradict** 31:21
**control** 30:24 31:9,12 36:7
**copy** 9:16
**correct** 9:9 11:13 13:10 15:6 18:12 19:3,12 29:20 45:9
**counsel** 5:17 7:9 13:23 21:22 28:1,9 32:5,12
**course** 15:8
**court** 32:11 33:22 34:13 36:8 39:21 40:20
**Court's** 36:6
**credentials** 15:1
**crime** 19:7
**crime-related** 29:7,10
**crimes** 20:1
**Cross-Examin...** 3:5 17:11
**cross-examine** 4:21
**crowded** 17:13

FILED DATE: 5/31/2024 4:44 PM 20244002591




**CSR** 45:15,16
**cuz** 25:3
**Cynthia** 45:4,15

**D**

**D** 3:1
**D-e-r-i-c-k** 22:22
**dashcam** 18:17 32:23
**dashcams** 17:18 18:8,19
**date** 14:21 16:2,5 23:7,11 36:17 40:10
**dates** 23:1 26:5
**David** 6:1 16:8
**day** 1:11 36:13 40:21
**deal** 7:13 31:4
**deals** 30:5
**December** 25:6,8 25:16 27:10
**deference** 35:17
**definitely** 20:1
**department** 1:1 5:15 11:8 12:11 20:9 27:12,12 27:13,14
**depends** 18:10,11 18:19 19:9
**Derick** 2:11 3:7 4:1,9 8:20 22:10,18
**DERRICK** 1:6
**detained** 25:18 27:9,11,13 33:20
**detainment** 33:24
**detection** 15:15 34:13 37:6
**detective** 11:7 12:10,12,13 15:9 16:1 17:8 17:15 18:24 19:1 22:6 34:22
**detector** 3:22 21:13
**detectors** 12:18
**determination** 33:11
**devices** 30:24 31:9,12 36:8
**different** 14:12 23:1 43:3
**Direct** 3:4,8 12:7 22:14
**directing** 30:16
**direction** 30:18
**directly** 28:16
**disobedience** 30:23
**dispatch** 6:15,24 7:8
**disregarded** 6:11 36:7
**disregarding** 6:19 36:3
**distinctly** 34:9
**document** 13:22 14:5 15:20
**documentation** 35:16
**documents** 5:13
**doing** 39:8
**Drake** 2:10 3:6,8 3:11 4:9,9,15 7:17,22 11:14 15:18 17:9,12 18:4 20:14 21:1 21:24 22:3,15 24:12,14 26:1,9 26:14,22 27:3,7 27:21,24 28:11 28:16,20 29:1,2 29:12,16,18,20 32:7 39:7,13,15 39:22 40:4,13 40:15 41:6,9,17 41:20 42:9,18 43:5,14,17,22
**drive** 23:11 24:17 33:4
**driven** 37:8,10,14
**driver** 30:14,16 37:13
**driving** 6:1,14 13:5 23:5 24:21 31:5,19 33:3
**DT** 5:24
**DT24013** 8:13 31:6,22 35:20
**Due** 6:14

**E**

**E** 2:1,1 3:1
**e-mail** 41:21 43:12
**earlier** 41:1
**easier** 7:12
**eastbound** 6:10 6:18 8:13,14,15
**eight-hour** 15:3
**either** 12:23,23 13:15 30:21 41:11
**elude** 30:10,13,20 32:2,14
**eluded** 34:10
**eludes** 30:20
**eluding** 7:2,5 19:13 29:4 30:6 31:23 35:6,8 36:20
**en** 10:17
**enforcement** 19:24 20:7 40:21
**enter** 15:1,15 20:10
**entered** 6:24 11:11
**entering** 38:15
**entitled** 20:20
**equipped** 18:18
**especially** 20:19
**essentially** 14:23 15:4
**estimation** 17:20
**evening** 37:10,15
**everybody** 32:11 41:14,16
**evidence** 4:18,24 5:1 7:11,21 11:4,12,19 15:16,22 17:5 21:19 29:15 30:2 31:3,7,24 32:13 33:1,12 34:7,8,14,15 35:11 36:18 37:11,12,14,19 37:20,21,22
**Examination** 3:4 3:8 12:7 22:14
**examined** 12:5 22:12
**excess** 36:4
**exhibit** 3:15,16 3:17,18,19,20 3:21,22,23,23 8:5,6,7,8,10 9:3 9:5,13,14,20,21 10:6,9,21,23 11:18 13:24 14:1 15:21 21:8 21:12 37:6
**exhibits** 3:14 11:11,17 21:5,9 21:20 43:24 44:1
**extension** 40:16
**extinguishes** 30:19
**eyes** 36:6

**F**

**facially** 32:9
**fact** 31:21,24 32:2 38:6
**fails** 30:17
**familiar** 12:17 33:8
**far** 41:5
**Farrow** 9:24
**favor** 33:23
**feather** 34:8
**February** 1:11
**felonious** 20:5
**felony** 7:1 19:12
**field** 13:17
**file** 25:1,3
**final** 39:23,24 40:6
**finally** 33:13
**find** 33:22
**finding** 38:15
**fine** 17:13
**fined** 33:21
**first** 7:13 22:18 22:22 23:1
**five** 16:20 17:24 18:1 42:4,6
**fixed** 12:23,24 13:4,8,14,15
**flee** 6:10
**fleeing** 7:1,4 19:13 29:4 30:9 30:12 35:5,8 36:19
**flees** 30:20
**follows** 12:6 22:13
**Ford** 18:16
**foregoing** 45:9
**found** 33:15
**foundation** 36:23
**four** 12:13 17:24 18:1
**Frank** 9:18 41:24
**frequently** 37:3
**Friday** 1:11
**further** 7:6
**future** 36:17

**G**

**generally** 18:6,9 19:7
**getting** 43:15
**girl** 23:17
**girlfriend's** 23:18
**give** 12:20 13:1 17:20 23:9 24:16 39:18 41:5,14

FILED DATE: 5/31/2024 4:44 PM 20244002591



**given** 5:16 30:15
**gives** 26:16,16 33:14
**giving** 35:17,22
**go** 5:2,7 10:12 14:24 15:2 27:1 27:6,6 31:8 32:5 41:4,5
**goes** 23:18 26:19 28:16,19
**going** 4:18,18 8:1 10:13 13:22 14:18 16:11 17:1 21:24 22:24 23:1 24:5 28:2,3 30:6,21 32:11 34:24 35:2 39:11,17 39:20 40:8 41:3 41:3 43:23,24
**gonna** 20:1,7 27:4
**good** 39:3 43:7 45:4,15
**gotta** 14:24
**grab** 20:2
**group** 5:13
**guess** 32:22 33:6
**guys** 42:11

**H**

**Hang** 26:2
**happen** 18:13
**happened** 25:16
**hear** 32:24
**heard** 37:11,12 37:13
**hearing** 1:10 2:5 17:1 40:10
**HEARINGS** 1:1
**high** 6:10 36:3
**hold** 7:4 35:2 41:3 43:23
**home** 33:3
**Honor** 5:8,13 7:7 8:9 11:5,11 17:3 21:3,19 28:1,6 29:14,16 29:24 31:2,18 32:17 34:6 38:17 39:20 42:3
**hour** 6:2,2,13 35:21,22 36:5 36:10
**hours** 5:22
**house** 23:18 24:16 29:9

**I**

**id** 3:15,16,17,18 3:19,20,21,22 9:24
**idea** 39:3
**identification** 8:11 9:6,15,22 10:10,24 14:2
**identify** 14:7
**ILIR** 3:4 12:3
**Illinois** 1:1 5:24 34:17 45:6
**illuminating** 6:8 36:1
**impound** 19:5,8 33:15
**impounded** 19:19
**impoundment** 30:11
**impression** 26:15
**imputing** 20:16
**inaudible** 7:18,23 8:12,15,18,22 9:7,17,23 10:4 10:11 11:2 25:18
**incident** 25:2 26:6
**increases** 30:18
**incriminating** 31:7
**indicated** 31:10
**indicates** 32:1
**information** 20:16
**initiate** 35:23
**intersection** 13:1
**intersections** 14:12
**introduce** 12:9 13:24
**investigation** 11:8 18:5
**investigations** 12:11 15:12 17:22 18:6
**involved** 20:20
**involves** 30:23
**issue** 4:12 35:3 36:11,15 38:20 39:6 41:6,13,18 42:2 43:1,8 44:1
**issues** 32:9 43:15
**ITE** 6:15,24

**J**

**Jequan** 9:24
**job** 19:4 43:20
**judgment** 39:23 39:24 40:6
**judicial** 40:4
**jurisdiction** 38:9 38:13 43:4

**K**

**keys** 24:18
**kick** 40:16
**kind** 13:8,8 18:13 31:17
**kinds** 13:7
**know** 17:14 18:13 20:6,7 25:5 32:8,23 34:20 40:24 42:22
**knowledge** 18:17 24:20 25:9

**L**

**L-a-f** 41:24
**Lafata** 2:4 4:1,4 4:11,16 5:5,9 7:15,20,24 8:5 9:3 11:1,6,13 11:15 15:17,19 17:7,10 18:1,3 21:4,11,14,17 21:20 22:2 23:16,20,22 24:1,4,8,11,13 26:2,7,12,21 27:2,5,23 28:2 28:8,15,22 29:13,15,17,19 29:21 32:5 34:2 34:24 38:18,24 39:2,10,14,17 40:3,6,12,14,18 41:2,8,12,18,22 41:23 42:6,8,11 42:15,17,20,23 43:1,7,15,19,23
**lane** 13:16,16
**lanes** 13:17
**law** 19:24 20:7
**law.com** 41:24
**LEADS** 7:1,2 20:3,11,17 34:21 36:16
**left** 7:18 27:16
**legally** 26:14
**length** 42:12
**let's** 5:18 14:17 39:3 41:12
**license** 12:17,22 13:11,20 14:17 15:8 16:7 31:5 31:22 34:10 35:20 37:7,7 45:16
**light** 6:19
**lights** 6:9 30:19 31:11 36:1
**limit** 36:10 42:4
**limited** 43:1
**listed** 16:7
**little** 35:3 41:1
**live** 23:12 35:5
**located** 7:3
**location** 16:9,11
**lock** 27:17
**long** 12:12,14 19:7
**longer** 42:9
**look** 38:2,2,5,6 39:4
**looks** 4:11 10:1
**lot** 13:2

**M**

**Madison** 6:5,10 6:12,17,18,20 6:21 8:13,14,16 8:17 16:19 36:4
**mail** 25:12 43:9 43:11
**mailing** 43:10
**main** 8:3 9:1,12 9:20 10:7,20
**making** 19:20
**March** 40:11,12 40:13,17,19 41:14,16,19 42:1,2 43:8
**marked** 8:2,6,11 9:6,15,22 10:10 10:24 11:17 14:2 15:20
**match** 37:7
**matter** 1:10 42:12
**Maywood** 1:1,3 2:9 4:8 5:14 6:8 11:8 12:10,15 19:2,22 20:15 26:17,18,20,22 26:23,24 27:12 27:14,20,22 30:4 31:16 33:14,19 34:20 37:2 38:3,21 43:2
**mean** 14:14 19:16 20:5

FILED DATE: 5/31/2024 4:44 PM 20244002591



28:20 32:22
**MEGAN** 2:4
**Melrose** 6:23 8:20 10:1
**met** 32:16 35:9 37:17
**Michael** 2:10 4:9
**microphone** 7:14 22:5
**mile** 6:2 35:22
**miles** 6:1,12 35:21,21 36:5 36:10
**mistake** 21:14
**mobile** 13:3
**modified** 5:19
**moment** 41:5
**Monday** 40:9
**Mondays** 40:9
**money** 28:12
**morning** 16:6
**motion** 13:18,20 42:9
**motor** 30:8,14 31:4
**mounted** 12:24

**N**

**N** 2:1 3:1
**name** 4:5 11:6 14:15 22:16,18 22:18,22,23
**names** 22:21
**narrative** 5:17,20
**necessarily** 34:14
**necessary** 39:12
**need** 7:12 38:6 39:5,16,19
**needs** 30:1 34:15
**neighboring** 38:13
**nice** 43:20
**North** 6:22
**northbound** 6:2 13:16
**Nos** 3:23 8:10 11:18
**notably** 31:4
**note** 37:5
**notes** 45:10
**November** 5:19 5:21 18:14 23:2 24:24 25:4,7
**number** 10:22
**numerous** 33:17
**Nunez** 5:23 18:14

**O**

**obey** 30:18
**object** 41:9,10
**objected** 36:24
**objection** 7:15,20 11:13,14 15:16 15:18 20:12 21:21 23:13,22 25:19 26:7 27:18 28:2,3,14 35:12 36:22
**objections** 15:17
**observed** 5:23 35:19
**occur** 33:5
**occurred** 25:4 30:4 32:16 33:7 33:18
**offense** 29:7,10 30:9,12 36:19
**offenses** 10:3
**officer** 2:6 5:22 5:23 6:4,6,15 12:13 15:16,24 17:2 18:9,14 19:1,18 20:4,6 20:10,18,18,19 22:5 29:4 30:6 30:10,11,13,16 30:21 31:10 32:19,20,21 35:19,23 36:14 36:15
**officer's** 35:6
**officers** 25:10
**official** 30:24
**Oh** 7:19 11:10
16:14 19:15 27:24
**okay** 5:3,4,9 7:16 7:24 10:19,22 11:15 12:12,14 12:20 13:7,11 13:19,22 14:11 14:20 15:4,11 15:14,19 16:7 16:13 17:10 18:3 21:1,11,11 21:17,20 22:2 23:24 24:7,9,10 24:12 25:20 26:21 27:23 29:1 40:9,12,14 41:12 42:7 43:7 43:19
**once** 4:23 13:19
**ones** 13:3,14,15
**online** 14:24
**opening** 3:2 5:7 5:10
**operates** 33:9
**operator** 30:14 30:16
**opportunity** 4:21
**opposed** 40:23
**opposing** 5:17 13:23
**ordinance** 26:16 28:17
**ordinances** 33:17
**outside** 26:5,6,18 33:18
**Overruled** 23:16

**P**

**P** 2:1,1
**page** 42:4,12,16 42:22
**PAGE:LINE** 3:14
**pages** 42:5,5,6,15 42:17,23,24
**paid** 33:24
**Park** 6:23 8:20
10:1
**part** 28:7
**particular** 32:1
**passing** 13:6
**patrol** 18:9 19:1
**pause** 23:23
**Pavesich** 45:4,15
**pay** 28:12,23
**peace** 30:10,16
**pending** 10:2
**people** 23:12
**percent** 34:7
**person** 34:16 35:15
**Photo** 9:24
**picture** 33:6
**piece** 33:12 34:15
**place** 4:12 35:16 40:7
**placed** 7:6 13:15
**placing** 36:16
**Plaintiff** 1:4
**plate** 8:19 12:22 13:12,20 14:17 15:8 16:7 31:6 31:22 34:10 35:20 37:7,8
**plates** 12:17 13:5
**play** 7:11
**playing** 8:12 9:7 9:16,23 10:11 11:2
**please** 11:6 12:9 14:4,7 15:24 16:1 22:16
**point** 31:2 37:21 37:24
**pole** 12:24
**police** 3:15 5:15 7:20 8:6 11:8 12:11,13 21:8 25:1,3,10 26:4 27:11,12,13,14 29:4 30:6,10,13 30:21 31:6,20 31:23 32:2,14 32:18,20,21
33:6 34:8,9,11 34:20 35:13,13 35:15,18
**policy** 20:15
**populate** 14:18
**portions** 30:7
**position** 31:14
**prefer** 42:19
**preponderance** 4:17 30:1 34:7 35:10 37:19
**present** 2:3 5:1
**presented** 31:24 32:13,19 33:5
**presenting** 4:24 17:4
**preservation** 38:22
**pretty** 40:22 42:18
**prior** 18:24
**probable** 35:23
**probably** 39:2
**problem** 17:16
**proceedings** 1:9 44:4 45:8
**process** 20:9
**produce** 5:12
**produced** 15:4 31:3
**program** 14:8,13 14:15
**proper** 32:3 34:23
**prove** 30:1 32:15 32:15
**provide** 43:9
**provided** 7:9 37:20
**pursuant** 19:4 35:7 38:10
**pursuit** 6:16
**put** 7:14 20:3 31:11 34:21 37:23 39:23 40:7
**Putting** 31:15

FILED DATE: 5/31/2024 4:44 PM 20244002591




**Q**

**question** 16:14 19:18 20:13,13 24:5,5 28:9 35:19 36:14 38:1
**questions** 17:8 21:2 24:15 27:6 29:13
**Quincy** 16:12,18
**quite** 37:3

**R**

**R** 2:1
**Radio** 3:16,17,18 3:19,20,21
**rate** 6:10 36:3,9
**reached** 6:12 25:10 36:5
**reaching** 36:4
**read** 5:14 8:1 16:1 30:7,22 31:1
**reader** 3:22 21:13 34:13
**readers** 12:22 13:12 15:8
**really** 17:17 20:24
**reasonable** 34:16 35:15
**rebuttal** 3:12 34:3,4
**received** 11:18 15:21
**reckless** 6:14
**recognize** 14:4
**record** 4:6 5:14 7:12 9:4 21:8 22:17 28:6 33:10 38:22 42:4
**recorded** 1:9 33:1 45:7
**recording** 3:16 3:17,18,19,20 3:21 8:2
**recordings** 7:8 21:10
**refer** 5:13
**referred** 34:22
**refund** 33:23
**refuses** 30:18
**regarding** 24:4
**registered** 6:22
**registration** 5:24 35:20
**regularly** 15:7
**related** 31:18
**relates** 20:16
**relation** 16:18
**relayed** 35:18
**relevance** 23:13 25:21 27:18 28:14 38:7
**relevant** 26:6 30:22 35:14 37:4 38:8 44:1
**reliable** 35:14 37:5
**rely** 15:11 34:16 35:15
**remind** 34:13 40:20
**replies** 39:8,11
**report** 1:5 3:15 5:15,16,18 7:21 8:6 15:15 16:2 21:8 25:1,3 31:6,20 32:18 33:6 34:9 35:13 35:13,15,18 36:24 37:7
**reported** 45:7
**Reporter** 45:5
**REPORTER'S** 45:1
**reports** 34:8
**represent** 31:7
**require** 39:11
**requires** 31:17
**research** 35:3 38:11 44:2
**reserve** 17:5
**Respondent** 1:7 4:13 37:12,21 37:22
**responding** 5:22 6:4,6,14
**response** 41:15
**responses** 39:9,12
**rest** 4:24 21:5,18 29:19 31:1
**rests** 21:22
**review** 7:10 20:9 40:5
**reviewed** 40:7
**right** 4:1,4,11,16 5:2,5,6 16:3 17:3,7,13 19:12 21:4,14 23:3 24:3,11 26:20 26:22 27:2 29:15,17 31:15 34:2,24 35:1 38:24 39:24 40:18 41:2,12 42:15,20,24 43:8,19
**route** 10:17
**rule** 24:1 40:1
**rules** 7:23 34:14
**ruling** 35:2 41:4 41:18 42:2 43:8

**S**

**S** 2:1
**s-e-r-v-i-c-e** 41:23
**safety** 20:4
**save** 32:11
**says** 5:20 30:8 31:4 33:13 34:9
**schedule** 40:24
**school** 23:19
**search** 14:16
**searching** 14:17
**second** 23:20 26:2 38:2
**section** 30:22 31:1
**sedan** 18:16
**see** 5:18
**seen** 6:20
**sees** 36:8
**seizure** 30:11
**send** 43:11
**sent** 43:11
**service** 41:23
**service@lafata...** 43:14
**seven** 42:5
**Shemitraku** 3:4 11:7 12:3,10
**shift** 37:23
**short** 38:19 39:6
**shorthand** 45:5,7 45:10
**show** 13:22 27:14
**showed** 27:15
**shown** 13:23
**side** 39:7
**sign** 6:11 36:3
**signal** 30:15
**simply** 38:22
**Sir** 25:24
**sirens** 6:9 36:2
**six** 16:20
**software** 14:22
**son** 23:14
**sorry** 5:12 11:1 11:10,20 15:24 21:6 27:24,24 39:14
**south** 16:21
**southbound** 6:20 13:16 16:22
**SPEAKER** 7:14 7:18 40:10,17
**specific** 24:4
**sped** 31:13
**speed** 6:10 30:19 36:3,10
**speeds** 6:12 36:4 36:5
**spell** 22:20,20
**squad** 13:4,9 17:17
**standing** 22:5,6
**star** 5:23 6:8 8:3 9:1,12,19 10:7 10:20 11:7 12:10
**start** 4:19 8:4
**state** 4:5 11:6 22:16 45:6
**stated** 32:22
**Statement** 3:2 5:10
**station** 10:14,17
**statute** 33:13 35:5
**stop** 6:7,11 30:17 35:24 36:3,12
**stopped** 25:6
**street** 20:19
**stricken** 28:4,7,9
**subject** 26:12 30:11
**submit** 5:12 39:6 41:20,22,22
**submitted** 32:18 37:22 42:1
**sufficient** 33:10
**summary** 5:21 12:21
**supervisor** 20:23
**sure** 16:16 21:7 38:23 42:14 43:9,16
**sustained** 26:8 28:3,15
**system** 20:17 33:9 34:12 36:22,23 37:2

**T**

**table** 43:5
**take** 38:1,2 39:3
**taken** 16:10 45:10
**talk** 42:13
**ten** 12:13,16 42:15,17,19,23 42:24

FILED DATE: 5/31/2024 4:44 PM 20244002591




**tender** 17:1 43:24
**terminating** 6:16 8:16,17
**territory** 33:15
**test** 32:21
**testified** 12:6 22:13 33:2
**testify** 24:2
**testimony** 23:23 32:20
**thank** 11:20 16:13,24 17:14 21:18 24:12 28:10 29:12 32:4,8 34:23 43:13,19,21,22 44:3
**things** 34:21 35:1
**think** 10:21 19:24 26:14,22,24 32:16 36:11 39:12 42:8
**third-party** 15:5
**Thomas** 6:1 41:24
**time** 5:18 8:4 25:17 27:8 32:11 33:7 35:16 36:17 38:2 39:5,18 41:14
**times** 26:5
**today** 17:15 35:4 38:15 43:20
**told** 27:19
**Tom** 16:8
**tow** 4:12,14 26:4 26:13,17,20,23 27:3,20 28:24 29:24 30:3,4 31:15 32:2,4 34:11,23 35:7 38:4,12 43:2
**towed** 7:3 26:11 27:22 33:21 36:16
**towing** 38:21,21
**town** 14:10 26:10
**towns** 20:4
**track** 13:2
**traffic** 6:6 9:9 30:24 31:9,12 35:23 36:7
**training** 15:3,3
**transcript** 1:9 45:9
**transporting** 10:13
**traveled** 36:9
**traveling** 35:21
**trial** 40:13
**true** 45:9
**truthfulness** 33:11
**try** 24:15
**trying** 42:14
**two** 13:7 19:10 22:24 30:23 31:8 36:7 39:19
**type** 38:8

**U**

**underscore** 8:3,3 9:1,1,12,12,19 9:20 10:7,7,20 10:20
**understand** 28:22
**understood** 29:1
**unit** 6:8 12:11 17:23 18:15
**unmarked** 17:23
**unrelated** 32:20 32:21
**USD** 7:5
**use** 13:11 14:8 15:2,7,7 17:22
**usually** 17:22,23 23:15,18 40:21
**utility** 5:24 8:21

**V**

**V** 7:2
**valid** 8:19 9:23
**Van** 6:3
**vehicle** 3:22 6:5,7 6:9,11,18,20,22 6:24 7:1,3,6 14:16 15:7,15 18:10,11,13 19:8,19 20:2,5 20:8 21:13 23:5 23:11 24:17,18 24:21 26:5,10 26:17 27:17,20 28:13,17,23 30:3,8,14,17 31:3,4,5,8,11 31:15,18,22 32:1,14 33:15 33:20 34:1,10 34:12 35:7,19 36:2,2,6,9,13 36:16,18 37:6,8 37:10,13,14 38:4,13 43:3
**vehicles** 19:5 32:22
**verbose** 42:18
**Victor** 7:2
**video** 33:1
**view** 13:18
**Vigilant** 14:9,13 14:16 36:21
**vigilante** 33:9
**Village** 1:1,3 2:8 4:8,19,23 5:6 12:15 19:2,22 20:15 21:22 25:14 26:17,23 26:24 30:1,2,4 31:2 32:3 33:14 33:18 35:9 37:2 37:17,17 38:3
**Village's** 4:17 31:14
**violated** 33:16
**violation** 35:7
**visual** 30:15

**W**

**W-i-n-f-r-e-y** 22:23
**W-i-n-t-e-r-e-g-g** 4:8
**wanna** 17:14
**want** 8:22 20:11 21:7 22:4 34:13 35:2 38:14 39:22 40:1,20 40:24 41:4,5 42:11,21 43:5 44:2
**wanted** 20:8
**wants** 20:20
**wasn't** 25:3,4 27:15
**way** 39:1
**we'll** 5:2
**we're** 14:17 26:13 28:23 40:8,9 42:4,14 43:7
**weapons** 10:2
**website** 15:1
**week** 19:9 39:13 39:15,21
**weeks** 19:10 39:20
**went** 31:11
**willfully** 30:17
**window** 40:4
**Winfrey** 1:6 2:12 3:7 4:2,10 8:20 22:1,10,19,22 22:24 26:1 29:3 33:2
**Winteregg** 2:7 3:2,5,10,12 4:3 4:7,7 5:4,6,11 7:16,19 8:1,8 8:24 9:11,19 10:6,19 11:4,10 11:20 12:8 14:3 15:14,23 16:24 20:12 21:2,6,12 21:15,18 23:13 25:19,21,24 26:3,19 27:18 28:5,10,14,19 29:14,23 34:5 38:17,19 39:1 39:16,19 40:19 41:10 42:3,7,13 42:16,21,24 43:13,21 44:3
**witness** 11:5,7 12:5 17:4 18:2 22:12 23:14,17 23:21,24 24:3,7 24:10 25:20,23 27:19
**witnessed** 32:19
**witnesses** 4:20,22 21:23
**work** 12:21 18:20
**worked** 12:14
**working** 18:19 20:19
**works** 23:21 36:24
**wouldn't** 39:24 41:9
**wrong** 21:16

**X**

**X** 3:1

**Y**

**Yeah** 9:10 11:1 42:18
**year** 19:10,11
**years** 12:13,16
**yep** 21:11

**Z**

**zone** 6:2 35:22

**0**

**0231** 5:22
**05:10** 3:2
**07** 8:2
**08:10** 3:15,16
**084-003483** 45:16
**09** 8:24

FILED DATE: 5/31/2024 4:44 PM 20244002591

**09:05** 3:17
**09:14** 3:18
**09:21** 3:19

**1**

**1** 3:15 8:7,8,10 21:5,6,7,8,20
**1-7** 3:23 11:18
**1,000** 7:5
**10-4** 8:14,17,18 8:22,23 9:8,10 10:5,16,18
**10:09** 3:20
**10:23** 3:21
**11-5** 16:5
**11:00** 41:1
**11:17** 3:23
**12** 9:11
**12:07** 3:4
**122** 18:15
**122's** 6:9
**12th** 6:11 36:4
**14** 9:19 14:9
**14:01** 3:22
**15** 14:9
**15:20** 3:23
**15th** 40:17,19 41:16,19 42:2 43:8
**16** 10:6
**17** 10:19
**17:11** 3:5
**17th** 6:2,5 8:13 8:14
**1977** 6:22
**19th** 6:23
**1st** 6:20 16:11,17 16:18 40:11,12 40:13 41:14 42:1

**2**

**2** 3:16 6:23 8:5 8:10 11:11 21:9
**2:31** 16:5
**2019** 5:23 8:20
**2023** 5:19,21 16:5 18:14 23:4 24:24
**2023115023217** 9:2
**2023115023921** 9:12
**2023115024012** 9:20
**2023115024750** 10:8
**2023115025118** 10:21
**202311523054** 8:3
**2024** 1:11
**21** 36:10
**21st** 25:6,8,16 27:10
**22:14** 3:8
**23-21461** 4:4
**23-21561** 1:5
**23I7551** 7:2
**24013** 6:1 16:8
**247** 10:15
**25** 36:9
**251** 11:3
**27** 8:21 9:16
**29:22** 3:10
**2nd** 1:11

**3**

**3** 3:17 9:3,5
**30** 6:2 35:22
**315** 11:8 12:10
**32:06** 3:11
**327** 5:23
**34:04** 3:12

**4**

**4** 3:18 9:13,14 30:23
**45** 6:1 35:21,21

**5**

**5** 3:19 9:20,21
**50** 34:7
**5th** 5:21 6:19 18:14 23:2 24:24 25:4,7

**6**

**6** 3:20 10:6,9
**6004600220224...** 9:18
**60160** 6:23
**6th** 5:19

**7**

**7** 3:21 10:21,23 11:11 21:9
**70** 42:22
**7th** 6:16 8:16,17

**8**

**8** 3:22,23 13:24 14:1 15:21 21:7 21:12,20 37:6
**80** 6:12 36:5

**9**

**9** 21:5,6
**99** 10:2
**99.62(a)** 30:5

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**FOURTH MUNICIPAL DISTRICT – CIVIL DIVISION**

**DERRICK WINFREY,**

**Plaintiff,**

**v.**

**VILLAGE OF MAYWOOD, a Municipal Corporation,**

**Defendant.**

**Case No. 2024 400 2591**

## ORDER

This matter coming before the Court on Defendant, Village of Maywood's, motion to dismiss Plaintiff's complaint for administrative review, counsel for the Parties present via Zoom, and the Court advised on the premises, it is hereby ordered that:

1) The Plaintiff's response to the Village of Maywood's motion to dismiss shall be filed on or before June 25, 2024;
2) The Defendant's reply in support of its motion to dismiss shall be filed on or before July 2, 2024; and
3) Status hearing on the motion to dismiss scheduled for July 2, 2024, at 11:00 a.m. via Zoom: Meeting ID=914 3462 0283; Password=988648.

ENTER: 6/4/24

DATE: [signature] #2297

ENTERED
Judge Carl Evans, Jr.-2297
JUN 04 2024
IRIS Y. MARTINEZ
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

Order prepared by:

Allen Wall
Kaylee M. Hartman
Klein, Thorpe and Jenkins, Ltd.
120 South LaSalle Street, Suite 1710
Chicago, Illinois 60603
(312) 984-6400
Firm No. 90446
jawall@ktjlaw.com
kmhartman@ktjlaw.com

## IN THE CIRCUIT COURT OF COOK COUNTY ILLINOIS MUNICIPAL DEPARTMENT DISTRICT 4

**Plaintiff V Defendant** Derrick Winfrey-vs-Village of Maywood

Courtroom, 0112

20244002591

**PLAINTIFF's ATTY** Ho, Lam 6337050

**ADDITIONAL NAMES**

**COMPLAINT FILED, SUMMONS ISSUED, RETURNABLE TO CLERK OF THE CIRCUIT COURT**
04/19/2024

| CONTRACT | FILING FEE | ADDENDUM |
|---|---|---|
| Administrative Review - Ordinance Violation | 0.0000 | |

| DATE | JUDGE | ORDERS ENTERED |
|---|---|---|
| Judge Carl Evans, Jr.-2297 | JUN 04 2024 | P A/C Drake π given 21 days to resp to motion to dismiss, |
| | | D A/C Wall Δ given 7 to reply CFS / Status 7/2/24 @ 10 |
| | | Mill |
| Judge Carl Evans, Jr.-2297 | JUN 11 2024 | SOC POTS |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

Filer Selected Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Courtroom, 0112
System Generated Hearing Date: 7/2/2024 11:00 AM
Location: Court Room 0112
Judge: Evans, Carl Lauras, Jr.

FILED
6/25/2024 11:33 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
20244002591
Courtroom, 0112
28262330

FILED DATE: 6/25/2024 11:33 PM 20244002591

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**FOURTH MUNICIPAL DISTRICT**

DERRICK WINFREY,

Plaintiff,

v.

VILLAGE OF MAYWOOD,

Defendant.

Case No.: 20244002591

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT VILLAGE OF MAYWOOD'S MOTION TO DISMISS**

NOW COMES Plaintiff, Derrick Winfrey, by and through Counsel, Beyond Legal Aid, and responds to Defendant Village of Maywood's Motion to Dismiss. In support of such she states as follows:

**INTRODUCTION**

Plaintiff filed this suit seeking review of an administrative decision pursuant to 735 ILCS 5/3-103 on April 19, 2024. (Pl.'s Compl., Filed Apr. 19, 2024 ("Pl.'s Compl.")). There, Plaintiff raises both facial and as applied challenges to MVC § 99.26. (Pl.'s Compl.). Defendant Village of Maywood timely filed its Motion to Strike and Dismiss on May 31, 2024. (Def.'s Mot. to Strike, Filed May 31, 2024 ("Def.'s Mot.")). There, Defendant seeks to strike and dismiss portions of Plaintiff's Complaint for numerous reasons. Specifically, Defendant seeks to strike Paragraphs 3-7, 9-17, 28-33, 37, 38, 40, 41, 47 and 55-7 of Plaintiff's Complaint as impermissible new evidence under the Administrative Review Law ("ARL"), (Def.'s Mot., at 1); Counts I, III, V, VI, and portions of Plaintiff's Conclusion as beyond the scope of administrative review, (Def.'s Mot., at 5-6); Counts I, III, VI of Plaintiff's Complaint as not properly raised before the administrative

FILED DATE: 6/25/2024 11:33 PM 20244002591

agency, (Def.'s Mot., at 6); and strike Counts II, IV, and VII and legally insufficient as a matter of law, (Def.'s Mot., at 7).

In response, Plaintiff moves to amend his Complaint pursuant to 735 ILCS 5/2-615(d) and 735 ILCS 5/2-616. Plaintiff further concedes that Paragraphs 14, 37, and 38 should be stricken as well as Counts VI and VII. Notwithstanding Plaintiff's request to amend, Plaintiff further argues that Paragraphs 3-7 9-13, 15-17, 40, 41, 47, and 55-57 as well as Counts I, II, III, and IV are not subject to striking.

## ARGUMENT

A motion brought under 735 ILCS 5/2-615 challenges the legal sufficiency of a pleading. *Brogan v. Mitchell International, Inc.*, 181 Ill. 2d 178, 183 (1998). When reviewing a motion to dismiss a pleading under 735 ILCS 5/2-615, a court must determine whether the pleading provides sufficient factual allegations that, if established, could entitled the petitioner to relief. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 86 (1996). The reviewing court must accept all well plead facts as true and draw reasonable inferences from those facts in the light most favorable to the non-moving party. *Id.* at 86.

### I. PLAINTIFF'S COMPLAINT DOES NOT EXCEED THE SCOPE OF ADMINISTRATIVE REVIEW.

#### A. Paragraphs 3-7, 9-13, 15-17, 40, 41, 47, and 55-57 are not subject to striking.

Defendant argues that paragraphs 3-7, 9-17, 28-33, 37, 38, 40, 41, 47, and 55-57 should be stricken as they consist of information outside of the administrative record. (D.'s Mot., at 3). Plaintiff concedes that Paragraphs 14, 37, and 38 should be stricken. While each paragraph will be addressed individually, Defendant is, by and large, seeking to strike factual statements that are

FILED DATE: 6/25/2024 11:33 PM 20244002591

contained in the administrative record. Plaintiff concedes that he added some additional context but the crux of the factual assertions are based upon the record.

Defendant alleges that Paragraphs 3 through 7 of the Complaint should be stricken as they were not addressed before the Administrative Court. Paragraph 3 reads as follows: "On December 21, 2023, Plaintiff, a 70-year-old black man, was driving through Cicero on the way to a store with his close friend, George Woods, a 73-year-old black man." (Pl.'s Compl., ¶ 3). The fact that Plaintiff was detained in Cicero was addressed numerous times in the hearing. (Tr. 25:16 – 27:6 (argument regarding whether Plaintiff Counsel could ask Plaintiff where he was located when he was detained); 27:8-10 (Plaintiff stating he was in Cicero when he was detained); 27:11-13 (Plaintiff stating he was detained by Cicero Police); 27:22 -28:10 (Administrative Court sustaining Defendant Counsel's relevance objection concerning Maywood Police towing Plaintiff's vehicle from Cicero); 33:18-21 (Plaintiff Counsel arguing that Maywood Police had no authority to tow Plaintiff's vehicle from Cicero)).[1] As this fact was addressed in the hearing, and Plaintiff is not introducing any additional facts or evidence, merely context, Paragraph 3 should remain in its entirety. Paragraph 4 reads as follows: "For reasons then-unknown to Plaintiff, between six and eight unidentified, white Cicero Police Officers in multiple police vehicles surrounded Plaintiff, removed him from his vehicle, handcuffed him, searched his vehicle, and detained Plaintiff and Mr. Woods for approximately forty-five minutes." (Pl.'s Compl., ¶ 4). The fact that Plaintiff was detained by Cicero Police was addressed numerous times as evidenced by the testimony recorded in the transcript. (Tr. 25:16 – 27:6; 27:8-10; 27:11-13; 27:22 – 28:10; 33:18 -21). As this fact was raised in the hearing, Paragraph 4 should remain in its entirety. Paragraph 5 reads as follows: "Upon their release from detention, Plaintiff and Mr. Woods had to call an Uber from the scene as

[1] The transcript is attached hereto as Exhibit A.

FILED DATE: 6/25/2024 11:33 PM 20244002591

unidentified Cicero Police Officers informed Plaintiff that his vehicle was being seized by Maywood." (Pl.'s Compl., ¶ 5). The fact that Plaintiff was detained by Cicero Police was also addressed numerous times as evidenced by the testimony recorded in the transcript. (Tr. 25:16 – 27:6; 27:8-10; 27:11-13; 27:14 – 28:10; 33:18-21). As this fact was addressed multiple times in the administrative proceeding, Paragraph 5 should remain in its entirety. Paragraph 6 reads as follows: "Maywood Police Officers confiscated and towed Plaintiff's vehicle – from Cicero – without arresting, interrogating, charging, or detaining Plaintiff." (Pl.'s Compl., ¶ 6). The fact that Plaintiff was arrested and detained in Cicero was addressed numerous times as evidenced by the testimony recorded in the transcript. (Tr. 25:16 – 27:6; 27:8-10; 27:11-13; 27:22 – 28:10; 33:18-21). As this fact was addressed multiple times in the administrative proceeding, Paragraph 6 should remain in its entirety. Finally, Paragraph 7 reads as follows: "Five days and two holidays later, Plaintiff was able to recover his vehicle after being forced to pay $1,475 as ransom for an unsubstantiated violation of a local ordinance." (Pl.'s Compl., ¶ 7). The fact that Plaintiff had recovered his vehicle prior to the hearing was addressed. (Tr. 28:12 – 29:2). This fact was further attested to in Plaintiff's attached exhibits A and B, introduced as a part of Exhibit 1, and Plaintiff's supplemental briefing. See (Pl.'s Compl., Ex.'s A, B, C). As this fact was addressed multiple times in the administrative proceeding, Paragraph 7 should remain in its entirety.

Defendant further argues that paragraphs 9 through 17 should be stricken as outside the scope of the administrative record. Paragraph 9 reads as follows: "Under the plain text and Defendant's application of MVC § 99.26, any vehicle, anywhere in the State of Illinois, is subject to confiscation and towing based solely on the word of a single police officer – absent any supervisory oversight, judicial oversight, due process, warrant, or exigent circumstances." (Pl.'s

FILED DATE: 6/25/2024 11:33 PM 20244002591

Compl., ¶ 9). Paragraph 9 is clearly a legal conclusion, not a factual assertion, and is not subject to striking. Paragraph 10 reads as follows:

> Under the plain text and Defendant's application of MVC § 99.26, it does not matter whether the vehicle's owner was operating the vehicle at the time of the alleged violation. Nor does it matter if the vehicle's owner consented to – or had any type of privity with – the individual driving the vehicle at the time of the alleged violation.

(Pl.'s Compl., ¶ 10). Paragraph 10 is clearly a legal conclusion based upon Plaintiff's interpretation of the MVC § 99.26, not a factual assertion, and is not subject to striking. Paragraph 11 reads as follows: "Both the plain text and Defendant's application of MVC § 99.26 violate the Illinois Constitution." (Pl.'s Compl., ¶ 11). Paragraph 11 is clearly a legal conclusion not subject to striking. Paragraph 12 reads as follows: "Defendant's constitutional violations have caused harm to Plaintiff." (Pl.'s Compl., ¶ 12). Paragraph 12 is a legal conclusion not subject to striking. Paragraph 13 reads as follows: "As a direct result of Defendant's unconstitutional conduct, Plaintiff seeks damages to be made whole for Defendant's constitutional violations." (Pl.'s Compl., ¶ 13). Paragraph 13 is a legal conclusion not subject to striking. Plaintiff concedes that Paragraph 14 should be stricken. Paragraph 15 reads as follows: "Finally, on its face, MVC § 99.26 violates multiple provisions of the Illinois Constitution and, as such, the ordinance should be declared unconstitutional and stricken in its entirety." (Pl.'s Compl., ¶ 15). Paragraph 15 is a legal conclusion not subject to striking. Paragraph 16 reads as follows: "Defendant, through rules of its own making, has flaunted multiple provisions of this State's Constitution. This Complaint seeks redress." (Pl.'s Compl., ¶ 16). Paragraph 16 is a legal conclusion not subject to striking. Finally, Paragraph 17 reads as follows: "Plaintiff Derrick Winfrey is a retired laborer who worked for the City of Chicago for 37 years. Prior to November 5, 2024, Plaintiff had never been charged with a crime, convicted of a crime, or even arrested. Plaintiff is a resident of Cook County, Illinois." (Pl.'s

FILED DATE: 6/25/2024 11:33 PM 20244002591

Compl., ¶ 17). The fact that Plaintiff was never charged, convicted, or arrested was addressed in the administrative hearing. (Tr. 29:3-11).

Finally, Defendant argues that paragraphs 28-33, 37, 38, 40, 41, and 55-57 should be stricken as they were not elicited in the administrative hearing. Paragraph 28 reads as follows: "Over a month later, on December 21, 2023, Plaintiff was driving his vehicle with his friend George Woods through Cicero." (Pl.'s Compl., ¶ 28). The fact that Plaintiff was driving through Cicero was addressed numerous times, (Tr. 25:16 – 27:6; 27:8-10; 27:11-13; 27:22 – 28:10; 33:18 –21). As this fact was addressed multiple times in the administrative proceeding, Paragraph 28 should remain in its entirety. Paragraph 29 reads as follows: "For reasons unknown to Plaintiff, upon information and belief, unidentified Cicero Police Officers ran Plaintiff's license plate through the LEADS System." (Pl.'s Compl., ¶ 29). Plaintiff elicited testimony during the proceeding regarding the LEADS system, as such this Paragraph should remain in its entirety. (Tr. 20:3-24). Paragraph 30 reads as follows: "Upon information and belief, unidentified Cicero Police Officers viewed the LEADS felony vehicle alert entered by Officer Nunez." (Pl.'s Compl. ¶ 30). Plaintiff elicited testimony during the proceeding regarding the LEADS system, as such this Paragraph should remain in its entirety. (Tr. 20:3-24). Paragraph 31 reads as follows: "Unidentified Cicero Police Officers surrounded Plaintiff's vehicle with multiple vehicles, forced Plaintiff out of his vehicle, made him kneel on the side of a busy road, handcuffed him, searched his vehicle, and detained him and Mr. Woods for approximately 45 minutes." (Pl.'s Compl., ¶ 31). The fact that Plaintiff was detained in Cicero was addressed numerous times in the hearing. (Tr. 25:16 – 27:6; 27:8-10; 27:11-13; 27:22 – 28:10; 33:18-21). As such, Paragraph 31 should remain in its entirety. Paragraph 32 reads as follows: "Approximately 45 minutes after Unidentified Cicero Police Officers violently detained Plaintiff, he was allowed to call an Uber for himself and Mr.

FILED DATE: 6/25/2024 11:33 PM 20244002591

Woods." (Pl.'s Compl., ¶ 32). Defendant Maywood objected to Plaintiff Counsel's question on this factual assertion, (Tr. 25:22 – 28:10), regardless, this fact is merely explanatory and should remain in its entirety. Paragraph 33 reads as follows: "At some point after Plaintiff and Mr. Woods left the scene, Maywood Police Officers towed the vehicle from Cicero to Maywood. See Ex. A." (Pl.'s Compl., ¶ 33). Not only does Plaintiff cite a portion of the record to support this assertion, the fact that the vehicle was towed from Cicero was addressed numerous times. (Tr. 25:16 – 27:6; 27:8-10; 27:11-13; 27:22 – 28:10; 33:18-21). Plaintiff concedes that Paragraph 37 should be stricken. Plaintiff concedes that Paragraph 38 should be stricken. Paragraph 40 reads as follows: "Plaintiff was unable to recover his vehicle on December 21, 2023, as the towing company was closed for the evening by the time Plaintiff was able to travel to the Maywood Police Station." (Pl.'s Compl., ¶ 40). Plaintiff concedes that this was not part of the administrative record but argues that it is merely explanatory. Paragraph 41 reads as follows: "Plaintiff was unable to recover his vehicle over the next few days due to the holidays." (Pl.'s Compl., ¶ 41). Plaintiff concedes that this was not part of the record but argues that it is merely explanatory. Paragraph 55 reads as follows: "At close, Plaintiff argued that – notwithstanding additional constitutional challenges – under Defendant's ordinance, Defendant's agents had the authority to impound and tow Defendant's vehicle: In Maywood." This was explicitly addressed at the administrative hearing. (Tr. 33:13 – 34:1). Paragraph 56 reads as follows: "Plaintiff argued that by entering the felony alert into LEADS and by confiscating and towing Plaintiff's vehicle in another municipality, Defendant had exceeded its home-rule authority under the Illinois Constitution." (Pl.'s Compl., ¶ 56). This is an extension of the previous comment and was explicitly addressed in both parties' supplemental briefs. (Tr. 33:13 – 34:1); (Pl.'s Compl., Ex. C). As such, Paragraph 56 should remain in its entirety. Finally, Paragraph 57 reads as follows:

FILED DATE: 6/25/2024 11:33 PM 20244002591

> The Administrative Law Judge held that Defendant had proved by a preponderance of the evidence that Plaintiff's vehicle had committed Aggravated Fleeing and Eluding of a Police Officer and was subject to towing and seizure. This is despite the fact that there was no finding of fact by the Administrative Law Judge that either Plaintiff or any authorized representative of Plaintiff was operating Plaintiff's vehicle during the alleged violation.

(Pl.'s Compl., ¶ 57). This was explicitly addressed in the transcript and supplemental briefings. (Tr. 34:24 – 38:10); (Pl.'s Compl., Ex. C). As such, Paragraph 57 should remain in its entirety.

**B. Counts I, III, V, and Requests for Declaratory Relief do not Exceed the Scope of Administrative Review Law.**

Defendant argues that Plaintiff's Complaint is defective on its face as it exceeds the scope of Administrative Review Law. Plaintiff concedes that he exceeded the scope of Administrative Review Law in portions of his prayer for relief and agrees portions requesting damages should be stricken. Plaintiff also concedes that Count VI should be stricken as it is insufficient as a matter of law. The remainder of Defendant's arguments are unconvincing.

Defendant argues that this Court lacks authority to declare the ordinance unconstitutional. Defendant is mistaken. This Court is well within its authority to strike the ordinance as unconstitutional, and Plaintiff is not required to exhaust administrative remedies prior to seeking such relief. See, e.g., *Arvia v. Madigan*, 209 Ill. 2d 520, 533 (2004) ("A facial attack to the constitutionality of a statute, which presents purely legal questions, is not dependent for its assertion or its resolution on the administrative record."). While facial challenges do fall outside the scope of Administrative Review Law, there is nothing improper about bringing them ancillary to a complaint for Administrative Review. E.g., *Hearne v. Illinois State Bd. of Educ.*, 185 Ill. 2d 443 (1999). Both the administrative court and this Court are empowered to rule on whether the ordinance in question was applied in an unconstitutional manner. *Arvia*, 209 Ill. 2d at 530. As such, Counts I, III, and V should not be stricken from the Complaint.

FILED DATE: 6/25/2024 11:33 PM 20244002591

## II. COUNTS I AND III WERE SUFFICIENTLY RAISED BEFORE THE ADMINISTRATIVE AGENCY.

Defendant asserts that because Counts I, III, and VI were not raised before the administrative agency, these counts should be dismissed. Plaintiff argues that Count I and III were sufficiently addressed for this Court to review the counts. Plaintiff concedes that Count VI should be dismissed as it is insufficient as a matter of law.

Although Plaintiff did not explicitly state that he was raising an as applied challenge to the statute under Ill. Const. art. I, § 2 or Ill. Const. art. I. § 6, there are sufficient facts and testimony to warrant such claims. Especially when taken in conjunction with Plaintiff Counsel's assertion that Plaintiff has "a few, you know, constitutional issues with this facially as it applies [sic.][2] but since this is an Administrative Court, I'm going to save everyone the time." (Tr. 32:8-11).

Specifically, as it relates to Count I, Plaintiff alleges that his due process rights were violated as his property was taken and a fine was levied prior to being afforded any process. (Pl.'s Compl., ¶¶ 63-9). Plaintiff did attempt to testify to this, and some testimony was proffered, but the Administrative Judge did not allow any further testimony on the matter. (Tr. 28:12-24). While Plaintiff acknowledges that Administrative Review Law limits review of the issues to facts elicited at trial, forbidding Plaintiff from bringing any issues that Defendant objected to and that the Administrative Court sustained puts Defendant in a Catch-22 situation. Further, Plaintiff argued in his closing that: "They've submitted a police report. The officer that allegedly witnessed this presented no testimony. An unrelated police officer was called." (Tr. 32:18-21). All of these taken together provide a sufficient factual basis to maintain Count I of Plaintiff's Complaint. While

[2] Plaintiff acknowledges that his Counsel often speaks too quickly for court reporters but asserts that Plaintiff Counsel actually stated: "I have a few, you know, constitutional issues with this facially *and as applied* but since this is an Administrative Court, I'm going to save everyone the time."

FILED DATE: 6/25/2024 11:33 PM 20244002591

Plaintiff believes that an Amended Complaint will address any possible deficiencies, if this Court agrees that Count I should be stricken, Plaintiff argues that the proper remedy would be to remand this back to the Administrative Court to address this issue pursuant to 735 ILCS 5/3-111(a)(7).

As it related to Count III, Plaintiff argues that the ordinance violated his rights under Ill. Const. art. I, § 6 as his vehicle was confiscated and he was subjected to detention more than a month after the alleged incident based on the word of a single police officer without a warrant or exigent circumstances. (Pl.'s Compl., ¶¶ 74-78). Plaintiff addressed the time delay and lack of charges or arrest at multiple points in the hearing. (Tr. 19:4 – 20:24; 25:1-15; 29:3-11). Similar to Count I, Plaintiff was forbidden to fully get into this issue by ruling of the Administrative Court. (Tr. 25:17 – 28:10). While Plaintiff believes that an Amended Complaint will address any possible deficiencies, if this Court agrees that Count III should be stricken Plaintiff argues that the proper remedy would be to remand this back to the Administrative Court to address this issue pursuant to 735 ILCS 5/3-111(a)(7).

**III. COUNTS II AND IV ARE SUFFICIENT AS A MATTER OF LAW.**

Defendant argues that Counts II, IV, and VII are legally insufficient to state a facial challenge. Plaintiff concedes that Count VII is insufficient and should be stricken. Plaintiff argues that Counts II and IV are legally sufficient and should not be stricken.

Defendant argues that Count II should be dismissed as the allegations are directly contradicted in the Complaint. (Def.'s Mot., at 8). Defendant's argument is based on a fundamental misunderstanding of the type of process Plaintiff was entitled to: "Due process requires a fair trial before a fair tribunal and applies to both courts and administrative agencies performing adjudicating functions." *Dombrowski v. City of Chicago*, 363 Ill. App. 3d 420, 426 (1st Dist. 2005). This is a higher burden than "notice and an opportunity to be heard." (Def.'s Mot., at 8). The

FILED DATE: 6/25/2024 11:33 PM 20244002591

remainder of Defedant's argument fails as it is based on the underlying premise that all due process requires in this situation is notice and an opportunity to be heard.

Defendant argues that Count IV should be stricken as it overstates the scope of the statute. (Def.'s Mot., at 9). Defendant fails to meaningfully engage with Plaintiff's vagueness argument, instead it argues that Plaintiff has failed to allege that there is no circumstance that exists in which the ordinance is valid. (Id.). Plaintiff pleads that the plain language of the statute allows for a single police officer to make a determination that a vehicle has committed a felony and order its seizure absent any oversight – judicial or otherwise. (Pl.'s Compl., ¶¶ 9, 82). Defendant contends that the ordinance does not apply to any vehicle, "only to those that meet the criteria established in MVC § 99.26." (Def.'s Mot., at 9). A Police Officer making a determination that probable cause exists does not satisfy the text of Ill. Const. art. I, § 6.

Defendant has not made sufficient legal arguments to warrant striking Counts II and IV at this state of the pleadings. Defendant has failed to engage with Plaintiff's arguments, instead it argues that Plaintiff has not pled sufficient facts to prove that no situation exists in which the ordinance is valid. Plaintiff has provided the ordinance and made legal arguments, Defendant has failed to rebut those arguments, as such, Counts II and IV should stand.

## CONCLUSION

WHEREFORE Plaintiff, Derrick Winfrey, respectfully moves this Honorable Court for an order:

A. GRANTING him permission to amend his Complaint;

B. STRIKING Paragraphs 14, 37, 38;

C. STRIKING Counts VI and VII;

D. STRIKING requests for damages;

FILED DATE: 6/25/2024 11:33 PM 20244002591

E. DENYING the remainder of Defendant's Motion; and,

F. GRANTING him any such further relief that this Court deems just given the circumstances.

Respectfully submitted,

/s/ *Michael Drake*
One of Plaintiff's Attorneys

65698
Michael Drake
Natalie Lundak
Beyond Legal Aid
17 N State St. Suite 1380
Chicago IL 60602
312-678-3508
Mdrake1@beyondlegalaid.org
Nlundak@beyondlegalaid.org

FILED DATE: 6/25/2024 11:33 PM 20244002591

Ex. A

# IN THE MATTER OF:

# AUDIO FILE MAYWOOD v. WINFREY

# 23-21561

February 2, 2024

CYNTHIA A. PAVESICH & ASSOCIATES
(312) 214-1992
cagoodreporter@pavesich.com

FILED DATE: 6/25/2024 11:33 PM 20244002591



IN THE VILLAGE OF MAYWOOD, ILLINOIS
DEPARTMENT FOR ADMINISTRATIVE HEARINGS

VILLAGE OF MAYWOOD, )
)
Plaintiff, )
)
_ _ _ _ _ _ _ _ _ _ _ _ _ ) Report No. 23-21561
)
DERRICK WINFREY, )
)
Respondent. )

TRANSCRIPT of the recorded proceedings had at the hearing of the above-captioned matter on Friday, the 2nd day of February, 2024.



A P P E A R A N C E S

Present:

MS. MEGAN LAFATA,

appeared as Administrative Hearing Officer;

MS. CARRIE WINTEREGG,

appeared on behalf of the Village of Maywood;

MR. MICHAEL DRAKE,

appeared on behalf of Derick Winfrey;



I N D E X


Opening Statement.....................05:10
By Ms. Winteregg

ILIR SHEMITRAKU
Direct Examination....................12:07
By Ms. Winteregg
Cross-Examination.....................17:11
By Mr. Drake

DERICK WINFREY
Direct Examination....................22:14
By Mr. Drake

Closing Argument......................29:22
By Ms. Winteregg
Closing Argument......................32:06
By Mr. Drake
Rebuttal Argument.....................34:04
By Ms. Winteregg

EXHIBITS PAGE:LINE
Exhibit No. 1, id.....................08:10
(Police Report)
Exhibit No. 2, id.....................08:10
(Radio Recording)
Exhibit No. 3, id.....................09:05
(Radio Recording)
Exhibit No. 4, id.....................09:14
(Radio Recording)
Exhibit No. 5, id.....................09:21
(Radio Recording)
Exhibit No. 6, id.....................10:09
(Radio Recording)
Exhibit No. 7, id.....................10:23
(Radio Recording)
Exhibit No. 8, id.....................14:01
(Vehicle Detector Reader)
Exhibit Nos. 1-7, admitted............11:17
Exhibit No. 8, admitted...............15:20




MS. LAFATA: All right, is this Derick Winfrey.
MS. WINTEREGG: Yes.
MS. LAFATA: All right, Case No. 23-21461. Will everyone just state your name for the record.
MS. WINTEREGG: Carrie Winteregg, W-i-n-t-e-r-e-g-g, for the Village of Maywood.
MR. DRAKE: Michael Drake for Derick Winfrey.
MS. LAFATA: All right, it looks like there's an issue with a tow that took place, and the Respondent is contesting the basis for the tow?
MR. DRAKE: Yes.
MS. LAFATA: All right, since it's the Village's burden by a preponderance of the evidence, what I'm going to do is I'm going to have the Village start.
They'll call their witnesses. You will have the opportunity to cross-examine any witnesses that they call.
From there, once the Village is done presenting evidence, they'll rest and then you

FILED DATE: 6/25/2024 11:33 PM 20244002591



can present any evidence that you have on behalf of your client, and we'll go right to argument, okay?

MS. WINTEREGG: Okay.

MS. LAFATA: All right.

MS. WINTEREGG: All right, the Village is -- We can just go into it and do an opening argument, your Honor.

MS. LAFATA: Okay.

OPENING STATEMENT

BY MS. WINTEREGG:

So we did produce -- sorry, submit a group of documents for your Honor to refer to. I would like to read into the record the Maywood Police Department report.

This report has also been given to opposing counsel, and the narrative on it, this is, let's see. The last time this report was modified was on November 6th, 2023.

And in the narrative it says: In summary, on the 5th of November 2023 at approximately 0231 hours responding officer, Officer Nunez, Star 327, observed a black 2019 Chevy utility bearing Illinois registration DT,



as in David Thomas, 24013 driving 45 miles per hour in a 30 mile per hour zone northbound 17th Avenue from Van Buren.

Responding officer caught up to the vehicle at 17th Avenue and Madison where responding officer attempted to conduct a traffic stop on the vehicle.

Upon illuminating Maywood unit star 122's lights and sirens, the vehicle began to flee eastbound Madison at a high rate of speed. The vehicle disregarded the stop sign at 12th Avenue and Madison and reached speeds of 80 miles per hour.

Due to the reckless driving, responding officer advised ITE dispatch that he was terminating the pursuit at 7th Avenue and Madison.

The vehicle continued eastbound Madison where disregarding the light at 5th Avenue and Madison, the vehicle was last seen southbound 1st Avenue from Madison.

The vehicle is registered at 1977 North 19th Avenue, Apartment 2, Melrose Park, 60160.

ITE dispatch entered the vehicle into



LEADS as a felony vehicle for aggravated fleeing and eluding, LEADS No. V, as in Victor, 23I7551. If located, the vehicle is to be towed on an administrative hold for aggravated fleeing and eluding, and the amount of $1,000 USD is to be placed on the vehicle. Nothing further.

And then, your Honor, we also have recordings from the dispatch which have also been provided to counsel. He did have a chance to review them.

I would like to play them into evidence for the record just to make it easier if we need to deal with this later. So the first one --

MR. SPEAKER: Put it by the microphone.

MS. LAFATA: Any objection?

MS. WINTEREGG: Okay.

MR. DRAKE: No.

MR. SPEAKER: (Inaudible) to your left.

MS. WINTEREGG: Oh, that one.

MS. LAFATA: Any objection to the police report being admitted into evidence?

MR. DRAKE: I don't believe the administrative rules (inaudible).

MS. LAFATA: Okay.



MS. WINTEREGG: So I'm going to read aloud each recording how it's marked. It's 07 underscore star com underscore main 202311523054 by start time.

MS. LAFATA: And that will be Exhibit 2. The police report will be exhibit -- marked as Exhibit 1.

MS. WINTEREGG: Exhibit 1. Yes, your Honor.

(Whereupon, Exhibit Nos. 1 & 2 were marked for identification.)

(Audio playing: (Inaudible) Chevy DT24013 eastbound Madison from 17th.

10-4 eastbound Madison from 17th.

Continuing eastbound. (Inaudible) I'm terminating at 7th and Madison.

10-4 terminating at 7th and Madison.

10-4 he just took the (inaudible).

Plate coming back clear and valid to a Derick Winfrey out of Melrose Park, 2019 Chevy utility, black in color, no 27 attached.

10-4 do you want to (inaudible).

10-4.)

MS. WINTEREGG: The next one is 09

FILED DATE: 6/25/2024 11:33 PM 20244002591



underscore star com main underscore 2023115023217.

MS. LAFATA: That will be Exhibit 3 for the record.

(Whereupon, Exhibit No. 3 was marked for identification.)

(Audio playing: (Inaudible.)
10-4.
Just for traffic, correct?
Yeah, 10-4.)

MS. WINTEREGG: The next one is 12 underscore star com underscore main 2023115023921 for Exhibit 4.

(Whereupon, Exhibit No. 4 was marked for identification.)

(Audio playing: Do you copy 27?
(Inaudible.)
60046002202240F Frank.)

MS. WINTEREGG: Next is 14 underscore star com underscore main 2023115024012 for Exhibit 5.

(Whereupon, Exhibit No. 5 was marked for identification.)

(Audio playing: (Inaudible) valid
Photo ID to a Jequan Farrow out of



Melrose Park. Be advised it looks like
he has a 99 pending for weapons
offenses.
(Inaudible.)
10-4.)

MS. WINTEREGG: For Exhibit 6, 16 underscore star com main underscore 2023115024750.

(Whereupon, Exhibit No. 6 was marked for identification.)

(Audio playing: (Inaudible.)
Go ahead.
I'm going to be transporting one to the
station.
247.
10-4.
He's en route to the station.
10-4.)

MS. WINTEREGG: Okay, and the last, 17 underscore star com main underscore 2023115025118. Is that Exhibit 7 I think is the number? Yes, okay.

(Whereupon, Exhibit No. 7 was marked for identification.)



MS. LAFATA: Yeah. I'm sorry. Yes.

(Audio playing: (Inaudible.)
251.)

MS. WINTEREGG: For our next evidence, your Honor, we'd like to call a witness.

MS. LAFATA: Please state your name?

THE WITNESS: Detective Shemitraku, Star No. 315, Maywood Police Department, Investigation Bureau.

MS. WINTEREGG: Oh, before I -- Sorry, your Honor. Are Exhibits 2 through 7 entered into evidence?

MS. LAFATA: No objection; is that correct?

MR. DRAKE: No objection.

MS. LAFATA: Okay, yes, they will be admitted.

(Whereupon, said exhibits marked as Exhibit Nos. 1-7 were received in evidence.)

MS. WINTEREGG: Thank you. Sorry.

* * *



WHEREUPON:

ILIR SHEMITRAKU,

called as a witness herein, was examined and testified as follows:

DIRECT EXAMINATION
BY MS. WINTEREGG:

**Q. Can you please introduce yourself again?**
A. Detective Shemitraku, Star No. 315, Maywood Police Department, Investigations Unit.
**Q. Okay, how long have you been a detective?**
A. Detective, four years; police officer, ten.
**Q. Okay, and how long have you worked for the Village of Maywood?**
A. Ten years.
**Q. Are you familiar with license plates detectors?**
A. Yes.
**Q. Okay, can you just give us a very brief summary of how they work?**
A. So license plate readers are cameras that it's either -- they're either fixed which is they're mounted on the pole, and they're fixed at

FILED DATE: 6/25/2024 11:33 PM 20244002591



an intersection or wherever they -- they give that lot track.
Then you got the mobile ones where they're fixed on the -- on the squad car. As you're driving around, it captures plates of the passing cars.
**Q. Okay, so there's two kinds.**
**There's the fixed kind and the kind on a squad car?**
A. Correct.
**Q. Okay, and how do you use these license plate readers --**
A. So --
**Q. -- for the fixed ones?**
A. So the fixed ones, as they're placed either on a southbound lane or a northbound lane, they'll capture both lanes. It's the field of view, and it's capturing motion.
**Q. Okay, and then once they capture the motion, do they also capture the license plate?**
A. Yes.
**Q. Okay, I am going to show you a document. This has also been shown to opposing counsel. We we will introduce this as Exhibit 8.**



**(Whereupon, Exhibit No. 8 was marked for identification.)**
BY MS. WINTEREGG:
**Q. Can you please -- Do you recognize this document?**
A. Yes.
**Q. Can you please identify it?**
A. This is the program we use which is Vigilant. We have approximately about 14 to 15 cameras in town --
**Q. Okay.**
A. -- in different intersections.
**Q. When you say the program is Vigilant, what do you mean by that?**
A. That's the name of the program. It's called Vigilant. When you search for a vehicle, let's say we're searching for a license plate, it's going to populate wherever it's catching it --
**Q. Okay.**
A. -- on that date.
**Q. So this is not -- Is it software essentially?**
A. It's online based. So you gotta go through



their website. You enter your credentials, and there's also -- Before we use it, we go through training. It's a eight-hour training.
**Q. Okay, so essentially this is produced by a third-party contractor?**
A. Correct.
**Q. And do you use -- regularly use the vehicle -- the license plate readers in your course of being a detective?**
A. Yes.
**Q. Okay, is it something that you rely upon in your investigations?**
A. Yes.
MS. WINTEREGG: Okay, we would like to enter this vehicle detection report into evidence. Officer -- If there's no objection.
MS. LAFATA: Any objections?
MR. DRAKE: No objection.
MS. LAFATA: Okay.
(Whereupon said document marked as Exhibit No. 8 was received in evidence.)
BY MS. WINTEREGG:
**Q. Officer, could you please -- I'm sorry.**



**Detective, could you please read the date on this report?**
A. On this right here?
**Q. Yes.**
A. The date on here, it's 11-5 of 2023 at 2:31 a.m. in the morning.
**Q. Okay, and what's the license plate listed?**
A. It's David Tom 24013.
**Q. And where is the location where this was taken?**
A. The location, it is going to be at 1st Avenue and Quincy.
**Q. Okay, thank you. That's all I have.**
**Oh, I do have one other question for you.**
A. Sure.
**Q. So when you said it's 1st Avenue and Quincy, where is that in relation to 1st Avenue and Madison?**
A. I'll say approximately about five to six blocks south.
**Q. Southbound?**
A. Yes.
MS. WINTEREGG: Thank you. That's all I

FILED DATE: 6/25/2024 11:33 PM 20244002591



have. I'm going to tender it to the hearing officer.

All right, your Honor, that's all I have for that witness and as well for presenting evidence. I can reserve the argument for closing.

MS. LAFATA: All right, do you have any questions for the Detective?

MR. DRAKE: Briefly.

MS. LAFATA: Okay.

CROSS-EXAMINATION

BY MR. DRAKE:

**Q. Right here is fine. It's crowded but I don't wanna, like, you know. Thank you for being here with us today, Detective.**

A. No problem.

**Q. Just really briefly, do your squad cars have dashcams?**

A. Some of them do and some of us don't.

**Q. Can you give an estimation of how many do and how many don't?**

A. I'm in investigations. So I usually use an unmarked unit. We usually don't have cameras. I'll say about four or five maybe, approximately.



MS. LAFATA: Four or five don't or do?

THE WITNESS: Do.

MS. LAFATA: Do, okay.

BY MR. DRAKE:

**Q. You said you're in investigation.**

**So investigations don't generally have them?**

A. We don't have them, dashcams.

**Q. But a patrol officer generally would?**

A. It depends on the vehicle.

**Q. It depends on the vehicle?**

A. Correct.

**Q. Do you happen to know what kind of vehicle Officer Nunez was in on November 5th, 2023?**

A. I believe it's unit 122, and that's a -- that's a Ford sedan.

**Q. To your knowledge does that have a dashcam?**

A. I believe so. They're all equipped with dashcams. It depends if it's working or not.

**Q. How common is it they don't work?**

A. It's very common.

**Q. Very common?**

A. Yes.

**Q. I assume, Detective, that prior to your becoming detective you were a patrol officer in the Village of Maywood?**



A. Correct.

**Q. Have you ever -- Pursuant to that job did you ever impound vehicles?**

A. I have.

**Q. Generally how long after the crime was committed would you say you impound the vehicle?**

A. It depends, maybe a week. It could also be two weeks. It could be close to a year.

**Q. Close to a year?**

A. Correct. It was a felony, right? It was an aggravated fleeing and eluding?

**Q. Nothing is charged.**

A. Oh, no, no, no.

**Q. I mean, that's a -- that's a yes.**

A. Yes.

**Q. That was my next question, officer is:**

**Have you ever impounded a vehicle without making an arrest?**

A. Yes.

**Q. Is that common in the Village of Maywood as well?**

A. I think it's common in law enforcement for the crimes committed to definitely they're gonna grab that vehicle.



**Q. Is it common to put this into LEADS?**

A. Yes, officer safety, for other towns. I mean, it's a felonious vehicle. It took off on the officer. We don't know the basis, but you're gonna let everyone in law enforcement know that this vehicle is wanted.

**Q. Does the department have a review process for that or can any officer enter anything they want into LEADS?**

MS. WINTEREGG: Objection, it's a compound question, if you could break the question up.

BY MR. DRAKE:

**Q. Does the Village of Maywood have a policy as it relates to imputing information into the LEADS system?**

A. I believe any officer, any officer that's working the street, especially an officer that was involved in this is entitled to if he wants to or not.

**Q. They don't have to clear it with their supervisor?**

A. They really don't.

FILED DATE: 6/25/2024 11:33 PM 20244002591



MR. DRAKE: Okay, that's all I have.
MS. WINTEREGG: I have no questions, your Honor.
MS. LAFATA: All right, with the admission of Exhibits 1 through 9, do you rest?
MS. WINTEREGG: Yes. Sorry. 1 through 9? I have 1 through 8. I just want to make sure. For the record, Exhibit 1 was the police report and then I have Exhibits 2 through 7 as recordings.
MS. LAFATA: Okay, yep. Okay.
MS. WINTEREGG: And then Exhibit 8 as the vehicle detector reader.
MS. LAFATA: All right, my mistake.
MS. WINTEREGG: That's what I have. I could be wrong.
MS. LAFATA: No, no, you're not. Okay.
MS. WINTEREGG: Thank you, and we rest as it comes to evidence, your Honor.
MS. LAFATA: Okay, Exhibits 1 through 8 will be admitted without objection.
The Village rests. Counsel, do you have any witnesses that you would like to --
MR. DRAKE: I'm just going to call



Mr. Winfrey --
MS. LAFATA: Okay.
MR. DRAKE: -- briefly as well.
Do you want to come up here by the microphone where the officer was standing -- the detective was standing.
* * *
WHEREUPON:

DERICK WINFREY,

called as a witness herein, was examined and testified as follows:

DIRECT EXAMINATION
BY MR. DRAKE:

**Q. Can you please state your name for the record?**
A. My first name is Derick. My last name is Winfrey.
**Q. Can you spell that? Can you spell your names?**
A. D-e-r-i-c-k is the first name. Winfrey is the last name, W-i-n-f-r-e-y.
**Q. Mr. Winfrey, I'm going to ask you about two**



**different dates. So first I'm going to ask you about November 5th --**
A. All right.
**Q. -- 2023.**
**Were you driving your vehicle --**
A. No.
**Q. -- on that date?**
A. No.
**Q. Did you give anyone authorization --**
A. No.
**Q. -- to drive your vehicle on that date?**
**How many people do you live with?**
MS. WINTEREGG: Objection, relevance.
THE WITNESS: There's one; and my son, he's in and out. He's usually --
MS. LAFATA: Overruled.
THE WITNESS: -- with his girl -- He's usually at his girlfriend's house and goes to school.
MS. LAFATA: Just one second.
THE WITNESS: He works.
MS. LAFATA: If there's an objection, just pause your testimony.
THE WITNESS: Okay.



MS. LAFATA: I'll rule on whether or not you should continue to testify --
THE WITNESS: Right.
MS. LAFATA: -- regarding that specific question or whether that question is going to be --
THE WITNESS: Okay.
MS. LAFATA: -- you don't have to answer it, okay?
THE WITNESS: Okay.
MS. LAFATA: All right.
MR. DRAKE: Okay, thank you.
MS. LAFATA: His answer will be accepted.
BY MR. DRAKE:
**Q. I'll try to ask less questions here.**
**Did you give anybody in your house authority to drive your vehicle?**
A. No, no one has keys to my vehicle but myself.
**Q. So to your knowledge nobody would have been driving your vehicle that you gave authorization to --**
A. No one.
**Q. -- on November 5th, 2023?**

FILED DATE: 6/25/2024 11:33 PM 20244002591



**But did you file a police report on this incident?**
A. I didn't file a police report cuz I wasn't aware of what occurred November 5th. I wasn't -- I didn't know anything about this until I got stopped December the 21st in Cicero.
**Q. So between November 5th and December 21st --**
A. I had no knowledge.
**Q. -- no police officers reached out to you?**
A. No.
**Q. Did you get anything in the mail?**
A. No.
**Q. Any calls from Village administrators?**
A. No.
**Q. On December 21st what happened?**
**Where were you at the time you were detained (inaudible)?**
MS. WINTEREGG: Objection --
THE WITNESS: Okay --
MS. WINTEREGG: -- relevance. This is about --
THE WITNESS: -- I was --
MS. WINTEREGG: Sir.



MR. DRAKE: Mr. Winfrey.
MS. LAFATA: Hang on one second.
MS. WINTEREGG: This is about whether or not the police had the authorization to tow the vehicle. So any other dates or times outside -- outside of the incident are not relevant.
MS. LAFATA: That objection will be sustained.
MR. DRAKE: I can't ask him about where -- what town he was when he was -- when his vehicle was towed because from --
MS. LAFATA: Well, no, the subject of the -- We're contesting the basis for the tow.
MR. DRAKE: And I think that legally I'm not -- I'm not under the impression that this ordinance gives anybody authority -- gives the Village of Maywood the authority to tow a vehicle from Cicero if he was outside of Maywood.
MS. WINTEREGG: Again, that just goes to whether or not Maywood had the right to tow it.
MS. LAFATA: Okay.
MR. DRAKE: I think Maywood had the right to tow it in the Village of Maywood. I don't think the Village of Maywood had the authority to



go to Cicero --
MS. LAFATA: Right.
MR. DRAKE: -- to tow it. So then that was gonna be my --
MS. LAFATA: If that was one of the questions, go ahead and ask it. Go ahead.
BY MR. DRAKE:
**Q. Were you in Cicero at the time that you were detained?**
A. Yes, I was in Cicero December the 21st.
**Q. Were you detained by Cicero or -- Police Department or Maywood Police Department?**
A. I was detained by Cicero Police Department.
**Q. Did Maywood Police Department show up?**
A. I wasn't aware if they showed up anyway. I had left because it was cons -- They made me get out of my vehicle and lock it up --
MS. WINTEREGG: Objection, relevance.
THE WITNESS: -- and they told me that Maywood was coming to tow my vehicle.
BY MR. DRAKE:
**Q. So Maywood came to Cicero and towed it?**
MS. LAFATA: Okay.
MR. DRAKE: Oh, sorry, sorry. I apologize,



your Honor. I apologize, counsel.
MS. LAFATA: The objection is going to be -- The objection is going to be sustained. That will be stricken. Continue.
MS. WINTEREGG: Is the whole -- Just for the record, your Honor, is the whole answer stricken or just part of it?
MS. LAFATA: The whole answer to the last question asked by counsel is stricken.
MS. WINTEREGG: Thank you.
BY MR. DRAKE:
**Q. How much money did you pay to get your vehicle back?**
MS. WINTEREGG: Objection, relevance.
MS. LAFATA: Sustained.
MR. DRAKE: It goes directly to the ordinance. You have to bond the vehicle out. This is all --
MS. WINTEREGG: It goes --
MR. DRAKE: This is what is done. I mean, I --
MS. LAFATA: I understand that he had to pay to get his vehicle out, but he -- What we're contesting here is the basis for the tow.

FILED DATE: 6/25/2024 11:33 PM 20244002591



MR. DRAKE: Okay, understood.
BY MR. DRAKE:
**Q. Mr. Winfrey, have you ever been charged with fleeing and eluding a police officer?**
A. No.
**Q. Have you been charged with any crime-related offense?**
A. No.
**Q. Has anybody in your house been charged with any crime-related offense?**
A. No.
MR. DRAKE: Thank you. That's all.
MS. LAFATA: Any questions?
MS. WINTEREGG: No, your Honor.
MS. LAFATA: All right, any other evidence?
MR. DRAKE: That's all I have, your Honor.
MS. LAFATA: All right --
MR. DRAKE: I just have a closing.
MS. LAFATA: -- you rest?
MR. DRAKE: Correct.
MS. LAFATA: Argument?

CLOSING ARGUMENT
BY MS. WINTEREGG:

Your Honor, the basis for the tow, all the Village needs to prove is by a preponderance of the evidence that the Village had the authorization to tow the vehicle.



This tow occurred under Maywood Village Code 99.62(a) which is -- which deals with eluding a police officer, and I'm only going to read portions of the Code into it.

It says: A motor vehicle used to commit the offense of aggravated fleeing or attempting to elude a police officer -- a peace officer is subject to seizure and impoundment.

The offense of aggravated fleeing or attempting to elude a police officer is committed by a driver or operator of a motor vehicle who, having been given a visual or audible signal by a peace officer directing such driver or operator to bring his vehicle to a stop, willfully fails or refuses to obey such direction, increases his or her speed, extinguishes his or her lights or otherwise flees or eludes -- attempts to elude the police officer and either, and I'm only going to read the section that is relevant here which is (4) involves disobedience of two or more official traffic control devices, and I won't read the rest of the section.



At this point, your Honor, the Village has produced evidence that the vehicle, which notably it says a motor vehicle, it does not deal with who is driving the vehicle, with the license plate of DT24013 for the police report and the incriminating evidence did represent that he did -- this vehicle did go through at least two traffic control devices.

It was indicated that the officer did put on his lights and then the vehicle went through these traffic control devices and as well sped along.

It's the Village's position that they did have a right to tow this vehicle. Putting it out, there is nothing within the Maywood code that requires an arrest of any kind; and, again, your Honor, this is only related to the vehicle, not to who is driving it.

There has been no police report, nothing else to contradict the fact that this vehicle with this license plate DT24013 was not eluding the police.

In fact, all the evidence presented indicates that this particular vehicle did, in fact, elude the police; and, therefore, the tow was proper. The Village did have the authorization to tow it. Thank you.



MS. LAFATA: Counsel, go ahead.

CLOSING ARGUMENT
BY MR. DRAKE:

Thank you. I have a few, you know, constitutional issues with this facially as it applies, but since this is an Administrative Court, I'm going to save everybody the time.

Counsel said in her close that no evidence was presented that we didn't -- that the vehicle did not elude police. It's not our burden to prove. It's their burden to prove that this occurred. I don't think they've met that burden, your Honor.

They've submitted a police report. The officer that allegedly witnessed this presented no testimony. An unrelated police officer was called. The unrelated test -- police officer stated that their vehicles -- I mean, I guess they do have dashcam sometimes. I don't know if this one did or didn't, but I didn't hear

FILED DATE: 6/25/2024 11:33 PM 20244002591



anything about video recorded evidence.

And Mr. Winfrey testified that he was not driving. Nobody in his home had the authority to drive this. All that they've presented that this did occur they said was the police report and they -- a picture that I guess occurred on that time.

I'm not very familiar with this vigilante system or how it operates, and I don't believe the record is sufficient for us to make any determination as to the truthfulness of that piece of evidence.

And finally, as the statute says, this gives the authority for the Village of Maywood to impound the vehicle found within its territory that it admits that it believes has violated one of the numerous ordinances.

This occurred outside of the Village of Maywood in which my client was in Cicero. He was detained. He was not arrested. His vehicle was towed, and he was fined for it.

So I would just ask this Court to find in favor of my client and refund him the bond that he has paid for the detainment of his



vehicle.

MS. LAFATA: All right, anything in rebuttal?

REBUTTAL ARGUMENT
BY MS. WINTEREGG:

Yes, your Honor. This is a preponderance of the evidence. That's 50 percent in the feather. The police reports are evidence here, and the police report distinctly says that this vehicle with that license plate eluded police under the tow.

As for the system, the vehicle detection reader, I do want to remind the Court that the rules of evidence don't necessarily apply. It only needs to be a piece of evidence on which a reasonable person would rely upon. That's within the Illinois Administrative Code, and this is coming in under an administrative code here.

As for, you know, Maywood Police are allowed to put things into LEADS which is something that the detective referred to, and therefore the tow was proper. Thank you.

MS. LAFATA: All right, I'm going to



address a few things here. All right, and I'm going to hold over my ruling because I do want to do a little bit of research on one issue.

So what I will address today though is the statute for live code for aggravated fleeing and eluding and the -- and officer's ability to tow a vehicle pursuant to any violation of aggravated fleeing and eluding.

I do believe that the Village has met their burden on that since it's a preponderance of the evidence.

There was no objection to the admission of the police report. The police report is certainly relevant and certainly reliable. A reasonable person would rely on the police report as documentation of what took place at the time.

So I am -- I'm giving deference to what's relayed in the police report. That being that the officer observed the vehicle in question with the license plate registration DT24013 traveling at 45 miles an -- 45 miles an hour in a 30 mile an hour zone. That there giving the officer probable cause to initiate the traffic stop.



On upon illuminating the lights and sirens of the vehicle, the vehicle took off at a high rate of speed disregarding a stop sign at 12th Avenue and Madison reaching speeds in excess -- and reached speeds of 80 miles an hour.

The vehicle, in the Court's eyes, certainly disregarded two traffic control devices; and additionally, the Court sees that the vehicle traveled at a rate of at least 25 -- 21 miles an hour over the speed limit.

So I think there's no issue with the basis of the stop based on the actions of the vehicle that day.

I do -- So the officer in question -- I don't believe there's any issue with the officer placing the vehicle into LEADS to be towed at a future date and time because there was -- he certainly had enough evidence that the vehicle committed the offense of aggravated fleeing and eluding.

I am -- I also believe the Vigilant system. There was no objection to its admission, to the foundation of it -- of how the system works. The report itself was not objected to. I

FILED DATE: 6/25/2024 11:33 PM 20244002591



-- Even if it was, I do believe that this is the system that is used within the Village of Maywood quite frequently.

The -- I do believe it to be relevant and reliable as well that I will note here that on Exhibit 8, which is the vehicle detection report, the license plate does match the license plate of the vehicle that was driven; although, it doesn't appear to be contested that this vehicle was driven that evening.

I haven't heard any evidence -- Well, I have heard evidence that the Respondent was not the driver of the vehicle. I have not heard any evidence that this vehicle was not driven on that evening.

This is -- It is the burden of the Village. The Village had met their burden at the close of their case-in-chief, that being a preponderance of the evidence.

Nothing -- No evidence provided by the Respondent has at this point -- No evidence -- There's no evidence submitted by the Respondent that would put the burden -- would shift the burden at this point.



The question that I would like to take a second to look -- take some time to look into is whether or not the Village of Maywood had the ability to tow the vehicle from Cicero. That is something that I would like to look into.

I need to, one, look into the fact of whether -- its relevance in this -- in this case; and if it is relevant in this case, what type of jurisdiction, and I believe this will all be pursuant to the Code.

So that's just the research I'd like to do, whether or not they had the authority to tow a vehicle from a neighboring jurisdiction which I believe -- I believe they do. I just want to confirm that before entering a finding today. So --

MS. WINTEREGG: Your Honor, if I may.

MS. LAFATA: Yes.

MS. WINTEREGG: We could also do short briefs if that would assist you within that issue of towing from Maywood or towing from Cicero simply just for preservation of the record to make sure that everything is --

MS. LAFATA: All right.



MS. WINTEREGG: -- considered that way.

MS. LAFATA: That's actually probably a good idea. So here's what I'll say. Let's take a look at the calendar here.

How much time would everyone need to submit just a short brief on that issue?

MR. DRAKE: Are we just -- just each side one brief or are we doing, like, replies and responses?

MS. LAFATA: Each -- If you would like to -- I'm not going to require replies and responses. I don't think it's necessary.

MR. DRAKE: I could have a brief in a week.

MS. LAFATA: I'm sorry?

MR. DRAKE: I could have a brief in a week.

MS. WINTEREGG: And I would need --

MS. LAFATA: We could do about -- I'm going to give you more time than that.

MS. WINTEREGG: I would need at least two weeks, your Honor, just because I'm going to be in court most of next week.

MR. DRAKE: I just want to clarify that this would put off, like, the final judgment, right? The final judgment wouldn't be until you



rule after the briefs because I don't want to miss, like --

MS. LAFATA: So here's --

MR. DRAKE: -- the window for judicial review.

MS. LAFATA: Yes. So the final judgment will not be put in place until I've reviewed the briefs, and we're going to come back here on Monday. We're not here on Mondays. Okay.

MR. SPEAKER: Our next hearing date is March 1st.

MS. LAFATA: Okay, so March 1st.

MR. DRAKE: I'm on trial March 1st.

MS. LAFATA: Okay.

MR. DRAKE: Which is why we didn't get the kick extension.

MR. SPEAKER: March 15th.

MS. LAFATA: All right.

MS. WINTEREGG: I just -- For March 15th, I just want to remind the Court that we do have the code enforcement that day. That's usually a pretty busy call.

I'm not opposed to it. I just -- I don't know if maybe we want to schedule it for

FILED DATE: 6/25/2024 11:33 PM 20244002591



like 11:00 or do it a little bit earlier.
MS. LAFATA: All right, here's what I'm going to do. I'm going to hold over for ruling -- I don't want to go into the -- I don't want to go too far out. So give me one moment.
MR. DRAKE: Is there a -- Can you issue it in absentia?
MS. LAFATA: I can.
MR. DRAKE: I wouldn't object.
MS. WINTEREGG: I would not object to that either.
MS. LAFATA: Okay, all right, so then let's do this. I will -- I'd like the issue briefed by March 1st, give everybody that much time to brief. So -- And I will get a response out to everybody by March 15th.
MR. DRAKE: And --
MS. LAFATA: And issue a ruling by March 15th.
MR. DRAKE: -- just submit those briefs by e-mail?
MS. LAFATA: Submit -- Yes. You can submit the brief to service, s-e-r-v-i-c-e, @ Lafata, L-a-f as in Frank a-t as in Thomas a law.com.



Just have them submitted by March 1st. I will then issue a ruling by March 15th.
MS. WINTEREGG: And, your Honor, just so we're clear for the record, page limit, five pages, seven pages?
MS. LAFATA: Five pages.
MS. WINTEREGG: Okay.
MS. LAFATA: I think that will be enough.
MR. DRAKE: Can we motion for a longer brief?
MS. LAFATA: If you guys want to agree on a page length, it does not matter to me.
MS. WINTEREGG: We can talk about it. I'm just trying to, like, make sure that we're on --
MS. LAFATA: All right, ten pages.
MS. WINTEREGG: -- the same page.
MS. LAFATA: Ten pages.
MR. DRAKE: Yeah, I can be pretty verbose. I'd prefer at least ten.
MS. LAFATA: All right.
MS. WINTEREGG: I just don't want, like, a, you know, 70 page brief.
MS. LAFATA: Ten pages.
MS. WINTEREGG: Ten pages, all right.



MS. LAFATA: It's the limited issue of whether Maywood has the authority to tow a vehicle from -- out from a different jurisdiction.
MR. DRAKE: Do you want a table of contents on this?
MS. LAFATA: No, we're good. Okay, all right, I'll issue a ruling by March 15th, and I will mail it. Make sure that you provide me with a mailing address that you would like it to be sent. So I'll mail it, but I will also send it in an e-mail to each of you as well.
MS. WINTEREGG: Thank you.
MR. DRAKE: Was it service@lafatalaw.com?
MS. LAFATA: Yes. Any issues with getting in contact with me I'm sure you can --
MR. DRAKE: Yes, she's been very communicative.
MS. LAFATA: Okay, all right, thank you everyone. Everyone did a very nice job today.
MS. WINTEREGG: Thank you.
MR. DRAKE: Thank you.
MS. LAFATA: I'm going to hold on -- Well, no, I'm going to tender the exhibits back. The



exhibits itself are not relevant to the issue that I want to research.
MS. WINTEREGG: Thank you.
(WHICH WERE ALL THE PROCEEDINGS HAD.)
* * *

FILED DATE: 6/25/2024 11:33 PM 20244002591

REPORTER'S CERTIFICATE

I, CYNTHIA A. PAVESICH GOOD, Certified Shorthand Reporter within and for the State of Illinois, do hereby certify that I reported in computerized shorthand the recorded proceedings had of the said cause, and that the foregoing is a true and correct transcript of my shorthand notes so taken as aforesaid.

Cynthia A. Pavesich Good, CSR
CSR License # 084-003483

Case: 1:26-cv-01708 Document #: 1-1 Filed: 02/16/26 Page 134 of 334 PageID #:138
FILED DATE: 6/25/2024 11:33 PM 20244002591


**A**
**a-t** 41:24
**a.m** 16:6
**ability** 35:6 38:4
**above-captioned** 1:10
**absentia** 41:7
**accepted** 24:13
**actions** 36:12
**additionally** 36:8
**address** 35:1,4 43:10
**administrative** 1:1 2:5 7:4,23 32:10 34:17,18
**administrators** 25:14
**admission** 21:4 35:12 36:22
**admits** 33:16
**admitted** 3:23,23 7:21 11:16 21:21
**advised** 6:15 10:1
**aforesaid** 45:10
**aggravated** 7:1,4 19:13 30:9,12 35:5,8 36:19
**agree** 42:11
**ahead** 10:12 27:6 27:6 32:5
**allegedly** 32:19
**allowed** 34:21
**aloud** 8:1
**amount** 7:5
**answer** 24:8,13 28:6,8
**anybody** 24:16 26:16 29:9
**anyway** 27:15
**Apartment** 6:23
**apologize** 27:24 28:1
**appear** 37:9
**appeared** 2:5,8 2:11
**applies** 32:10
**apply** 34:15
**approximately** 5:22 14:9 16:20 17:24
**argument** 3:10 3:11,12 5:2,8 17:5 29:21,22 32:6 34:4
**arrest** 19:20 31:17
**arrested** 33:20
**asked** 28:9
**assist** 38:20
**assume** 18:24
**attached** 8:21
**attempted** 6:6
**attempting** 30:10 30:13
**attempts** 30:20
**audible** 30:15
**Audio** 8:12 9:7 9:16,23 10:11 11:2
**authority** 24:17 26:16,17,24 33:4,14 38:12 43:2
**authorization** 23:9 24:21 26:4 30:3 32:4
**Avenue** 6:3,5,12 6:16,19,21,23 16:12,17,18 36:4
**aware** 25:4 27:15

**B**
**back** 8:19 28:13 40:8 43:24
**based** 14:24 36:12
**basis** 4:13 20:6 26:13 28:24 29:24 36:12
**bearing** 5:24
**becoming** 19:1
**began** 6:9
**behalf** 2:8,11 5:1
**believe** 7:22 18:15,18 20:18 33:10 35:9 36:15,21 37:1,4 38:9,14,14
**believes** 33:16
**bit** 35:3 41:1
**black** 5:23 8:21
**blocks** 16:21
**bond** 28:17 33:23
**break** 20:13
**brief** 12:20 39:6,8 39:13,15 41:15 41:23 42:10,22
**briefed** 41:13
**briefly** 17:9,17 22:3
**briefs** 38:20 40:1 40:8 41:20
**bring** 30:17
**burden** 4:17 32:15,15,17 35:10 37:16,17 37:23,24
**Bureau** 11:9
**Buren** 6:3
**busy** 40:22

**C**
**C** 2:1
**calendar** 39:4
**call** 4:20,22 11:5 21:24 40:22
**called** 12:5 14:16 22:12 32:21
**calls** 25:14
**cameras** 12:22 14:10 17:23
**capture** 13:17,19 13:20
**captures** 13:5
**capturing** 13:18
**car** 13:4,9
**Carrie** 2:7 4:7
**cars** 13:6 17:17
**case** 4:4 38:7,8
**case-in-chief** 37:18
**catching** 14:18
**caught** 6:4
**cause** 35:23 45:8
**certainly** 35:14 35:14 36:7,18
**CERTIFICATE** 45:1
**Certified** 45:5
**certify** 45:6
**chance** 7:9
**charged** 19:14 29:3,6,9
**Chevy** 5:24 8:12 8:20
**Cicero** 25:6 26:18 27:1,8,10 27:11,13,22 33:19 38:4,21
**clarify** 39:22
**clear** 8:19 20:22 42:4
**client** 5:2 33:19 33:23
**close** 19:10,11 32:12 37:18
**closing** 3:10,11 17:6 29:18,22 32:6
**code** 30:5,7 31:16 34:17,19 35:5 38:10 40:21
**color** 8:21
**com** 8:3 9:1,12,20 10:7,20
**come** 22:4 40:8
**comes** 21:19
**coming** 8:19 27:20 34:18
**commit** 30:9
**committed** 19:8 20:1 30:13 36:19
**common** 18:20 18:21,22 19:22 19:24 20:3
**communicative** 43:18
**compound** 20:12
**computerized** 45:7
**conduct** 6:6
**confirm** 38:15
**cons** 27:16
**considered** 39:1
**constitutional** 32:9
**contact** 43:16
**contents** 43:5
**contested** 37:9
**contesting** 4:13 26:13 28:24
**continue** 24:2 28:4
**continued** 6:18
**Continuing** 8:15
**contractor** 15:5
**contradict** 31:21
**control** 30:24 31:9,12 36:7
**copy** 9:16
**correct** 9:9 11:13 13:10 15:6 18:12 19:3,12 29:20 45:9
**counsel** 5:17 7:9 13:23 21:22 28:1,9 32:5,12
**course** 15:8
**court** 32:11 33:22 34:13 36:8 39:21 40:20
**Court's** 36:6
**credentials** 15:1
**crime** 19:7
**crime-related** 29:7,10
**crimes** 20:1
**Cross-Examin...** 3:5 17:11
**cross-examine** 4:21
**crowded** 17:13

FILED DATE: 6/25/2024 11:33 PM 20244002591




**CSR** 45:15,16
**cuz** 25:3
**Cynthia** 45:4,15

**D**

**D** 3:1
**D-e-r-i-c-k** 22:22
**dashcam** 18:17 32:23
**dashcams** 17:18 18:8,19
**date** 14:21 16:2,5 23:7,11 36:17 40:10
**dates** 23:1 26:5
**David** 6:1 16:8
**day** 1:11 36:13 40:21
**deal** 7:13 31:4
**deals** 30:5
**December** 25:6,8 25:16 27:10
**deference** 35:17
**definitely** 20:1
**department** 1:1 5:15 11:8 12:11 20:9 27:12,12 27:13,14
**depends** 18:10,11 18:19 19:9
**Derick** 2:11 3:7 4:1,9 8:20 22:10,18
**DERRICK** 1:6
**detained** 25:18 27:9,11,13 33:20
**detainment** 33:24
**detection** 15:15 34:13 37:6
**detective** 11:7 12:10,12,13 15:9 16:1 17:8 17:15 18:24 19:1 22:6 34:22
**detector** 3:22 21:13
**detectors** 12:18
**determination** 33:11
**devices** 30:24 31:9,12 36:8
**different** 14:12 23:1 43:3
**Direct** 3:4,8 12:7 22:14
**directing** 30:16
**direction** 30:18
**directly** 28:16
**disobedience** 30:23
**dispatch** 6:15,24 7:8
**disregarded** 6:11 36:7
**disregarding** 6:19 36:3
**distinctly** 34:9
**document** 13:22 14:5 15:20
**documentation** 35:16
**documents** 5:13
**doing** 39:8
**Drake** 2:10 3:6,8 3:11 4:9,9,15 7:17,22 11:14 15:18 17:9,12 18:4 20:14 21:1 21:24 22:3,15 24:12,14 26:1,9 26:14,22 27:3,7 27:21,24 28:11 28:16,20 29:1,2 29:12,16,18,20 32:7 39:7,13,15 39:22 40:4,13 40:15 41:6,9,17 41:20 42:9,18 43:5,14,17,22
**drive** 23:11 24:17 33:4
**driven** 37:8,10,14
**driver** 30:14,16 37:13
**driving** 6:1,14 13:5 23:5 24:21 31:5,19 33:3
**DT** 5:24
**DT24013** 8:13 31:6,22 35:20
**Due** 6:14

**E**

**E** 2:1,1 3:1
**e-mail** 41:21 43:12
**earlier** 41:1
**easier** 7:12
**eastbound** 6:10 6:18 8:13,14,15
**eight-hour** 15:3
**either** 12:23,23 13:15 30:21 41:11
**elude** 30:10,13,20 32:2,14
**eluded** 34:10
**eludes** 30:20
**eluding** 7:2,5 19:13 29:4 30:6 31:23 35:6,8 36:20
**en** 10:17
**enforcement** 19:24 20:7 40:21
**enter** 15:1,15 20:10
**entered** 6:24 11:11
**entering** 38:15
**entitled** 20:20
**equipped** 18:18
**especially** 20:19
**essentially** 14:23 15:4
**estimation** 17:20
**evening** 37:10,15
**everybody** 32:11 41:14,16
**evidence** 4:18,24 5:1 7:11,21 11:4,12,19 15:16,22 17:5 21:19 29:15 30:2 31:3,7,24 32:13 33:1,12 34:7,8,14,15 35:11 36:18 37:11,12,14,19 37:20,21,22
**Examination** 3:4 3:8 12:7 22:14
**examined** 12:5 22:12
**excess** 36:4
**exhibit** 3:15,16 3:17,18,19,20 3:21,22,23,23 8:5,6,7,8,10 9:3 9:5,13,14,20,21 10:6,9,21,23 11:18 13:24 14:1 15:21 21:8 21:12 37:6
**exhibits** 3:14 11:11,17 21:5,9 21:20 43:24 44:1
**extension** 40:16
**extinguishes** 30:19
**eyes** 36:6

**F**

**facially** 32:9
**fact** 31:21,24 32:2 38:6
**fails** 30:17
**familiar** 12:17 33:8
**far** 41:5
**Farrow** 9:24
**favor** 33:23
**feather** 34:8
**February** 1:11
**felonious** 20:5
**felony** 7:1 19:12
**field** 13:17
**file** 25:1,3
**final** 39:23,24 40:6
**finally** 33:13
**find** 33:22
**finding** 38:15
**fine** 17:13
**fined** 33:21
**first** 7:13 22:18 22:22 23:1
**five** 16:20 17:24 18:1 42:4,6
**fixed** 12:23,24 13:4,8,14,15
**flee** 6:10
**fleeing** 7:1,4 19:13 29:4 30:9 30:12 35:5,8 36:19
**flees** 30:20
**follows** 12:6 22:13
**Ford** 18:16
**foregoing** 45:9
**found** 33:15
**foundation** 36:23
**four** 12:13 17:24 18:1
**Frank** 9:18 41:24
**frequently** 37:3
**Friday** 1:11
**further** 7:6
**future** 36:17

**G**

**generally** 18:6,9 19:7
**getting** 43:15
**girl** 23:17
**girlfriend's** 23:18
**give** 12:20 13:1 17:20 23:9 24:16 39:18 41:5,14

FILED DATE: 6/25/2024 11:33 PM 20244002591




**given** 5:16 30:15
**gives** 26:16,16 33:14
**giving** 35:17,22
**go** 5:2,7 10:12 14:24 15:2 27:1 27:6,6 31:8 32:5 41:4,5
**goes** 23:18 26:19 28:16,19
**going** 4:18,18 8:1 10:13 13:22 14:18 16:11 17:1 21:24 22:24 23:1 24:5 28:2,3 30:6,21 32:11 34:24 35:2 39:11,17 39:20 40:8 41:3 41:3 43:23,24
**gonna** 20:1,7 27:4
**good** 39:3 43:7 45:4,15
**gotta** 14:24
**grab** 20:2
**group** 5:13
**guess** 32:22 33:6
**guys** 42:11

**H**

**Hang** 26:2
**happen** 18:13
**happened** 25:16
**hear** 32:24
**heard** 37:11,12 37:13
**hearing** 1:10 2:5 17:1 40:10
**HEARINGS** 1:1
**high** 6:10 36:3
**hold** 7:4 35:2 41:3 43:23
**home** 33:3
**Honor** 5:8,13 7:7 8:9 11:5,11 17:3 21:3,19 28:1,6 29:14,16 29:24 31:2,18 32:17 34:6 38:17 39:20 42:3
**hour** 6:2,2,13 35:21,22 36:5 36:10
**hours** 5:22
**house** 23:18 24:16 29:9

**I**

**id** 3:15,16,17,18 3:19,20,21,22 9:24
**idea** 39:3
**identification** 8:11 9:6,15,22 10:10,24 14:2
**identify** 14:7
**ILIR** 3:4 12:3
**Illinois** 1:1 5:24 34:17 45:6
**illuminating** 6:8 36:1
**impound** 19:5,8 33:15
**impounded** 19:19
**impoundment** 30:11
**impression** 26:15
**imputing** 20:16
**inaudible** 7:18,23 8:12,15,18,22 9:7,17,23 10:4 10:11 11:2 25:18
**incident** 25:2 26:6
**increases** 30:18
**incriminating** 31:7
**indicated** 31:10
**indicates** 32:1
**information** 20:16
**initiate** 35:23
**intersection** 13:1
**intersections** 14:12
**introduce** 12:9 13:24
**investigation** 11:8 18:5
**investigations** 12:11 15:12 17:22 18:6
**involved** 20:20
**involves** 30:23
**issue** 4:12 35:3 36:11,15 38:20 39:6 41:6,13,18 42:2 43:1,8 44:1
**issues** 32:9 43:15
**ITE** 6:15,24

**J**

**Jequan** 9:24
**job** 19:4 43:20
**judgment** 39:23 39:24 40:6
**judicial** 40:4
**jurisdiction** 38:9 38:13 43:4

**K**

**keys** 24:18
**kick** 40:16
**kind** 13:8,8 18:13 31:17
**kinds** 13:7
**know** 17:14 18:13 20:6,7 25:5 32:8,23 34:20 40:24 42:22
**knowledge** 18:17 24:20 25:9

**L**

**L-a-f** 41:24
**Lafata** 2:4 4:1,4 4:11,16 5:5,9 7:15,20,24 8:5 9:3 11:1,6,13 11:15 15:17,19 17:7,10 18:1,3 21:4,11,14,17 21:20 22:2 23:16,20,22 24:1,4,8,11,13 26:2,7,12,21 27:2,5,23 28:2 28:8,15,22 29:13,15,17,19 29:21 32:5 34:2 34:24 38:18,24 39:2,10,14,17 40:3,6,12,14,18 41:2,8,12,18,22 41:23 42:6,8,11 42:15,17,20,23 43:1,7,15,19,23
**lane** 13:16,16
**lanes** 13:17
**law** 19:24 20:7
**law.com** 41:24
**LEADS** 7:1,2 20:3,11,17 34:21 36:16
**left** 7:18 27:16
**legally** 26:14
**length** 42:12
**let's** 5:18 14:17 39:3 41:12
**license** 12:17,22 13:11,20 14:17 15:8 16:7 31:5 31:22 34:10 35:20 37:7,7 45:16
**light** 6:19
**lights** 6:9 30:19 31:11 36:1
**limit** 36:10 42:4
**limited** 43:1
**listed** 16:7
**little** 35:3 41:1
**live** 23:12 35:5
**located** 7:3
**location** 16:9,11
**lock** 27:17
**long** 12:12,14 19:7
**longer** 42:9
**look** 38:2,2,5,6 39:4
**looks** 4:11 10:1
**lot** 13:2

**M**

**Madison** 6:5,10 6:12,17,18,20 6:21 8:13,14,16 8:17 16:19 36:4
**mail** 25:12 43:9 43:11
**mailing** 43:10
**main** 8:3 9:1,12 9:20 10:7,20
**making** 19:20
**March** 40:11,12 40:13,17,19 41:14,16,19 42:1,2 43:8
**marked** 8:2,6,11 9:6,15,22 10:10 10:24 11:17 14:2 15:20
**match** 37:7
**matter** 1:10 42:12
**Maywood** 1:1,3 2:9 4:8 5:14 6:8 11:8 12:10,15 19:2,22 20:15 26:17,18,20,22 26:23,24 27:12 27:14,20,22 30:4 31:16 33:14,19 34:20 37:2 38:3,21 43:2
**mean** 14:14 19:16 20:5

FILED DATE: 6/25/2024 11:33 PM 20244002591




28:20 32:22
**MEGAN** 2:4
**Melrose** 6:23 8:20 10:1
**met** 32:16 35:9 37:17
**Michael** 2:10 4:9
**microphone** 7:14 22:5
**mile** 6:2 35:22
**miles** 6:1,12 35:21,21 36:5 36:10
**mistake** 21:14
**mobile** 13:3
**modified** 5:19
**moment** 41:5
**Monday** 40:9
**Mondays** 40:9
**money** 28:12
**morning** 16:6
**motion** 13:18,20 42:9
**motor** 30:8,14 31:4
**mounted** 12:24

**N**

**N** 2:1 3:1
**name** 4:5 11:6 14:15 22:16,18 22:18,22,23
**names** 22:21
**narrative** 5:17,20
**necessarily** 34:14
**necessary** 39:12
**need** 7:12 38:6 39:5,16,19
**needs** 30:1 34:15
**neighboring** 38:13
**nice** 43:20
**North** 6:22
**northbound** 6:2 13:16
**Nos** 3:23 8:10 11:18
**notably** 31:4
**note** 37:5
**notes** 45:10
**November** 5:19 5:21 18:14 23:2 24:24 25:4,7
**number** 10:22
**numerous** 33:17
**Nunez** 5:23 18:14

**O**

**obey** 30:18
**object** 41:9,10
**objected** 36:24
**objection** 7:15,20 11:13,14 15:16 15:18 20:12 21:21 23:13,22 25:19 26:7 27:18 28:2,3,14 35:12 36:22
**objections** 15:17
**observed** 5:23 35:19
**occur** 33:5
**occurred** 25:4 30:4 32:16 33:7 33:18
**offense** 29:7,10 30:9,12 36:19
**offenses** 10:3
**officer** 2:6 5:22 5:23 6:4,6,15 12:13 15:16,24 17:2 18:9,14 19:1,18 20:4,6 20:10,18,18,19 22:5 29:4 30:6 30:10,11,13,16 30:21 31:10 32:19,20,21 35:19,23 36:14 36:15
**officer's** 35:6
**officers** 25:10
**official** 30:24
**Oh** 7:19 11:10
16:14 19:15 27:24
**okay** 5:3,4,9 7:16 7:24 10:19,22 11:15 12:12,14 12:20 13:7,11 13:19,22 14:11 14:20 15:4,11 15:14,19 16:7 16:13 17:10 18:3 21:1,11,11 21:17,20 22:2 23:24 24:7,9,10 24:12 25:20 26:21 27:23 29:1 40:9,12,14 41:12 42:7 43:7 43:19
**once** 4:23 13:19
**ones** 13:3,14,15
**online** 14:24
**opening** 3:2 5:7 5:10
**operates** 33:9
**operator** 30:14 30:16
**opportunity** 4:21
**opposed** 40:23
**opposing** 5:17 13:23
**ordinance** 26:16 28:17
**ordinances** 33:17
**outside** 26:5,6,18 33:18
**Overruled** 23:16

**P**

**P** 2:1,1
**page** 42:4,12,16 42:22
**PAGE:LINE** 3:14
**pages** 42:5,5,6,15 42:17,23,24
**paid** 33:24
**Park** 6:23 8:20
10:1
**part** 28:7
**particular** 32:1
**passing** 13:6
**patrol** 18:9 19:1
**pause** 23:23
**Pavesich** 45:4,15
**pay** 28:12,23
**peace** 30:10,16
**pending** 10:2
**people** 23:12
**percent** 34:7
**person** 34:16 35:15
**Photo** 9:24
**picture** 33:6
**piece** 33:12 34:15
**place** 4:12 35:16 40:7
**placed** 7:6 13:15
**placing** 36:16
**Plaintiff** 1:4
**plate** 8:19 12:22 13:12,20 14:17 15:8 16:7 31:6 31:22 34:10 35:20 37:7,8
**plates** 12:17 13:5
**play** 7:11
**playing** 8:12 9:7 9:16,23 10:11 11:2
**please** 11:6 12:9 14:4,7 15:24 16:1 22:16
**point** 31:2 37:21 37:24
**pole** 12:24
**police** 3:15 5:15 7:20 8:6 11:8 12:11,13 21:8 25:1,3,10 26:4 27:11,12,13,14 29:4 30:6,10,13 30:21 31:6,20 31:23 32:2,14 32:18,20,21
33:6 34:8,9,11 34:20 35:13,13 35:15,18
**policy** 20:15
**populate** 14:18
**portions** 30:7
**position** 31:14
**prefer** 42:19
**preponderance** 4:17 30:1 34:7 35:10 37:19
**present** 2:3 5:1
**presented** 31:24 32:13,19 33:5
**presenting** 4:24 17:4
**preservation** 38:22
**pretty** 40:22 42:18
**prior** 18:24
**probable** 35:23
**probably** 39:2
**problem** 17:16
**proceedings** 1:9 44:4 45:8
**process** 20:9
**produce** 5:12
**produced** 15:4 31:3
**program** 14:8,13 14:15
**proper** 32:3 34:23
**prove** 30:1 32:15 32:15
**provide** 43:9
**provided** 7:9 37:20
**pursuant** 19:4 35:7 38:10
**pursuit** 6:16
**put** 7:14 20:3 31:11 34:21 37:23 39:23 40:7
**Putting** 31:15

FILED DATE: 6/25/2024 11:33 PM 20244002591


**Q**

**question** 16:14 19:18 20:13,13 24:5,5 28:9 35:19 36:14 38:1
**questions** 17:8 21:2 24:15 27:6 29:13
**Quincy** 16:12,18
**quite** 37:3

**R**

**R** 2:1
**Radio** 3:16,17,18 3:19,20,21
**rate** 6:10 36:3,9
**reached** 6:12 25:10 36:5
**reaching** 36:4
**read** 5:14 8:1 16:1 30:7,22 31:1
**reader** 3:22 21:13 34:13
**readers** 12:22 13:12 15:8
**really** 17:17 20:24
**reasonable** 34:16 35:15
**rebuttal** 3:12 34:3,4
**received** 11:18 15:21
**reckless** 6:14
**recognize** 14:4
**record** 4:6 5:14 7:12 9:4 21:8 22:17 28:6 33:10 38:22 42:4
**recorded** 1:9 33:1 45:7
**recording** 3:16 3:17,18,19,20 3:21 8:2
**recordings** 7:8 21:10
**refer** 5:13
**referred** 34:22
**refund** 33:23
**refuses** 30:18
**regarding** 24:4
**registered** 6:22
**registration** 5:24 35:20
**regularly** 15:7
**related** 31:18
**relates** 20:16
**relation** 16:18
**relayed** 35:18
**relevance** 23:13 25:21 27:18 28:14 38:7
**relevant** 26:6 30:22 35:14 37:4 38:8 44:1
**reliable** 35:14 37:5
**rely** 15:11 34:16 35:15
**remind** 34:13 40:20
**replies** 39:8,11
**report** 1:5 3:15 5:15,16,18 7:21 8:6 15:15 16:2 21:8 25:1,3 31:6,20 32:18 33:6 34:9 35:13 35:13,15,18 36:24 37:7
**reported** 45:7
**Reporter** 45:5
**REPORTER'S** 45:1
**reports** 34:8
**represent** 31:7
**require** 39:11
**requires** 31:17
**research** 35:3 38:11 44:2
**reserve** 17:5
**Respondent** 1:7 4:13 37:12,21 37:22
**responding** 5:22 6:4,6,14
**response** 41:15
**responses** 39:9,12
**rest** 4:24 21:5,18 29:19 31:1
**rests** 21:22
**review** 7:10 20:9 40:5
**reviewed** 40:7
**right** 4:1,4,11,16 5:2,5,6 16:3 17:3,7,13 19:12 21:4,14 23:3 24:3,11 26:20 26:22 27:2 29:15,17 31:15 34:2,24 35:1 38:24 39:24 40:18 41:2,12 42:15,20,24 43:8,19
**route** 10:17
**rule** 24:1 40:1
**rules** 7:23 34:14
**ruling** 35:2 41:4 41:18 42:2 43:8

**S**

**S** 2:1
**s-e-r-v-i-c-e** 41:23
**safety** 20:4
**save** 32:11
**says** 5:20 30:8 31:4 33:13 34:9
**schedule** 40:24
**school** 23:19
**search** 14:16
**searching** 14:17
**second** 23:20 26:2 38:2
**section** 30:22 31:1
**sedan** 18:16
**see** 5:18
**seen** 6:20
**sees** 36:8
**seizure** 30:11
**send** 43:11
**sent** 43:11
**service** 41:23
**service@lafata...** 43:14
**seven** 42:5
**Shemitraku** 3:4 11:7 12:3,10
**shift** 37:23
**short** 38:19 39:6
**shorthand** 45:5,7 45:10
**show** 13:22 27:14
**showed** 27:15
**shown** 13:23
**side** 39:7
**sign** 6:11 36:3
**signal** 30:15
**simply** 38:22
**Sir** 25:24
**sirens** 6:9 36:2
**six** 16:20
**software** 14:22
**son** 23:14
**sorry** 5:12 11:1 11:10,20 15:24 21:6 27:24,24 39:14
**south** 16:21
**southbound** 6:20 13:16 16:22
**SPEAKER** 7:14 7:18 40:10,17
**specific** 24:4
**sped** 31:13
**speed** 6:10 30:19 36:3,10
**speeds** 6:12 36:4 36:5
**spell** 22:20,20
**squad** 13:4,9 17:17
**standing** 22:5,6
**star** 5:23 6:8 8:3 9:1,12,19 10:7 10:20 11:7 12:10
**start** 4:19 8:4
**state** 4:5 11:6 22:16 45:6
**stated** 32:22
**Statement** 3:2 5:10
**station** 10:14,17
**statute** 33:13 35:5
**stop** 6:7,11 30:17 35:24 36:3,12
**stopped** 25:6
**street** 20:19
**stricken** 28:4,7,9
**subject** 26:12 30:11
**submit** 5:12 39:6 41:20,22,22
**submitted** 32:18 37:22 42:1
**sufficient** 33:10
**summary** 5:21 12:21
**supervisor** 20:23
**sure** 16:16 21:7 38:23 42:14 43:9,16
**sustained** 26:8 28:3,15
**system** 20:17 33:9 34:12 36:22,23 37:2

**T**

**table** 43:5
**take** 38:1,2 39:3
**taken** 16:10 45:10
**talk** 42:13
**ten** 12:13,16 42:15,17,19,23 42:24

FILED DATE: 6/25/2024 11:33 PM 20244002591




**tender** 17:1 43:24
**terminating** 6:16 8:16,17
**territory** 33:15
**test** 32:21
**testified** 12:6 22:13 33:2
**testify** 24:2
**testimony** 23:23 32:20
**thank** 11:20 16:13,24 17:14 21:18 24:12 28:10 29:12 32:4,8 34:23 43:13,19,21,22 44:3
**things** 34:21 35:1
**think** 10:21 19:24 26:14,22,24 32:16 36:11 39:12 42:8
**third-party** 15:5
**Thomas** 6:1 41:24
**time** 5:18 8:4 25:17 27:8 32:11 33:7 35:16 36:17 38:2 39:5,18 41:14
**times** 26:5
**today** 17:15 35:4 38:15 43:20
**told** 27:19
**Tom** 16:8
**tow** 4:12,14 26:4 26:13,17,20,23 27:3,20 28:24 29:24 30:3,4 31:15 32:2,4 34:11,23 35:7 38:4,12 43:2
**towed** 7:3 26:11 27:22 33:21 36:16
**towing** 38:21,21
**town** 14:10 26:10
**towns** 20:4
**track** 13:2
**traffic** 6:6 9:9 30:24 31:9,12 35:23 36:7
**training** 15:3,3
**transcript** 1:9 45:9
**transporting** 10:13
**traveled** 36:9
**traveling** 35:21
**trial** 40:13
**true** 45:9
**truthfulness** 33:11
**try** 24:15
**trying** 42:14
**two** 13:7 19:10 22:24 30:23 31:8 36:7 39:19
**type** 38:8

**U**

**underscore** 8:3,3 9:1,1,12,12,19 9:20 10:7,7,20 10:20
**understand** 28:22
**understood** 29:1
**unit** 6:8 12:11 17:23 18:15
**unmarked** 17:23
**unrelated** 32:20 32:21
**USD** 7:5
**use** 13:11 14:8 15:2,7,7 17:22
**usually** 17:22,23 23:15,18 40:21
**utility** 5:24 8:21

**V**

**V** 7:2
**valid** 8:19 9:23
**Van** 6:3
**vehicle** 3:22 6:5,7 6:9,11,18,20,22 6:24 7:1,3,6 14:16 15:7,15 18:10,11,13 19:8,19 20:2,5 20:8 21:13 23:5 23:11 24:17,18 24:21 26:5,10 26:17 27:17,20 28:13,17,23 30:3,8,14,17 31:3,4,5,8,11 31:15,18,22 32:1,14 33:15 33:20 34:1,10 34:12 35:7,19 36:2,2,6,9,13 36:16,18 37:6,8 37:10,13,14 38:4,13 43:3
**vehicles** 19:5 32:22
**verbose** 42:18
**Victor** 7:2
**video** 33:1
**view** 13:18
**Vigilant** 14:9,13 14:16 36:21
**vigilante** 33:9
**Village** 1:1,3 2:8 4:8,19,23 5:6 12:15 19:2,22 20:15 21:22 25:14 26:17,23 26:24 30:1,2,4 31:2 32:3 33:14 33:18 35:9 37:2 37:17,17 38:3
**Village's** 4:17 31:14
**violated** 33:16
**violation** 35:7
**visual** 30:15

**W**

**W-i-n-f-r-e-y** 22:23
**W-i-n-t-e-r-e-g-g** 4:8
**wanna** 17:14
**want** 8:22 20:11 21:7 22:4 34:13 35:2 38:14 39:22 40:1,20 40:24 41:4,5 42:11,21 43:5 44:2
**wanted** 20:8
**wants** 20:20
**wasn't** 25:3,4 27:15
**way** 39:1
**we'll** 5:2
**we're** 14:17 26:13 28:23 40:8,9 42:4,14 43:7
**weapons** 10:2
**website** 15:1
**week** 19:9 39:13 39:15,21
**weeks** 19:10 39:20
**went** 31:11
**willfully** 30:17
**window** 40:4
**Winfrey** 1:6 2:12 3:7 4:2,10 8:20 22:1,10,19,22 22:24 26:1 29:3 33:2
**Winteregg** 2:7 3:2,5,10,12 4:3 4:7,7 5:4,6,11 7:16,19 8:1,8 8:24 9:11,19 10:6,19 11:4,10 11:20 12:8 14:3 15:14,23 16:24 20:12 21:2,6,12 21:15,18 23:13 25:19,21,24 26:3,19 27:18 28:5,10,14,19 29:14,23 34:5 38:17,19 39:1 39:16,19 40:19 41:10 42:3,7,13 42:16,21,24 43:13,21 44:3
**witness** 11:5,7 12:5 17:4 18:2 22:12 23:14,17 23:21,24 24:3,7 24:10 25:20,23 27:19
**witnessed** 32:19
**witnesses** 4:20,22 21:23
**work** 12:21 18:20
**worked** 12:14
**working** 18:19 20:19
**works** 23:21 36:24
**wouldn't** 39:24 41:9
**wrong** 21:16

**X**

**X** 3:1

**Y**

**Yeah** 9:10 11:1 42:18
**year** 19:10,11
**years** 12:13,16
**yep** 21:11

**Z**

**zone** 6:2 35:22

**0**

**0231** 5:22
**05:10** 3:2
**07** 8:2
**08:10** 3:15,16
**084-003483** 45:16
**09** 8:24

FILED DATE: 6/25/2024 11:33 PM 20244002591




**09:05** 3:17
**09:14** 3:18
**09:21** 3:19

**1**

**1** 3:15 8:7,8,10 21:5,6,7,8,20
**1-7** 3:23 11:18
**1,000** 7:5
**10-4** 8:14,17,18 8:22,23 9:8,10 10:5,16,18
**10:09** 3:20
**10:23** 3:21
**11-5** 16:5
**11:00** 41:1
**11:17** 3:23
**12** 9:11
**12:07** 3:4
**122** 18:15
**122's** 6:9
**12th** 6:11 36:4
**14** 9:19 14:9
**14:01** 3:22
**15** 14:9
**15:20** 3:23
**15th** 40:17,19 41:16,19 42:2 43:8
**16** 10:6
**17** 10:19
**17:11** 3:5
**17th** 6:2,5 8:13 8:14
**1977** 6:22
**19th** 6:23
**1st** 6:20 16:11,17 16:18 40:11,12 40:13 41:14 42:1

**2**

**2** 3:16 6:23 8:5 8:10 11:11 21:9
**2:31** 16:5
**2019** 5:23 8:20
**2023** 5:19,21 16:5 18:14 23:4 24:24
**2023115023217** 9:2
**2023115023921** 9:12
**2023115024012** 9:20
**2023115024750** 10:8
**2023115025118** 10:21
**202311523054** 8:3
**2024** 1:11
**21** 36:10
**21st** 25:6,8,16 27:10
**22:14** 3:8
**23-21461** 4:4
**23-21561** 1:5
**23I7551** 7:2
**24013** 6:1 16:8
**247** 10:15
**25** 36:9
**251** 11:3
**27** 8:21 9:16
**29:22** 3:10
**2nd** 1:11

**3**

**3** 3:17 9:3,5
**30** 6:2 35:22
**315** 11:8 12:10
**32:06** 3:11
**327** 5:23
**34:04** 3:12

**4**

**4** 3:18 9:13,14 30:23
**45** 6:1 35:21,21

**5**

**5** 3:19 9:20,21
**50** 34:7
**5th** 5:21 6:19 18:14 23:2 24:24 25:4,7

**6**

**6** 3:20 10:6,9
**6004600220224...** 9:18
**60160** 6:23
**6th** 5:19

**7**

**7** 3:21 10:21,23 11:11 21:9
**70** 42:22
**7th** 6:16 8:16,17

**8**

**8** 3:22,23 13:24 14:1 15:21 21:7 21:12,20 37:6
**80** 6:12 36:5

**9**

**9** 21:5,6
**99** 10:2
**99.62(a)** 30:5

Filer Selected Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Courtroom, 0112
System Generated Hearing Date: 7/16/2024 11:00 AM
Location: Court Room 0112
Judge: Evans, Carl Lauras, Jr.

FILED
7/2/2024 1:12 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
20244002591
Courtroom, 0112
28355301

FILED DATE: 7/2/2024 1:12 PM 20244002591

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**FOURTH MUNICIPAL DISTRICT - CIVIL DIVISION**

| | | |
|---|---|---|
| **DERRICK WINFREY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.: 2024 400 2591** |
| **v.** | ) | |
| | ) | |
| **VILLAGE OF MAYWOOD, a Municipal Corporation,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**NOTICE OF FILING**

TO: Mike Drake
Natalie Lundak
Beyond Legal Aid
17 N. State St., Suite 1380
Chicago, IL 60602
mdrake1@beyondlegalaid.org
nlundak@beyondlegalaid.org

**PLEASE TAKE NOTICE** that on **July 2, 2024** we electronically filed with the Clerk of the Circuit Court of Cook County, Illinois, **Village of Maywood's Reply in Support of Its Motion to Strike and Motion to Dismiss Plaintiff's Complaint for Administrative Review,** a true and correct copy of which is attached and electronically served upon you.

KLEIN, THORPE AND JENKINS, LTD.

By: /s/Kaylee Hartman
One of their attorneys

Allen Wall (jawall@ktjlaw.com)
Kaylee M. Hartman (kmhartman@ktjlaw.com)
KLEIN, THORPE & JENKINS, LTD.
120 S. LaSalle Street, Suite 1710
Chicago, Illinois 60602
(312) 984-6400
Attorney No. 90446

FILED DATE: 7/2/2024 1:12 PM 20244002591

## CERTIFICATE OF SERVICE

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies as true and correct, that she served this Reply and Notice, upon the parties of record by the Court's EFSP, Odyssey eFileIL on July 2, 2024.

By: /s/ Kaylee M. Hartman.
One of their attorneys

Filer Selected Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Courtroom, 0112
System Generated Hearing Date: 7/16/2024 11:00 AM
Location: Court Room 0112
Judge: Evans, Carl Lauras, Jr.

FILED
7/2/2024 1:12 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
20244002591
Courtroom, 0112
28355301

FILED DATE: 7/2/2024 1:12 PM 20244002591

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**FOURTH MUNICIPAL DISTRICT - CIVIL DIVISION**

| | | |
|---|---|---|
| **DERRICK WINFREY,** <br><br> **Plaintiff,** <br><br> **v.** <br><br> **VILLAGE OF MAYWOOD, a Municipal Corporation,** <br><br> **Defendant.** | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | **No.: 2024 400 2591** |

**VILLAGE OF MAYWOOD'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR ADMINISTRATIVE REVIEW**

NOW COMES the Defendant, Village of Maywood (the "Village"), by and through its attorneys, Klein, Thorpe, & Jenkins, Ltd., and in further support of its motion to strike and dismiss Plaintiff's Complaint for Administrative Review states as follows:

**OVERVIEW**

Both parties agree that Counts VI and VII and paragraphs 14, 37, and 38 should be stricken from Plaintiff's Complaint. Plaintiff concedes that the requested relief for damages should be stricken. Plaintiff asserts certain paragraphs and Count I, II, III, and IV should not be stricken or dismissed, and in the alternative seeks leave to amend the Complaint. For the reasons stated in the Village's Motion to Dismiss and herein, an amended complaint will not cure the deficiencies in Plaintiff's Complaint. *See* 735 ILCS 5/2-616; *Ponto v. Levan*, 2012 IL App (2d) 110355, ¶ 25 (noting that one factor for permitting an amendment is whether the proposed amendment would cure the defective pleadings).

FILED DATE: 7/2/2024 1:12 PM 20244002591

**I. Paragraphs 3 – 7, 9- 10, 15- 16, 28 -33, 40-41, and 47 Should Be Stricken.**

Based on Plaintiff's Response, the Village concedes that paragraphs 11-13 and 55-57 are not subject to striking. The Village does not object to Plaintiff's allegations regarding Plaintiff's location in Cicero at the time of the tow. The Village objects to the additional details added to those allegations. "Additional" is defined as "added, extra, or supplementary to what is already present or available." *Additional*, OXFORD ENGLISH DICTIONARY (2010). Plaintiff states he is providing context and explanation, but this serves to supplement the record. The administrative record, including the hearing transcript and Respondent's Brief in Support of Dismissal (*Pltf. Complaint*, **Ex. C.**) where Plaintiff had the opportunity to assert any and all relevant facts, is the extent of the facts that can be presented to this Court.

In paragraphs 3 – 7, 17 and 28 -33, additional information about the nature of the stop in Cicero, the presence of Plaintiff's friend, Plaintiff's background, and other supplemental details are presented that are not in the administrative record.

Paragraphs 9 - 10, and 15-16 consist of legal conclusions that were not raised before the Administrative Law Judge ("ALJ"). *See Environmental Protection Agency v. Pollution Control Bd.*, 37 Ill.App.3d 519, 521 (5th Dist., 1976) (stating, "[w]here a party has presented his case to an administrative agency upon a certain and definite theory, it will not be permitted to change in court and prevail upon another theory and issue not advanced to the agency.").

Paragraphs 40 and 41 supplement the record by attempting to provide an explanation. This is additional information not in the administrative record.

Paragraph 47 attempts to provide context for Plaintiff's decision regarding the vague constitutional challenges he now raises. This context is not in the administrative record.

FILED DATE: 7/2/2024 1:12 PM 20244002591

## II. Counts I and III Were Not Raised Before the Administrative Body and Are Therefore Waived.

Plaintiff cites *Arvia v Madigan*, 209 Ill.2d 520, 533 (2004) to argue that administrative review can encompass the as-applied constitutional challenges in Counts I and III. *See Pltf. Response*, at 8. *Arvia* is distinct from the present matter because the plaintiff in *Arvia* raised an as-applied challenge before the administrative agency, thus preserving the issue for review. 209 Ill.2d, at 520 (stating "where it is alleged that a statute valid upon its face is applied in a discriminatory or arbitrary manner, the rule generally prevails that recourse must be had in the first instance to the appropriate administrative board." (quoting *Bank of Lyons v. County of Cook*, 13 Ill.2d 493, 495 (1958)).

Plaintiff admits that Count I was not raised before the administrative body. *See Pltf. Response*, at 9. Thus, Count I is waived and should be dismissed. In the alternative, Plaintiff seeks to remand the issue under 735 ILCS 5/3-111(a)(6). However, this section permits remand based on evidence discovered subsequent to the proceedings that, even with reasonable diligence, could not have been obtained at the proceedings. *Id.* This information must be material and not cumulative. *Id.* Plaintiff does not identify any new evidence or information that could not have been raised at the initial proceedings by the exercise of reasonable diligence.

Count III was not raised before the administrative body and introducing it now creates piecemeal litigation. Plaintiff was not "forbidden" from asserting this challenge. Instead, the ALJ utilized discretion in determining how to conduct the hearing and determine what was relevant. *See Schachter v. City of Chicago*, 2016 IL App (1st) 150442, ¶ 31. This discretion is subject to reversal "only if there is demonstrable prejudice to the complaining party." *Id.* Here, Plaintiff has not alleged the ALJ's discretionary decisions resulted in demonstrable prejudice.

FILED DATE: 7/2/2024 1:12 PM 20244002591

Plaintiff does not allege that this discretion created demonstrable prejudice that would warrant reversal or remand of the decision.

## III. Counts II and IV Are Insufficient to State a Facial Challenge.

Counts II and IV assert facial challenges to MVC 99.26, but "where a statute or ordinance is constitutional as applied to a party, a facial challenge will also fail, since there is necessarily as least one circumstance in which the statute or ordinance is constitutional." *Jackson v. City of Chicago*, 2012 IL App (1st) 111044, ¶ 27.

### *A. Count II Does Not Adequately Allege a Facial Challenge.*

The Village reiterates that Plaintiff was provided sufficient due process and has not sufficiently alleged otherwise, thus necessitating failure of Plaintiff's facial challenge as the "one circumstance" in which the statute or ordinance is constitutional. Additionally, Count II does not allege that Section 99.26 of the Maywood Village Code denies "a fair trial before a fair tribunal." *Dombrowski v. City of Chicago*, 363 Ill.App.3d 420, 426 (1st Dist. 2005).

Furthermore, Plaintiff's Count II appears to allege that failure to require "individual innocence, knowledge, consent, or privity" in the ordinance is indicative of a due process violation. *Pltf. Complaint*, at ¶ 72. Plaintiff does not advance grounds or allegations to warrant consideration of upending, "a long and unbroken line of cases [that] holds that an owner's interest in property may be forfeited by reason of the use to which the property is put even though the owner did not know that it was to be put to such use." *Bennis v. Michigan*, 516 U.S. 442, 446 (1996) (rejecting the petitioner's claim that a state law violated due process because it did not include an innocent owner defense); *see also Jackson v. City of Chicago*, 2012 IL App (1st) 111044, ¶ 35 (rejecting the argument that the lack of an innocent owner defense violated due process, "since years of federal and state authority support the conclusion that the lack of an

FILED DATE: 7/2/2024 1:12 PM 20244002591

innocent owner defense does not render a statute or ordinance unconstitutional.").

*B. Count IV is Legally Insufficient.*

Count IV is a legally insufficient facial challenge that does not state a claim under Article I, Section 6 of the Illinois Constitution. The alert placed in the Law Enforcement Agency Data System ("LEADS") is an investigative alert. *See generally, Pltf. Complaint*, **Ex C** (discussing the LEADS process and requirements). The use of an investigative alert does not constitute a constitutional violation when the alert is supported by probable cause. *See People v. Braswell*, 2019 IL App (1st) 172810, ¶ 39. The plain language of MVC § 99.26 requires probable cause prior to taking any action to impound a vehicle suspected of committing the offense of aggravated fleeing and eluding a police officer.

**WHEREFORE** Defendant, VILLAGE OF MAYWOOD, respectfully requests that this Honorable Court enter an Order granting the relief sought in its Motion to Dismiss and such other and further relief as the Court deems just and equitable in the circumstances.

Respectfully submitted,
VILLAGE OF MAYWOOD

By: /s/Kaylee Hartman
One of their attorneys

Allen Wall (jawall@ktjlaw.com)
Kaylee M. Hartman (kmhartman@ktjlaw.com)
KLEIN, THORPE & JENKINS, LTD.
120 S. LaSalle Street, Suite 1710
Chicago, Illinois 60602
(312) 984-6400
Atty No: 90446

IN THE CIRCUIT COURT OF COOK COUNTY ILLINOIS MUNICIPAL DEPARTMENT DISTRICT 4

| | | | | | |
|---|---|---|---|---|---|
| Plaintiff V Defendant | Derrick Winfrey-vs-Village of Maywood | Courtroom, 0112<br>20244002591 | | | |
| PLAINTIFF's ATTY | Ho, Lam 6337050 | | CONTRACT | FILING FEE | ADDENDUM |
| ADDITIONAL NAMES | | COMPLAINT FILED, SUMMONS ISSUED, RETURNABLE TO CLERK OF THE CIRCUIT COURT 04/19/2024 | Administrative Review - Ordinance Violation | 0.0000 | |

| DATE | JUDGE | ORDERS ENTERED |
|---|---|---|
| Judge Carl Evans, Jr.-2297 | JUN 0 4 2024 | PAIC [illegible] Π GIVN 21 DAYS TO RESP TO MOTION TO DISMISS, ΔAIC [illegible] Δ GIVN 7 TO REPLY CFS/ [illegible] 7/2/24 @ 11:00 [illegible] |
| Judge Carl Evans, Jr.-2297 | JUN 1 1 2024 | SOC POTS |
| Judge Carl Evans, Jr.-2297 | JUL 0 2 2024 | PAIC [illegible] CFS OR Δ's Reply 7/16/24 @ 11:00 ΔAIC [illegible] VIA Loom |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**FOURTH MUNICIPAL DISTRICT – CIVIL DIVISION**

| | | |
|---|---|---|
| **DERRICK WINFREY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 2024 400 2591** |
| **v.** | ) | |
| **VILLAGE OF MAYWOOD, a Municipal Corporation,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

This matter coming before the Court on Defendant, Village of Maywood's, motion to dismiss Plaintiff's complaint for administrative review, counsel for the Parties present via Zoom, and the Court advised on the premises, it is hereby ordered that:

1) The Defendant's reply in support of its motion to dismiss shall be filed on or before July 2, 2024; and
2) Status hearing on the motion to dismiss scheduled for July 16, 2024, at 11:00 a.m. via Zoom: Meeting ID=914 3462 0283; Password=988648.

ENTER: CJ #2287

DATE: 7/2/24

Order prepared by:

Kaylee M. Hartman
Klein, Thorpe and Jenkins, Ltd.
120 South LaSalle Street, Suite 1710
Chicago, Illinois 60603
(312) 984-6400
Firm No. 90446
kmhartman@ktjlaw.com

ENTERED
Judge Carl Evans, Jr.-2297
JUL 02 2024
IRIS Y. MARTINEZ
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

**IN THE CIRCUIT COURT OF COOK COUNTY ILLINOIS MUNICIPAL DEPARTMENT DISTRICT 4**

**Plaintiff V Defendant**: Derrick Winfrey-vs-Village of Maywood

Courtroom, 0112

20244002591

**PLAINTIFF's ATTY**: Ho, Lam 6337050

**ADDITIONAL NAMES**

**COMPLAINT FILED, SUMMONS ISSUED, RETURNABLE TO CLERK OF THE CIRCUIT COURT**
04/19/2024

| CONTRACT | FILING FEE | ADDENDUM |
|---|---|---|
| Administrative Review - Ordinance Violation | 0.0000 | |

| DATE | JUDGE | ORDERS ENTERED |
|---|---|---|
| JUN 04 2024 | Judge Carl Evans, Jr.-2297 | PAIC DRAKE [illegible] Given 21 days to resp to motion to dismiss, DAIC WALL Δ given 7 to reply CFS / status 7/2/24 @ 11:00 m112 |
| JUN 11 2024 | Judge Carl Evans, Jr.-2297 | SOC POTS |
| JUL 02 2024 | Judge Carl Evans, Jr.-2297 | PAIC DRAKE DAIC [illegible] CFS on Δ's Reply 7/16/24 @ 11:00 via Zoom |
| JUL 16 2024 | Judge Carl Evans, Jr.-2297 | PAIC-DRAKE CFH [illegible] on Δ's mtn to dismiss [illegible] 8/22/24 @ 2:00 pm via zoom |
| | | |
| | | |
| | | |
| | | |

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**FOURTH MUNICIPAL DISTRICT – CIVIL DIVISION**

| | | |
|---|---|---|
| **DERRICK WINFREY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 2024 400 2591** |
| **v.** | ) | |
| **VILLAGE OF MAYWOOD, a Municipal Corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

This matter coming before the Court on Defendant, Village of Maywood's, motion to dismiss Plaintiff's complaint for administrative review, counsel for the Parties present via Zoom, and the Court advised on the premises, it is hereby ordered that:

1) The Court shall hear the motion to dismiss on August 22, 2024, at 2:00 p.m. via; and Zoom: Meeting ID=914 3462 0283; Password=988648.

ENTER: #2297

DATE: 7/16/24

ENTERED
Judge Carl Evans, Jr.-2297
JUL 16 2024
IRIS Y. MARTINEZ
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

Order prepared by:

Kaylee M. Hartman
Klein, Thorpe and Jenkins, Ltd.
120 South LaSalle Street, Suite 1710
Chicago, Illinois 60603
(312) 984-6400
Firm No. 90446
kmhartman@ktjlaw.com

# IN THE CIRCUIT COURT OF COOK COUNTY ILLINOIS MUNICIPAL DEPARTMENT DISTRICT 4

| | | | | | |
|---|---|---|---|---|---|
| Plaintiff V Defendant | Derrick Winfrey-vs-Village of Maywood | Courtroom, 0112<br>20244002591 | | | |
| PLAINTIFF's ATTY | Ho, Lam 6337050 | | CONTRACT | FILING FEE | ADDENDUM |
| ADDITIONAL NAMES | | COMPLAINT FILED, SUMMONS ISSUED, RETURNABLE TO CLERK OF THE CIRCUIT COURT 04/19/2024 | Administrative Review - Ordinance Violation | 0.0000 | |

| DATE | JUDGE | ORDERS ENTERED |
|---|---|---|
| Judge Carl Evans, Jr.-2297 | JUN 0 4 2024 | PAIC Drake ℗ Given 21 days to resp to motion to dismiss, DAIC Wall Δ given 7 to reply CFS / status 7/2/24 @ 11:00 [illegible] |
| Judge Carl Evans, Jr.-2297 | JUN 1 1 2024 | SOC POTS |
| Judge Carl Evans, Jr.-2297 | JUL 0 2 2024 | PAIC Drake DAIC-Lyman CFS of Δ's Reply 7/16/24 @ 11:00 via Zoom |
| Judge Carl Evans, Jr.-2297 | JUL 1 6 2024 | PAIC-Drake CF Hearing on Δ's motion 8/22/24 @ 2:00 pm via Zoom [illegible] |
| Judge Carl Evans, Jr.-2297 | AUG 2 2 2024 | PAIC/DAIC Δ Village's motion to dismiss is denied ℗ case is remanded to Village of Maywood for new hearing on ℗'s const. challenges to MC § 97.26 |

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**MUNICIPAL DEPARTMENT, FOURTH DISTRICT**

| | | |
|---|---|---|
| Derrick Winfrey<br>Plaintiff/Petitioner, | ) ) ) | |
| vs. | ) | Case No. 20244002591 |
| | ) | *Hon. Carl Evans Jr. Presiding* |
| Village of Maywood<br>Defendant/Respondent. | ) ) | *Maywood Rm 112* |

ENTERED
Judge Carl Evans, Jr.-2297
AUG 22 2024
IRIS Y. MARTINEZ
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

**ORDER**

Plaintiff Derrick Winfrey brought this action seeking judicial review of an administrative judgment from Defendant Village of Maywood pursuant to 735 ILCS 5/3-103. The Administrative Law Judge found Plaintiff Derrick Winfrey liable for towing and storage charges pursuant to Maywood Village Ordinance § 99.26. Plaintiff claims various "as applied" and facial challenges to the constitutionality of Ordinance § 99.26. Defendant Village filed a motion to strike and dismiss pursuant to 735 ILCS 5/2-615.

The court has reviewed the filings, transcripts and memoranda in this case and heard the arguments of counsel and rules as follows;

1. Plaintiff made some reference to constitutional challenges at the administrative hearing but did not fully argue them for reasons unclear on the record provided.
2. Plaintiff raises constitutional challenges to § 99.26 as applied to plaintiff in this case as well as a facial challenge to the constitutionality of the ordinance.

3. The record is incomplete as to factual findings and the application of § 99.26 to plaintiff in this case.

4. Due to the incomplete factual record, Defendant's Motion to Dismiss is DENIED as being premature and this cause is REMANDED for a new hearing on Plaintiff's constitutional claims.

**DATED: August 22 2024**

IT IS SO ORDERED:

CJ #2297

Carl Lauras Evans, Jr.
Associate Judge
Circuit Court of Cook County

ENTERED
Judge Carl Evans, Jr.-2297
AUG 22 2024
IRIS Y. MARTINEZ
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

Filer Selected Hearing Date: 9/24/2024 9:30 AM - 9:35 AM
Location: <<CourtRoomNumber>>
Judge: Courtroom, 0112
System Generated Hearing Date: <<CmsHearingStart>>
Location: <<CmsHearingResource="Location">>
Judge: <<CmsHearingResource="JudicialOfficer">>

FILED
9/20/2024 9:36 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
20244002591
Courtroom, 0112
29450588

FILED DATE: 9/20/2024 9:36 AM 20244002591

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**FOURTH MUNICIPAL DISTRICT - CIVIL DIVISION**

| | | |
|---|---|---|
| **DERRICK WINFREY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.: 2024 400 2591** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **VILLAGE OF MAYWOOD, a Municipal Corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## NOTICE OF MOTION

TO: Mike Drake
Natalie Lundak
Beyond Legal Aid
17 N. State St., Suite 1380
Chicago, IL 60602
mdrake1@beyondlegalaid.org
nlundak@beyondlegalaid.org

PLEASE TAKE NOTICE that on **the above date and time,** or as soon thereafter as counsel may be heard, we shall appear **Via Zoom** before the Honorable Carl Laura Evans, or anyone sitting in her stead, in Court Room 112, of the Cook County Circuit Court located at 1500 Maywood Drive, Maywood, Illinois, and present **Village of Maywood's Motion to Clarify and/or Reconsider this Court August 22, 2024 Non-Final Opinion,** a true and correct copy of which is attached hereto and hereby served upon you.

(Zoom Id: 914 3462 0283; Password: 988648)

KLEIN, THORPE AND JENKINS, LTD.

By: /s/Kaylee Hartman
One of their attorneys

Allen Wall (jawall@ktjlaw.com)
Kaylee M. Hartman (kmhartman@ktjlaw.com)
KLEIN, THORPE & JENKINS, LTD.
120 S. LaSalle Street, Suite 1710
Chicago, Illinois 60602
(312) 984-6400
Attorney No. 90446

FILED DATE: 9/20/2024 9:36 AM 20244002591

**CERTIFICATE OF SERVICE**

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies as true and correct, that she served this Motion and Notice of Motion, upon the parties of record by the Court's EFSP, Odyssey eFileIL on September 20, 2024.

By: /s/ Kaylee M. Hartman.
One of their attorneys

Filer Selected Hearing Date: 9/24/2024 9:30 AM - 9:35 AM
Location: <<CourtRoomNumber>>
Judge: Courtroom, 0112
System Generated Hearing Date: <<CmsHearingStart>>
Location: <<CmsHearingResource="Location">>
Judge: <<CmsHearingResource="JudicialOfficer">>

FILED
9/20/2024 9:36 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
20244002591
Courtroom, 0112
29450588

FILED DATE: 9/20/2024 9:36 AM 20244002591

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**FOURTH MUNICIPAL DISTRICT - CIVIL DIVISION**

| | | |
|---|---|---|
| **DERRICK WINFREY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.: 2024 400 2591** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **VILLAGE OF MAYWOOD, a Municipal Corporation,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>VILLAGE OF MAYWOOD'S MOTION TO CLARIFY AND/OR RECONSIDER THIS COURT AUGUST 22, 2024 NON-FINAL OPINION</u>**

NOW COMES the Defendant, Village of Maywood (the "Village") by and through its attorneys, Klein, Thorpe, & Jenkins, Ltd., and for its Motion to Clarify and/or Reconsider this Court's August 22, 2024 Order (the "Remand Order"), states as follows:

**<u>INTRODUCTION</u>**

On August 22, 2024, this Court issued its Remand Order determining that the administrative record of the administrative decision challenged in the above-captioned matter is "incomplete as to factual findings and the application of § 99.26 to plaintiff in this case." *See Remand Order*, attached as **Exhibit A**. The Court further stated that, "due to the incomplete factual record [. . .] this cause is REMANDED for a new hearing on Plaintiff's constitutional claims." *Ex. A.*

In his Response to the Village's Motion to Dismiss, Plaintiff, without elaboration, argued, "that the proper remedy would be to remand this back to the Administrative Court to address this issue pursuant to 735 ILCS 5/3-111(a)(7). *See Plaintiff's MTD Response*, at 10, attached as **Exhibit B** (referencing Counts I, III, and VI). Plaintiff's Response admits, "there are sufficient facts and

FILED DATE: 9/20/2024 9:36 AM 20244002591

testimony to warrant" Count I (due process as-applied challenge) and Count III (search and seizure as-applied challenge), but "concedes that Count VI should be dismissed as it is insufficient as a matter of law." *Ex B.*, at 9.

The Remand Order does not state the legal basis for remand and the only available reference to remand proceedings under Administrative Review Law ("ARL") is Plaintiff's perfunctory citation to 735 ILCS 5/3-111(a)(7).

The Village asserts that remand is premature at this stage because the appropriate standards of review have not been introduced and the entire administrative record has not been filed. In the alternative, it is unclear what legal basis the Court considered when issuing the Remand Order. The Village requests clarification of what legal basis was relied upon. In the event the Court relied on 735 ILCS 5/3-111(a)(7), as cited by Plaintiff, the Village requests reconsideration. The Village asserts that the appropriate basis for remand should be 735 ILCS 5/3-111(a)(6), which states that the circuit court has the power to, "remand the decision in whole or in part, and, in that case, to state the questions requiring further hearing or proceedings and to give such other instructions as may be proper." The Village requests clarification and reconsideration of the Court's basis for remand and, in the alternative, clarification of the scope of the hearing on remand.

## I. Legal Standard

### A. Motion to Reconsider

In Illinois, "[t]he purpose of a motion to reconsider is to bring to the trial court's attention (1) newly discovered evidence not available at the time of the hearing, (2) changes in the law, or (3) errors in the court's previous application of existing law." *Stringer v. Packaging Corp. of America*, 351 Ill.App.3d 1135, 1140 (4th Dist. 2004). "Motions to reconsider are retrospective in

FILED DATE: 9/20/2024 9:36 AM 20244002591

nature." *Id.* at 1141. Here, the Village seeks clarification and reconsideration based on the Court's previous application of existing law concerning remand under ARL.

**B. Remand Under Administrative Review Law**

ARL "is a departure from the common law; its prescribed procedures must be strictly adhered to by a reviewing court." *Rosecky v. Illinois Dept. of Public Aid*, 157 Ill.App.3d 608, 614 (1st Dist., 1987). Section 3-111 of the ARL details the powers of the circuit court when reviewing an administrative decision. 735 ILCS 5/3-111. Additionally, "on motion of either party, the circuit court shall make findings of fact or state the propositions of law upon which its judgment is based." 735 ILCS 5/3-111(c).

Section 3-111(a)(7) authorizes the circuit court to "remand for the purpose of taking additional evidence when from the state of record of the administrative agency or otherwise it shall be appear that such action is just." 735 ILCS 5/3-111(a)(7). The section clarifies that, "*[h]owever*, no remandment shall be made on the ground of newly discovered evidence unless it appears to the satisfaction of the court that such evidence has in fact been discovered subsequent to the termination of the proceedings before the administrative agency that it could not by the exercise of reasonable diligence have been obtained at such proceedings; and that such evidence is material to the issues and is not cumulative." *Id.* (emphasis added).

Section 3-111(a)(6) permits the court to "remand the decision in whole or in part, and, in that case, to state the questions requiring further hearing or proceedings and to give such other instructions as may be proper." 735 ILCS 5/3-111(a)(6).

**Argument**

When the Remand Order was made, the Village's Motion to Dismiss was before the Court. At that time, the entire administrative record had not been filed and the appropriate

FILED DATE: 9/20/2024 9:36 AM 20244002591

standards of review had not been argued, briefed, or advanced to this Court. The Village asserts the remand is premature at this stage.

In the alternative, the Remand Order does not cite a specific provision within Section 3-111 of the ARL, and thus it is not clear what proposition of law was applied. The Plaintiff cited 735 ILCS 5/3-111(a)(7) in his MTD Response, but, for the reasons below, this is not the appropriate legal basis for remand. Instead, the basis for remand should be 735 ILCS 5/3-111(a)(6) and the Village requests that the Court clarify or reconsider the Remand Order, "to state the questions requiring further hearing or proceedings. . . ." *Id.*

**I. An Order for Remand is Premature.**

First, the Village contends that remand is premature because the entirety of the administrative record has not been filed with this Court and the appropriate standards of review have not been applied to the administrative record. The Plaintiff's Complaint and the Village's Motion to Dismiss only contained portions of the administrative record. The exhibits from the administrative hearing were not included.

Additionally, remand is premature because the appropriate standard of review was not presented to the Court. The Motion to Dismiss addressed the sufficiency of the pleadings and whether those issues were raised upon administrative review. If the Village's Motion to Dismiss is denied as premature, the next step should be to file the entire administrative record and apply the appropriate standard of review to Plaintiff's claims. In Administrative Review Law, the court, "reviews factual questions under the manifest weight of the evidence standard, questions of law *de novo*, and mixed questions of law and fact under the clearly erroneous standard." *Danigeles v. Illinois Dept. of Financial & Professional Regulation*, 2015 IL App (1st) 142622, ¶ 69.

FILED DATE: 9/20/2024 9:36 AM 20244002591

Any issue regarding the admission or exclusion of evidence by the administrative hearing officer is reviewed under an abuse of discretion standard. *Id.* at ¶ 89. Any issue of Plaintiff's ability to raise or not raise a constitutional argument should be reviewed under the abuse of discretion standard. Here, Plaintiff did not advance the appropriate standard of review, and the Court was unable to consider the entire administrative record in light of the correct standard. Plaintiff's Complaint does not assert that the Administrative Hearing Officer abused her discretion. Instead, Plaintiff only raised issues with the evidentiary rulings and ability to assert constitutional challenges in the MTD Response. This is insufficient to allow the Court to determine if the evidentiary ruling or Plaintiff's failure to raise the constitutional challenges in the first instance, resulted from an abuse of discretion that "materially affected the rights of any party" that would warrant overturning or remanding the administrative decision. *Id.* at ¶ 89.

The Village requests that the Court clarify or reconsider the Remand Order to determine if Plaintiff's Complaint is better served by the filing of the entire administrative record and proceeding with applying the appropriate standard of review, rather than premature remand.

**II. 735 ILCS 5/3-111(a)(7) Does Not Support Remand for Additional Evidence.**

The Illinois Supreme Court has held that remand under Section 3-111(a)(7) is inappropriate when the party, "could, by the exercise of reasonable diligence, have obtained the evidence in question in time to submit it during the administrative proceedings." *Crabtree v. Illinois Dept. of Agriculture, Div. of Agr. Industry Regulation*, 128 Ill.2d 510, 518 (1989).

Here, Plaintiff's Complaint included numerous additional facts that were not stated on the administrative record and should not be permitted for introduction upon remand. Plaintiff's as-applied challenges are really a challenge to the Administrative Hearing Officer's role as the trier of fact. *Village Discount Outlet v. Department of Employment Sec.*, 384 Ill.App.3d 522, 524 (1st

FILED DATE: 9/20/2024 9:36 AM 20244002591

Dist. 2008). Any issue regarding the admission or exclusion of evidence is reviewed under an abuse of discretion standard. *Danigeles*, 2015 IL App (1st) 142622, ¶ 89.

*a. Limitation of Additional Evidence on Remand is Essential.*

In *Baker v. Illinois Dept. of Employment Sec.*, the plaintiff challenged the denial of his request for remand to consider an affidavit from his supervisor as additional evidence in an employment-related administrative matter. 2014 IL App (1st) 123669, ¶ 1. Plaintiff argued the supervisor could not have participated in the initial administrative hearing because he was still employed by the employer and feared retaliation until his retirement. *Id.* at ¶ 26. However, plaintiff was "not allowed a second bite at the apple" where he chose to appear at the initial hearing, chose not to secure his supervisor's attendance, and chose not to be represented by counsel. *Id.* at ¶ 27.

In *Morelli v. Ward*, the appellate court held that the district court erred in declining to remand an administrative matter based on new evidence showing the alleged victim entirely recanted her written complaint and grand jury testimony in a related criminal trial, resulting in the plaintiff's acquittal. 315 Ill.App.3d 492, 498 (3d Dist. 2000). In that instance, the new evidence was "clearly material to the issues" because the recanted testimony was the basis for the administrative violation, thus justifying remand. *Id.* at 499.

Unlike the plaintiff in *Baker*, Plaintiff did have the benefit of counsel. Unlike *Morelli*, Plaintiff's Complaint does not include new facts that are "clearly material" that would justify eleventh-hour introduction upon remand.

*b. Limitation of Additional Evidence Would Not Prejudice Plaintiff's Claims.*

Additionally, Plaintiff argued that Counts I and III were supported by "sufficient facts and testimony" in the administrative record. *Ex. B*, at 9. Based on this admission, it would be improper to permit the "taking of additional evidence" regarding the claims in Counts I and III. Plaintiff has

FILED DATE: 9/20/2024 9:36 AM 20244002591

alleged no grounds that would permit taking new evidence, nor has Plaintiff alleged there is newly discovered evidence discovered subsequent to the termination of the administrative proceedings that could not have been obtained through reasonable diligence in the first instance.

Plaintiff's MTD Response asserts that he was in a Catch-22 situation because of Defendant's objections and the Administrative Court's sustainment of those objections. *Ex. B*, at 9. Those concerns are not sufficient to warrant remand for additional evidence under 735 ILCS 5/3-111(a)(7). Instead, Plaintiff's "Catch-22 situation" is really a challenge to the Administrative Hearing Officer's role as the trier of fact. *Village Discount Outlet v. Department of Employment Sec.*, 384 Ill.App.3d 522, 524 (1st Dist. 2008). Any issue regarding the admission or exclusion of evidence is reviewed under an abuse of discretion standard. *Danigeles*, 2015 IL App (1st) 142622, ¶ 89. Plaintiff has offered no argument that the Administrative Hearing Officer abused her discretion in ruling on the admission or exclusion of evidence.

Because of this, Section 3-111(a)(7) is not the proper legal basis for remand, and the Village requests the Court clarify or reconsider its legal basis for remand. Specifically, the Village asserts that no additional evidence regarding Count I and III be permitted at the hearing on remand and that the hearing be limited to applying Plaintiff's as-applied challenges to the existing factual record. Additionally, Plaintiff should not be permitted to introduce any evidence regarding Count VI because no argument has been presented to this Court that an abuse of discretion occurred. If Plaintiff challenges the admission or exclusion of evidence, he must do so under the appropriate standard of review. *See Danigeles*, 2015 IL App (1st) 142622, at ¶ 89.

## III. The Legal Basis for Remand Is 735 ILCS 5/3-111(a)(6).

The Remand Order states that the matter is remanded "due to the incomplete factual record [. . .] for a <u>new</u> hearing on Plaintiff's constitutional claims." *Ex. A* (emphasis added). The Remand

FILED DATE: 9/20/2024 9:36 AM 20244002591

Order also states the record has "incomplete as to factual findings . . . ." *Ex. A* (emphasis added). The Village requests clarification and reconsideration of the Remand Order to identify the scope and limitations of the hearing on remand.

*a. The Facial Challenges Should be Considered Based on Plaintiff's Pleadings and Do Not Require Consideration on Remand.*

The Village requests the Court clarify or reconsider the type of constitutional claims to be heard on remand. The Plaintiff asserts both as-applied and facial challenges to the Maywood Village Code § 99.27. Facial challenges can be brought for the first time on administrative review, if such claims are adequately pled. *Banks of Lyons v. Cook County*, 13 Ill.2d 493, 495 (1958). The Village's position is that Plaintiff has not adequately pled the facial challenges. These facial challenges are raised in Count II, IV, and VII. Because facial challenges are not dependent on the factual record, the Village requests clarification or reconsideration of the "constitutional claims" to be presented on remand. Specifically, the Village asserts the scope of review should be limited to the as-applied challenges that Plaintiff did not assert in the first instance, and that consideration of facial challenges should be based on the sufficiency of Plaintiff's pleadings.

*b. Plaintiff Is Not Entitled to a "New" Hearing.*

Additionally, the Village requests that the Court clarify or reconsider what it meant when it stated when it remanded the matter, "due to the incomplete factual record [. . .] for a new hearing on Plaintiff's constitutional claims." *Ex. A* (emphasis added). The Village requests clarification and reconsideration of whether "new" in the Remand Order means a *de novo* hearing or whether it is remanded to incorporate factual findings based on the existing evidence and allow Plaintiff to assert the as-applied constitutional challenges.

In *Strohl v. Macon County Zoning Board of Appeals, et. al.*, the Illinois Supreme Court reversed the trial court's administrative review decision as an improper trial *de novo*. 411 Ill.

FILED DATE: 9/20/2024 9:36 AM 20244002591

559, 563 (1952). In *Strohl*, the validity of an ordinance was attacked, but no record of the administrative proceedings, statement of the appealed decision, or transcript or stipulation of the evidence from the administrative body was presented. *Id.* In fact, it was unclear if any contemporaneous record of the administrative proceeding was kept. *Id.*

Under *Strohl*, remand for a "new" hearing would be improper, because the Illinois Supreme Court has held:

> Section 12(1)(b) of the Administrative Review Act [now 735 ILCS 5/3-111(b)] empowers the circuit court to make any order that it deems proper for the amendment, completion or filing of the record of proceedings of the administrative agency. Subparagraph (2) of the same section provides that 'Technical errors in the proceedings before the administrative agency * * * shall not constitute grounds for the reversal of the administrative decision unless it appears to the trial court that such error or failure materially affected the rights of any party and resulted in substantial injustice to him.' If *the board failed to keep a [contemporaneous] record of its proceedings as required*, we *consider their failure to be beyond the scope of a technical error and that it would work a substantial injustice on appellees* . . . . If it is determined that [no such contemporaneous record] *was* kept [at the time of the proceedings], it is directed that the *decision of the Board of Appeals be reversed*. . . .

*Strohl*, 411 Ill. at 565 (emphasis added). Thus, the Remand Order, in this way, conflicts with the holding in *Strohl* because a "new" hearing is appropriate if an error or failure materially affected the rights of any party and resulted in substantial injustice. Here, Plaintiff has not alleged such a failure has occurred. In other words, *Strohl* does not give the Plaintiff a second bite at the proverbial apple here.

Here, unlike *Strohl*, there is very clearly an administrative record to review. To permit a "new" hearing where no substantial injustice has been alleged would go against the Administrative Review Law and the Illinois Supreme Court precedent. Instead, the hearing on remand should not be *de novo* because the evidence already received are sufficient to permit the necessary factual

FILED DATE: 9/20/2024 9:36 AM 20244002591

findings. *See McCaffery v. Civil Service Bd. Of Chicago Park Dist.*, 7 Ill.App.2d 164, 174 (1st Dist. 1955).

As shown in the Administrative Hearing Transcript, the Administrative Hearing Officer made initial findings based on the violation of aggravated fleeing and eluding. *See Administrative Hearing Transcript*, at 35 – 38, attached as **Exhibit C**. The Administrative Hearing Transcript shows the Administrative Hearing Officer made evidentiary findings regarding the information presented. *See Caliendo v. Martin*, 250 Il.App.3d 409, 421 (1st Dist. 1993) (stating hearing officers, like judges, "need not state a reason for their evidentiary rulings" although it is proper to "state the basis of its evidentiary rulings").

The Order issued March 15, 2024 was based on the second issue regarding the ability to tow outside of the Village's corporate limits. *See March 15, 2024 Order*, attached as **Exhibit D.** The Village requests clarification and consideration of whether the "factual findings" that are incomplete are specific to the second issue. If so, the Village contends that no additional evidence is necessary, and the Administrative Hearing Officer can set forth factual findings on that issue without a *de novo* hearing.

**WHEREFORE** Defendant, VILLAGE OF MAYWOOD, respectfully requests that this Honorable Court clarify and reconsider the Remand Order and granting the Village such other and further relief as the Court deems just and equitable in the circumstances.

Respectfully submitted,
VILLAGE OF MAYWOOD

By: /s/Kaylee Hartman
One of their attorneys

FILED DATE: 9/20/2024 9:36 AM 20244002591

Allen Wall (jawall@ktjlaw.com)
Kaylee M. Hartman (kmhartman@ktjlaw.com)
KLEIN, THORPE & JENKINS, LTD.
120 S. LaSalle Street, Suite 1710
Chicago, Illinois 60602
(312) 984-6400
Atty No: 90446

FILED DATE: 9/20/2024 9:36 AM 20244002591

# Village of Maywood

# Motion to Clarify/ Reconsider

# Exhibit A

FILED DATE: 9/20/2024 9:36 AM 20244002591

IN THE CIRCUIT COURT OF COOK COUNTY ILLINOIS MUNICIPAL DEPARTMENT DISTRICT 4

Plaintiff
V
Defendant

Derrick Winfrey-vs-Village of Maywood

Courtroom, 0112

20244002591

PLAINTIFF's ATTY Ho, Lam 6337050

ADDITIONAL NAMES

COMPLAINT FILED, SUMMONS ISSUED, RETURNABLE TO CLERK OF THE CIRCUIT COURT 04/19/2024

| CONTRACT | FILING FEE | ADDENDUM |
| --- | --- | --- |
| Administrative Review - Ordinance Violation | 0.0000 | |

| DATE | JUDGE | ORDERS ENTERED |
| --- | --- | --- |
| Judge Carl Evans, Jr.-2297 | JUN 04 2024 | P/A/C Drake Π Given 21 days to resp to motion to dismiss, D/A/C Wall Δ given 7 to reply CFS/Status 7/2/24 @ 11:00 am |
| Judge Carl Evans, Jr.-2297 | JUN 11 2024 | SOC POTS |
| Judge Carl Evans, Jr.-2297 | JUL 02 2024 | P/A/C Drake CFS on Δ's Reply 7/16/24 @ 11:00 D/A/C Hyman via Zoom |
| Judge Carl Evans, Jr.-2297 | JUL 16 2024 | P/A/C Drake CF Hearing on Δ's Motion to Dismiss 8/22/24 @ 2:00 pm via Zoom All |
| Judge Carl Evans, Jr.-2297 | AUG 22 2024 | P/A/C / D/A/C Δ Villages motion to dismiss is denied. Π case is remanded to Village of Maywood for new hearing on Π's const. challenges to MCV 97.26 |

FILED DATE: 9/20/2024 9:36 AM 20244002591

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**MUNICIPAL DEPARTMENT, FOURTH DISTRICT**

| | | |
|---|---|---|
| Derrick Winfrey<br>Plaintiff/Petitioner, | ) | |
| vs. | ) | Case No. 20244002591<br>*Hon. Carl Evans Jr. Presiding*<br>*Maywood Rm 112* |
| Village of Maywood<br>Defendant/Respondent. | ) | |

ENTERED
Judge Carl Evans, Jr.-2297
AUG 22 2024
IRIS Y. MARTINEZ
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

**ORDER**

Plaintiff Derrick Winfrey brought this action seeking judicial review of an administrative judgment from Defendant Village of Maywood pursuant to 735 ILCS 5/3-103. The Administrative Law Judge found Plaintiff Derrick Winfrey liable for towing and storage charges pursuant to Maywood Village Ordinance § 99.26. Plaintiff claims various "as applied" and facial challenges to the constitutionality of Ordinance § 99.26. Defendant Village filed a motion to strike and dismiss pursuant to 735 ILCS 5/2-615.

The court has reviewed the filings, transcripts and memoranda in this case and heard the arguments of counsel and rules as follows;

1. Plaintiff made some reference to constitutional challenges at the administrative hearing but did not fully argue them for reasons unclear on the record provided.
2. Plaintiff raises constitutional challenges to § 99.26 as applied to plaintiff in this case as well as a facial challenge to the constitutionality of the ordinance.

FILED DATE: 9/20/2024 9:36 AM 20244002591

3. The record is incomplete as to factual findings and the application of § 99.26 to plaintiff in this case.

4. Due to the incomplete factual record, Defendant's Motion to Dismiss is DENIED as being premature and this cause is REMANDED for a new hearing on Plaintiff's constitutional claims.

**DATED: August 22 2024**

IT IS SO ORDERED:

#2297

Carl Lauras Evans, Jr.
Associate Judge
Circuit Court of Cook County

ENTERED
Judge Carl Evans, Jr.-2297
AUG 22 2024
IRIS Y. MARTINEZ
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

FILED DATE: 9/20/2024 9:36 AM 20244002591

# Village of Maywood

# Motion to Clarify/ Reconsider

# Exhibit B

Filer Selected Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Courtroom, 0112
System Generated Hearing Date: 7/2/2024 11:00 AM
Location: Court Room 0112
Judge: Evans, Carl Lauras, Jr.

FILED
6/25/2024 11:33 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
20244002591
Courtroom, 0112
28262330

FILED DATE: 6/25/2024 11:33 PM 20244002591

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**FOURTH MUNICIPAL DISTRICT**

DERRICK WINFREY,

Plaintiff,

v.

VILLAGE OF MAYWOOD,

Defendant.

Case No.: 20244002591

**<u>PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT VILLAGE OF MAYWOOD'S MOTION TO DISMISS</u>**

NOW COMES Plaintiff, Derrick Winfrey, by and through Counsel, Beyond Legal Aid, and responds to Defendant Village of Maywood's Motion to Dismiss. In support of such she states as follows:

**<u>INTRODUCTION</u>**

Plaintiff filed this suit seeking review of an administrative decision pursuant to 735 ILCS 5/3-103 on April 19, 2024. (Pl.'s Compl., Filed Apr. 19, 2024 ("Pl.'s Compl.")). There, Plaintiff raises both facial and as applied challenges to MVC § 99.26. (Pl.'s Compl.). Defendant Village of Maywood timely filed its Motion to Strike and Dismiss on May 31, 2024. (Def.'s Mot. to Strike, Filed May 31, 2024 ("Def.'s Mot.")). There, Defendant seeks to strike and dismiss portions of Plaintiff's Complaint for numerous reasons. Specifically, Defendant seeks to strike Paragraphs 3-7, 9-17, 28-33, 37, 38, 40, 41, 47 and 55-7 of Plaintiff's Complaint as impermissible new evidence under the Administrative Review Law ("ARL"), (Def.'s Mot., at 1); Counts I, III, V, VI, and portions of Plaintiff's Conclusion as beyond the scope of administrative review, (Def.'s Mot., at 5-6); Counts I, III, VI of Plaintiff's Complaint as not properly raised before the administrative

FILED DATE: 6/20/2024 9:38 AM 2024L002591

agency, (Def.'s Mot., at 6); and strike Counts II, IV, and VII and legally insufficient as a matter of law, (Def.'s Mot., at 7).

In response, Plaintiff moves to amend his Complaint pursuant to 735 ILCS 5/2-615(d) and 735 ILCS 5/2-616. Plaintiff further concedes that Paragraphs 14, 37, and 38 should be stricken as well as Counts VI and VII. Notwithstanding Plaintiff's request to amend, Plaintiff further argues that Paragraphs 3-7 9-13, 15-17, 40, 41, 47, and 55-57 as well as Counts I, II, III, and IV are not subject to striking.

## ARGUMENT

A motion brought under 735 ILCS 5/2-615 challenges the legal sufficiency of a pleading. *Brogan v. Mitchell International, Inc.*, 181 Ill. 2d 178, 183 (1998). When reviewing a motion to dismiss a pleading under 735 ILCS 5/2-615, a court must determine whether the pleading provides sufficient factual allegations that, if established, could entitled the petitioner to relief. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 86 (1996). The reviewing court must accept all well plead facts as true and draw reasonable inferences from those facts in the light most favorable to the non-moving party. *Id.* at 86.

### I. PLAINTIFF'S COMPLAINT DOES NOT EXCEED THE SCOPE OF ADMINISTRATIVE REVIEW.

#### A. Paragraphs 3-7, 9-13, 15-17, 40, 41, 47, and 55-57 are not subject to striking.

Defendant argues that paragraphs 3-7, 9-17, 28-33, 37, 38, 40, 41, 47, and 55-57 should be stricken as they consist of information outside of the administrative record. (D.'s Mot., at 3). Plaintiff concedes that Paragraphs 14, 37, and 38 should be stricken. While each paragraph will be addressed individually, Defendant is, by and large, seeking to strike factual statements that are

contained in the administrative record. Plaintiff concedes that he added some additional context but the crux of the factual assertions are based upon the record.

Defendant alleges that Paragraphs 3 through 7 of the Complaint should be stricken as they were not addressed before the Administrative Court. Paragraph 3 reads as follows: "On December 21, 2023, Plaintiff, a 70-year-old black man, was driving through Cicero on the way to a store with his close friend, George Woods, a 73-year-old black man." (Pl.'s Compl., ¶ 3). The fact that Plaintiff was detained in Cicero was addressed numerous times in the hearing. (Tr. 25:16 – 27:6 (argument regarding whether Plaintiff Counsel could ask Plaintiff where he was located when he was detained); 27:8-10 (Plaintiff stating he was in Cicero when he was detained); 27:11-13 (Plaintiff stating he was detained by Cicero Police); 27:22 -28:10 (Administrative Court sustaining Defendant Counsel's relevance objection concerning Maywood Police towing Plaintiff's vehicle from Cicero); 33:18-21 (Plaintiff Counsel arguing that Maywood Police had no authority to tow Plaintiff's vehicle from Cicero)).[1] As this fact was addressed in the hearing, and Plaintiff is not introducing any additional facts or evidence, merely context, Paragraph 3 should remain in its entirety. Paragraph 4 reads as follows: "For reasons then-unknown to Plaintiff, between six and eight unidentified, white Cicero Police Officers in multiple police vehicles surrounded Plaintiff, removed him from his vehicle, handcuffed him, searched his vehicle, and detained Plaintiff and Mr. Woods for approximately forty-five minutes." (Pl.'s Compl., ¶ 4). The fact that Plaintiff was detained by Cicero Police was addressed numerous times as evidenced by the testimony recorded in the transcript. (Tr. 25:16 – 27:6; 27:8-10; 27:11-13; 27:22 – 28:10; 33:18 -21). As this fact was raised in the hearing, Paragraph 4 should remain in its entirety. Paragraph 5 reads as follows: "Upon their release from detention, Plaintiff and Mr. Woods had to call an Uber from the scene as

[1] The transcript is attached hereto as Exhibit A.

2024CH02591

unidentified Cicero Police Officers informed Plaintiff that his vehicle was being seized by Maywood." (Pl.'s Compl., ¶ 5). The fact that Plaintiff was detained by Cicero Police was also addressed numerous times as evidenced by the testimony recorded in the transcript. (Tr. 25:16 – 27:6; 27:8-10; 27:11-13; 27:14 – 28:10; 33:18-21). As this fact was addressed multiple times in the administrative proceeding, Paragraph 5 should remain in its entirety. Paragraph 6 reads as follows: "Maywood Police Officers confiscated and towed Plaintiff's vehicle – from Cicero – without arresting, interrogating, charging, or detaining Plaintiff." (Pl.'s Compl., ¶ 6). The fact that Plaintiff was arrested and detained in Cicero was addressed numerous times as evidenced by the testimony recorded in the transcript. (Tr. 25:16 – 27:6; 27:8-10; 27:11-13; 27:22 – 28:10; 33:18-21). As this fact was addressed multiple times in the administrative proceeding, Paragraph 6 should remain in its entirety. Finally, Paragraph 7 reads as follows: "Five days and two holidays later, Plaintiff was able to recover his vehicle after being forced to pay $1,475 as ransom for an unsubstantiated violation of a local ordinance." (Pl.'s Compl., ¶ 7). The fact that Plaintiff had recovered his vehicle prior to the hearing was addressed. (Tr. 28:12 – 29:2). This fact was further attested to in Plaintiff's attached exhibits A and B, introduced as a part of Exhibit 1, and Plaintiff's supplemental briefing. See (Pl.'s Compl., Ex.'s A, B, C). As this fact was addressed multiple times in the administrative proceeding, Paragraph 7 should remain in its entirety.

Defendant further argues that paragraphs 9 through 17 should be stricken as outside the scope of the administrative record. Paragraph 9 reads as follows: "Under the plain text and Defendant's application of MVC § 99.26, any vehicle, anywhere in the State of Illinois, is subject to confiscation and towing based solely on the word of a single police officer – absent any supervisory oversight, judicial oversight, due process, warrant, or exigent circumstances." (Pl.'s

FILED DATE: 6/23/2024 11:38 AM 20244002591

Compl., ¶ 9). Paragraph 9 is clearly a legal conclusion, not a factual assertion, and is not subject to striking. Paragraph 10 reads as follows:

> Under the plain text and Defendant's application of MVC § 99.26, it does not matter whether the vehicle's owner was operating the vehicle at the time of the alleged violation. Nor does it matter if the vehicle's owner consented to – or had any type of privity with – the individual driving the vehicle at the time of the alleged violation.

(Pl.'s Compl., ¶ 10). Paragraph 10 is clearly a legal conclusion based upon Plaintiff's interpretation of the MVC § 99.26, not a factual assertion, and is not subject to striking. Paragraph 11 reads as follows: "Both the plain text and Defendant's application of MVC § 99.26 violate the Illinois Constitution." (Pl.'s Compl., ¶ 11). Paragraph 11 is clearly a legal conclusion not subject to striking. Paragraph 12 reads as follows: "Defendant's constitutional violations have caused harm to Plaintiff." (Pl.'s Compl., ¶ 12). Paragraph 12 is a legal conclusion not subject to striking. Paragraph 13 reads as follows: "As a direct result of Defendant's unconstitutional conduct, Plaintiff seeks damages to be made whole for Defendant's constitutional violations." (Pl.'s Compl., ¶ 13). Paragraph 13 is a legal conclusion not subject to striking. Plaintiff concedes that Paragraph 14 should be stricken. Paragraph 15 reads as follows: "Finally, on its face, MVC § 99.26 violates multiple provisions of the Illinois Constitution and, as such, the ordinance should be declared unconstitutional and stricken in its entirety." (Pl.'s Compl., ¶ 15). Paragraph 15 is a legal conclusion not subject to striking. Paragraph 16 reads as follows: "Defendant, through rules of its own making, has flaunted multiple provisions of this State's Constitution. This Complaint seeks redress." (Pl.'s Compl., ¶ 16). Paragraph 16 is a legal conclusion not subject to striking. Finally, Paragraph 17 reads as follows: "Plaintiff Derrick Winfrey is a retired laborer who worked for the City of Chicago for 37 years. Prior to November 5, 2024, Plaintiff had never been charged with a crime, convicted of a crime, or even arrested. Plaintiff is a resident of Cook County, Illinois." (Pl.'s

FILED DATE: [illegible] 20244002591

Compl., ¶ 17). The fact that Plaintiff was never charged, convicted, or arrested was addressed in the administrative hearing. (Tr. 29:3-11).

Finally, Defendant argues that paragraphs 28-33, 37, 38, 40, 41, and 55-57 should be stricken as they were not elicited in the administrative hearing. Paragraph 28 reads as follows: "Over a month later, on December 21, 2023, Plaintiff was driving his vehicle with his friend George Woods through Cicero." (Pl.'s Compl., ¶ 28). The fact that Plaintiff was driving through Cicero was addressed numerous times, (Tr. 25:16 – 27:6; 27:8-10; 27:11-13; 27:22 – 28:10; 33:18 –21). As this fact was addressed multiple times in the administrative proceeding, Paragraph 28 should remain in its entirety. Paragraph 29 reads as follows: "For reasons unknown to Plaintiff, upon information and belief, unidentified Cicero Police Officers ran Plaintiff's license plate through the LEADS System." (Pl.'s Compl., ¶ 29). Plaintiff elicited testimony during the proceeding regarding the LEADS system, as such this Paragraph should remain in its entirety. (Tr. 20:3-24). Paragraph 30 reads as follows: "Upon information and belief, unidentified Cicero Police Officers viewed the LEADS felony vehicle alert entered by Officer Nunez." (Pl.'s Compl. ¶ 30). Plaintiff elicited testimony during the proceeding regarding the LEADS system, as such this Paragraph should remain in its entirety. (Tr. 20:3-24). Paragraph 31 reads as follows: "Unidentified Cicero Police Officers surrounded Plaintiff's vehicle with multiple vehicles, forced Plaintiff out of his vehicle, made him kneel on the side of a busy road, handcuffed him, searched his vehicle, and detained him and Mr. Woods for approximately 45 minutes." (Pl.'s Compl., ¶ 31). The fact that Plaintiff was detained in Cicero was addressed numerous times in the hearing. (Tr. 25:16 – 27:6; 27:8-10; 27:11-13; 27:22 – 28:10; 33:18-21). As such, Paragraph 31 should remain in its entirety. Paragraph 32 reads as follows: "Approximately 45 minutes after Unidentified Cicero Police Officers violently detained Plaintiff, he was allowed to call an Uber for himself and Mr.

FILED DATE: 6/20/2024 1:38 PM 20244002591

Woods." (Pl.'s Compl., ¶ 32). Defendant Maywood objected to Plaintiff Counsel's question on this factual assertion, (Tr. 25:22 – 28:10), regardless, this fact is merely explanatory and should remain in its entirety. Paragraph 33 reads as follows: "At some point after Plaintiff and Mr. Woods left the scene, Maywood Police Officers towed the vehicle from Cicero to Maywood. See Ex. A." (Pl.'s Compl., ¶ 33). Not only does Plaintiff cite a portion of the record to support this assertion, the fact that the vehicle was towed from Cicero was addressed numerous times. (Tr. 25:16 – 27:6; 27:8-10; 27:11-13; 27:22 – 28:10; 33:18-21). Plaintiff concedes that Paragraph 37 should be stricken. Plaintiff concedes that Paragraph 38 should be stricken. Paragraph 40 reads as follows: "Plaintiff was unable to recover his vehicle on December 21, 2023, as the towing company was closed for the evening by the time Plaintiff was able to travel to the Maywood Police Station." (Pl.'s Compl., ¶ 40). Plaintiff concedes that this was not part of the administrative record but argues that it is merely explanatory. Paragraph 41 reads as follows: "Plaintiff was unable to recover his vehicle over the next few days due to the holidays." (Pl.'s Compl., ¶ 41). Plaintiff concedes that this was not part of the record but argues that it is merely explanatory. Paragraph 55 reads as follows: "At close, Plaintiff argued that – notwithstanding additional constitutional challenges – under Defendant's ordinance, Defendant's agents had the authority to impound and tow Defendant's vehicle: In Maywood." This was explicitly addressed at the administrative hearing. (Tr. 33:13 – 34:1). Paragraph 56 reads as follows: "Plaintiff argued that by entering the felony alert into LEADS and by confiscating and towing Plaintiff's vehicle in another municipality, Defendant had exceeded its home-rule authority under the Illinois Constitution." (Pl.'s Compl., ¶ 56). This is an extension of the previous comment and was explicitly addressed in both parties' supplemental briefs. (Tr. 33:13 – 34:1); (Pl.'s Compl., Ex. C). As such, Paragraph 56 should remain in its entirety. Finally, Paragraph 57 reads as follows:

FILED DATE: 6/28/2024 1:38 PM 20244002591

> The Administrative Law Judge held that Defendant had proved by a preponderance of the evidence that Plaintiff's vehicle had committed Aggravated Fleeing and Eluding of a Police Officer and was subject to towing and seizure. This is despite the fact that there was no finding of fact by the Administrative Law Judge that either Plaintiff or any authorized representative of Plaintiff was operating Plaintiff's vehicle during the alleged violation.

(Pl.'s Compl., ¶ 57). This was explicitly addressed in the transcript and supplemental briefings. (Tr. 34:24 – 38:10); (Pl.'s Compl., Ex. C). As such, Paragraph 57 should remain in its entirety.

**B. Counts I, III, V, and Requests for Declaratory Relief do not Exceed the Scope of Administrative Review Law.**

Defendant argues that Plaintiff's Complaint is defective on its face as it exceeds the scope of Administrative Review Law. Plaintiff concedes that he exceeded the scope of Administrative Review Law in portions of his prayer for relief and agrees portions requesting damages should be stricken. Plaintiff also concedes that Count VI should be stricken as it is insufficient as a matter of law. The remainder of Defendant's arguments are unconvincing.

Defendant argues that this Court lacks authority to declare the ordinance unconstitutional. Defendant is mistaken. This Court is well within its authority to strike the ordinance as unconstitutional, and Plaintiff is not required to exhaust administrative remedies prior to seeking such relief. See, e.g., *Arvia v. Madigan*, 209 Ill. 2d 520, 533 (2004) ("A facial attack to the constitutionality of a statute, which presents purely legal questions, is not dependent for its assertion or its resolution on the administrative record."). While facial challenges do fall outside the scope of Administrative Review Law, there is nothing improper about bringing them ancillary to a complaint for Administrative Review. E.g., *Hearne v. Illinois State Bd. of Educ.*, 185 Ill. 2d 443 (1999). Both the administrative court and this Court are empowered to rule on whether the ordinance in question was applied in an unconstitutional manner. *Arvia*, 209 Ill. 2d at 530. As such, Counts I, III, and V should not be stricken from the Complaint.

FILED DATE: 6/20/2024 11:38 AM 2024002591

## II. COUNTS I AND III WERE SUFFICIENTLY RAISED BEFORE THE ADMINISTRATIVE AGENCY.

Defendant asserts that because Counts I, III, and VI were not raised before the administrative agency, these counts should be dismissed. Plaintiff argues that Count I and III were sufficiently addressed for this Court to review the counts. Plaintiff concedes that Count VI should be dismissed as it is insufficient as a matter of law.

Although Plaintiff did not explicitly state that he was raising an as applied challenge to the statute under Ill. Const. art. I, § 2 or Ill. Const. art. I. § 6, there are sufficient facts and testimony to warrant such claims. Especially when taken in conjunction with Plaintiff Counsel's assertion that Plaintiff has "a few, you know, constitutional issues with this facially as it applies [sic.][2] but since this is an Administrative Court, I'm going to save everyone the time." (Tr. 32:8-11).

Specifically, as it relates to Count I, Plaintiff alleges that his due process rights were violated as his property was taken and a fine was levied prior to being afforded any process. (Pl.'s Compl., ¶¶ 63-9). Plaintiff did attempt to testify to this, and some testimony was proffered, but the Administrative Judge did not allow any further testimony on the matter. (Tr. 28:12-24). While Plaintiff acknowledges that Administrative Review Law limits review of the issues to facts elicited at trial, forbidding Plaintiff from bringing any issues that Defendant objected to and that the Administrative Court sustained puts Defendant in a Catch-22 situation. Further, Plaintiff argued in his closing that: "They've submitted a police report. The officer that allegedly witnessed this presented no testimony. An unrelated police officer was called." (Tr. 32:18-21). All of these taken together provide a sufficient factual basis to maintain Count I of Plaintiff's Complaint. While

[2] Plaintiff acknowledges that his Counsel often speaks too quickly for court reporters but asserts that Plaintiff Counsel actually stated: "I have a few, you know, constitutional issues with this facially *and as applied* but since this is an Administrative Court, I'm going to save everyone the time."

FILED DATE: 6/20/2024 11:38 AM 2024002591

Plaintiff believes that an Amended Complaint will address any possible deficiencies, if this Court agrees that Count I should be stricken, Plaintiff argues that the proper remedy would be to remand this back to the Administrative Court to address this issue pursuant to 735 ILCS 5/3-111(a)(7).

As it related to Count III, Plaintiff argues that the ordinance violated his rights under Ill. Const. art. I, § 6 as his vehicle was confiscated and he was subjected to detention more than a month after the alleged incident based on the word of a single police officer without a warrant or exigent circumstances. (Pl.'s Compl., ¶¶ 74-78). Plaintiff addressed the time delay and lack of charges or arrest at multiple points in the hearing. (Tr. 19:4 – 20:24; 25:1-15; 29:3-11). Similar to Count I, Plaintiff was forbidden to fully get into this issue by ruling of the Administrative Court. (Tr. 25:17 – 28:10). While Plaintiff believes that an Amended Complaint will address any possible deficiencies, if this Court agrees that Count III should be stricken Plaintiff argues that the proper remedy would be to remand this back to the Administrative Court to address this issue pursuant to 735 ILCS 5/3-111(a)(7).

**III. COUNTS II AND IV ARE SUFFICIENT AS A MATTER OF LAW.**

Defendant argues that Counts II, IV, and VII are legally insufficient to state a facial challenge. Plaintiff concedes that Count VII is insufficient and should be stricken. Plaintiff argues that Counts II and IV are legally sufficient and should not be stricken.

Defendant argues that Count II should be dismissed as the allegations are directly contradicted in the Complaint. (Def.'s Mot., at 8). Defendant's argument is based on a fundamental misunderstanding of the type of process Plaintiff was entitled to: "Due process requires a fair trial before a fair tribunal and applies to both courts and administrative agencies performing adjudicating functions." *Dombrowski v. City of Chicago*, 363 Ill. App. 3d 420, 426 (1st Dist. 2005). This is a higher burden than "notice and an opportunity to be heard." (Def.'s Mot., at 8). The

FILED DATE: 6/20/2024 1:38 PM 20244002591

remainder of Defedant's argument fails as it is based on the underlying premise that all due process requires in this situation is notice and an opportunity to be heard.

Defendant argues that Count IV should be stricken as it overstates the scope of the statute. (Def.'s Mot., at 9). Defendant fails to meaningfully engage with Plaintiff's vagueness argument, instead it argues that Plaintiff has failed to allege that there is no circumstance that exists in which the ordinance is valid. (Id.). Plaintiff pleads that the plain language of the statute allows for a single police officer to make a determination that a vehicle has committed a felony and order its seizure absent any oversight – judicial or otherwise. (Pl.'s Compl., ¶¶ 9, 82). Defendant contends that the ordinance does not apply to any vehicle, "only to those that meet the criteria established in MVC § 99.26." (Def.'s Mot., at 9). A Police Officer making a determination that probable cause exists does not satisfy the text of Ill. Const. art. I, § 6.

Defendant has not made sufficient legal arguments to warrant striking Counts II and IV at this state of the pleadings. Defendant has failed to engage with Plaintiff's arguments, instead it argues that Plaintiff has not pled sufficient facts to prove that no situation exists in which the ordinance is valid. Plaintiff has provided the ordinance and made legal arguments, Defendant has failed to rebut those arguments, as such, Counts II and IV should stand.

## CONCLUSION

WHEREFORE Plaintiff, Derrick Winfrey, respectfully moves this Honorable Court for an order:

A. GRANTING him permission to amend his Complaint;

B. STRIKING Paragraphs 14, 37, 38;

C. STRIKING Counts VI and VII;

D. STRIKING requests for damages;

FILED DATE: 6/20/2024 1:38 PM 20244002591

E. DENYING the remainder of Defendant's Motion; and,

F. GRANTING him any such further relief that this Court deems just given the circumstances.

Respectfully submitted,

/s/ *Michael Drake*
One of Plaintiff's Attorneys

65698
Michael Drake
Natalie Lundak
Beyond Legal Aid
17 N State St. Suite 1380
Chicago IL 60602
312-678-3508
Mdrake1@beyondlegalaid.org
Nlundak@beyondlegalaid.org

FILED DATE: 6/20/2024 1:38 PM 20244002591

Ex. A

# IN THE MATTER OF:

# AUDIO FILE MAYWOOD v. WINFREY

## 23-21561

February 2, 2024

CYNTHIA A. PAVESICH & ASSOCIATES
(312) 214-1992
cagoodreporter@pavesich.com

FILED DATE: 6/20/2024 9:38 AM 2024002591



IN THE VILLAGE OF MAYWOOD, ILLINOIS
DEPARTMENT FOR ADMINISTRATIVE HEARINGS

VILLAGE OF MAYWOOD, )
Plaintiff, )
_ _ _ _ _ _ _ _ _ _ _ _ _ ) Report No. 23-21561
DERRICK WINFREY, )
Respondent. )

TRANSCRIPT of the recorded proceedings had at the hearing of the above-captioned matter on Friday, the 2nd day of February, 2024.



A P P E A R A N C E S

Present:

MS. MEGAN LAFATA,
appeared as Administrative Hearing Officer;

MS. CARRIE WINTEREGG,
appeared on behalf of the Village of Maywood;

MR. MICHAEL DRAKE,
appeared on behalf of Derick Winfrey;



I N D E X


Opening Statement.....................05:10
By Ms. Winteregg

ILIR SHEMITRAKU
Direct Examination....................12:07
By Ms. Winteregg
Cross-Examination.....................17:11
By Mr. Drake

DERICK WINFREY
Direct Examination....................22:14
By Mr. Drake

Closing Argument......................29:22
By Ms. Winteregg
Closing Argument......................32:06
By Mr. Drake
Rebuttal Argument.....................34:04
By Ms. Winteregg

EXHIBITS PAGE:LINE
Exhibit No. 1, id.....................08:10
(Police Report)
Exhibit No. 2, id.....................08:10
(Radio Recording)
Exhibit No. 3, id.....................09:05
(Radio Recording)
Exhibit No. 4, id.....................09:14
(Radio Recording)
Exhibit No. 5, id.....................09:21
(Radio Recording)
Exhibit No. 6, id.....................10:09
(Radio Recording)
Exhibit No. 7, id.....................10:23
(Radio Recording)
Exhibit No. 8, id.....................14:01
(Vehicle Detector Reader)
Exhibit Nos. 1-7, admitted............11:17
Exhibit No. 8, admitted...............15:20




MS. LAFATA: All right, is this Derick Winfrey.
MS. WINTEREGG: Yes.
MS. LAFATA: All right, Case No. 23-21461. Will everyone just state your name for the record.
MS. WINTEREGG: Carrie Winteregg, W-i-n-t-e-r-e-g-g, for the Village of Maywood.
MR. DRAKE: Michael Drake for Derick Winfrey.
MS. LAFATA: All right, it looks like there's an issue with a tow that took place, and the Respondent is contesting the basis for the tow?
MR. DRAKE: Yes.
MS. LAFATA: All right, since it's the Village's burden by a preponderance of the evidence, what I'm going to do is I'm going to have the Village start.
They'll call their witnesses. You will have the opportunity to cross-examine any witnesses that they call.
From there, once the Village is done presenting evidence, they'll rest and then you



CYNTHIA A. PAVESICH & ASSOCIATES
cagoodreporter@pavesich.com

FILED DATE: 6/26/2024 11:38 AM 2024002591



can present any evidence that you have on behalf of your client, and we'll go right to argument, okay?

MS. WINTEREGG: Okay.

MS. LAFATA: All right.

MS. WINTEREGG: All right, the Village is -- We can just go into it and do an opening argument, your Honor.

MS. LAFATA: Okay.

OPENING STATEMENT
BY MS. WINTEREGG:

So we did produce -- sorry, submit a group of documents for your Honor to refer to. I would like to read into the record the Maywood Police Department report.

This report has also been given to opposing counsel, and the narrative on it, this is, let's see. The last time this report was modified was on November 6th, 2023.

And in the narrative it says: In summary, on the 5th of November 2023 at approximately 0231 hours responding officer, Officer Nunez, Star 327, observed a black 2019 Chevy utility bearing Illinois registration DT,



as in David Thomas, 24013 driving 45 miles per hour in a 30 mile per hour zone northbound 17th Avenue from Van Buren.

Responding officer caught up to the vehicle at 17th Avenue and Madison where responding officer attempted to conduct a traffic stop on the vehicle.

Upon illuminating Maywood unit star 122's lights and sirens, the vehicle began to flee eastbound Madison at a high rate of speed. The vehicle disregarded the stop sign at 12th Avenue and Madison and reached speeds of 80 miles per hour.

Due to the reckless driving, responding officer advised ITE dispatch that he was terminating the pursuit at 7th Avenue and Madison.

The vehicle continued eastbound Madison where disregarding the light at 5th Avenue and Madison, the vehicle was last seen southbound 1st Avenue from Madison.

The vehicle is registered at 1977 North 19th Avenue, Apartment 2, Melrose Park, 60160.

ITE dispatch entered the vehicle into



LEADS as a felony vehicle for aggravated fleeing and eluding, LEADS No. V, as in Victor, 23I7551. If located, the vehicle is to be towed on an administrative hold for aggravated fleeing and eluding, and the amount of $1,000 USD is to be placed on the vehicle. Nothing further.

And then, your Honor, we also have recordings from the dispatch which have also been provided to counsel. He did have a chance to review them.

I would like to play them into evidence for the record just to make it easier if we need to deal with this later. So the first one --

MR. SPEAKER: Put it by the microphone.

MS. LAFATA: Any objection?

MS. WINTEREGG: Okay.

MR. DRAKE: No.

MR. SPEAKER: (Inaudible) to your left.

MS. WINTEREGG: Oh, that one.

MS. LAFATA: Any objection to the police report being admitted into evidence?

MR. DRAKE: I don't believe the administrative rules (inaudible).

MS. LAFATA: Okay.



MS. WINTEREGG: So I'm going to read aloud each recording how it's marked. It's 07 underscore star com underscore main 202311523054 by start time.

MS. LAFATA: And that will be Exhibit 2. The police report will be exhibit -- marked as Exhibit 1.

MS. WINTEREGG: Exhibit 1. Yes, your Honor.

(Whereupon, Exhibit Nos. 1 & 2 were marked for identification.)

(Audio playing: (Inaudible) Chevy DT24013 eastbound Madison from 17th.

10-4 eastbound Madison from 17th.

Continuing eastbound. (Inaudible) I'm terminating at 7th and Madison.

10-4 terminating at 7th and Madison.

10-4 he just took the (inaudible).

Plate coming back clear and valid to a Derick Winfrey out of Melrose Park, 2019 Chevy utility, black in color, no 27 attached.

10-4 do you want to (inaudible).

10-4.)

MS. WINTEREGG: The next one is 09

FILED DATE: 6/2/2024 11:38 AM 20244002591



underscore star com main underscore 2023115023217.

MS. LAFATA: That will be Exhibit 3 for the record.

(Whereupon, Exhibit No. 3 was marked for identification.)

(Audio playing: (Inaudible.)
10-4.
Just for traffic, correct?
Yeah, 10-4.)

MS. WINTEREGG: The next one is 12 underscore star com underscore main 2023115023921 for Exhibit 4.

(Whereupon, Exhibit No. 4 was marked for identification.)

(Audio playing: Do you copy 27?
(Inaudible.)
60046002202240F Frank.)

MS. WINTEREGG: Next is 14 underscore star com underscore main 2023115024012 for Exhibit 5.

(Whereupon, Exhibit No. 5 was marked for identification.)

(Audio playing: (Inaudible) valid
Photo ID to a Jequan Farrow out of



Melrose Park. Be advised it looks like he has a 99 pending for weapons offenses.
(Inaudible.)
10-4.)

MS. WINTEREGG: For Exhibit 6, 16 underscore star com main underscore 2023115024750.

(Whereupon, Exhibit No. 6 was marked for identification.)

(Audio playing: (Inaudible.)
Go ahead.
I'm going to be transporting one to the station.
247.
10-4.
He's en route to the station.
10-4.)

MS. WINTEREGG: Okay, and the last, 17 underscore star com main underscore 2023115025118. Is that Exhibit 7 I think is the number? Yes, okay.

(Whereupon, Exhibit No. 7 was marked for identification.)



MS. LAFATA: Yeah. I'm sorry. Yes.

(Audio playing: (Inaudible.)
251.)

MS. WINTEREGG: For our next evidence, your Honor, we'd like to call a witness.

MS. LAFATA: Please state your name?

THE WITNESS: Detective Shemitraku, Star No. 315, Maywood Police Department, Investigation Bureau.

MS. WINTEREGG: Oh, before I -- Sorry, your Honor. Are Exhibits 2 through 7 entered into evidence?

MS. LAFATA: No objection; is that correct?

MR. DRAKE: No objection.

MS. LAFATA: Okay, yes, they will be admitted.

(Whereupon, said exhibits marked as Exhibit Nos. 1-7 were received in evidence.)

MS. WINTEREGG: Thank you. Sorry.

* * *



WHEREUPON:

ILIR SHEMITRAKU,

called as a witness herein, was examined and testified as follows:

DIRECT EXAMINATION

BY MS. WINTEREGG:

**Q. Can you please introduce yourself again?**
A. Detective Shemitraku, Star No. 315, Maywood Police Department, Investigations Unit.
**Q. Okay, how long have you been a detective?**
A. Detective, four years; police officer, ten.
**Q. Okay, and how long have you worked for the Village of Maywood?**
A. Ten years.
**Q. Are you familiar with license plates detectors?**
A. Yes.
**Q. Okay, can you just give us a very brief summary of how they work?**
A. So license plate readers are cameras that it's either -- they're either fixed which is they're mounted on the pole, and they're fixed at

FILED DATE: 6/20/2024 9:38 AM 20244002591



an intersection or wherever they -- they give that lot track.
Then you got the mobile ones where they're fixed on the -- on the squad car. As you're driving around, it captures plates of the passing cars.
**Q. Okay, so there's two kinds.**
**There's the fixed kind and the kind on a squad car?**
A. Correct.
**Q. Okay, and how do you use these license plate readers --**
A. So --
**Q. -- for the fixed ones?**
A. So the fixed ones, as they're placed either on a southbound lane or a northbound lane, they'll capture both lanes. It's the field of view, and it's capturing motion.
**Q. Okay, and then once they capture the motion, do they also capture the license plate?**
A. Yes.
**Q. Okay, I am going to show you a document. This has also been shown to opposing counsel. We we will introduce this as Exhibit 8.**



**(Whereupon, Exhibit No. 8 was marked for identification.)**
BY MS. WINTEREGG:
**Q. Can you please -- Do you recognize this document?**
A. Yes.
**Q. Can you please identify it?**
A. This is the program we use which is Vigilant. We have approximately about 14 to 15 cameras in town --
**Q. Okay.**
A. -- in different intersections.
**Q. When you say the program is Vigilant, what do you mean by that?**
A. That's the name of the program. It's called Vigilant. When you search for a vehicle, let's say we're searching for a license plate, it's going to populate wherever it's catching it --
**Q. Okay.**
A. -- on that date.
**Q. So this is not -- Is it software essentially?**
A. It's online based. So you gotta go through



their website. You enter your credentials, and there's also -- Before we use it, we go through training. It's a eight-hour training.
**Q. Okay, so essentially this is produced by a third-party contractor?**
A. Correct.
**Q. And do you use -- regularly use the vehicle -- the license plate readers in your course of being a detective?**
A. Yes.
**Q. Okay, is it something that you rely upon in your investigations?**
A. Yes.
MS. WINTEREGG: Okay, we would like to enter this vehicle detection report into evidence. Officer -- If there's no objection.
MS. LAFATA: Any objections?
MR. DRAKE: No objection.
MS. LAFATA: Okay.
(Whereupon said document marked as Exhibit No. 8 was received in evidence.)
BY MS. WINTEREGG:
**Q. Officer, could you please -- I'm sorry.**



**Detective, could you please read the date on this report?**
A. On this right here?
**Q. Yes.**
A. The date on here, it's 11-5 of 2023 at 2:31 a.m. in the morning.
**Q. Okay, and what's the license plate listed?**
A. It's David Tom 24013.
**Q. And where is the location where this was taken?**
A. The location, it is going to be at 1st Avenue and Quincy.
**Q. Okay, thank you. That's all I have.**
**Oh, I do have one other question for you.**
A. Sure.
**Q. So when you said it's 1st Avenue and Quincy, where is that in relation to 1st Avenue and Madison?**
A. I'll say approximately about five to six blocks south.
**Q. Southbound?**
A. Yes.
MS. WINTEREGG: Thank you. That's all I

FILED DATE: 6/20/2024 9:38 AM 2024002591



have. I'm going to tender it to the hearing officer.
All right, your Honor, that's all I have for that witness and as well for presenting evidence. I can reserve the argument for closing.
MS. LAFATA: All right, do you have any questions for the Detective?
MR. DRAKE: Briefly.
MS. LAFATA: Okay.
CROSS-EXAMINATION
BY MR. DRAKE:
**Q. Right here is fine. It's crowded but I don't wanna, like, you know. Thank you for being here with us today, Detective.**
A. No problem.
**Q. Just really briefly, do your squad cars have dashcams?**
A. Some of them do and some of us don't.
**Q. Can you give an estimation of how many do and how many don't?**
A. I'm in investigations. So I usually use an unmarked unit. We usually don't have cameras. I'll say about four or five maybe, approximately.



MS. LAFATA: Four or five don't or do?
THE WITNESS: Do.
MS. LAFATA: Do, okay.
BY MR. DRAKE:
**Q. You said you're in investigation.**
**So investigations don't generally have them?**
A. We don't have them, dashcams.
**Q. But a patrol officer generally would?**
A. It depends on the vehicle.
**Q. It depends on the vehicle?**
A. Correct.
**Q. Do you happen to know what kind of vehicle Officer Nunez was in on November 5th, 2023?**
A. I believe it's unit 122, and that's a -- that's a Ford sedan.
**Q. To your knowledge does that have a dashcam?**
A. I believe so. They're all equipped with dashcams. It depends if it's working or not.
**Q. How common is it they don't work?**
A. It's very common.
**Q. Very common?**
A. Yes.
**Q. I assume, Detective, that prior to your**



**becoming detective you were a patrol officer in the Village of Maywood?**
A. Correct.
**Q. Have you ever -- Pursuant to that job did you ever impound vehicles?**
A. I have.
**Q. Generally how long after the crime was committed would you say you impound the vehicle?**
A. It depends, maybe a week. It could also be two weeks. It could be close to a year.
**Q. Close to a year?**
A. Correct. It was a felony, right? It was an aggravated fleeing and eluding?
**Q. Nothing is charged.**
A. Oh, no, no, no.
**Q. I mean, that's a -- that's a yes.**
A. Yes.
**Q. That was my next question, officer is:**
**Have you ever impounded a vehicle without making an arrest?**
A. Yes.
**Q. Is that common in the Village of Maywood as well?**
A. I think it's common in law enforcement for



the crimes committed to definitely they're gonna grab that vehicle.
**Q. Is it common to put this into LEADS?**
A. Yes, officer safety, for other towns. I mean, it's a felonious vehicle. It took off on the officer. We don't know the basis, but you're gonna let everyone in law enforcement know that this vehicle is wanted.
**Q. Does the department have a review process for that or can any officer enter anything they want into LEADS?**
MS. WINTEREGG: Objection, it's a compound question, if you could break the question up.
BY MR. DRAKE:
**Q. Does the Village of Maywood have a policy as it relates to imputing information into the LEADS system?**
A. I believe any officer, any officer that's working the street, especially an officer that was involved in this is entitled to if he wants to or not.
**Q. They don't have to clear it with their supervisor?**
A. They really don't.

FILED DATE: 6/22/2024 11:38 AM 2024002591



MR. DRAKE: Okay, that's all I have.
MS. WINTEREGG: I have no questions, your Honor.
MS. LAFATA: All right, with the admission of Exhibits 1 through 9, do you rest?
MS. WINTEREGG: Yes. Sorry. 1 through 9? I have 1 through 8. I just want to make sure. For the record, Exhibit 1 was the police report and then I have Exhibits 2 through 7 as recordings.
MS. LAFATA: Okay, yep. Okay.
MS. WINTEREGG: And then Exhibit 8 as the vehicle detector reader.
MS. LAFATA: All right, my mistake.
MS. WINTEREGG: That's what I have. I could be wrong.
MS. LAFATA: No, no, you're not. Okay.
MS. WINTEREGG: Thank you, and we rest as it comes to evidence, your Honor.
MS. LAFATA: Okay, Exhibits 1 through 8 will be admitted without objection.
The Village rests. Counsel, do you have any witnesses that you would like to --
MR. DRAKE: I'm just going to call



Mr. Winfrey --
MS. LAFATA: Okay.
MR. DRAKE: -- briefly as well.
Do you want to come up here by the microphone where the officer was standing -- the detective was standing.

* * *

WHEREUPON:

DERICK WINFREY,

called as a witness herein, was examined and testified as follows:

DIRECT EXAMINATION
BY MR. DRAKE:

**Q. Can you please state your name for the record?**
A. My first name is Derick. My last name is Winfrey.
**Q. Can you spell that? Can you spell your names?**
A. D-e-r-i-c-k is the first name. Winfrey is the last name, W-i-n-f-r-e-y.
**Q. Mr. Winfrey, I'm going to ask you about two**



**different dates. So first I'm going to ask you about November 5th --**
A. All right.
**Q. -- 2023.**
**Were you driving your vehicle --**
A. No.
**Q. -- on that date?**
A. No.
**Q. Did you give anyone authorization --**
A. No.
**Q. -- to drive your vehicle on that date?**
**How many people do you live with?**
MS. WINTEREGG: Objection, relevance.
THE WITNESS: There's one; and my son, he's in and out. He's usually --
MS. LAFATA: Overruled.
THE WITNESS: -- with his girl -- He's usually at his girlfriend's house and goes to school.
MS. LAFATA: Just one second.
THE WITNESS: He works.
MS. LAFATA: If there's an objection, just pause your testimony.
THE WITNESS: Okay.



MS. LAFATA: I'll rule on whether or not you should continue to testify --
THE WITNESS: Right.
MS. LAFATA: -- regarding that specific question or whether that question is going to be --
THE WITNESS: Okay.
MS. LAFATA: -- you don't have to answer it, okay?
THE WITNESS: Okay.
MS. LAFATA: All right.
MR. DRAKE: Okay, thank you.
MS. LAFATA: His answer will be accepted.
BY MR. DRAKE:
**Q. I'll try to ask less questions here.**
**Did you give anybody in your house authority to drive your vehicle?**
A. No, no one has keys to my vehicle but myself.
**Q. So to your knowledge nobody would have been driving your vehicle that you gave authorization to --**
A. No one.
**Q. -- on November 5th, 2023?**

FILED DATE: 6/20/2024 11:38 AM 20244002591



**But did you file a police report on this incident?**
A. I didn't file a police report cuz I wasn't aware of what occurred November 5th. I wasn't -- I didn't know anything about this until I got stopped December the 21st in Cicero.
**Q. So between November 5th and December 21st --**
A. I had no knowledge.
**Q. -- no police officers reached out to you?**
A. No.
**Q. Did you get anything in the mail?**
A. No.
**Q. Any calls from Village administrators?**
A. No.
**Q. On December 21st what happened?**
**Where were you at the time you were detained (inaudible)?**
MS. WINTEREGG: Objection --
THE WITNESS: Okay --
MS. WINTEREGG: -- relevance. This is about --
THE WITNESS: -- I was --
MS. WINTEREGG: Sir.



MR. DRAKE: Mr. Winfrey.
MS. LAFATA: Hang on one second.
MS. WINTEREGG: This is about whether or not the police had the authorization to tow the vehicle. So any other dates or times outside -- outside of the incident are not relevant.
MS. LAFATA: That objection will be sustained.
MR. DRAKE: I can't ask him about where -- what town he was when he was -- when his vehicle was towed because from --
MS. LAFATA: Well, no, the subject of the -- We're contesting the basis for the tow.
MR. DRAKE: And I think that legally I'm not -- I'm not under the impression that this ordinance gives anybody authority -- gives the Village of Maywood the authority to tow a vehicle from Cicero if he was outside of Maywood.
MS. WINTEREGG: Again, that just goes to whether or not Maywood had the right to tow it.
MS. LAFATA: Okay.
MR. DRAKE: I think Maywood had the right to tow it in the Village of Maywood. I don't think the Village of Maywood had the authority to



go to Cicero --
MS. LAFATA: Right.
MR. DRAKE: -- to tow it. So then that was gonna be my --
MS. LAFATA: If that was one of the questions, go ahead and ask it. Go ahead.
BY MR. DRAKE:
**Q. Were you in Cicero at the time that you were detained?**
A. Yes, I was in Cicero December the 21st.
**Q. Were you detained by Cicero or -- Police Department or Maywood Police Department?**
A. I was detained by Cicero Police Department.
**Q. Did Maywood Police Department show up?**
A. I wasn't aware if they showed up anyway. I had left because it was cons -- They made me get out of my vehicle and lock it up --
MS. WINTEREGG: Objection, relevance.
THE WITNESS: -- and they told me that Maywood was coming to tow my vehicle.
BY MR. DRAKE:
**Q. So Maywood came to Cicero and towed it?**
MS. LAFATA: Okay.
MR. DRAKE: Oh, sorry, sorry. I apologize,



your Honor. I apologize, counsel.
MS. LAFATA: The objection is going to be -- The objection is going to be sustained. That will be stricken. Continue.
MS. WINTEREGG: Is the whole -- Just for the record, your Honor, is the whole answer stricken or just part of it?
MS. LAFATA: The whole answer to the last question asked by counsel is stricken.
MS. WINTEREGG: Thank you.
BY MR. DRAKE:
**Q. How much money did you pay to get your vehicle back?**
MS. WINTEREGG: Objection, relevance.
MS. LAFATA: Sustained.
MR. DRAKE: It goes directly to the ordinance. You have to bond the vehicle out. This is all --
MS. WINTEREGG: It goes --
MR. DRAKE: This is what is done. I mean, I --
MS. LAFATA: I understand that he had to pay to get his vehicle out, but he -- What we're contesting here is the basis for the tow.

FILED DATE: 6/20/2024 11:38 AM 2024002591



MR. DRAKE: Okay, understood.
BY MR. DRAKE:
**Q. Mr. Winfrey, have you ever been charged with fleeing and eluding a police officer?**
A. No.
**Q. Have you been charged with any crime-related offense?**
A. No.
**Q. Has anybody in your house been charged with any crime-related offense?**
A. No.
MR. DRAKE: Thank you. That's all.
MS. LAFATA: Any questions?
MS. WINTEREGG: No, your Honor.
MS. LAFATA: All right, any other evidence?
MR. DRAKE: That's all I have, your Honor.
MS. LAFATA: All right --
MR. DRAKE: I just have a closing.
MS. LAFATA: -- you rest?
MR. DRAKE: Correct.
MS. LAFATA: Argument?

CLOSING ARGUMENT
BY MS. WINTEREGG:

Your Honor, the basis for the tow, all



the Village needs to prove is by a preponderance of the evidence that the Village had the authorization to tow the vehicle.

This tow occurred under Maywood Village Code 99.62(a) which is -- which deals with eluding a police officer, and I'm only going to read portions of the Code into it.

It says: A motor vehicle used to commit the offense of aggravated fleeing or attempting to elude a police officer -- a peace officer is subject to seizure and impoundment.

The offense of aggravated fleeing or attempting to elude a police officer is committed by a driver or operator of a motor vehicle who, having been given a visual or audible signal by a peace officer directing such driver or operator to bring his vehicle to a stop, willfully fails or refuses to obey such direction, increases his or her speed, extinguishes his or her lights or otherwise flees or eludes -- attempts to elude the police officer and either, and I'm only going to read the section that is relevant here which is (4) involves disobedience of two or more official traffic control devices, and I won't



read the rest of the section.

At this point, your Honor, the Village has produced evidence that the vehicle, which notably it says a motor vehicle, it does not deal with who is driving the vehicle, with the license plate of DT24013 for the police report and the incriminating evidence did represent that he did -- this vehicle did go through at least two traffic control devices.

It was indicated that the officer did put on his lights and then the vehicle went through these traffic control devices and as well sped along.

It's the Village's position that they did have a right to tow this vehicle. Putting it out, there is nothing within the Maywood code that requires an arrest of any kind; and, again, your Honor, this is only related to the vehicle, not to who is driving it.

There has been no police report, nothing else to contradict the fact that this vehicle with this license plate DT24013 was not eluding the police.

In fact, all the evidence presented



indicates that this particular vehicle did, in fact, elude the police; and, therefore, the tow was proper. The Village did have the authorization to tow it. Thank you.
MS. LAFATA: Counsel, go ahead.

CLOSING ARGUMENT
BY MR. DRAKE:

Thank you. I have a few, you know, constitutional issues with this facially as it applies, but since this is an Administrative Court, I'm going to save everybody the time.

Counsel said in her close that no evidence was presented that we didn't -- that the vehicle did not elude police. It's not our burden to prove. It's their burden to prove that this occurred. I don't think they've met that burden, your Honor.

They've submitted a police report. The officer that allegedly witnessed this presented no testimony. An unrelated police officer was called. The unrelated test -- police officer stated that their vehicles -- I mean, I guess they do have dashcam sometimes. I don't know if this one did or didn't, but I didn't hear

FILED DATE: 6/20/2024 11:38 AM 2024002591



anything about video recorded evidence.

And Mr. Winfrey testified that he was not driving. Nobody in his home had the authority to drive this. All that they've presented that this did occur they said was the police report and they -- a picture that I guess occurred on that time.

I'm not very familiar with this vigilante system or how it operates, and I don't believe the record is sufficient for us to make any determination as to the truthfulness of that piece of evidence.

And finally, as the statute says, this gives the authority for the Village of Maywood to impound the vehicle found within its territory that it admits that it believes has violated one of the numerous ordinances.

This occurred outside of the Village of Maywood in which my client was in Cicero. He was detained. He was not arrested. His vehicle was towed, and he was fined for it.

So I would just ask this Court to find in favor of my client and refund him the bond that he has paid for the detainment of his



vehicle.

MS. LAFATA: All right, anything in rebuttal?

REBUTTAL ARGUMENT
BY MS. WINTEREGG:

Yes, your Honor. This is a preponderance of the evidence. That's 50 percent in the feather. The police reports are evidence here, and the police report distinctly says that this vehicle with that license plate eluded police under the tow.

As for the system, the vehicle detection reader, I do want to remind the Court that the rules of evidence don't necessarily apply. It only needs to be a piece of evidence on which a reasonable person would rely upon. That's within the Illinois Administrative Code, and this is coming in under an administrative code here.

As for, you know, Maywood Police are allowed to put things into LEADS which is something that the detective referred to, and therefore the tow was proper. Thank you.

MS. LAFATA: All right, I'm going to



address a few things here. All right, and I'm going to hold over my ruling because I do want to do a little bit of research on one issue.

So what I will address today though is the statute for live code for aggravated fleeing and eluding and the -- and officer's ability to tow a vehicle pursuant to any violation of aggravated fleeing and eluding.

I do believe that the Village has met their burden on that since it's a preponderance of the evidence.

There was no objection to the admission of the police report. The police report is certainly relevant and certainly reliable. A reasonable person would rely on the police report as documentation of what took place at the time.

So I am -- I'm giving deference to what's relayed in the police report. That being that the officer observed the vehicle in question with the license plate registration DT24013 traveling at 45 miles an -- 45 miles an hour in a 30 mile an hour zone. That there giving the officer probable cause to initiate the traffic stop.



On upon illuminating the lights and sirens of the vehicle, the vehicle took off at a high rate of speed disregarding a stop sign at 12th Avenue and Madison reaching speeds in excess -- and reached speeds of 80 miles an hour.

The vehicle, in the Court's eyes, certainly disregarded two traffic control devices; and additionally, the Court sees that the vehicle traveled at a rate of at least 25 -- 21 miles an hour over the speed limit.

So I think there's no issue with the basis of the stop based on the actions of the vehicle that day.

I do -- So the officer in question -- I don't believe there's any issue with the officer placing the vehicle into LEADS to be towed at a future date and time because there was -- he certainly had enough evidence that the vehicle committed the offense of aggravated fleeing and eluding.

I am -- I also believe the Vigilant system. There was no objection to its admission, to the foundation of it -- of how the system works. The report itself was not objected to. I

FILED DATE: 6/20/2024 1:38 PM 2024002591



-- Even if it was, I do believe that this is the system that is used within the Village of Maywood quite frequently.

The -- I do believe it to be relevant and reliable as well that I will note here that on Exhibit 8, which is the vehicle detection report, the license plate does match the license plate of the vehicle that was driven; although, it doesn't appear to be contested that this vehicle was driven that evening.

I haven't heard any evidence -- Well, I have heard evidence that the Respondent was not the driver of the vehicle. I have not heard any evidence that this vehicle was not driven on that evening.

This is -- It is the burden of the Village. The Village had met their burden at the close of their case-in-chief, that being a preponderance of the evidence.

Nothing -- No evidence provided by the Respondent has at this point -- No evidence -- There's no evidence submitted by the Respondent that would put the burden -- would shift the burden at this point.



The question that I would like to take a second to look -- take some time to look into is whether or not the Village of Maywood had the ability to tow the vehicle from Cicero. That is something that I would like to look into.

I need to, one, look into the fact of whether -- its relevance in this -- in this case; and if it is relevant in this case, what type of jurisdiction, and I believe this will all be pursuant to the Code.

So that's just the research I'd like to do, whether or not they had the authority to tow a vehicle from a neighboring jurisdiction which I believe -- I believe they do. I just want to confirm that before entering a finding today. So --

MS. WINTEREGG: Your Honor, if I may.

MS. LAFATA: Yes.

MS. WINTEREGG: We could also do short briefs if that would assist you within that issue of towing from Maywood or towing from Cicero simply just for preservation of the record to make sure that everything is --

MS. LAFATA: All right.



MS. WINTEREGG: -- considered that way.

MS. LAFATA: That's actually probably a good idea. So here's what I'll say. Let's take a look at the calendar here.

How much time would everyone need to submit just a short brief on that issue?

MR. DRAKE: Are we just -- just each side one brief or are we doing, like, replies and responses?

MS. LAFATA: Each -- If you would like to -- I'm not going to require replies and responses. I don't think it's necessary.

MR. DRAKE: I could have a brief in a week.

MS. LAFATA: I'm sorry?

MR. DRAKE: I could have a brief in a week.

MS. WINTEREGG: And I would need --

MS. LAFATA: We could do about -- I'm going to give you more time than that.

MS. WINTEREGG: I would need at least two weeks, your Honor, just because I'm going to be in court most of next week.

MR. DRAKE: I just want to clarify that this would put off, like, the final judgment, right? The final judgment wouldn't be until you



rule after the briefs because I don't want to miss, like --

MS. LAFATA: So here's --

MR. DRAKE: -- the window for judicial review.

MS. LAFATA: Yes. So the final judgment will not be put in place until I've reviewed the briefs, and we're going to come back here on Monday. We're not here on Mondays. Okay.

MR. SPEAKER: Our next hearing date is March 1st.

MS. LAFATA: Okay, so March 1st.

MR. DRAKE: I'm on trial March 1st.

MS. LAFATA: Okay.

MR. DRAKE: Which is why we didn't get the kick extension.

MR. SPEAKER: March 15th.

MS. LAFATA: All right.

MS. WINTEREGG: I just -- For March 15th, I just want to remind the Court that we do have the code enforcement that day. That's usually a pretty busy call.

I'm not opposed to it. I just -- I don't know if maybe we want to schedule it for

FILED DATE: 6/20/2024 11:38 AM 2024002591



like 11:00 or do it a little bit earlier.
MS. LAFATA: All right, here's what I'm going to do. I'm going to hold over for ruling -- I don't want to go into the -- I don't want to go too far out. So give me one moment.
MR. DRAKE: Is there a -- Can you issue it in absentia?
MS. LAFATA: I can.
MR. DRAKE: I wouldn't object.
MS. WINTEREGG: I would not object to that either.
MS. LAFATA: Okay, all right, so then let's do this. I will -- I'd like the issue briefed by March 1st, give everybody that much time to brief. So -- And I will get a response out to everybody by March 15th.
MR. DRAKE: And --
MS. LAFATA: And issue a ruling by March 15th.
MR. DRAKE: -- just submit those briefs by e-mail?
MS. LAFATA: Submit -- Yes. You can submit the brief to service, s-e-r-v-i-c-e, @ Lafata, L-a-f as in Frank a-t as in Thomas a law.com.



Just have them submitted by March 1st. I will then issue a ruling by March 15th.
MS. WINTEREGG: And, your Honor, just so we're clear for the record, page limit, five pages, seven pages?
MS. LAFATA: Five pages.
MS. WINTEREGG: Okay.
MS. LAFATA: I think that will be enough.
MR. DRAKE: Can we motion for a longer brief?
MS. LAFATA: If you guys want to agree on a page length, it does not matter to me.
MS. WINTEREGG: We can talk about it. I'm just trying to, like, make sure that we're on --
MS. LAFATA: All right, ten pages.
MS. WINTEREGG: -- the same page.
MS. LAFATA: Ten pages.
MR. DRAKE: Yeah, I can be pretty verbose. I'd prefer at least ten.
MS. LAFATA: All right.
MS. WINTEREGG: I just don't want, like, a, you know, 70 page brief.
MS. LAFATA: Ten pages.
MS. WINTEREGG: Ten pages, all right.



MS. LAFATA: It's the limited issue of whether Maywood has the authority to tow a vehicle from -- out from a different jurisdiction.
MR. DRAKE: Do you want a table of contents on this?
MS. LAFATA: No, we're good. Okay, all right, I'll issue a ruling by March 15th, and I will mail it. Make sure that you provide me with a mailing address that you would like it to be sent. So I'll mail it, but I will also send it in an e-mail to each of you as well.
MS. WINTEREGG: Thank you.
MR. DRAKE: Was it service@lafatalaw.com?
MS. LAFATA: Yes. Any issues with getting in contact with me I'm sure you can --
MR. DRAKE: Yes, she's been very communicative.
MS. LAFATA: Okay, all right, thank you everyone. Everyone did a very nice job today.
MS. WINTEREGG: Thank you.
MR. DRAKE: Thank you.
MS. LAFATA: I'm going to hold on -- Well, no, I'm going to tender the exhibits back. The



exhibits itself are not relevant to the issue that I want to research.
MS. WINTEREGG: Thank you.
(WHICH WERE ALL THE PROCEEDINGS HAD.)
* * *

FILED DATE: 6/20/2024 11:38 AM 20244002591



REPORTER'S CERTIFICATE

I, CYNTHIA A. PAVESICH GOOD, Certified Shorthand Reporter within and for the State of Illinois, do hereby certify that I reported in computerized shorthand the recorded proceedings had of the said cause, and that the foregoing is a true and correct transcript of my shorthand notes so taken as aforesaid.

C.A. Pavesich Good

Cynthia A. Pavesich Good, CSR
CSR License # 084-003483

FILED DATE: 6/27/2024 11:38 AM 2024002591


**A**

**a-t** 41:24
**a.m** 16:6
**ability** 35:6 38:4
**above-captioned** 1:10
**absentia** 41:7
**accepted** 24:13
**actions** 36:12
**additionally** 36:8
**address** 35:1,4 43:10
**administrative** 1:1 2:5 7:4,23 32:10 34:17,18
**administrators** 25:14
**admission** 21:4 35:12 36:22
**admits** 33:16
**admitted** 3:23,23 7:21 11:16 21:21
**advised** 6:15 10:1
**aforesaid** 45:10
**aggravated** 7:1,4 19:13 30:9,12 35:5,8 36:19
**agree** 42:11
**ahead** 10:12 27:6 27:6 32:5
**allegedly** 32:19
**allowed** 34:21
**aloud** 8:1
**amount** 7:5
**answer** 24:8,13 28:6,8
**anybody** 24:16 26:16 29:9
**anyway** 27:15
**Apartment** 6:23
**apologize** 27:24 28:1
**appear** 37:9
**appeared** 2:5,8 2:11
**applies** 32:10
**apply** 34:15
**approximately** 5:22 14:9 16:20 17:24
**argument** 3:10 3:11,12 5:2,8 17:5 29:21,22 32:6 34:4
**arrest** 19:20 31:17
**arrested** 33:20
**asked** 28:9
**assist** 38:20
**assume** 18:24
**attached** 8:21
**attempted** 6:6
**attempting** 30:10 30:13
**attempts** 30:20
**audible** 30:15
**Audio** 8:12 9:7 9:16,23 10:11 11:2
**authority** 24:17 26:16,17,24 33:4,14 38:12 43:2
**authorization** 23:9 24:21 26:4 30:3 32:4
**Avenue** 6:3,5,12 6:16,19,21,23 16:12,17,18 36:4
**aware** 25:4 27:15

**B**

**back** 8:19 28:13 40:8 43:24
**based** 14:24 36:12
**basis** 4:13 20:6 26:13 28:24 29:24 36:12
**bearing** 5:24
**becoming** 19:1
**began** 6:9
**behalf** 2:8,11 5:1
**believe** 7:22 18:15,18 20:18 33:10 35:9 36:15,21 37:1,4 38:9,14,14
**believes** 33:16
**bit** 35:3 41:1
**black** 5:23 8:21
**blocks** 16:21
**bond** 28:17 33:23
**break** 20:13
**brief** 12:20 39:6,8 39:13,15 41:15 41:23 42:10,22
**briefed** 41:13
**briefly** 17:9,17 22:3
**briefs** 38:20 40:1 40:8 41:20
**bring** 30:17
**burden** 4:17 32:15,15,17 35:10 37:16,17 37:23,24
**Bureau** 11:9
**Buren** 6:3
**busy** 40:22

**C**

**C** 2:1
**calendar** 39:4
**call** 4:20,22 11:5 21:24 40:22
**called** 12:5 14:16 22:12 32:21
**calls** 25:14
**cameras** 12:22 14:10 17:23
**capture** 13:17,19 13:20
**captures** 13:5
**capturing** 13:18
**car** 13:4,9
**Carrie** 2:7 4:7
**cars** 13:6 17:17
**case** 4:4 38:7,8
**case-in-chief** 37:18
**catching** 14:18
**caught** 6:4
**cause** 35:23 45:8
**certainly** 35:14 35:14 36:7,18
**CERTIFICATE** 45:1
**Certified** 45:5
**certify** 45:6
**chance** 7:9
**charged** 19:14 29:3,6,9
**Chevy** 5:24 8:12 8:20
**Cicero** 25:6 26:18 27:1,8,10 27:11,13,22 33:19 38:4,21
**clarify** 39:22
**clear** 8:19 20:22 42:4
**client** 5:2 33:19 33:23
**close** 19:10,11 32:12 37:18
**closing** 3:10,11 17:6 29:18,22 32:6
**code** 30:5,7 31:16 34:17,19 35:5 38:10 40:21
**color** 8:21
**com** 8:3 9:1,12,20 10:7,20
**come** 22:4 40:8
**comes** 21:19
**coming** 8:19 27:20 34:18
**commit** 30:9
**committed** 19:8 20:1 30:13 36:19
**common** 18:20 18:21,22 19:22 19:24 20:3
**communicative** 43:18
**compound** 20:12
**computerized** 45:7
**conduct** 6:6
**confirm** 38:15
**cons** 27:16
**considered** 39:1
**constitutional** 32:9
**contact** 43:16
**contents** 43:5
**contested** 37:9
**contesting** 4:13 26:13 28:24
**continue** 24:2 28:4
**continued** 6:18
**Continuing** 8:15
**contractor** 15:5
**contradict** 31:21
**control** 30:24 31:9,12 36:7
**copy** 9:16
**correct** 9:9 11:13 13:10 15:6 18:12 19:3,12 29:20 45:9
**counsel** 5:17 7:9 13:23 21:22 28:1,9 32:5,12
**course** 15:8
**court** 32:11 33:22 34:13 36:8 39:21 40:20
**Court's** 36:6
**credentials** 15:1
**crime** 19:7
**crime-related** 29:7,10
**crimes** 20:1
**Cross-Examin...** 3:5 17:11
**cross-examine** 4:21
**crowded** 17:13

FILED DATE: 6/20/2024 11:38 AM 20244002591




**CSR** 45:15,16
**cuz** 25:3
**Cynthia** 45:4,15

**D**

**D** 3:1
**D-e-r-i-c-k** 22:22
**dashcam** 18:17 32:23
**dashcams** 17:18 18:8,19
**date** 14:21 16:2,5 23:7,11 36:17 40:10
**dates** 23:1 26:5
**David** 6:1 16:8
**day** 1:11 36:13 40:21
**deal** 7:13 31:4
**deals** 30:5
**December** 25:6,8 25:16 27:10
**deference** 35:17
**definitely** 20:1
**department** 1:1 5:15 11:8 12:11 20:9 27:12,12 27:13,14
**depends** 18:10,11 18:19 19:9
**Derick** 2:11 3:7 4:1,9 8:20 22:10,18
**DERRICK** 1:6
**detained** 25:18 27:9,11,13 33:20
**detainment** 33:24
**detection** 15:15 34:13 37:6
**detective** 11:7 12:10,12,13 15:9 16:1 17:8 17:15 18:24 19:1 22:6 34:22
**detector** 3:22 21:13
**detectors** 12:18
**determination** 33:11
**devices** 30:24 31:9,12 36:8
**different** 14:12 23:1 43:3
**Direct** 3:4,8 12:7 22:14
**directing** 30:16
**direction** 30:18
**directly** 28:16
**disobedience** 30:23
**dispatch** 6:15,24 7:8
**disregarded** 6:11 36:7
**disregarding** 6:19 36:3
**distinctly** 34:9
**document** 13:22 14:5 15:20
**documentation** 35:16
**documents** 5:13
**doing** 39:8
**Drake** 2:10 3:6,8 3:11 4:9,9,15 7:17,22 11:14 15:18 17:9,12 18:4 20:14 21:1 21:24 22:3,15 24:12,14 26:1,9 26:14,22 27:3,7 27:21,24 28:11 28:16,20 29:1,2 29:12,16,18,20 32:7 39:7,13,15 39:22 40:4,13 40:15 41:6,9,17 41:20 42:9,18 43:5,14,17,22
**drive** 23:11 24:17 33:4
**driven** 37:8,10,14
**driver** 30:14,16 37:13
**driving** 6:1,14 13:5 23:5 24:21 31:5,19 33:3
**DT** 5:24
**DT24013** 8:13 31:6,22 35:20
**Due** 6:14

**E**

**E** 2:1,1 3:1
**e-mail** 41:21 43:12
**earlier** 41:1
**easier** 7:12
**eastbound** 6:10 6:18 8:13,14,15
**eight-hour** 15:3
**either** 12:23,23 13:15 30:21 41:11
**elude** 30:10,13,20 32:2,14
**eluded** 34:10
**eludes** 30:20
**eluding** 7:2,5 19:13 29:4 30:6 31:23 35:6,8 36:20
**en** 10:17
**enforcement** 19:24 20:7 40:21
**enter** 15:1,15 20:10
**entered** 6:24 11:11
**entering** 38:15
**entitled** 20:20
**equipped** 18:18
**especially** 20:19
**essentially** 14:23 15:4
**estimation** 17:20
**evening** 37:10,15
**everybody** 32:11 41:14,16
**evidence** 4:18,24 5:1 7:11,21 11:4,12,19 15:16,22 17:5 21:19 29:15 30:2 31:3,7,24 32:13 33:1,12 34:7,8,14,15 35:11 36:18 37:11,12,14,19 37:20,21,22
**Examination** 3:4 3:8 12:7 22:14
**examined** 12:5 22:12
**excess** 36:4
**exhibit** 3:15,16 3:17,18,19,20 3:21,22,23,23 8:5,6,7,8,10 9:3 9:5,13,14,20,21 10:6,9,21,23 11:18 13:24 14:1 15:21 21:8 21:12 37:6
**exhibits** 3:14 11:11,17 21:5,9 21:20 43:24 44:1
**extension** 40:16
**extinguishes** 30:19
**eyes** 36:6

**F**

**facially** 32:9
**fact** 31:21,24 32:2 38:6
**fails** 30:17
**familiar** 12:17 33:8
**far** 41:5
**Farrow** 9:24
**favor** 33:23
**feather** 34:8
**February** 1:11
**felonious** 20:5
**felony** 7:1 19:12
**field** 13:17
**file** 25:1,3
**final** 39:23,24 40:6
**finally** 33:13
**find** 33:22
**finding** 38:15
**fine** 17:13
**fined** 33:21
**first** 7:13 22:18 22:22 23:1
**five** 16:20 17:24 18:1 42:4,6
**fixed** 12:23,24 13:4,8,14,15
**flee** 6:10
**fleeing** 7:1,4 19:13 29:4 30:9 30:12 35:5,8 36:19
**flees** 30:20
**follows** 12:6 22:13
**Ford** 18:16
**foregoing** 45:9
**found** 33:15
**foundation** 36:23
**four** 12:13 17:24 18:1
**Frank** 9:18 41:24
**frequently** 37:3
**Friday** 1:11
**further** 7:6
**future** 36:17

**G**

**generally** 18:6,9 19:7
**getting** 43:15
**girl** 23:17
**girlfriend's** 23:18
**give** 12:20 13:1 17:20 23:9 24:16 39:18 41:5,14

FILED DATE 2024002591

**given** 5:16 30:15
**gives** 26:16,16 33:14
**giving** 35:17,22
**go** 5:2,7 10:12 14:24 15:2 27:1 27:6,6 31:8 32:5 41:4,5
**goes** 23:18 26:19 28:16,19
**going** 4:18,18 8:1 10:13 13:22 14:18 16:11 17:1 21:24 22:24 23:1 24:5 28:2,3 30:6,21 32:11 34:24 35:2 39:11,17 39:20 40:8 41:3 41:3 43:23,24
**gonna** 20:1,7 27:4
**good** 39:3 43:7 45:4,15
**gotta** 14:24
**grab** 20:2
**group** 5:13
**guess** 32:22 33:6
**guys** 42:11

**H**

**Hang** 26:2
**happen** 18:13
**happened** 25:16
**hear** 32:24
**heard** 37:11,12 37:13
**hearing** 1:10 2:5 17:1 40:10
**HEARINGS** 1:1
**high** 6:10 36:3
**hold** 7:4 35:2 41:3 43:23
**home** 33:3
**Honor** 5:8,13 7:7 8:9 11:5,11 17:3 21:3,19 28:1,6 29:14,16 29:24 31:2,18 32:17 34:6 38:17 39:20 42:3
**hour** 6:2,2,13 35:21,22 36:5 36:10
**hours** 5:22
**house** 23:18 24:16 29:9

**I**

**id** 3:15,16,17,18 3:19,20,21,22 9:24
**idea** 39:3
**identification** 8:11 9:6,15,22 10:10,24 14:2
**identify** 14:7
**ILIR** 3:4 12:3
**Illinois** 1:1 5:24 34:17 45:6
**illuminating** 6:8 36:1
**impound** 19:5,8 33:15
**impounded** 19:19
**impoundment** 30:11
**impression** 26:15
**imputing** 20:16
**inaudible** 7:18,23 8:12,15,18,22 9:7,17,23 10:4 10:11 11:2 25:18
**incident** 25:2 26:6
**increases** 30:18
**incriminating** 31:7
**indicated** 31:10
**indicates** 32:1
**information** 20:16
**initiate** 35:23
**intersection** 13:1
**intersections** 14:12
**introduce** 12:9 13:24
**investigation** 11:8 18:5
**investigations** 12:11 15:12 17:22 18:6
**involved** 20:20
**involves** 30:23
**issue** 4:12 35:3 36:11,15 38:20 39:6 41:6,13,18 42:2 43:1,8 44:1
**issues** 32:9 43:15
**ITE** 6:15,24

**J**

**Jequan** 9:24
**job** 19:4 43:20
**judgment** 39:23 39:24 40:6
**judicial** 40:4
**jurisdiction** 38:9 38:13 43:4

**K**

**keys** 24:18
**kick** 40:16
**kind** 13:8,8 18:13 31:17
**kinds** 13:7
**know** 17:14 18:13 20:6,7 25:5 32:8,23 34:20 40:24 42:22
**knowledge** 18:17 24:20 25:9

**L**

**L-a-f** 41:24
**Lafata** 2:4 4:1,4 4:11,16 5:5,9 7:15,20,24 8:5 9:3 11:1,6,13 11:15 15:17,19 17:7,10 18:1,3 21:4,11,14,17 21:20 22:2 23:16,20,22 24:1,4,8,11,13 26:2,7,12,21 27:2,5,23 28:2 28:8,15,22 29:13,15,17,19 29:21 32:5 34:2 34:24 38:18,24 39:2,10,14,17 40:3,6,12,14,18 41:2,8,12,18,22 41:23 42:6,8,11 42:15,17,20,23 43:1,7,15,19,23
**lane** 13:16,16
**lanes** 13:17
**law** 19:24 20:7
**law.com** 41:24
**LEADS** 7:1,2 20:3,11,17 34:21 36:16
**left** 7:18 27:16
**legally** 26:14
**length** 42:12
**let's** 5:18 14:17 39:3 41:12
**license** 12:17,22 13:11,20 14:17 15:8 16:7 31:5 31:22 34:10 35:20 37:7,7 45:16
**light** 6:19
**lights** 6:9 30:19 31:11 36:1
**limit** 36:10 42:4
**limited** 43:1
**listed** 16:7
**little** 35:3 41:1
**live** 23:12 35:5
**located** 7:3
**location** 16:9,11
**lock** 27:17
**long** 12:12,14 19:7
**longer** 42:9
**look** 38:2,2,5,6 39:4
**looks** 4:11 10:1
**lot** 13:2

**M**

**Madison** 6:5,10 6:12,17,18,20 6:21 8:13,14,16 8:17 16:19 36:4
**mail** 25:12 43:9 43:11
**mailing** 43:10
**main** 8:3 9:1,12 9:20 10:7,20
**making** 19:20
**March** 40:11,12 40:13,17,19 41:14,16,19 42:1,2 43:8
**marked** 8:2,6,11 9:6,15,22 10:10 10:24 11:17 14:2 15:20
**match** 37:7
**matter** 1:10 42:12
**Maywood** 1:1,3 2:9 4:8 5:14 6:8 11:8 12:10,15 19:2,22 20:15 26:17,18,20,22 26:23,24 27:12 27:14,20,22 30:4 31:16 33:14,19 34:20 37:2 38:3,21 43:2
**mean** 14:14 19:16 20:5

FILED DATE: 6/20/2024 1:38 PM 2024002591



28:20 32:22
**MEGAN** 2:4
**Melrose** 6:23 8:20 10:1
**met** 32:16 35:9 37:17
**Michael** 2:10 4:9
**microphone** 7:14 22:5
**mile** 6:2 35:22
**miles** 6:1,12 35:21,21 36:5 36:10
**mistake** 21:14
**mobile** 13:3
**modified** 5:19
**moment** 41:5
**Monday** 40:9
**Mondays** 40:9
**money** 28:12
**morning** 16:6
**motion** 13:18,20 42:9
**motor** 30:8,14 31:4
**mounted** 12:24

**N**

**N** 2:1 3:1
**name** 4:5 11:6 14:15 22:16,18 22:18,22,23
**names** 22:21
**narrative** 5:17,20
**necessarily** 34:14
**necessary** 39:12
**need** 7:12 38:6 39:5,16,19
**needs** 30:1 34:15
**neighboring** 38:13
**nice** 43:20
**North** 6:22
**northbound** 6:2 13:16
**Nos** 3:23 8:10 11:18
**notably** 31:4
**note** 37:5
**notes** 45:10
**November** 5:19 5:21 18:14 23:2 24:24 25:4,7
**number** 10:22
**numerous** 33:17
**Nunez** 5:23 18:14

**O**

**obey** 30:18
**object** 41:9,10
**objected** 36:24
**objection** 7:15,20 11:13,14 15:16 15:18 20:12 21:21 23:13,22 25:19 26:7 27:18 28:2,3,14 35:12 36:22
**objections** 15:17
**observed** 5:23 35:19
**occur** 33:5
**occurred** 25:4 30:4 32:16 33:7 33:18
**offense** 29:7,10 30:9,12 36:19
**offenses** 10:3
**officer** 2:6 5:22 5:23 6:4,6,15 12:13 15:16,24 17:2 18:9,14 19:1,18 20:4,6 20:10,18,18,19 22:5 29:4 30:6 30:10,11,13,16 30:21 31:10 32:19,20,21 35:19,23 36:14 36:15
**officer's** 35:6
**officers** 25:10
**official** 30:24
**Oh** 7:19 11:10
16:14 19:15 27:24
**okay** 5:3,4,9 7:16 7:24 10:19,22 11:15 12:12,14 12:20 13:7,11 13:19,22 14:11 14:20 15:4,11 15:14,19 16:7 16:13 17:10 18:3 21:1,11,11 21:17,20 22:2 23:24 24:7,9,10 24:12 25:20 26:21 27:23 29:1 40:9,12,14 41:12 42:7 43:7 43:19
**once** 4:23 13:19
**ones** 13:3,14,15
**online** 14:24
**opening** 3:2 5:7 5:10
**operates** 33:9
**operator** 30:14 30:16
**opportunity** 4:21
**opposed** 40:23
**opposing** 5:17 13:23
**ordinance** 26:16 28:17
**ordinances** 33:17
**outside** 26:5,6,18 33:18
**Overruled** 23:16

**P**

**P** 2:1,1
**page** 42:4,12,16 42:22
**PAGE:LINE** 3:14
**pages** 42:5,5,6,15 42:17,23,24
**paid** 33:24
**Park** 6:23 8:20
10:1
**part** 28:7
**particular** 32:1
**passing** 13:6
**patrol** 18:9 19:1
**pause** 23:23
**Pavesich** 45:4,15
**pay** 28:12,23
**peace** 30:10,16
**pending** 10:2
**people** 23:12
**percent** 34:7
**person** 34:16 35:15
**Photo** 9:24
**picture** 33:6
**piece** 33:12 34:15
**place** 4:12 35:16 40:7
**placed** 7:6 13:15
**placing** 36:16
**Plaintiff** 1:4
**plate** 8:19 12:22 13:12,20 14:17 15:8 16:7 31:6 31:22 34:10 35:20 37:7,8
**plates** 12:17 13:5
**play** 7:11
**playing** 8:12 9:7 9:16,23 10:11 11:2
**please** 11:6 12:9 14:4,7 15:24 16:1 22:16
**point** 31:2 37:21 37:24
**pole** 12:24
**police** 3:15 5:15 7:20 8:6 11:8 12:11,13 21:8 25:1,3,10 26:4 27:11,12,13,14 29:4 30:6,10,13 30:21 31:6,20 31:23 32:2,14 32:18,20,21
33:6 34:8,9,11 34:20 35:13,13 35:15,18
**policy** 20:15
**populate** 14:18
**portions** 30:7
**position** 31:14
**prefer** 42:19
**preponderance** 4:17 30:1 34:7 35:10 37:19
**present** 2:3 5:1
**presented** 31:24 32:13,19 33:5
**presenting** 4:24 17:4
**preservation** 38:22
**pretty** 40:22 42:18
**prior** 18:24
**probable** 35:23
**probably** 39:2
**problem** 17:16
**proceedings** 1:9 44:4 45:8
**process** 20:9
**produce** 5:12
**produced** 15:4 31:3
**program** 14:8,13 14:15
**proper** 32:3 34:23
**prove** 30:1 32:15 32:15
**provide** 43:9
**provided** 7:9 37:20
**pursuant** 19:4 35:7 38:10
**pursuit** 6:16
**put** 7:14 20:3 31:11 34:21 37:23 39:23 40:7
**Putting** 31:15

FILED DATE: 6/20/2024 11:38 AM 2024002591




**Q**

**question** 16:14 19:18 20:13,13 24:5,5 28:9 35:19 36:14 38:1
**questions** 17:8 21:2 24:15 27:6 29:13
**Quincy** 16:12,18
**quite** 37:3

**R**

**R** 2:1
**Radio** 3:16,17,18 3:19,20,21
**rate** 6:10 36:3,9
**reached** 6:12 25:10 36:5
**reaching** 36:4
**read** 5:14 8:1 16:1 30:7,22 31:1
**reader** 3:22 21:13 34:13
**readers** 12:22 13:12 15:8
**really** 17:17 20:24
**reasonable** 34:16 35:15
**rebuttal** 3:12 34:3,4
**received** 11:18 15:21
**reckless** 6:14
**recognize** 14:4
**record** 4:6 5:14 7:12 9:4 21:8 22:17 28:6 33:10 38:22 42:4
**recorded** 1:9 33:1 45:7
**recording** 3:16 3:17,18,19,20 3:21 8:2
**recordings** 7:8 21:10
**refer** 5:13
**referred** 34:22
**refund** 33:23
**refuses** 30:18
**regarding** 24:4
**registered** 6:22
**registration** 5:24 35:20
**regularly** 15:7
**related** 31:18
**relates** 20:16
**relation** 16:18
**relayed** 35:18
**relevance** 23:13 25:21 27:18 28:14 38:7
**relevant** 26:6 30:22 35:14 37:4 38:8 44:1
**reliable** 35:14 37:5
**rely** 15:11 34:16 35:15
**remind** 34:13 40:20
**replies** 39:8,11
**report** 1:5 3:15 5:15,16,18 7:21 8:6 15:15 16:2 21:8 25:1,3 31:6,20 32:18 33:6 34:9 35:13 35:13,15,18 36:24 37:7
**reported** 45:7
**Reporter** 45:5
**REPORTER'S** 45:1
**reports** 34:8
**represent** 31:7
**require** 39:11
**requires** 31:17
**research** 35:3 38:11 44:2
**reserve** 17:5
**Respondent** 1:7 4:13 37:12,21 37:22
**responding** 5:22 6:4,6,14
**response** 41:15
**responses** 39:9,12
**rest** 4:24 21:5,18 29:19 31:1
**rests** 21:22
**review** 7:10 20:9 40:5
**reviewed** 40:7
**right** 4:1,4,11,16 5:2,5,6 16:3 17:3,7,13 19:12 21:4,14 23:3 24:3,11 26:20 26:22 27:2 29:15,17 31:15 34:2,24 35:1 38:24 39:24 40:18 41:2,12 42:15,20,24 43:8,19
**route** 10:17
**rule** 24:1 40:1
**rules** 7:23 34:14
**ruling** 35:2 41:4 41:18 42:2 43:8

**S**

**S** 2:1
**s-e-r-v-i-c-e** 41:23
**safety** 20:4
**save** 32:11
**says** 5:20 30:8 31:4 33:13 34:9
**schedule** 40:24
**school** 23:19
**search** 14:16
**searching** 14:17
**second** 23:20 26:2 38:2
**section** 30:22 31:1
**sedan** 18:16
**see** 5:18
**seen** 6:20
**sees** 36:8
**seizure** 30:11
**send** 43:11
**sent** 43:11
**service** 41:23
**service@lafata...** 43:14
**seven** 42:5
**Shemitraku** 3:4 11:7 12:3,10
**shift** 37:23
**short** 38:19 39:6
**shorthand** 45:5,7 45:10
**show** 13:22 27:14
**showed** 27:15
**shown** 13:23
**side** 39:7
**sign** 6:11 36:3
**signal** 30:15
**simply** 38:22
**Sir** 25:24
**sirens** 6:9 36:2
**six** 16:20
**software** 14:22
**son** 23:14
**sorry** 5:12 11:1 11:10,20 15:24 21:6 27:24,24 39:14
**south** 16:21
**southbound** 6:20 13:16 16:22
**SPEAKER** 7:14 7:18 40:10,17
**specific** 24:4
**sped** 31:13
**speed** 6:10 30:19 36:3,10
**speeds** 6:12 36:4 36:5
**spell** 22:20,20
**squad** 13:4,9 17:17
**standing** 22:5,6
**star** 5:23 6:8 8:3 9:1,12,19 10:7 10:20 11:7 12:10
**start** 4:19 8:4
**state** 4:5 11:6 22:16 45:6
**stated** 32:22
**Statement** 3:2 5:10
**station** 10:14,17
**statute** 33:13 35:5
**stop** 6:7,11 30:17 35:24 36:3,12
**stopped** 25:6
**street** 20:19
**stricken** 28:4,7,9
**subject** 26:12 30:11
**submit** 5:12 39:6 41:20,22,22
**submitted** 32:18 37:22 42:1
**sufficient** 33:10
**summary** 5:21 12:21
**supervisor** 20:23
**sure** 16:16 21:7 38:23 42:14 43:9,16
**sustained** 26:8 28:3,15
**system** 20:17 33:9 34:12 36:22,23 37:2

**T**

**table** 43:5
**take** 38:1,2 39:3
**taken** 16:10 45:10
**talk** 42:13
**ten** 12:13,16 42:15,17,19,23 42:24

FILED DATE: 6/20/2024 11:38 AM 2024002591




**tender** 17:1 43:24
**terminating** 6:16 8:16,17
**territory** 33:15
**test** 32:21
**testified** 12:6 22:13 33:2
**testify** 24:2
**testimony** 23:23 32:20
**thank** 11:20 16:13,24 17:14 21:18 24:12 28:10 29:12 32:4,8 34:23 43:13,19,21,22 44:3
**things** 34:21 35:1
**think** 10:21 19:24 26:14,22,24 32:16 36:11 39:12 42:8
**third-party** 15:5
**Thomas** 6:1 41:24
**time** 5:18 8:4 25:17 27:8 32:11 33:7 35:16 36:17 38:2 39:5,18 41:14
**times** 26:5
**today** 17:15 35:4 38:15 43:20
**told** 27:19
**Tom** 16:8
**tow** 4:12,14 26:4 26:13,17,20,23 27:3,20 28:24 29:24 30:3,4 31:15 32:2,4 34:11,23 35:7 38:4,12 43:2
**towed** 7:3 26:11 27:22 33:21 36:16
**towing** 38:21,21
**town** 14:10 26:10
**towns** 20:4
**track** 13:2
**traffic** 6:6 9:9 30:24 31:9,12 35:23 36:7
**training** 15:3,3
**transcript** 1:9 45:9
**transporting** 10:13
**traveled** 36:9
**traveling** 35:21
**trial** 40:13
**true** 45:9
**truthfulness** 33:11
**try** 24:15
**trying** 42:14
**two** 13:7 19:10 22:24 30:23 31:8 36:7 39:19
**type** 38:8

**U**

**underscore** 8:3,3 9:1,1,12,12,19 9:20 10:7,7,20 10:20
**understand** 28:22
**understood** 29:1
**unit** 6:8 12:11 17:23 18:15
**unmarked** 17:23
**unrelated** 32:20 32:21
**USD** 7:5
**use** 13:11 14:8 15:2,7,7 17:22
**usually** 17:22,23 23:15,18 40:21
**utility** 5:24 8:21

**V**

**V** 7:2
**valid** 8:19 9:23
**Van** 6:3
**vehicle** 3:22 6:5,7 6:9,11,18,20,22 6:24 7:1,3,6 14:16 15:7,15 18:10,11,13 19:8,19 20:2,5 20:8 21:13 23:5 23:11 24:17,18 24:21 26:5,10 26:17 27:17,20 28:13,17,23 30:3,8,14,17 31:3,4,5,8,11 31:15,18,22 32:1,14 33:15 33:20 34:1,10 34:12 35:7,19 36:2,2,6,9,13 36:16,18 37:6,8 37:10,13,14 38:4,13 43:3
**vehicles** 19:5 32:22
**verbose** 42:18
**Victor** 7:2
**video** 33:1
**view** 13:18
**Vigilant** 14:9,13 14:16 36:21
**vigilante** 33:9
**Village** 1:1,3 2:8 4:8,19,23 5:6 12:15 19:2,22 20:15 21:22 25:14 26:17,23 26:24 30:1,2,4 31:2 32:3 33:14 33:18 35:9 37:2 37:17,17 38:3
**Village's** 4:17 31:14
**violated** 33:16
**violation** 35:7
**visual** 30:15

**W**

**W-i-n-f-r-e-y** 22:23
**W-i-n-t-e-r-e-g-g** 4:8
**wanna** 17:14
**want** 8:22 20:11 21:7 22:4 34:13 35:2 38:14 39:22 40:1,20 40:24 41:4,5 42:11,21 43:5 44:2
**wanted** 20:8
**wants** 20:20
**wasn't** 25:3,4 27:15
**way** 39:1
**we'll** 5:2
**we're** 14:17 26:13 28:23 40:8,9 42:4,14 43:7
**weapons** 10:2
**website** 15:1
**week** 19:9 39:13 39:15,21
**weeks** 19:10 39:20
**went** 31:11
**willfully** 30:17
**window** 40:4
**Winfrey** 1:6 2:12 3:7 4:2,10 8:20 22:1,10,19,22 22:24 26:1 29:3 33:2
**Winteregg** 2:7 3:2,5,10,12 4:3 4:7,7 5:4,6,11 7:16,19 8:1,8 8:24 9:11,19 10:6,19 11:4,10 11:20 12:8 14:3 15:14,23 16:24 20:12 21:2,6,12 21:15,18 23:13 25:19,21,24 26:3,19 27:18 28:5,10,14,19 29:14,23 34:5 38:17,19 39:1 39:16,19 40:19 41:10 42:3,7,13 42:16,21,24 43:13,21 44:3
**witness** 11:5,7 12:5 17:4 18:2 22:12 23:14,17 23:21,24 24:3,7 24:10 25:20,23 27:19
**witnessed** 32:19
**witnesses** 4:20,22 21:23
**work** 12:21 18:20
**worked** 12:14
**working** 18:19 20:19
**works** 23:21 36:24
**wouldn't** 39:24 41:9
**wrong** 21:16

**X**

**X** 3:1

**Y**

**Yeah** 9:10 11:1 42:18
**year** 19:10,11
**years** 12:13,16
**yep** 21:11

**Z**

**zone** 6:2 35:22

**0**

**0231** 5:22
**05:10** 3:2
**07** 8:2
**08:10** 3:15,16
**084-003483** 45:16
**09** 8:24

FILED DATE: 6/20/2024 11:38 AM 20244002591




**09:05** 3:17
**09:14** 3:18
**09:21** 3:19

**1**

**1** 3:15 8:7,8,10 21:5,6,7,8,20
**1-7** 3:23 11:18
**1,000** 7:5
**10-4** 8:14,17,18 8:22,23 9:8,10 10:5,16,18
**10:09** 3:20
**10:23** 3:21
**11-5** 16:5
**11:00** 41:1
**11:17** 3:23
**12** 9:11
**12:07** 3:4
**122** 18:15
**122's** 6:9
**12th** 6:11 36:4
**14** 9:19 14:9
**14:01** 3:22
**15** 14:9
**15:20** 3:23
**15th** 40:17,19 41:16,19 42:2 43:8
**16** 10:6
**17** 10:19
**17:11** 3:5
**17th** 6:2,5 8:13 8:14
**1977** 6:22
**19th** 6:23
**1st** 6:20 16:11,17 16:18 40:11,12 40:13 41:14 42:1

**2**

**2** 3:16 6:23 8:5 8:10 11:11 21:9
**2:31** 16:5
**2019** 5:23 8:20
**2023** 5:19,21 16:5 18:14 23:4 24:24
**2023115023217** 9:2
**2023115023921** 9:12
**2023115024012** 9:20
**2023115024750** 10:8
**2023115025118** 10:21
**202311523054** 8:3
**2024** 1:11
**21** 36:10
**21st** 25:6,8,16 27:10
**22:14** 3:8
**23-21461** 4:4
**23-21561** 1:5
**23I7551** 7:2
**24013** 6:1 16:8
**247** 10:15
**25** 36:9
**251** 11:3
**27** 8:21 9:16
**29:22** 3:10
**2nd** 1:11

**3**

**3** 3:17 9:3,5
**30** 6:2 35:22
**315** 11:8 12:10
**32:06** 3:11
**327** 5:23
**34:04** 3:12

**4**

**4** 3:18 9:13,14 30:23
**45** 6:1 35:21,21

**5**

**5** 3:19 9:20,21
**50** 34:7
**5th** 5:21 6:19 18:14 23:2 24:24 25:4,7

**6**

**6** 3:20 10:6,9
**6004600220224...** 9:18
**60160** 6:23
**6th** 5:19

**7**

**7** 3:21 10:21,23 11:11 21:9
**70** 42:22
**7th** 6:16 8:16,17

**8**

**8** 3:22,23 13:24 14:1 15:21 21:7 21:12,20 37:6
**80** 6:12 36:5

**9**

**9** 21:5,6
**99** 10:2
**99.62(a)** 30:5

FILED DATE: 9/20/2024 9:36 AM 20244002591

# Village of Maywood

# Motion to Clarify/Reconsider

# Exhibit C

FILED DATE: 9/20/2024 9:36 AM 20244002591

# IN THE MATTER OF:

# AUDIO FILE MAYWOOD v. WINFREY

# 23-21561

February 2, 2024

CYNTHIA A. PAVESICH & ASSOCIATES
(312) 214-1992
cagoodreporter@pavesich.com

FILED DATE: 9/20/2024 9:36 AM 20244002591



IN THE VILLAGE OF MAYWOOD, ILLINOIS
DEPARTMENT FOR ADMINISTRATIVE HEARINGS

| | | |
|---|---|---|
| VILLAGE OF MAYWOOD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| _ _ _ _ _ _ _ _ _ _ _ _ _ _ | ) | Report No. 23-21561 |
| | ) | |
| DERRICK WINFREY, | ) | |
| | ) | |
| Respondent. | ) | |

TRANSCRIPT of the recorded proceedings had at the hearing of the above-captioned matter on Friday, the 2nd day of February, 2024.



A P P E A R A N C E S

Present:

MS. MEGAN LAFATA,

appeared as Administrative Hearing Officer;

MS. CARRIE WINTEREGG,

appeared on behalf of the Village of Maywood;

MR. MICHAEL DRAKE,

appeared on behalf of Derick Winfrey;



I N D E X

Opening Statement.....................05:10
By Ms. Winteregg

ILIR SHEMITRAKU
Direct Examination....................12:07
By Ms. Winteregg
Cross-Examination.....................17:11
By Mr. Drake

DERICK WINFREY
Direct Examination....................22:14
By Mr. Drake

Closing Argument......................29:22
By Ms. Winteregg
Closing Argument......................32:06
By Mr. Drake
Rebuttal Argument.....................34:04
By Ms. Winteregg

EXHIBITS PAGE:LINE
Exhibit No. 1, id.....................08:10
(Police Report)
Exhibit No. 2, id.....................08:10
(Radio Recording)
Exhibit No. 3, id.....................09:05
(Radio Recording)
Exhibit No. 4, id.....................09:14
(Radio Recording)
Exhibit No. 5, id.....................09:21
(Radio Recording)
Exhibit No. 6, id.....................10:09
(Radio Recording)
Exhibit No. 7, id.....................10:23
(Radio Recording)
Exhibit No. 8, id.....................14:01
(Vehicle Detector Reader)
Exhibit Nos. 1-7, admitted............11:17
Exhibit No. 8, admitted...............15:20



MS. LAFATA: All right, is this Derick Winfrey.
MS. WINTEREGG: Yes.
MS. LAFATA: All right, Case No. 23-21461. Will everyone just state your name for the record.
MS. WINTEREGG: Carrie Winteregg, W-i-n-t-e-r-e-g-g, for the Village of Maywood.
MR. DRAKE: Michael Drake for Derick Winfrey.
MS. LAFATA: All right, it looks like there's an issue with a tow that took place, and the Respondent is contesting the basis for the tow?
MR. DRAKE: Yes.
MS. LAFATA: All right, since it's the Village's burden by a preponderance of the evidence, what I'm going to do is I'm going to have the Village start.
They'll call their witnesses. You will have the opportunity to cross-examine any witnesses that they call.
From there, once the Village is done presenting evidence, they'll rest and then you



CYNTHIA A. PAVESICH & ASSOCIATES
cagoodreporter@pavesich.com

FILED DATE: 9/20/2024 9:36 AM 20244002591



can present any evidence that you have on behalf of your client, and we'll go right to argument, okay?

MS. WINTEREGG: Okay.

MS. LAFATA: All right.

MS. WINTEREGG: All right, the Village is -- We can just go into it and do an opening argument, your Honor.

MS. LAFATA: Okay.

OPENING STATEMENT
BY MS. WINTEREGG:

So we did produce -- sorry, submit a group of documents for your Honor to refer to. I would like to read into the record the Maywood Police Department report.

This report has also been given to opposing counsel, and the narrative on it, this is, let's see. The last time this report was modified was on November 6th, 2023.

And in the narrative it says: In summary, on the 5th of November 2023 at approximately 0231 hours responding officer, Officer Nunez, Star 327, observed a black 2019 Chevy utility bearing Illinois registration DT,



as in David Thomas, 24013 driving 45 miles per hour in a 30 mile per hour zone northbound 17th Avenue from Van Buren.

Responding officer caught up to the vehicle at 17th Avenue and Madison where responding officer attempted to conduct a traffic stop on the vehicle.

Upon illuminating Maywood unit star 122's lights and sirens, the vehicle began to flee eastbound Madison at a high rate of speed. The vehicle disregarded the stop sign at 12th Avenue and Madison and reached speeds of 80 miles per hour.

Due to the reckless driving, responding officer advised ITE dispatch that he was terminating the pursuit at 7th Avenue and Madison.

The vehicle continued eastbound Madison where disregarding the light at 5th Avenue and Madison, the vehicle was last seen southbound 1st Avenue from Madison.

The vehicle is registered at 1977 North 19th Avenue, Apartment 2, Melrose Park, 60160.

ITE dispatch entered the vehicle into



LEADS as a felony vehicle for aggravated fleeing and eluding, LEADS No. V, as in Victor, 23I7551. If located, the vehicle is to be towed on an administrative hold for aggravated fleeing and eluding, and the amount of $1,000 USD is to be placed on the vehicle. Nothing further.

And then, your Honor, we also have recordings from the dispatch which have also been provided to counsel. He did have a chance to review them.

I would like to play them into evidence for the record just to make it easier if we need to deal with this later. So the first one --

MR. SPEAKER: Put it by the microphone.

MS. LAFATA: Any objection?

MS. WINTEREGG: Okay.

MR. DRAKE: No.

MR. SPEAKER: (Inaudible) to your left.

MS. WINTEREGG: Oh, that one.

MS. LAFATA: Any objection to the police report being admitted into evidence?

MR. DRAKE: I don't believe the administrative rules (inaudible).

MS. LAFATA: Okay.



MS. WINTEREGG: So I'm going to read aloud each recording how it's marked. It's 07 underscore star com underscore main 202311523054 by start time.

MS. LAFATA: And that will be Exhibit 2. The police report will be exhibit -- marked as Exhibit 1.

MS. WINTEREGG: Exhibit 1. Yes, your Honor.

(Whereupon, Exhibit Nos. 1 & 2 were marked for identification.)

(Audio playing: (Inaudible) Chevy DT24013 eastbound Madison from 17th.

10-4 eastbound Madison from 17th.

Continuing eastbound. (Inaudible) I'm terminating at 7th and Madison.

10-4 terminating at 7th and Madison.

10-4 he just took the (inaudible).

Plate coming back clear and valid to a Derick Winfrey out of Melrose Park, 2019 Chevy utility, black in color, no 27 attached.

10-4 do you want to (inaudible).

10-4.)

MS. WINTEREGG: The next one is 09

FILED DATE: 9/20/2024 9:36 AM 20244002591



underscore star com main underscore 2023115023217.
MS. LAFATA: That will be Exhibit 3 for the record.
(Whereupon, Exhibit No. 3 was marked for identification.)
(Audio playing: (Inaudible.)
10-4.
Just for traffic, correct?
Yeah, 10-4.)
MS. WINTEREGG: The next one is 12 underscore star com underscore main 2023115023921 for Exhibit 4.
(Whereupon, Exhibit No. 4 was marked for identification.)
(Audio playing: Do you copy 27?
(Inaudible.)
60046002202240F Frank.)
MS. WINTEREGG: Next is 14 underscore star com underscore main 2023115024012 for Exhibit 5.
(Whereupon, Exhibit No. 5 was marked for identification.)
(Audio playing: (Inaudible) valid
Photo ID to a Jequan Farrow out of



Melrose Park. Be advised it looks like
he has a 99 pending for weapons
offenses.
(Inaudible.)
10-4.)
MS. WINTEREGG: For Exhibit 6, 16 underscore star com main underscore 2023115024750.
(Whereupon, Exhibit No. 6 was marked for identification.)
(Audio playing: (Inaudible.)
Go ahead.
I'm going to be transporting one to the
station.
247.
10-4.
He's en route to the station.
10-4.)
MS. WINTEREGG: Okay, and the last, 17 underscore star com main underscore 2023115025118. Is that Exhibit 7 I think is the number? Yes, okay.
(Whereupon, Exhibit No. 7 was marked for identification.)



MS. LAFATA: Yeah. I'm sorry. Yes.
(Audio playing: (Inaudible.)
251.)
MS. WINTEREGG: For our next evidence, your Honor, we'd like to call a witness.
MS. LAFATA: Please state your name?
THE WITNESS: Detective Shemitraku, Star No. 315, Maywood Police Department, Investigation Bureau.
MS. WINTEREGG: Oh, before I -- Sorry, your Honor. Are Exhibits 2 through 7 entered into evidence?
MS. LAFATA: No objection; is that correct?
MR. DRAKE: No objection.
MS. LAFATA: Okay, yes, they will be admitted.
(Whereupon, said exhibits marked as Exhibit Nos. 1-7 were received in evidence.)
MS. WINTEREGG: Thank you. Sorry.
* * *



WHEREUPON:

ILIR SHEMITRAKU,

called as a witness herein, was examined and testified as follows:

DIRECT EXAMINATION
BY MS. WINTEREGG:

**Q. Can you please introduce yourself again?**
A. Detective Shemitraku, Star No. 315, Maywood Police Department, Investigations Unit.
**Q. Okay, how long have you been a detective?**
A. Detective, four years; police officer, ten.
**Q. Okay, and how long have you worked for the Village of Maywood?**
A. Ten years.
**Q. Are you familiar with license plates detectors?**
A. Yes.
**Q. Okay, can you just give us a very brief summary of how they work?**
A. So license plate readers are cameras that it's either -- they're either fixed which is they're mounted on the pole, and they're fixed at

FILED DATE: 9/20/2024 9:36 AM 20244002591



an intersection or wherever they -- they give that lot track.
Then you got the mobile ones where they're fixed on the -- on the squad car. As you're driving around, it captures plates of the passing cars.
**Q. Okay, so there's two kinds.**
**There's the fixed kind and the kind on a squad car?**
A. Correct.
**Q. Okay, and how do you use these license plate readers --**
A. So --
**Q. -- for the fixed ones?**
A. So the fixed ones, as they're placed either on a southbound lane or a northbound lane, they'll capture both lanes. It's the field of view, and it's capturing motion.
**Q. Okay, and then once they capture the motion, do they also capture the license plate?**
A. Yes.
**Q. Okay, I am going to show you a document. This has also been shown to opposing counsel. We we will introduce this as Exhibit 8.**



**(Whereupon, Exhibit No. 8 was marked for identification.)**
BY MS. WINTEREGG:
**Q. Can you please -- Do you recognize this document?**
A. Yes.
**Q. Can you please identify it?**
A. This is the program we use which is Vigilant. We have approximately about 14 to 15 cameras in town --
**Q. Okay.**
A. -- in different intersections.
**Q. When you say the program is Vigilant, what do you mean by that?**
A. That's the name of the program. It's called Vigilant. When you search for a vehicle, let's say we're searching for a license plate, it's going to populate wherever it's catching it --
**Q. Okay.**
A. -- on that date.
**Q. So this is not -- Is it software essentially?**
A. It's online based. So you gotta go through



their website. You enter your credentials, and there's also -- Before we use it, we go through training. It's a eight-hour training.
**Q. Okay, so essentially this is produced by a third-party contractor?**
A. Correct.
**Q. And do you use -- regularly use the vehicle -- the license plate readers in your course of being a detective?**
A. Yes.
**Q. Okay, is it something that you rely upon in your investigations?**
A. Yes.
MS. WINTEREGG: Okay, we would like to enter this vehicle detection report into evidence. Officer -- If there's no objection.
MS. LAFATA: Any objections?
MR. DRAKE: No objection.
MS. LAFATA: Okay.
(Whereupon said document marked as Exhibit No. 8 was received in evidence.)
BY MS. WINTEREGG:
**Q. Officer, could you please -- I'm sorry.**



**Detective, could you please read the date on this report?**
A. On this right here?
**Q. Yes.**
A. The date on here, it's 11-5 of 2023 at 2:31 a.m. in the morning.
**Q. Okay, and what's the license plate listed?**
A. It's David Tom 24013.
**Q. And where is the location where this was taken?**
A. The location, it is going to be at 1st Avenue and Quincy.
**Q. Okay, thank you. That's all I have.**
**Oh, I do have one other question for you.**
A. Sure.
**Q. So when you said it's 1st Avenue and Quincy, where is that in relation to 1st Avenue and Madison?**
A. I'll say approximately about five to six blocks south.
**Q. Southbound?**
A. Yes.
MS. WINTEREGG: Thank you. That's all I

FILED DATE: 9/20/2024 9:36 AM 20244002591



have. I'm going to tender it to the hearing officer.
All right, your Honor, that's all I have for that witness and as well for presenting evidence. I can reserve the argument for closing.
MS. LAFATA: All right, do you have any questions for the Detective?
MR. DRAKE: Briefly.
MS. LAFATA: Okay.

CROSS-EXAMINATION
BY MR. DRAKE:

**Q. Right here is fine. It's crowded but I don't wanna, like, you know. Thank you for being here with us today, Detective.**
A. No problem.
**Q. Just really briefly, do your squad cars have dashcams?**
A. Some of them do and some of us don't.
**Q. Can you give an estimation of how many do and how many don't?**
A. I'm in investigations. So I usually use an unmarked unit. We usually don't have cameras. I'll say about four or five maybe, approximately.



MS. LAFATA: Four or five don't or do?
THE WITNESS: Do.
MS. LAFATA: Do, okay.
BY MR. DRAKE:
**Q. You said you're in investigation.**
**So investigations don't generally have them?**
A. We don't have them, dashcams.
**Q. But a patrol officer generally would?**
A. It depends on the vehicle.
**Q. It depends on the vehicle?**
A. Correct.
**Q. Do you happen to know what kind of vehicle Officer Nunez was in on November 5th, 2023?**
A. I believe it's unit 122, and that's a -- that's a Ford sedan.
**Q. To your knowledge does that have a dashcam?**
A. I believe so. They're all equipped with dashcams. It depends if it's working or not.
**Q. How common is it they don't work?**
A. It's very common.
**Q. Very common?**
A. Yes.
**Q. I assume, Detective, that prior to your**



**becoming detective you were a patrol officer in the Village of Maywood?**
A. Correct.
**Q. Have you ever -- Pursuant to that job did you ever impound vehicles?**
A. I have.
**Q. Generally how long after the crime was committed would you say you impound the vehicle?**
A. It depends, maybe a week. It could also be two weeks. It could be close to a year.
**Q. Close to a year?**
A. Correct. It was a felony, right? It was an aggravated fleeing and eluding?
**Q. Nothing is charged.**
A. Oh, no, no, no.
**Q. I mean, that's a -- that's a yes.**
A. Yes.
**Q. That was my next question, officer is:**
**Have you ever impounded a vehicle without making an arrest?**
A. Yes.
**Q. Is that common in the Village of Maywood as well?**
A. I think it's common in law enforcement for



the crimes committed to definitely they're gonna grab that vehicle.
**Q. Is it common to put this into LEADS?**
A. Yes, officer safety, for other towns. I mean, it's a felonious vehicle. It took off on the officer. We don't know the basis, but you're gonna let everyone in law enforcement know that this vehicle is wanted.
**Q. Does the department have a review process for that or can any officer enter anything they want into LEADS?**
MS. WINTEREGG: Objection, it's a compound question, if you could break the question up.
BY MR. DRAKE:
**Q. Does the Village of Maywood have a policy as it relates to imputing information into the LEADS system?**
A. I believe any officer, any officer that's working the street, especially an officer that was involved in this is entitled to if he wants to or not.
**Q. They don't have to clear it with their supervisor?**
A. They really don't.

FILED DATE: 9/20/2024 9:36 AM 20244002591



MR. DRAKE: Okay, that's all I have.
MS. WINTEREGG: I have no questions, your Honor.
MS. LAFATA: All right, with the admission of Exhibits 1 through 9, do you rest?
MS. WINTEREGG: Yes. Sorry. 1 through 9? I have 1 through 8. I just want to make sure. For the record, Exhibit 1 was the police report and then I have Exhibits 2 through 7 as recordings.
MS. LAFATA: Okay, yep. Okay.
MS. WINTEREGG: And then Exhibit 8 as the vehicle detector reader.
MS. LAFATA: All right, my mistake.
MS. WINTEREGG: That's what I have. I could be wrong.
MS. LAFATA: No, no, you're not. Okay.
MS. WINTEREGG: Thank you, and we rest as it comes to evidence, your Honor.
MS. LAFATA: Okay, Exhibits 1 through 8 will be admitted without objection.
The Village rests. Counsel, do you have any witnesses that you would like to --
MR. DRAKE: I'm just going to call



Mr. Winfrey --
MS. LAFATA: Okay.
MR. DRAKE: -- briefly as well.
Do you want to come up here by the microphone where the officer was standing -- the detective was standing.
* * *
WHEREUPON:

DERICK WINFREY,

called as a witness herein, was examined and testified as follows:

DIRECT EXAMINATION
BY MR. DRAKE:

**Q. Can you please state your name for the record?**
A. My first name is Derick. My last name is Winfrey.
**Q. Can you spell that? Can you spell your names?**
A. D-e-r-i-c-k is the first name. Winfrey is the last name, W-i-n-f-r-e-y.
**Q. Mr. Winfrey, I'm going to ask you about two**



**different dates. So first I'm going to ask you about November 5th --**
A. All right.
**Q. -- 2023.**
**Were you driving your vehicle --**
A. No.
**Q. -- on that date?**
A. No.
**Q. Did you give anyone authorization --**
A. No.
**Q. -- to drive your vehicle on that date?**
**How many people do you live with?**
MS. WINTEREGG: Objection, relevance.
THE WITNESS: There's one; and my son, he's in and out. He's usually --
MS. LAFATA: Overruled.
THE WITNESS: -- with his girl -- He's usually at his girlfriend's house and goes to school.
MS. LAFATA: Just one second.
THE WITNESS: He works.
MS. LAFATA: If there's an objection, just pause your testimony.
THE WITNESS: Okay.



MS. LAFATA: I'll rule on whether or not you should continue to testify --
THE WITNESS: Right.
MS. LAFATA: -- regarding that specific question or whether that question is going to be --
THE WITNESS: Okay.
MS. LAFATA: -- you don't have to answer it, okay?
THE WITNESS: Okay.
MS. LAFATA: All right.
MR. DRAKE: Okay, thank you.
MS. LAFATA: His answer will be accepted.
BY MR. DRAKE:
**Q. I'll try to ask less questions here.**
**Did you give anybody in your house authority to drive your vehicle?**
A. No, no one has keys to my vehicle but myself.
**Q. So to your knowledge nobody would have been driving your vehicle that you gave authorization to --**
A. No one.
**Q. -- on November 5th, 2023?**

FILED DATE: 9/20/2024 9:36 AM 20244002591



**But did you file a police report on this incident?**
A. I didn't file a police report cuz I wasn't aware of what occurred November 5th. I wasn't -- I didn't know anything about this until I got stopped December the 21st in Cicero.
**Q. So between November 5th and December 21st --**
A. I had no knowledge.
**Q. -- no police officers reached out to you?**
A. No.
**Q. Did you get anything in the mail?**
A. No.
**Q. Any calls from Village administrators?**
A. No.
**Q. On December 21st what happened?**
**Where were you at the time you were detained (inaudible)?**
MS. WINTEREGG: Objection --
THE WITNESS: Okay --
MS. WINTEREGG: -- relevance. This is about --
THE WITNESS: -- I was --
MS. WINTEREGG: Sir.



MR. DRAKE: Mr. Winfrey.
MS. LAFATA: Hang on one second.
MS. WINTEREGG: This is about whether or not the police had the authorization to tow the vehicle. So any other dates or times outside -- outside of the incident are not relevant.
MS. LAFATA: That objection will be sustained.
MR. DRAKE: I can't ask him about where -- what town he was when he was -- when his vehicle was towed because from --
MS. LAFATA: Well, no, the subject of the -- We're contesting the basis for the tow.
MR. DRAKE: And I think that legally I'm not -- I'm not under the impression that this ordinance gives anybody authority -- gives the Village of Maywood the authority to tow a vehicle from Cicero if he was outside of Maywood.
MS. WINTEREGG: Again, that just goes to whether or not Maywood had the right to tow it.
MS. LAFATA: Okay.
MR. DRAKE: I think Maywood had the right to tow it in the Village of Maywood. I don't think the Village of Maywood had the authority to



go to Cicero --
MS. LAFATA: Right.
MR. DRAKE: -- to tow it. So then that was gonna be my --
MS. LAFATA: If that was one of the questions, go ahead and ask it. Go ahead.
BY MR. DRAKE:
**Q. Were you in Cicero at the time that you were detained?**
A. Yes, I was in Cicero December the 21st.
**Q. Were you detained by Cicero or -- Police Department or Maywood Police Department?**
A. I was detained by Cicero Police Department.
**Q. Did Maywood Police Department show up?**
A. I wasn't aware if they showed up anyway. I had left because it was cons -- They made me get out of my vehicle and lock it up --
MS. WINTEREGG: Objection, relevance.
THE WITNESS: -- and they told me that Maywood was coming to tow my vehicle.
BY MR. DRAKE:
**Q. So Maywood came to Cicero and towed it?**
MS. LAFATA: Okay.
MR. DRAKE: Oh, sorry, sorry. I apologize,



your Honor. I apologize, counsel.
MS. LAFATA: The objection is going to be -- The objection is going to be sustained. That will be stricken. Continue.
MS. WINTEREGG: Is the whole -- Just for the record, your Honor, is the whole answer stricken or just part of it?
MS. LAFATA: The whole answer to the last question asked by counsel is stricken.
MS. WINTEREGG: Thank you.
BY MR. DRAKE:
**Q. How much money did you pay to get your vehicle back?**
MS. WINTEREGG: Objection, relevance.
MS. LAFATA: Sustained.
MR. DRAKE: It goes directly to the ordinance. You have to bond the vehicle out. This is all --
MS. WINTEREGG: It goes --
MR. DRAKE: This is what is done. I mean, I --
MS. LAFATA: I understand that he had to pay to get his vehicle out, but he -- What we're contesting here is the basis for the tow.

FILED DATE: 9/20/2024 9:36 AM 20244002591



MR. DRAKE: Okay, understood.
BY MR. DRAKE:
**Q. Mr. Winfrey, have you ever been charged with fleeing and eluding a police officer?**
A. No.
**Q. Have you been charged with any crime-related offense?**
A. No.
**Q. Has anybody in your house been charged with any crime-related offense?**
A. No.
MR. DRAKE: Thank you. That's all.
MS. LAFATA: Any questions?
MS. WINTEREGG: No, your Honor.
MS. LAFATA: All right, any other evidence?
MR. DRAKE: That's all I have, your Honor.
MS. LAFATA: All right --
MR. DRAKE: I just have a closing.
MS. LAFATA: -- you rest?
MR. DRAKE: Correct.
MS. LAFATA: Argument?

CLOSING ARGUMENT
BY MS. WINTEREGG:

Your Honor, the basis for the tow, all



the Village needs to prove is by a preponderance of the evidence that the Village had the authorization to tow the vehicle.

This tow occurred under Maywood Village Code 99.62(a) which is -- which deals with eluding a police officer, and I'm only going to read portions of the Code into it.

It says: A motor vehicle used to commit the offense of aggravated fleeing or attempting to elude a police officer -- a peace officer is subject to seizure and impoundment.

The offense of aggravated fleeing or attempting to elude a police officer is committed by a driver or operator of a motor vehicle who, having been given a visual or audible signal by a peace officer directing such driver or operator to bring his vehicle to a stop, willfully fails or refuses to obey such direction, increases his or her speed, extinguishes his or her lights or otherwise flees or eludes -- attempts to elude the police officer and either, and I'm only going to read the section that is relevant here which is (4) involves disobedience of two or more official traffic control devices, and I won't



read the rest of the section.

At this point, your Honor, the Village has produced evidence that the vehicle, which notably it says a motor vehicle, it does not deal with who is driving the vehicle, with the license plate of DT24013 for the police report and the incriminating evidence did represent that he did -- this vehicle did go through at least two traffic control devices.

It was indicated that the officer did put on his lights and then the vehicle went through these traffic control devices and as well sped along.

It's the Village's position that they did have a right to tow this vehicle. Putting it out, there is nothing within the Maywood code that requires an arrest of any kind; and, again, your Honor, this is only related to the vehicle, not to who is driving it.

There has been no police report, nothing else to contradict the fact that this vehicle with this license plate DT24013 was not eluding the police.

In fact, all the evidence presented



indicates that this particular vehicle did, in fact, elude the police; and, therefore, the tow was proper. The Village did have the authorization to tow it. Thank you.

MS. LAFATA: Counsel, go ahead.

CLOSING ARGUMENT
BY MR. DRAKE:

Thank you. I have a few, you know, constitutional issues with this facially as it applies, but since this is an Administrative Court, I'm going to save everybody the time.

Counsel said in her close that no evidence was presented that we didn't -- that the vehicle did not elude police. It's not our burden to prove. It's their burden to prove that this occurred. I don't think they've met that burden, your Honor.

They've submitted a police report. The officer that allegedly witnessed this presented no testimony. An unrelated police officer was called. The unrelated test -- police officer stated that their vehicles -- I mean, I guess they do have dashcam sometimes. I don't know if this one did or didn't, but I didn't hear

FILED DATE: 9/20/2024 9:36 AM 20244002591



anything about video recorded evidence.
And Mr. Winfrey testified that he was not driving. Nobody in his home had the authority to drive this. All that they've presented that this did occur they said was the police report and they -- a picture that I guess occurred on that time.
I'm not very familiar with this vigilante system or how it operates, and I don't believe the record is sufficient for us to make any determination as to the truthfulness of that piece of evidence.
And finally, as the statute says, this gives the authority for the Village of Maywood to impound the vehicle found within its territory that it admits that it believes has violated one of the numerous ordinances.
This occurred outside of the Village of Maywood in which my client was in Cicero. He was detained. He was not arrested. His vehicle was towed, and he was fined for it.
So I would just ask this Court to find in favor of my client and refund him the bond that he has paid for the detainment of his



vehicle.
MS. LAFATA: All right, anything in rebuttal?
REBUTTAL ARGUMENT
BY MS. WINTEREGG:
Yes, your Honor. This is a preponderance of the evidence. That's 50 percent in the feather. The police reports are evidence here, and the police report distinctly says that this vehicle with that license plate eluded police under the tow.
As for the system, the vehicle detection reader, I do want to remind the Court that the rules of evidence don't necessarily apply. It only needs to be a piece of evidence on which a reasonable person would rely upon. That's within the Illinois Administrative Code, and this is coming in under an administrative code here.
As for, you know, Maywood Police are allowed to put things into LEADS which is something that the detective referred to, and therefore the tow was proper. Thank you.
MS. LAFATA: All right, I'm going to



address a few things here. All right, and I'm going to hold over my ruling because I do want to do a little bit of research on one issue.
So what I will address today though is the statute for live code for aggravated fleeing and eluding and the -- and officer's ability to tow a vehicle pursuant to any violation of aggravated fleeing and eluding.
I do believe that the Village has met their burden on that since it's a preponderance of the evidence.
There was no objection to the admission of the police report. The police report is certainly relevant and certainly reliable. A reasonable person would rely on the police report as documentation of what took place at the time.
So I am -- I'm giving deference to what's relayed in the police report. That being that the officer observed the vehicle in question with the license plate registration DT24013 traveling at 45 miles an -- 45 miles an hour in a 30 mile an hour zone. That there giving the officer probable cause to initiate the traffic stop.



On upon illuminating the lights and sirens of the vehicle, the vehicle took off at a high rate of speed disregarding a stop sign at 12th Avenue and Madison reaching speeds in excess -- and reached speeds of 80 miles an hour.
The vehicle, in the Court's eyes, certainly disregarded two traffic control devices; and additionally, the Court sees that the vehicle traveled at a rate of at least 25 -- 21 miles an hour over the speed limit.
So I think there's no issue with the basis of the stop based on the actions of the vehicle that day.
I do -- So the officer in question -- I don't believe there's any issue with the officer placing the vehicle into LEADS to be towed at a future date and time because there was -- he certainly had enough evidence that the vehicle committed the offense of aggravated fleeing and eluding.
I am -- I also believe the Vigilant system. There was no objection to its admission, to the foundation of it -- of how the system works. The report itself was not objected to. I

FILED DATE: 9/20/2024 9:36 AM 20244002591



-- Even if it was, I do believe that this is the system that is used within the Village of Maywood quite frequently.

The -- I do believe it to be relevant and reliable as well that I will note here that on Exhibit 8, which is the vehicle detection report, the license plate does match the license plate of the vehicle that was driven; although, it doesn't appear to be contested that this vehicle was driven that evening.

I haven't heard any evidence -- Well, I have heard evidence that the Respondent was not the driver of the vehicle. I have not heard any evidence that this vehicle was not driven on that evening.

This is -- It is the burden of the Village. The Village had met their burden at the close of their case-in-chief, that being a preponderance of the evidence.

Nothing -- No evidence provided by the Respondent has at this point -- No evidence -- There's no evidence submitted by the Respondent that would put the burden -- would shift the burden at this point.



The question that I would like to take a second to look -- take some time to look into is whether or not the Village of Maywood had the ability to tow the vehicle from Cicero. That is something that I would like to look into.

I need to, one, look into the fact of whether -- its relevance in this -- in this case; and if it is relevant in this case, what type of jurisdiction, and I believe this will all be pursuant to the Code.

So that's just the research I'd like to do, whether or not they had the authority to tow a vehicle from a neighboring jurisdiction which I believe -- I believe they do. I just want to confirm that before entering a finding today. So --

MS. WINTEREGG: Your Honor, if I may.

MS. LAFATA: Yes.

MS. WINTEREGG: We could also do short briefs if that would assist you within that issue of towing from Maywood or towing from Cicero simply just for preservation of the record to make sure that everything is --

MS. LAFATA: All right.



MS. WINTEREGG: -- considered that way.

MS. LAFATA: That's actually probably a good idea. So here's what I'll say. Let's take a look at the calendar here.

How much time would everyone need to submit just a short brief on that issue?

MR. DRAKE: Are we just -- just each side one brief or are we doing, like, replies and responses?

MS. LAFATA: Each -- If you would like to -- I'm not going to require replies and responses. I don't think it's necessary.

MR. DRAKE: I could have a brief in a week.

MS. LAFATA: I'm sorry?

MR. DRAKE: I could have a brief in a week.

MS. WINTEREGG: And I would need --

MS. LAFATA: We could do about -- I'm going to give you more time than that.

MS. WINTEREGG: I would need at least two weeks, your Honor, just because I'm going to be in court most of next week.

MR. DRAKE: I just want to clarify that this would put off, like, the final judgment, right? The final judgment wouldn't be until you



rule after the briefs because I don't want to miss, like --

MS. LAFATA: So here's --

MR. DRAKE: -- the window for judicial review.

MS. LAFATA: Yes. So the final judgment will not be put in place until I've reviewed the briefs, and we're going to come back here on Monday. We're not here on Mondays. Okay.

MR. SPEAKER: Our next hearing date is March 1st.

MS. LAFATA: Okay, so March 1st.

MR. DRAKE: I'm on trial March 1st.

MS. LAFATA: Okay.

MR. DRAKE: Which is why we didn't get the kick extension.

MR. SPEAKER: March 15th.

MS. LAFATA: All right.

MS. WINTEREGG: I just -- For March 15th, I just want to remind the Court that we do have the code enforcement that day. That's usually a pretty busy call.

I'm not opposed to it. I just -- I don't know if maybe we want to schedule it for

FILED DATE: 9/20/2024 9:36 AM 20244002591



like 11:00 or do it a little bit earlier.
MS. LAFATA: All right, here's what I'm going to do. I'm going to hold over for ruling -- I don't want to go into the -- I don't want to go too far out. So give me one moment.
MR. DRAKE: Is there a -- Can you issue it in absentia?
MS. LAFATA: I can.
MR. DRAKE: I wouldn't object.
MS. WINTEREGG: I would not object to that either.
MS. LAFATA: Okay, all right, so then let's do this. I will -- I'd like the issue briefed by March 1st, give everybody that much time to brief. So -- And I will get a response out to everybody by March 15th.
MR. DRAKE: And --
MS. LAFATA: And issue a ruling by March 15th.
MR. DRAKE: -- just submit those briefs by e-mail?
MS. LAFATA: Submit -- Yes. You can submit the brief to service, s-e-r-v-i-c-e, @ Lafata, L-a-f as in Frank a-t as in Thomas a law.com.



Just have them submitted by March 1st. I will then issue a ruling by March 15th.
MS. WINTEREGG: And, your Honor, just so we're clear for the record, page limit, five pages, seven pages?
MS. LAFATA: Five pages.
MS. WINTEREGG: Okay.
MS. LAFATA: I think that will be enough.
MR. DRAKE: Can we motion for a longer brief?
MS. LAFATA: If you guys want to agree on a page length, it does not matter to me.
MS. WINTEREGG: We can talk about it. I'm just trying to, like, make sure that we're on --
MS. LAFATA: All right, ten pages.
MS. WINTEREGG: -- the same page.
MS. LAFATA: Ten pages.
MR. DRAKE: Yeah, I can be pretty verbose. I'd prefer at least ten.
MS. LAFATA: All right.
MS. WINTEREGG: I just don't want, like, a, you know, 70 page brief.
MS. LAFATA: Ten pages.
MS. WINTEREGG: Ten pages, all right.



MS. LAFATA: It's the limited issue of whether Maywood has the authority to tow a vehicle from -- out from a different jurisdiction.
MR. DRAKE: Do you want a table of contents on this?
MS. LAFATA: No, we're good. Okay, all right, I'll issue a ruling by March 15th, and I will mail it. Make sure that you provide me with a mailing address that you would like it to be sent. So I'll mail it, but I will also send it in an e-mail to each of you as well.
MS. WINTEREGG: Thank you.
MR. DRAKE: Was it service@lafatalaw.com?
MS. LAFATA: Yes. Any issues with getting in contact with me I'm sure you can --
MR. DRAKE: Yes, she's been very communicative.
MS. LAFATA: Okay, all right, thank you everyone. Everyone did a very nice job today.
MS. WINTEREGG: Thank you.
MR. DRAKE: Thank you.
MS. LAFATA: I'm going to hold on -- Well, no, I'm going to tender the exhibits back. The



exhibits itself are not relevant to the issue that I want to research.
MS. WINTEREGG: Thank you.
(WHICH WERE ALL THE PROCEEDINGS HAD.)
* * *

FILED DATE: 9/20/2024 9:36 AM 20244002591

REPORTER'S CERTIFICATE

I, CYNTHIA A. PAVESICH GOOD, Certified Shorthand Reporter within and for the State of Illinois, do hereby certify that I reported in computerized shorthand the recorded proceedings had of the said cause, and that the foregoing is a true and correct transcript of my shorthand notes so taken as aforesaid.

C.A. Pavesich Good

Cynthia A. Pavesich Good, CSR
CSR License # 084-003483

FILED DATE: 9/20/2024 9:36 AM 20244002591




**A**

**a-t** 41:24
**a.m** 16:6
**ability** 35:6 38:4
**above-captioned** 1:10
**absentia** 41:7
**accepted** 24:13
**actions** 36:12
**additionally** 36:8
**address** 35:1,4 43:10
**administrative** 1:1 2:5 7:4,23 32:10 34:17,18
**administrators** 25:14
**admission** 21:4 35:12 36:22
**admits** 33:16
**admitted** 3:23,23 7:21 11:16 21:21
**advised** 6:15 10:1
**aforesaid** 45:10
**aggravated** 7:1,4 19:13 30:9,12 35:5,8 36:19
**agree** 42:11
**ahead** 10:12 27:6 27:6 32:5
**allegedly** 32:19
**allowed** 34:21
**aloud** 8:1
**amount** 7:5
**answer** 24:8,13 28:6,8
**anybody** 24:16 26:16 29:9
**anyway** 27:15
**Apartment** 6:23
**apologize** 27:24 28:1
**appear** 37:9
**appeared** 2:5,8 2:11
**applies** 32:10
**apply** 34:15
**approximately** 5:22 14:9 16:20 17:24
**argument** 3:10 3:11,12 5:2,8 17:5 29:21,22 32:6 34:4
**arrest** 19:20 31:17
**arrested** 33:20
**asked** 28:9
**assist** 38:20
**assume** 18:24
**attached** 8:21
**attempted** 6:6
**attempting** 30:10 30:13
**attempts** 30:20
**audible** 30:15
**Audio** 8:12 9:7 9:16,23 10:11 11:2
**authority** 24:17 26:16,17,24 33:4,14 38:12 43:2
**authorization** 23:9 24:21 26:4 30:3 32:4
**Avenue** 6:3,5,12 6:16,19,21,23 16:12,17,18 36:4
**aware** 25:4 27:15

**B**

**back** 8:19 28:13 40:8 43:24
**based** 14:24 36:12
**basis** 4:13 20:6 26:13 28:24 29:24 36:12
**bearing** 5:24
**becoming** 19:1
**began** 6:9
**behalf** 2:8,11 5:1
**believe** 7:22 18:15,18 20:18 33:10 35:9 36:15,21 37:1,4 38:9,14,14
**believes** 33:16
**bit** 35:3 41:1
**black** 5:23 8:21
**blocks** 16:21
**bond** 28:17 33:23
**break** 20:13
**brief** 12:20 39:6,8 39:13,15 41:15 41:23 42:10,22
**briefed** 41:13
**briefly** 17:9,17 22:3
**briefs** 38:20 40:1 40:8 41:20
**bring** 30:17
**burden** 4:17 32:15,15,17 35:10 37:16,17 37:23,24
**Bureau** 11:9
**Buren** 6:3
**busy** 40:22

**C**

**C** 2:1
**calendar** 39:4
**call** 4:20,22 11:5 21:24 40:22
**called** 12:5 14:16 22:12 32:21
**calls** 25:14
**cameras** 12:22 14:10 17:23
**capture** 13:17,19 13:20
**captures** 13:5
**capturing** 13:18
**car** 13:4,9
**Carrie** 2:7 4:7
**cars** 13:6 17:17
**case** 4:4 38:7,8
**case-in-chief** 37:18
**catching** 14:18
**caught** 6:4
**cause** 35:23 45:8
**certainly** 35:14 35:14 36:7,18
**CERTIFICATE** 45:1
**Certified** 45:5
**certify** 45:6
**chance** 7:9
**charged** 19:14 29:3,6,9
**Chevy** 5:24 8:12 8:20
**Cicero** 25:6 26:18 27:1,8,10 27:11,13,22 33:19 38:4,21
**clarify** 39:22
**clear** 8:19 20:22 42:4
**client** 5:2 33:19 33:23
**close** 19:10,11 32:12 37:18
**closing** 3:10,11 17:6 29:18,22 32:6
**code** 30:5,7 31:16 34:17,19 35:5 38:10 40:21
**color** 8:21
**com** 8:3 9:1,12,20 10:7,20
**come** 22:4 40:8
**comes** 21:19
**coming** 8:19 27:20 34:18
**commit** 30:9
**committed** 19:8 20:1 30:13 36:19
**common** 18:20 18:21,22 19:22 19:24 20:3
**communicative** 43:18
**compound** 20:12
**computerized** 45:7
**conduct** 6:6
**confirm** 38:15
**cons** 27:16
**considered** 39:1
**constitutional** 32:9
**contact** 43:16
**contents** 43:5
**contested** 37:9
**contesting** 4:13 26:13 28:24
**continue** 24:2 28:4
**continued** 6:18
**Continuing** 8:15
**contractor** 15:5
**contradict** 31:21
**control** 30:24 31:9,12 36:7
**copy** 9:16
**correct** 9:9 11:13 13:10 15:6 18:12 19:3,12 29:20 45:9
**counsel** 5:17 7:9 13:23 21:22 28:1,9 32:5,12
**course** 15:8
**court** 32:11 33:22 34:13 36:8 39:21 40:20
**Court's** 36:6
**credentials** 15:1
**crime** 19:7
**crime-related** 29:7,10
**crimes** 20:1
**Cross-Examin...** 3:5 17:11
**cross-examine** 4:21
**crowded** 17:13

FILED DATE: 9/20/2024 9:36 AM 20244002591




**CSR** 45:15,16
**cuz** 25:3
**Cynthia** 45:4,15

**D**

**D** 3:1
**D-e-r-i-c-k** 22:22
**dashcam** 18:17 32:23
**dashcams** 17:18 18:8,19
**date** 14:21 16:2,5 23:7,11 36:17 40:10
**dates** 23:1 26:5
**David** 6:1 16:8
**day** 1:11 36:13 40:21
**deal** 7:13 31:4
**deals** 30:5
**December** 25:6,8 25:16 27:10
**deference** 35:17
**definitely** 20:1
**department** 1:1 5:15 11:8 12:11 20:9 27:12,12 27:13,14
**depends** 18:10,11 18:19 19:9
**Derick** 2:11 3:7 4:1,9 8:20 22:10,18
**DERRICK** 1:6
**detained** 25:18 27:9,11,13 33:20
**detainment** 33:24
**detection** 15:15 34:13 37:6
**detective** 11:7 12:10,12,13 15:9 16:1 17:8 17:15 18:24 19:1 22:6 34:22
**detector** 3:22 21:13
**detectors** 12:18
**determination** 33:11
**devices** 30:24 31:9,12 36:8
**different** 14:12 23:1 43:3
**Direct** 3:4,8 12:7 22:14
**directing** 30:16
**direction** 30:18
**directly** 28:16
**disobedience** 30:23
**dispatch** 6:15,24 7:8
**disregarded** 6:11 36:7
**disregarding** 6:19 36:3
**distinctly** 34:9
**document** 13:22 14:5 15:20
**documentation** 35:16
**documents** 5:13
**doing** 39:8
**Drake** 2:10 3:6,8 3:11 4:9,9,15 7:17,22 11:14 15:18 17:9,12 18:4 20:14 21:1 21:24 22:3,15 24:12,14 26:1,9 26:14,22 27:3,7 27:21,24 28:11 28:16,20 29:1,2 29:12,16,18,20 32:7 39:7,13,15 39:22 40:4,13 40:15 41:6,9,17 41:20 42:9,18 43:5,14,17,22
**drive** 23:11 24:17 33:4
**driven** 37:8,10,14
**driver** 30:14,16 37:13
**driving** 6:1,14 13:5 23:5 24:21 31:5,19 33:3
**DT** 5:24
**DT24013** 8:13 31:6,22 35:20
**Due** 6:14

**E**

**E** 2:1,1 3:1
**e-mail** 41:21 43:12
**earlier** 41:1
**easier** 7:12
**eastbound** 6:10 6:18 8:13,14,15
**eight-hour** 15:3
**either** 12:23,23 13:15 30:21 41:11
**elude** 30:10,13,20 32:2,14
**eluded** 34:10
**eludes** 30:20
**eluding** 7:2,5 19:13 29:4 30:6 31:23 35:6,8 36:20
**en** 10:17
**enforcement** 19:24 20:7 40:21
**enter** 15:1,15 20:10
**entered** 6:24 11:11
**entering** 38:15
**entitled** 20:20
**equipped** 18:18
**especially** 20:19
**essentially** 14:23 15:4
**estimation** 17:20
**evening** 37:10,15
**everybody** 32:11 41:14,16
**evidence** 4:18,24 5:1 7:11,21 11:4,12,19 15:16,22 17:5 21:19 29:15 30:2 31:3,7,24 32:13 33:1,12 34:7,8,14,15 35:11 36:18 37:11,12,14,19 37:20,21,22
**Examination** 3:4 3:8 12:7 22:14
**examined** 12:5 22:12
**excess** 36:4
**exhibit** 3:15,16 3:17,18,19,20 3:21,22,23,23 8:5,6,7,8,10 9:3 9:5,13,14,20,21 10:6,9,21,23 11:18 13:24 14:1 15:21 21:8 21:12 37:6
**exhibits** 3:14 11:11,17 21:5,9 21:20 43:24 44:1
**extension** 40:16
**extinguishes** 30:19
**eyes** 36:6

**F**

**facially** 32:9
**fact** 31:21,24 32:2 38:6
**fails** 30:17
**familiar** 12:17 33:8
**far** 41:5
**Farrow** 9:24
**favor** 33:23
**feather** 34:8
**February** 1:11
**felonious** 20:5
**felony** 7:1 19:12
**field** 13:17
**file** 25:1,3
**final** 39:23,24 40:6
**finally** 33:13
**find** 33:22
**finding** 38:15
**fine** 17:13
**fined** 33:21
**first** 7:13 22:18 22:22 23:1
**five** 16:20 17:24 18:1 42:4,6
**fixed** 12:23,24 13:4,8,14,15
**flee** 6:10
**fleeing** 7:1,4 19:13 29:4 30:9 30:12 35:5,8 36:19
**flees** 30:20
**follows** 12:6 22:13
**Ford** 18:16
**foregoing** 45:9
**found** 33:15
**foundation** 36:23
**four** 12:13 17:24 18:1
**Frank** 9:18 41:24
**frequently** 37:3
**Friday** 1:11
**further** 7:6
**future** 36:17

**G**

**generally** 18:6,9 19:7
**getting** 43:15
**girl** 23:17
**girlfriend's** 23:18
**give** 12:20 13:1 17:20 23:9 24:16 39:18 41:5,14

FILED DATE: 9/20/2024 9:36 AM 20244002591




**given** 5:16 30:15
**gives** 26:16,16 33:14
**giving** 35:17,22
**go** 5:2,7 10:12 14:24 15:2 27:1 27:6,6 31:8 32:5 41:4,5
**goes** 23:18 26:19 28:16,19
**going** 4:18,18 8:1 10:13 13:22 14:18 16:11 17:1 21:24 22:24 23:1 24:5 28:2,3 30:6,21 32:11 34:24 35:2 39:11,17 39:20 40:8 41:3 41:3 43:23,24
**gonna** 20:1,7 27:4
**good** 39:3 43:7 45:4,15
**gotta** 14:24
**grab** 20:2
**group** 5:13
**guess** 32:22 33:6
**guys** 42:11

**H**

**Hang** 26:2
**happen** 18:13
**happened** 25:16
**hear** 32:24
**heard** 37:11,12 37:13
**hearing** 1:10 2:5 17:1 40:10
**HEARINGS** 1:1
**high** 6:10 36:3
**hold** 7:4 35:2 41:3 43:23
**home** 33:3
**Honor** 5:8,13 7:7 8:9 11:5,11 17:3 21:3,19 28:1,6 29:14,16 29:24 31:2,18 32:17 34:6 38:17 39:20 42:3
**hour** 6:2,2,13 35:21,22 36:5 36:10
**hours** 5:22
**house** 23:18 24:16 29:9

**I**

**id** 3:15,16,17,18 3:19,20,21,22 9:24
**idea** 39:3
**identification** 8:11 9:6,15,22 10:10,24 14:2
**identify** 14:7
**ILIR** 3:4 12:3
**Illinois** 1:1 5:24 34:17 45:6
**illuminating** 6:8 36:1
**impound** 19:5,8 33:15
**impounded** 19:19
**impoundment** 30:11
**impression** 26:15
**imputing** 20:16
**inaudible** 7:18,23 8:12,15,18,22 9:7,17,23 10:4 10:11 11:2 25:18
**incident** 25:2 26:6
**increases** 30:18
**incriminating** 31:7
**indicated** 31:10
**indicates** 32:1
**information** 20:16
**initiate** 35:23
**intersection** 13:1
**intersections** 14:12
**introduce** 12:9 13:24
**investigation** 11:8 18:5
**investigations** 12:11 15:12 17:22 18:6
**involved** 20:20
**involves** 30:23
**issue** 4:12 35:3 36:11,15 38:20 39:6 41:6,13,18 42:2 43:1,8 44:1
**issues** 32:9 43:15
**ITE** 6:15,24

**J**

**Jequan** 9:24
**job** 19:4 43:20
**judgment** 39:23 39:24 40:6
**judicial** 40:4
**jurisdiction** 38:9 38:13 43:4

**K**

**keys** 24:18
**kick** 40:16
**kind** 13:8,8 18:13 31:17
**kinds** 13:7
**know** 17:14 18:13 20:6,7 25:5 32:8,23 34:20 40:24 42:22
**knowledge** 18:17 24:20 25:9

**L**

**L-a-f** 41:24
**Lafata** 2:4 4:1,4 4:11,16 5:5,9 7:15,20,24 8:5 9:3 11:1,6,13 11:15 15:17,19 17:7,10 18:1,3 21:4,11,14,17 21:20 22:2 23:16,20,22 24:1,4,8,11,13 26:2,7,12,21 27:2,5,23 28:2 28:8,15,22 29:13,15,17,19 29:21 32:5 34:2 34:24 38:18,24 39:2,10,14,17 40:3,6,12,14,18 41:2,8,12,18,22 41:23 42:6,8,11 42:15,17,20,23 43:1,7,15,19,23
**lane** 13:16,16
**lanes** 13:17
**law** 19:24 20:7
**law.com** 41:24
**LEADS** 7:1,2 20:3,11,17 34:21 36:16
**left** 7:18 27:16
**legally** 26:14
**length** 42:12
**let's** 5:18 14:17 39:3 41:12
**license** 12:17,22 13:11,20 14:17 15:8 16:7 31:5 31:22 34:10 35:20 37:7,7 45:16
**light** 6:19
**lights** 6:9 30:19 31:11 36:1
**limit** 36:10 42:4
**limited** 43:1
**listed** 16:7
**little** 35:3 41:1
**live** 23:12 35:5
**located** 7:3
**location** 16:9,11
**lock** 27:17
**long** 12:12,14 19:7
**longer** 42:9
**look** 38:2,2,5,6 39:4
**looks** 4:11 10:1
**lot** 13:2

**M**

**Madison** 6:5,10 6:12,17,18,20 6:21 8:13,14,16 8:17 16:19 36:4
**mail** 25:12 43:9 43:11
**mailing** 43:10
**main** 8:3 9:1,12 9:20 10:7,20
**making** 19:20
**March** 40:11,12 40:13,17,19 41:14,16,19 42:1,2 43:8
**marked** 8:2,6,11 9:6,15,22 10:10 10:24 11:17 14:2 15:20
**match** 37:7
**matter** 1:10 42:12
**Maywood** 1:1,3 2:9 4:8 5:14 6:8 11:8 12:10,15 19:2,22 20:15 26:17,18,20,22 26:23,24 27:12 27:14,20,22 30:4 31:16 33:14,19 34:20 37:2 38:3,21 43:2
**mean** 14:14 19:16 20:5

FILED DATE: 9/20/2024 9:36 AM 20244002591




28:20 32:22
**MEGAN** 2:4
**Melrose** 6:23 8:20 10:1
**met** 32:16 35:9 37:17
**Michael** 2:10 4:9
**microphone** 7:14 22:5
**mile** 6:2 35:22
**miles** 6:1,12 35:21,21 36:5 36:10
**mistake** 21:14
**mobile** 13:3
**modified** 5:19
**moment** 41:5
**Monday** 40:9
**Mondays** 40:9
**money** 28:12
**morning** 16:6
**motion** 13:18,20 42:9
**motor** 30:8,14 31:4
**mounted** 12:24

**N**

**N** 2:1 3:1
**name** 4:5 11:6 14:15 22:16,18 22:18,22,23
**names** 22:21
**narrative** 5:17,20
**necessarily** 34:14
**necessary** 39:12
**need** 7:12 38:6 39:5,16,19
**needs** 30:1 34:15
**neighboring** 38:13
**nice** 43:20
**North** 6:22
**northbound** 6:2 13:16
**Nos** 3:23 8:10 11:18
**notably** 31:4
**note** 37:5
**notes** 45:10
**November** 5:19 5:21 18:14 23:2 24:24 25:4,7
**number** 10:22
**numerous** 33:17
**Nunez** 5:23 18:14

**O**

**obey** 30:18
**object** 41:9,10
**objected** 36:24
**objection** 7:15,20 11:13,14 15:16 15:18 20:12 21:21 23:13,22 25:19 26:7 27:18 28:2,3,14 35:12 36:22
**objections** 15:17
**observed** 5:23 35:19
**occur** 33:5
**occurred** 25:4 30:4 32:16 33:7 33:18
**offense** 29:7,10 30:9,12 36:19
**offenses** 10:3
**officer** 2:6 5:22 5:23 6:4,6,15 12:13 15:16,24 17:2 18:9,14 19:1,18 20:4,6 20:10,18,18,19 22:5 29:4 30:6 30:10,11,13,16 30:21 31:10 32:19,20,21 35:19,23 36:14 36:15
**officer's** 35:6
**officers** 25:10
**official** 30:24
**Oh** 7:19 11:10
16:14 19:15 27:24
**okay** 5:3,4,9 7:16 7:24 10:19,22 11:15 12:12,14 12:20 13:7,11 13:19,22 14:11 14:20 15:4,11 15:14,19 16:7 16:13 17:10 18:3 21:1,11,11 21:17,20 22:2 23:24 24:7,9,10 24:12 25:20 26:21 27:23 29:1 40:9,12,14 41:12 42:7 43:7 43:19
**once** 4:23 13:19
**ones** 13:3,14,15
**online** 14:24
**opening** 3:2 5:7 5:10
**operates** 33:9
**operator** 30:14 30:16
**opportunity** 4:21
**opposed** 40:23
**opposing** 5:17 13:23
**ordinance** 26:16 28:17
**ordinances** 33:17
**outside** 26:5,6,18 33:18
**Overruled** 23:16

**P**

**P** 2:1,1
**page** 42:4,12,16 42:22
**PAGE:LINE** 3:14
**pages** 42:5,5,6,15 42:17,23,24
**paid** 33:24
**Park** 6:23 8:20
10:1
**part** 28:7
**particular** 32:1
**passing** 13:6
**patrol** 18:9 19:1
**pause** 23:23
**Pavesich** 45:4,15
**pay** 28:12,23
**peace** 30:10,16
**pending** 10:2
**people** 23:12
**percent** 34:7
**person** 34:16 35:15
**Photo** 9:24
**picture** 33:6
**piece** 33:12 34:15
**place** 4:12 35:16 40:7
**placed** 7:6 13:15
**placing** 36:16
**Plaintiff** 1:4
**plate** 8:19 12:22 13:12,20 14:17 15:8 16:7 31:6 31:22 34:10 35:20 37:7,8
**plates** 12:17 13:5
**play** 7:11
**playing** 8:12 9:7 9:16,23 10:11 11:2
**please** 11:6 12:9 14:4,7 15:24 16:1 22:16
**point** 31:2 37:21 37:24
**pole** 12:24
**police** 3:15 5:15 7:20 8:6 11:8 12:11,13 21:8 25:1,3,10 26:4 27:11,12,13,14 29:4 30:6,10,13 30:21 31:6,20 31:23 32:2,14 32:18,20,21
33:6 34:8,9,11 34:20 35:13,13 35:15,18
**policy** 20:15
**populate** 14:18
**portions** 30:7
**position** 31:14
**prefer** 42:19
**preponderance** 4:17 30:1 34:7 35:10 37:19
**present** 2:3 5:1
**presented** 31:24 32:13,19 33:5
**presenting** 4:24 17:4
**preservation** 38:22
**pretty** 40:22 42:18
**prior** 18:24
**probable** 35:23
**probably** 39:2
**problem** 17:16
**proceedings** 1:9 44:4 45:8
**process** 20:9
**produce** 5:12
**produced** 15:4 31:3
**program** 14:8,13 14:15
**proper** 32:3 34:23
**prove** 30:1 32:15 32:15
**provide** 43:9
**provided** 7:9 37:20
**pursuant** 19:4 35:7 38:10
**pursuit** 6:16
**put** 7:14 20:3 31:11 34:21 37:23 39:23 40:7
**Putting** 31:15

FILED DATE: 9/20/2024 9:36 AM 20244002591




**Q**

**question** 16:14 19:18 20:13,13 24:5,5 28:9 35:19 36:14 38:1
**questions** 17:8 21:2 24:15 27:6 29:13
**Quincy** 16:12,18
**quite** 37:3

**R**

**R** 2:1
**Radio** 3:16,17,18 3:19,20,21
**rate** 6:10 36:3,9
**reached** 6:12 25:10 36:5
**reaching** 36:4
**read** 5:14 8:1 16:1 30:7,22 31:1
**reader** 3:22 21:13 34:13
**readers** 12:22 13:12 15:8
**really** 17:17 20:24
**reasonable** 34:16 35:15
**rebuttal** 3:12 34:3,4
**received** 11:18 15:21
**reckless** 6:14
**recognize** 14:4
**record** 4:6 5:14 7:12 9:4 21:8 22:17 28:6 33:10 38:22 42:4
**recorded** 1:9 33:1 45:7
**recording** 3:16 3:17,18,19,20 3:21 8:2
**recordings** 7:8 21:10
**refer** 5:13
**referred** 34:22
**refund** 33:23
**refuses** 30:18
**regarding** 24:4
**registered** 6:22
**registration** 5:24 35:20
**regularly** 15:7
**related** 31:18
**relates** 20:16
**relation** 16:18
**relayed** 35:18
**relevance** 23:13 25:21 27:18 28:14 38:7
**relevant** 26:6 30:22 35:14 37:4 38:8 44:1
**reliable** 35:14 37:5
**rely** 15:11 34:16 35:15
**remind** 34:13 40:20
**replies** 39:8,11
**report** 1:5 3:15 5:15,16,18 7:21 8:6 15:15 16:2 21:8 25:1,3 31:6,20 32:18 33:6 34:9 35:13 35:13,15,18 36:24 37:7
**reported** 45:7
**Reporter** 45:5
**REPORTER'S** 45:1
**reports** 34:8
**represent** 31:7
**require** 39:11
**requires** 31:17
**research** 35:3 38:11 44:2
**reserve** 17:5
**Respondent** 1:7 4:13 37:12,21 37:22
**responding** 5:22 6:4,6,14
**response** 41:15
**responses** 39:9,12
**rest** 4:24 21:5,18 29:19 31:1
**rests** 21:22
**review** 7:10 20:9 40:5
**reviewed** 40:7
**right** 4:1,4,11,16 5:2,5,6 16:3 17:3,7,13 19:12 21:4,14 23:3 24:3,11 26:20 26:22 27:2 29:15,17 31:15 34:2,24 35:1 38:24 39:24 40:18 41:2,12 42:15,20,24 43:8,19
**route** 10:17
**rule** 24:1 40:1
**rules** 7:23 34:14
**ruling** 35:2 41:4 41:18 42:2 43:8

**S**

**S** 2:1
**s-e-r-v-i-c-e** 41:23
**safety** 20:4
**save** 32:11
**says** 5:20 30:8 31:4 33:13 34:9
**schedule** 40:24
**school** 23:19
**search** 14:16
**searching** 14:17
**second** 23:20 26:2 38:2
**section** 30:22 31:1
**sedan** 18:16
**see** 5:18
**seen** 6:20
**sees** 36:8
**seizure** 30:11
**send** 43:11
**sent** 43:11
**service** 41:23
**service@lafata...** 43:14
**seven** 42:5
**Shemitraku** 3:4 11:7 12:3,10
**shift** 37:23
**short** 38:19 39:6
**shorthand** 45:5,7 45:10
**show** 13:22 27:14
**showed** 27:15
**shown** 13:23
**side** 39:7
**sign** 6:11 36:3
**signal** 30:15
**simply** 38:22
**Sir** 25:24
**sirens** 6:9 36:2
**six** 16:20
**software** 14:22
**son** 23:14
**sorry** 5:12 11:1 11:10,20 15:24 21:6 27:24,24 39:14
**south** 16:21
**southbound** 6:20 13:16 16:22
**SPEAKER** 7:14 7:18 40:10,17
**specific** 24:4
**sped** 31:13
**speed** 6:10 30:19 36:3,10
**speeds** 6:12 36:4 36:5
**spell** 22:20,20
**squad** 13:4,9 17:17
**standing** 22:5,6
**star** 5:23 6:8 8:3 9:1,12,19 10:7 10:20 11:7 12:10
**start** 4:19 8:4
**state** 4:5 11:6 22:16 45:6
**stated** 32:22
**Statement** 3:2 5:10
**station** 10:14,17
**statute** 33:13 35:5
**stop** 6:7,11 30:17 35:24 36:3,12
**stopped** 25:6
**street** 20:19
**stricken** 28:4,7,9
**subject** 26:12 30:11
**submit** 5:12 39:6 41:20,22,22
**submitted** 32:18 37:22 42:1
**sufficient** 33:10
**summary** 5:21 12:21
**supervisor** 20:23
**sure** 16:16 21:7 38:23 42:14 43:9,16
**sustained** 26:8 28:3,15
**system** 20:17 33:9 34:12 36:22,23 37:2

**T**

**table** 43:5
**take** 38:1,2 39:3
**taken** 16:10 45:10
**talk** 42:13
**ten** 12:13,16 42:15,17,19,23 42:24

FILED DATE: 9/20/2024 9:36 AM 20244002591




**tender** 17:1 43:24
**terminating** 6:16 8:16,17
**territory** 33:15
**test** 32:21
**testified** 12:6 22:13 33:2
**testify** 24:2
**testimony** 23:23 32:20
**thank** 11:20 16:13,24 17:14 21:18 24:12 28:10 29:12 32:4,8 34:23 43:13,19,21,22 44:3
**things** 34:21 35:1
**think** 10:21 19:24 26:14,22,24 32:16 36:11 39:12 42:8
**third-party** 15:5
**Thomas** 6:1 41:24
**time** 5:18 8:4 25:17 27:8 32:11 33:7 35:16 36:17 38:2 39:5,18 41:14
**times** 26:5
**today** 17:15 35:4 38:15 43:20
**told** 27:19
**Tom** 16:8
**tow** 4:12,14 26:4 26:13,17,20,23 27:3,20 28:24 29:24 30:3,4 31:15 32:2,4 34:11,23 35:7 38:4,12 43:2
**towed** 7:3 26:11 27:22 33:21 36:16
**towing** 38:21,21
**town** 14:10 26:10
**towns** 20:4
**track** 13:2
**traffic** 6:6 9:9 30:24 31:9,12 35:23 36:7
**training** 15:3,3
**transcript** 1:9 45:9
**transporting** 10:13
**traveled** 36:9
**traveling** 35:21
**trial** 40:13
**true** 45:9
**truthfulness** 33:11
**try** 24:15
**trying** 42:14
**two** 13:7 19:10 22:24 30:23 31:8 36:7 39:19
**type** 38:8

**U**

**underscore** 8:3,3 9:1,1,12,12,19 9:20 10:7,7,20 10:20
**understand** 28:22
**understood** 29:1
**unit** 6:8 12:11 17:23 18:15
**unmarked** 17:23
**unrelated** 32:20 32:21
**USD** 7:5
**use** 13:11 14:8 15:2,7,7 17:22
**usually** 17:22,23 23:15,18 40:21
**utility** 5:24 8:21

**V**

**V** 7:2
**valid** 8:19 9:23
**Van** 6:3
**vehicle** 3:22 6:5,7 6:9,11,18,20,22 6:24 7:1,3,6 14:16 15:7,15 18:10,11,13 19:8,19 20:2,5 20:8 21:13 23:5 23:11 24:17,18 24:21 26:5,10 26:17 27:17,20 28:13,17,23 30:3,8,14,17 31:3,4,5,8,11 31:15,18,22 32:1,14 33:15 33:20 34:1,10 34:12 35:7,19 36:2,2,6,9,13 36:16,18 37:6,8 37:10,13,14 38:4,13 43:3
**vehicles** 19:5 32:22
**verbose** 42:18
**Victor** 7:2
**video** 33:1
**view** 13:18
**Vigilant** 14:9,13 14:16 36:21
**vigilante** 33:9
**Village** 1:1,3 2:8 4:8,19,23 5:6 12:15 19:2,22 20:15 21:22 25:14 26:17,23 26:24 30:1,2,4 31:2 32:3 33:14 33:18 35:9 37:2 37:17,17 38:3
**Village's** 4:17 31:14
**violated** 33:16
**violation** 35:7
**visual** 30:15

**W**

**W-i-n-f-r-e-y** 22:23
**W-i-n-t-e-r-e-g-g** 4:8
**wanna** 17:14
**want** 8:22 20:11 21:7 22:4 34:13 35:2 38:14 39:22 40:1,20 40:24 41:4,5 42:11,21 43:5 44:2
**wanted** 20:8
**wants** 20:20
**wasn't** 25:3,4 27:15
**way** 39:1
**we'll** 5:2
**we're** 14:17 26:13 28:23 40:8,9 42:4,14 43:7
**weapons** 10:2
**website** 15:1
**week** 19:9 39:13 39:15,21
**weeks** 19:10 39:20
**went** 31:11
**willfully** 30:17
**window** 40:4
**Winfrey** 1:6 2:12 3:7 4:2,10 8:20 22:1,10,19,22 22:24 26:1 29:3 33:2
**Winteregg** 2:7 3:2,5,10,12 4:3 4:7,7 5:4,6,11 7:16,19 8:1,8 8:24 9:11,19 10:6,19 11:4,10 11:20 12:8 14:3 15:14,23 16:24 20:12 21:2,6,12 21:15,18 23:13 25:19,21,24 26:3,19 27:18 28:5,10,14,19 29:14,23 34:5 38:17,19 39:1 39:16,19 40:19 41:10 42:3,7,13 42:16,21,24 43:13,21 44:3
**witness** 11:5,7 12:5 17:4 18:2 22:12 23:14,17 23:21,24 24:3,7 24:10 25:20,23 27:19
**witnessed** 32:19
**witnesses** 4:20,22 21:23
**work** 12:21 18:20
**worked** 12:14
**working** 18:19 20:19
**works** 23:21 36:24
**wouldn't** 39:24 41:9
**wrong** 21:16

**X**

**X** 3:1

**Y**

**Yeah** 9:10 11:1 42:18
**year** 19:10,11
**years** 12:13,16
**yep** 21:11

**Z**

**zone** 6:2 35:22

**0**

**0231** 5:22
**05:10** 3:2
**07** 8:2
**08:10** 3:15,16
**084-003483** 45:16
**09** 8:24

FILED DATE: 9/20/2024 9:36 AM 20244002591


**09:05** 3:17
**09:14** 3:18
**09:21** 3:19

**1**

**1** 3:15 8:7,8,10 21:5,6,7,8,20
**1-7** 3:23 11:18
**1,000** 7:5
**10-4** 8:14,17,18 8:22,23 9:8,10 10:5,16,18
**10:09** 3:20
**10:23** 3:21
**11-5** 16:5
**11:00** 41:1
**11:17** 3:23
**12** 9:11
**12:07** 3:4
**122** 18:15
**122's** 6:9
**12th** 6:11 36:4
**14** 9:19 14:9
**14:01** 3:22
**15** 14:9
**15:20** 3:23
**15th** 40:17,19 41:16,19 42:2 43:8
**16** 10:6
**17** 10:19
**17:11** 3:5
**17th** 6:2,5 8:13 8:14
**1977** 6:22
**19th** 6:23
**1st** 6:20 16:11,17 16:18 40:11,12 40:13 41:14 42:1

**2**

**2** 3:16 6:23 8:5 8:10 11:11 21:9
**2:31** 16:5
**2019** 5:23 8:20
**2023** 5:19,21 16:5 18:14 23:4 24:24
**2023115023217** 9:2
**2023115023921** 9:12
**2023115024012** 9:20
**2023115024750** 10:8
**2023115025118** 10:21
**202311523054** 8:3
**2024** 1:11
**21** 36:10
**21st** 25:6,8,16 27:10
**22:14** 3:8
**23-21461** 4:4
**23-21561** 1:5
**23I7551** 7:2
**24013** 6:1 16:8
**247** 10:15
**25** 36:9
**251** 11:3
**27** 8:21 9:16
**29:22** 3:10
**2nd** 1:11

**3**

**3** 3:17 9:3,5
**30** 6:2 35:22
**315** 11:8 12:10
**32:06** 3:11
**327** 5:23
**34:04** 3:12

**4**

**4** 3:18 9:13,14 30:23
**45** 6:1 35:21,21

**5**

**5** 3:19 9:20,21
**50** 34:7
**5th** 5:21 6:19 18:14 23:2 24:24 25:4,7

**6**

**6** 3:20 10:6,9
**6004600220224...** 9:18
**60160** 6:23
**6th** 5:19

**7**

**7** 3:21 10:21,23 11:11 21:9
**70** 42:22
**7th** 6:16 8:16,17

**8**

**8** 3:22,23 13:24 14:1 15:21 21:7 21:12,20 37:6
**80** 6:12 36:5

**9**

**9** 21:5,6
**99** 10:2
**99.62(a)** 30:5

**IN THE CIRCUIT COURT OF COOK COUNTY ILLINOIS MUNICIPAL DEPARTMENT DISTRICT 4**

**Plaintiff V Defendant**: Derrick Winfrey-vs-Village of Maywood

Courtroom, 0112

20244002591

**PLAINTIFF's ATTY**: Ho, Lam 6337050

**ADDITIONAL NAMES**

**COMPLAINT FILED, SUMMONS ISSUED, RETURNABLE TO CLERK OF THE CIRCUIT COURT**
04/19/2024

| **CONTRACT** | **FILING FEE** | **ADDENDUM** |
|---|---|---|
| Administrative Review - Ordinance Violation | 0.0000 | |

| DATE | JUDGE | ORDERS ENTERED |
|---|---|---|
| | | π A/C Δ A/C |
| Judge Patricia S. Spratt-2171 | SEP 24 2024 | Δ 21 DAYS TO RESPOND TO MT RECONSIDER |
| | | π REPLY 21 DAYS; 14 DAYS RESPOND; |
| | | STATUS 11/12/24 @ 9:30 OFF |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**FOURTH MUNICIPAL DISTRICT – CIVIL DIVISION**

**DERRICK WINFREY,**

**Plaintiff,**

**v.**

**VILLAGE OF MAYWOOD, a Municipal Corporation,**

**Defendant.**

**Case No. 2024 400 2591**

**ORDER**

This matter coming before the Court on Defendant, Village of Maywood's, Motion to Clarify and/or Reconsider the August 22, 2024 Non-Final Opinion, counsel for the Parties present via Zoom, and the Court advised on the premises, it is hereby ordered that:

1) Plaintiff shall file his response to the Defendant's Motion to Clarify and/or Reconsider the August 22, 2024 Non-Final Opinion on or before October 15, 2024.
2) Defendant shall file its reply in support of the Defendant's Motion to Clarify and/or Reconsider the August 22, 2024 Non-Final Opinion on or before October 29, 2024.
3) The above motion is set for status on November 12, 2024, at 9:30 a.m. via Zoom: Meeting ID=914 3462 0283; Password=988648.

ENTERED
Judge Patricia Spratt #2146
JAN 24 2024
IRIS Y. MARTINEZ
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

ENTER: Patricia S. Spratt

DATE:____________________

Order prepared by:

Kaylee M. Hartman
Klein, Thorpe and Jenkins, Ltd.
120 South LaSalle Street, Suite 1710
Chicago, Illinois 60603
(312) 984-6400
Firm No. 90446
kmhartman@ktjlaw.com

Filer Selected Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Courtroom, 0112
System Generated Hearing Date: <<CmsHearingStart>>
Location: <<CmsHearingResource="Location">>
Judge: <<CmsHearingResource="JudicialOfficer">>

FILED
11/6/2024 8:47 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
20244002591
Courtroom, 0112
30083103

FILED DATE: 11/6/2024 8:47 AM 20244002591

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**FOURTH MUNICIPAL DISTRICT - CIVIL DIVISION**

| | | |
|---|---|---|
| **DERRICK WINFREY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.: 2024 400 2591** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **VILLAGE OF MAYWOOD, a Municipal Corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**NOTICE OF MOTION**

TO: Mike Drake
Natalie Lundak
Beyond Legal Aid
17 N. State St., Suite 1380
Chicago, IL 60602
mdrake1@beyondlegalaid.org
nlundak@beyondlegalaid.org

PLEASE TAKE NOTICE that on **November 12, 2024** at **9:30 a.m.,** or as soon thereafter as counsel may be heard, we shall appear **Via Zoom** before the Honorable Carl Laura Evans, or anyone sitting in her stead, in Court Room 112, of the Cook County Circuit Court located at 1500 Maywood Drive, Maywood, Illinois, and present **Joint Motion to Clarify,** a true and correct copy of which is attached hereto and hereby served upon you.

(Zoom Id: 914 3462 0283; Password: 988648)

KLEIN, THORPE AND JENKINS, LTD.

By: /s/Kaylee Hartman
One of their attorneys

Allen Wall (jawall@ktjlaw.com)
Kaylee M. Hartman (kmhartman@ktjlaw.com)
KLEIN, THORPE & JENKINS, LTD.
120 S. LaSalle Street, Suite 1710
Chicago, Illinois 60602
(312) 984-6400
Attorney No. 90446

FILED DATE: 11/6/2024 8:47 AM 20244002591

## CERTIFICATE OF SERVICE

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies as true and correct, that she served this Motion and Notice of Motion, upon the parties of record by the Court's EFSP, Odyssey eFileIL on November 6, 2024.

By: /s/ Kaylee M. Hartman.
One of their attorneys

Filer Selected Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Courtroom, 0112
System Generated Hearing Date: <<CmsHearingStart>>
Location: <<CmsHearingResource="Location">>
Judge: <<CmsHearingResource="JudicialOfficer">>

FILED
11/6/2024 8:47 AM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
20244002591
Courtroom, 0112
30083103

FILED DATE: 11/6/2024 8:47 AM 20244002591

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**FOURTH MUNICIPAL DISTRICT – CIVIL DIVISION**

| | | |
|---|---|---|
| **DERRICK WINFREY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 2024 400 2591** |
| **v.** | ) | |
| **VILLAGE OF MAYWOOD, a Municipal Corporation,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**JOINT MOTION TO CLARIFY**

NOW COME the Parties, by and through Counsel, and jointly move this Honorable Court to clarify its order from August 22, 2024. In support of such, they state the following:

1. Plaintiff initiated this matter on April 19, 2024.

2. Plaintiff seeks judicial review of an administrative judgment, pursuant to Illinois Administrative Review Law (735 ILCS 5/3-101 *et seq.*) The hearing for which Plaintiff seeks review occurred on February 2, 2024 before the Village of Maywood's Administrative Hearing Officer.

3. Defendant filed its motion to dismiss the Complaint on May 31, 2024.

4. On August 22, after briefing, this Court denied the motion as premature and remanded the cause for a new hearing on Plaintiff's constitutional claims.

5. The August 22 Order, attached hereto as **Exhibit A**, notes that the administrative record record is incomplete as to factual findings and the application of Maywood Village Code § 99.26.

6. Defendant filed a motion to reconsider the August 22 Order on September 20, 2024.

7. Defendant presented that motion on September 24, 2024.

8. After presentment, counsel for the parties had a discussion wherein they agreed that a

FILED DATE: 11/6/2024 8:47 AM 20244002591

new factual hearing would be unlikely to illicit additional useful facts not contained in the record – nor additional facts not available at the time of the February 2, 2024 hearing.

9. Counsel for the parties agree that the facts currently in the administrative record are sufficient for any factual findings the Administrative Hearing Officer may choose to make upon remand.

10. The parties agree that a hearing on remand should be limited in scope to permit Plaintiff's counsel to state the as-applied challenges raised in Count I and III before the Administrative Hearing Officer.

11. The Administrative Hearing Officer previously considered and ruled on Plaintiff's as-applied challenge raised in Count V.

12. Plaintiff intends to amend the Complaint to remove Counts VI and VII, and therefore does not intend to raise such arguments before the Administrative Hearing Officer.

13. To ensure a clear, direct, hearing on remand, counsel for the parties have agreed upon the legal questions to be presented, which are stated in the attached recommended, agreed order.

14. A recommended, agreed order is attached to this motion.

WHEREFORE, the parties request that this Honorable Court enter an order stating the scope of a hearing on remand, which states the legal questions to be presented and directs the Administrative Hearing Officer to make any such factual findings as necessary based on the administrative record.

Respectfully submitted,

*<u>/s/ Michael Drake</u>*
Counsel for Plaintiff

Counsel for Defendant

FILED DATE: 11/6/2024 8:47 AM 20244002591

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**FOURTH MUNICIPAL DISTRICT – CIVIL DIVISION**

| | | |
|---|---|---|
| **DERRICK WINFREY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 2024 400 2591** |
| **v.** | ) | |
| **VILLAGE OF MAYWOOD, a Municipal Corporation,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**AGREED ORDER**

Plaintiff Derrick Winfrey brought this action seeking judicial administrative judgment from Defendant Village of Maywood pursuant to 735 ILCS 5/3-103. The Administrative Law Judge found Plaintiff Derrick Winfrey liable for towing and storage charges pursuant to Maywood Village Ordinance § 99.26. Plaintiff claims various "as applied" and facial challenges to the constitutionality of Ordinance § 99.26. On August 22, 2024, this Court entered an order dismissing Defendant's Motion to Dismiss as premature and remanding the cause for a new hearing on Plaintiff's constitutional claims.

The Parties now present a Joint Motion to Clarify, counsel for the Parties present via Zoom, and the Court advised on the premises, the Court orders the following:

1. Under Administrative Review Law, this Court has the power to, "remand the decision in whole or in part, and, in that case, to state the questions requiring further hearing or proceedings and to give such other instructions as may be proper." 735 ILCS 5/3-111(a)(6).

2. The Court remands the matter for further hearing pursuant to 735 ILCS 5/3-111(a)(6).

3. The hearing on remand shall not require nor allow the taking of any new evidence.

4. The hearing on remand shall consider the following legal questions:

    a. Was Plaintiff denied due process throughout the administrative proceedings, as constitutionally required by the Illinois Constitution, article I, section 2?
    b. Did the Defendant illegally seize Plaintiff's vehicle, in violation of the Illinois Constitution, article I, section 6?

5. On remand, the evidence shall be limited to the current administrative record, which consists of:

    a. The transcript of the February 2, 2024 hearing;



**EXHIBIT A**

FILED DATE: 11/6/2024 8:47 AM 20244002591

b. Exhibits Number 1 through 8, as admitted at the February 2, 2024 hearing;
c. Respondent's Brief in Support of Dismissal, submitted to the administrative body;
d. Petitioner's Brief in Support of Denying Respondent's Towing Request, submitted to the administrative body;
e. Village Resolution No. R-2022-53, as attached to Petitioner's Brief; and
f. The Order of the Administrative Hearing Officer, entered March 15, 2024

6. The Administrative Hearing Officer may make any further factual findings they deem necessary, in their discretion as the Administrative Hearing Officer.

7. Defendant's Motion to Clarify and/or Reconsider this Court's August 22, 2024 Non-Final Opinion, filed on September 20, 2024, is hereby VOLUNTARILY WITHDRAWN upon entry of this Order.

8. Parties are to confer and schedule a date for the hearing on remand.

9. The matter is continued to __________, 2024 at ______ a.m. for status on the hearing and pleadings, via Zoom: Meeting ID=914 3462 0283; Password=988648.

ENTER:______________________

DATE:________________________

Order prepared by:

Kaylee M. Hartman
Klein, Thorpe and Jenkins, Ltd.
120 South LaSalle Street, Suite 1710
Chicago, Illinois 60603
(312) 984-6400
Firm No. 90446
kmhartman@ktjlaw.com

# IN THE CIRCUIT COURT OF COOK COUNTY ILLINOIS MUNICIPAL DEPARTMENT DISTRICT 4

**Plaintiff V Defendant** Derrick Winfrey-vs-Village of Maywood

Courtroom; 0112

20244002591

**PLAINTIFF's ATTY** Ho, Lam 6337050

**ADDITIONAL NAMES**

**COMPLAINT FILED, SUMMONS ISSUED, RETURNABLE TO CLERK OF THE CIRCUIT COURT**
04/19/2024

| CONTRACT | FILING FEE | ADDENDUM |
|---|---|---|
| Administrative Review - Ordinance Violation | 0.0000 | |

| DATE | JUDGE | ORDERS ENTERED |
|---|---|---|
| | | TTAC LC |
| Judge Patricia S. Spratt-2144 | SEP 2 4 2024 | Δ 21 DAYS TO RESPOND TO MT RECONSIDER |
| | | TT REPLY 21 DAYS ; 14 DAYS RESPOND; |
| | | STATUS 11/12/24 @ 9:30 OTF |
| Judge Carl Evans, Jr.-2297 | NOV 1 2 2024 | DANCE |
| | | PAC CF RULING MOTION TO CLAIM 12/17/24 @ 11:30 |
| | | DAIC, HARMON M112 COURTESY COPIES TO J. EVANS ASAP |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**FOURTH MUNICIPAL DISTRICT – CIVIL DIVISION**

| | | |
|---|---|---|
| **DERRICK WINFREY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 2024 400 2591** |
| **v.** | ) | |
| **VILLAGE OF MAYWOOD, a Municipal Corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**AGREED ORDER**

Plaintiff Derrick Winfrey brought this action seeking judicial administrative judgment from Defendant Village of Maywood pursuant to 735 ILCS 5/3-103. The Administrative Law Judge found Plaintiff Derrick Winfrey liable for towing and storage charges pursuant to Maywood Village Ordinance § 99.26. Plaintiff claims various "as applied" and facial challenges to the constitutionality of Ordinance § 99.26. On August 22, 2024, this Court entered an order dismissing Defendant's Motion to Dismiss as premature and remanding the cause for a new hearing on Plaintiff's constitutional claims.

The Parties now present a Joint Motion to Clarify, counsel for the Parties present via Zoom, and the Court advised on the premises, the Court ~~orders~~ CONSIDERS the following:

1. Under Administrative Review Law, this Court has the power to, "remand the decision in whole or in part, and, in that case, to state the questions requiring further hearing or proceedings and to give such other instructions as may be proper." 735 ILCS 5/3-111(a)(6).

2. The Court remands the matter for further hearing pursuant to 735 ILCS 5/3-111(a)(6).

3. The hearing on remand shall not require nor allow the taking of any new evidence.

4. The hearing on remand shall consider the following legal questions:

   a. Was Plaintiff denied due process throughout the administrative proceedings, as constitutionally required by the Illinois Constitution, article I, section 2?
   b. Did the Defendant illegally seize Plaintiff's vehicle, in violation of the Illinois Constitution, article I, section 6?

5. On remand, the evidence shall be limited to the current administrative record, which consists of:

   a. The transcript of the February 2, 2024 hearing;

b. Exhibits Number 1 through 8, as admitted at the February 2, 2024 hearing;
c. Respondent's Brief in Support of Dismissal, submitted to the administrative body;
d. Petitioner's Brief in Support of Denying Respondent's Towing Request, submitted to the administrative body;
e. Village Resolution No. R-2022-53, as attached to Petitioner's Brief; and
f. The Order of the Administrative Hearing Officer, entered March 15, 2024

6. The Administrative Hearing Officer may make any further factual findings they deem necessary, in their discretion as the Administrative Hearing Officer.

7. Defendant's Motion to Clarify and/or Reconsider this Court's August 22, 2024 Non-Final Opinion, filed on September 20, 2024, is hereby VOLUNTARILY WITHDRAWN upon entry of this Order.

8. Parties are to confer and schedule a date for the hearing on remand.

9. The matter is continued to 12/17, 2024 at 11:30 a.m. for ~~status on the hearing~~ and ~~pleadings, via Zoom. Meeting ID=914 3462 0283; Password=988648~~. Ruling on motion to clarify –

10. Village to send courtesy copies to J. Evans by 11/19/24.

ENTER: #2297

DATE: 11/12/24

Order prepared by:

Kaylee M. Hartman
Klein, Thorpe and Jenkins, Ltd.
120 South LaSalle Street, Suite 1710
Chicago, Illinois 60603
(312) 984-6400
Firm No. 90446
kmhartman@ktjlaw.com

ENTERED
Judge Carl Evans, Jr.-2297
NOV 12 2024
IRIS Y. MARTINEZ
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

2025938_1

IN THE CIRCUIT COURT OF COOK COUNTY ILLINOIS MUNICIPAL DEPARTMENT DISTRICT 4

Plaintiff
V
Defendant

Derrick Winfrey-vs-Village of Maywood

Courtroom; 0112

20244002591

PLAINTIFF's ATTY Ho, Lam 6337050

ADDITIONAL NAMES

COMPLAINT FILED, SUMMONS ISSUED, RETURNABLE TO CLERK OF THE CIRCUIT COURT 04/19/2024

| CONTRACT | FILING FEE | ADDENDUM |
|---|---|---|
| Administrative Review - Ordinance Violation | 0.0000 | |

| DATE | JUDGE | ORDERS ENTERED |
|---|---|---|
| | | TTAC L.C |
| Judge Patricia S. Spratt-2144 | SEP 24 2024 | Δ 21 DAYS TO RESPOND TO MT RECONSIDER |
| | | TT REPLY 21 DAYS ; 14 DAYS RESPOND ; |
| | | STATUS 11/12/24 @ 9:30 OTF |
| Judge Carl Evans, Jr.-2297 | NOV 12 2024 | RAC DANCE CF RULING MOTION TO CLARIFY 12/17/24 @ 11:30 |
| | | DAIC/HARMON M112 COURTESY COPIES TO J. EVANS ASAP |
| | | |
| Judge Carl Evans, Jr.-2297 | DEC 17 2024 | AGREED ORDER TO CLARIFY ENTERED - OFF CALL |
| | | |
| | | |
| | | |
| | | |
| | | |

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**FOURTH MUNICIPAL DISTRICT – CIVIL DIVISION**

| | | |
|---|---|---|
| **ERRICK WINFREY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 2024 400 2591** |
| **v.** | ) | |
| **[LLAGE OF MAYWOOD, a Municipal** | ) | |
| **orporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**AGREED ORDER**

Plaintiff Derrick Winfrey brought this action seeking judicial administrative judgment from efendant Village of Maywood pursuant to 735 ILCS 5/3-103. The Administrative Law Judge und Plaintiff Derrick Winfrey liable for towing and storage charges pursuant to Maywood llage Ordinance § 99.26. Plaintiff claims various "as applied" and facial challenges to the nstitutionality of Ordinance § 99.26. On August 22, 2024, this Court entered an order dismissing efendant's Motion to Dismiss as premature and remanding the cause for a new hearing on aintiff's constitutional claims.

The Parties now present a Joint Motion to Clarify, counsel for the Parties present via Zoom, d the Court advised on the premises, the Court orders the following:

1. Under Administrative Review Law, this Court has the power to, "remand the decision in whole or in part, and, in that case, to state the questions requiring further hearing or proceedings and to give such other instructions as may be proper." 735 ILCS 5/3-111(a)(6).

2. The Court remands the matter for further hearing pursuant to 735 ILCS 5/3-111(a)(6).

3. The hearing on remand shall not require nor allow the taking of any new evidence.

4. The hearing on remand shall consider the following legal questions:

    a. Was Plaintiff denied due process throughout the administrative proceedings, as constitutionally required by the Illinois Constitution, article I, section 2?
    b. Did the Defendant illegally seize Plaintiff's vehicle, in violation of the Illinois Constitution, article I, section 6?

5. On remand, the evidence shall be limited to the current administrative record, which consists of:

    a. The transcript of the February 2, 2024 hearing;

b. Exhibits Number 1 through 8, as admitted at the February 2, 2024 hearing;
c. Respondent's Brief in Support of Dismissal, submitted to the administrative body;
d. Petitioner's Brief in Support of Denying Respondent's Towing Request, submitted to the administrative body;
e. Village Resolution No. R-2022-53, as attached to Petitioner's Brief; and
f. The Order of the Administrative Hearing Officer, entered March 15, 2024

6. The Administrative Hearing Officer may make any further factual findings they deem necessary, in their discretion as the Administrative Hearing Officer.

7. Defendant's Motion to Clarify and/or Reconsider this Court's August 22, 2024 Non-Final Opinion, filed on September 20, 2024, is hereby VOLUNTARILY WITHDRAWN upon entry of this Order.

8. Parties are to confer and schedule a date for the hearing on remand.

ENTERED
DEC 17 2024
MARIYANA T. SPYROPOULOS
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

ENTER: 12/17/24

DATE: [signature] #2291

·der prepared by:

ıylee M. Hartman
.ein, Thorpe and Jenkins, Ltd.
.0 South LaSalle Street, Suite 1710
ıicago, Illinois 60603
12) 984-6400
rm No. 90446
ıhartman@ktjlaw.com

Filer Selected Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Courtroom, 0112
System Generated Hearing Date: 11/18/2025 11:00 AM
Location: Court Room 0112
Judge: Evans, Carl Lauras, Jr.

FILED
10/23/2025 11:45 AM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
20244002591
Courtroom, 0112
35024315

FILED DATE: 10/23/2025 11:45 AM 20244002591

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**MUNICIPAL DEPARTMENT – FOURTH DISTRICT**

Derrick Winfrey,
Plaintiff,
v.
Village of Maywood,
Defendant.

Case No.20244002591

**NOTICE OF MOTION**

To:
Kaylee Hartman
Klein, Thorpe, and Jenkins, Ltd.
120 S. LaSalle St., #1710
Chicago, IL 60603

PLEASE TAKE NOTICE that Counsel for Plaintiff, on November 18, 2025, at 11:00 a.m. or as soon afterword as Counsel may be heard, shall appear before the Honorable Judge Evans, or anyone sitting in his stead, and present the attached Motion for Leave to Amend.

PROOF OF SERVICE

Under the penalty of perjury, as provided by the law pursuant to 5/1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that a copy of this notice and motion were submitted to the above parties via Odyssey on October 23, 2025.

/s/ Michael Drake

Michael Drake
Beyond Legal Aid (Firm# 65698)
17 N. State St., Suite 1380
Chicago, Illinois 60602
Phone: (312) 678-3509
Fax: (312) 999-0076
MDrake1@Beyondlegalaid.org

Filer Selected Hearing Date: 11/18/2025 11:00 AM - 11:05 AM
Location: <<CourtRoomNumber>>
Judge: Courtroom, 0112
System Generated Hearing Date: 11/18/2025 11:00 AM
Location: Court Room 0112
Judge: Evans, Carl Lauras, Jr.

FILED
10/23/2025 11:32 AM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
20244002591
Courtroom, 0112
35023828

FILED DATE: 10/23/2025 11:32 AM 20244002591

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**FOURTH MUNICIPAL DISTRICT**

DERRICK WINFREY,

Plaintiff,

v.

VILLAGE OF MAYWOOD,

Defendant.

Case No.: 2024 400 2591

**PLAINTIFF'S MOTION TO AMEND COMPLAINT**

Plaintiff, through Counsel, Beyond Legal Aid, moves this Court for an order allowing amendment of his Complaint pursuant to 735 ILCS 5/2-616. . In support of such, Plaintiff states the following:

**FACTUAL AND PROCEDURAL BACKGROUND**

1. This lawsuit arises out of an attempted traffic stop on November 5, 2023 and a subsequent seizure and detention of Plaintiff on December 21, 2023.
2. Plaintiff initially challenged the seizure of his vehicle under Maywood Vehicular Code ("MVC § 99.26") at an administrative hearing on February 2, 2024.
3. The Administrative Court held for the Defendant but requested additional briefing on Plaintiff's home rule argument.
4. The Administrative Court issued its ruling on March 15, 2024.
5. The Administrative Court found Plaintiff's vehicle to be subject to seizure via towing.
6. Plaintiff filed the initial complaint on April 19, 2024 seeking review under the Administrative Review Law ("ARL").

FILED DATE: 10/23/2025 11:32 AM 20244002591

7. Defendant, Village of Maywood, filed its appearance on May 13, 2024.
8. Defendant moved to strike and dismiss the complaint on May 31, 2024.
9. Plaintiff filed a response in opposition to the motion to dismiss on June 25, 2024.
10. Defendant filed a reply, supporting its motion to dismiss, on July 2, 2024.
11. On August 22, 2024, the court denied Defendant's motion to dismiss, remanding for a hearing on the merits.
12. That order notes that the record is incomplete as to factual findings and the application of Maywood Village Code § 99.26.
13. On September 20, 2024, the Defendant filed a motion to clarify and/or reconsider the August 22, 2024 order.
14. Both parties filed a joint motion to clarify on November 6, 2024.
15. In the joint motion to clarify, Plaintiff noted his intent to strike certain counts from the Complaint.
16. An Agreed Order to schedule a date for an administrative hearing on remand was entered on December 17, 2024.
17. After a subsequent hearing at the administrative court, Plaintiff received a decision on July 31, 2025. A copy of that decision is attached hereto as Exhibit A.
18. Plaintiff now seeks to amend his Complaint, a true and accurate copy of the proposed amended Complaint is attached hereto as Exhibit B.

**STANDARD**

Courts may allow the amendment of complaints at any time before the final judgment, provided terms are just and reasonable. 735 ILCS 5/2-616; *Freedberg v. Ohio Nat. Ins. Co.,* 2012 IL App (1st) 110938.

FILED DATE: 10/23/2025 11:32 AM 20244002591

Permissible methods to amend complaints include changing or adding new causes of action. 735 ILCS 5/2-616. The discretion trial courts have in this area is very broad, but they are encouraged to liberally allow amendments to complaints when they advance the interests of justice. *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273-74 (1992).

**ARGUMENT**

This Court should allow amendment of Plaintiff's Complaint as it is well before a trial. Amendment would not prejudice Defendant Maywood. Further, Plaintiff filed his initial complaint within the statutorily required period pursuant to 735 ILCS 5/3-103. Allowing the amendment of Plaintiff's Complaint would serve the interests of judicial efficiency and combining challenges under the ARL and Section 1983 is permissible under Illinois precedent. E.g., *Peacock v. Board of Trustees of Police Pension Fund*, 395 Ill. App. 3d 644 (1st Dist. 2009); see also *Hofrichter v. City of Chicago Heights*, 2016 IL App (1st) 153106, ¶ 19 ("[E]ven assuming that the Administrative Review Law is applicable to [the plaintiff's] claim, we conclude that he is nevertheless entitled to pursue a claim for relief under sections 1983 and 1985."); *Stykel v. City of Freeport*, 318 Ill. App. 3d 839, 850 (2d Dist. 2001) ("We are persuaded that causes of action for civil rights violations by an administrative agency and other constitutional challenges are not preempted by the Review Law and may be joined with an action for administrative review.").

FILED DATE: 10/23/2025 11:32 AM 20244002591

**WHEREFORE**, the Plaintiff prays this honorable court to allow them to Amend their complaint and grant them leave to do so.

Respectfully submitted,

/s/ *Michael Drake*
*One of Plaintiff's Attorneys*

Michael Drake
Natalie Lundak
Beyond Legal Aid
17 N. State St., #1380
Chicago, Illinois 60602
(312) 678-3508
Mdrake1@beyondlegalaid.org
nlundak@beyondlegalaid.org
65698

Ex. A

FILED DATE: 10/23/2025 11:32 AM 20244002591

IN THE VILLAGE OF MAYWOOD, ILLINOIS
DEPARTMENT OF ADMINISTRATIVE HEARINGS

| | | |
|---|---|---|
| Village of Maywood, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Report No. 23-21561 |
| | ) | |
| Derrick Winfrey | ) | |
| | ) | |
| Respondent. | ) | |

ORDER

This matter having been remanded pursuant to an order entered on December 17, 2024 in the matter Derrick Winfrey v. Village of Maywood, Cook County case no. 2024400259 ("Remand Order"). Pursuant to the Remand Order, a hearing was conducted to determine: (a) was Plaintiff denied due process throughout the administrative proceedings, as constitutionally required by the Illinois Constitution, Article I, Section 2 and (b) did the Village illegally seize the vehicle, in violation of the Illinois Constitution, Article I, Section 6. Further pursuant to the Remand Order, the hearing on remand was limited to the current administrative record. On March 7, 2025, an order was entered requesting the parties submit briefs on the authority of an administrative hearing officer to determine the issues presented by the Remand Order and argument on the issues. The parties submitted briefs, and they have been reviewed.

The powers of a hearing are limited to those specially enumerated in the Illinois Municipal Code. They are (1) hearing testimony and accepting evidence that is relevant to the existence of the code violation; (2) issuing subpoenas directing witnesses to appear and give relevant testimony at the hearing, upon the request of the parties or their representatives; (3) preserving and authenticating the record of the hearing and all exhibits and evidence introduced at the hearing;(4) issuing a determination, based on the evidence presented at the hearing, of whether a code violation exists. The determination shall be in writing and shall include a written finding of fact, decision, and order including the fine, penalty, or action with which the defendant must comply; and (5) imposing penalties consistent with applicable code provisions and assessing costs upon finding a party liable for the charged violation, except, however, that in no event shall the hearing officer have authority to (i) impose a penalty of incarceration, or (ii) impose a fine in excess of $50,000, or at the option of the municipality, such other amount not to exceed the maximum amount established by the Mandatory Arbitration System as prescribed by the Rules of the Illinois Supreme Court from time to time for the judicial circuit in which the municipality is located. The maximum monetary fine under this item (5), shall be exclusive of costs of enforcement or costs imposed to secure compliance with the municipality's ordinances and shall not be applicable to cases to enforce the collection of any tax imposed and collected by the municipality. (65 ILCS5/1-2.1-4)

Both Petitioner and Respondent concede that an administrative hearing officer's authority is limited regarding its ability to determine constitutional issues. Neither party provided any applicable caselaw which would permit this hearing officer to issue an opinion regarding the

FILED DATE: 10/23/2025 11:32 AM 20244002591

conduct of the previous hearing officer and the due process afforded as evidenced by the administrative record. Notwithstanding, the administrative record from the February 2, 2025, hearing is clear that the hearing officer afforded the Respondent the opportunity to present any arguments or present any evidence during the hearing. Further, Respondent never made any objections to the testimony or documents admitted by the Petitioner. Therefore, to the extent that I have the authority to determine if [Respondent] was denied due process throughout the administrative proceedings, as constitutionally required by the Illinois Constitution, Article I, Section 2, I find that he was not.

Similarly, as to the issue of whether the Village illegally seized the vehicle, in violation of the Illinois Constitution, Article I. Section 6, the parties have not provided applicable caselaw which would permit this hearing officer to issue an opinion on the issue. Notwithstanding, the administrative record is clear that the previous hearing officer found that towing of respondent's vehicle was lawful and authorized. Therefore, to the extent that I have the authority to determine the Village illegally seized the Respondent's vehicle, in violation of the Illinois Constitution, article I. section 6, I find that the Village did not.

Entered July 31, 2025

Administrative Hearing Officer Thomas J. Condon, Jr.

Ex. B

FILED DATE: 10/23/2025 11:32 AM 20244002591

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**FOURTH MUNICIPAL DISTRICT**

| | | |
|---|---|---|
| DERRICK WINFREY,<br><br>Plaintiff,<br><br>vs.<br><br>VILLAGE OF MAYWOOD, TOWN OF CICERO, MAYWOOD POLICE OFFICER JACOB NUNEZ, CICERO POLICE OFFICER ANDRES BONILLA, CICERO POLICE OFFICER NICHOLAS MARTINEZ, and UNKNOWN CICERO POLICE OFFICERS,<br><br>Defendants. | ) | Case No.: 20244002591<br><br>Jury Demand |

**FIRST AMENDED COMPLAINT**

Plaintiff, Derrick Winfrey by and through his attorneys, Beyond Legal Aid, seeks judicial review of an administrative judgment from Defendant Village of Maywood pursuant to 735 ILCS 5/3-103, and complains against Defendants Maywood Officer Jacob Nunez, Cicero Police Officer Andres Bonilla, Cicero Police Officer Nicholas Martinez, Unknown Cicero Police Officers, the Village of Maywood, and the Town of Cicero, as follows:

**NATURE OF ACTION**

This lawsuit concerns a law-abiding Chicago resident who had his vehicle illegally seized and who was, himself, violently detained by Cicero Police Officers, based on the entry into the Law Enforcement Agencies Data System ("LEADS") of a report from one Maywood Police Officer regarding an incident that occurred 46 days prior to Plaintiff's seizure – absent any judicial oversight, criminal charges, warrant, due process, or exigent circumstances. Plaintiff seeks declaratory relief that the Maywood Ordinance that formed the basis for his detention is unconstitutional. Plaintiff raises both facial and as applied challenges to the ordinance. In addition,

FILED DATE: 10/23/2025 11:32 AM 20244002591

Plaintiff brings an action under 42 U.S.C. Section 1983 of the Civil Rights Act to hold to hold the Village of Maywood, the Town of Cicero, and certain individual police officers accountable for their unreasonable and unlawful violations of the Plaintiff's constitutional rights. Plaintiff is seeking declaratory relief, actual damages, punitive damages, and attorney fees. Plaintiff is entitled to such relief.

## INTRODUCTION

1. On November 5, 2023, an unknown individual was driving Plaintiff's vehicle through the Village of Maywood. Plaintiff was not driving his vehicle at that time, nor did Plaintiff give consent to anyone else to drive his vehicle at that time. Plaintiff denies that anyone Plaintiff has a relationship with was driving the vehicle without his permission.

2. Maywood police officer Jacob Nunez reported that he attempted to initiate a traffic stop; however, the driver did not comply. Officer Nunez terminated the pursuit and put a felony fleeing and eluding vehicle alert into the Law Enforcement Agency Data System ("LEADS").

3. Six weeks later, on December 21, 2023, Plaintiff, a 70-year-old black man, was driving through Cicero with a close friend, George Woods, a 73-year-old black man.

4. For reasons then unknown to Plaintiff, multiple Cicero police officers – including Defendants Bonilla, Martinez, and Unknown Cicero Police Officers – surrounded Plaintiff's vehicle with their police vehicles, removed Plaintiff and Mr. Woods from Plaintiff's vehicle, handcuffed Plaintiff, searched his vehicle, and detained Plaintiff and Mr. Woods for approximately forty-five (45) minutes.

5. The Cicero officers then confiscated Plaintiff's vehicle and told him that it was being seized by the Village of Maywood, even though Plaintiff was not in Maywood at the time.

6. At some point after the seizure, Plaintiff and Mr. Woods were released from the officers' detention and were forced to call an Uber from the scene.

7. Maywood police officers caused Plaintiff's vehicle to be towed from Cicero to Maywood.

8. Plaintiff was never arrested or charged with any crimes.

FILED DATE: 10/23/2025 11:32 AM 20244002591

9. Five days later, when Plaintiff was able to recoup his vehicle after the holidays had passed, Plaintiff was forced to pay $1,475 as ransom for an unsubstantiated violation of a local ordinance.

10. The fabricated justification for Plaintiff vehicle's seizure was an alleged violation of Maywood Village Code ("MVC") § 99.26 which allegedly occurred 46 days prior to Plaintiff's violent detention.

11. Pursuant to the plain language and Defendant Maywood's application of MVC § 99.26, it does not matter whether the vehicle's owner was operating the vehicle at the time of the alleged violation. Nor does it matter if the vehicle's owner consented to – or had any type of privity with – the individual driving the vehicle at the time of the alleged violation.

12. Both the plain language and Defendant Maywood's application of MVC § 99.26 violates the Illinois Constitution.

13. The conduct of all Defendants violates both the United States and Illinois Constitution.

14. Defendant's constitutional violations have caused harm to Plaintiff.

15. As a direct result of Defendant's unconstitutional conduct, Plaintiff seeks damages to be made whole for Defendant's constitutional violations.

16. Further, because Defendant's constitutional violations are willful and wanton, Plaintiff seeks exemplary damages to dissuade future similar conduct by other similarly situated law enforcement officers and municipalities. Such deterrence is necessary in the Chicago area due to rampant violations of constitutional rights as highlighted by this Court's docket, as well as the docket of the United States District Court for the Northern District of Illinois.

17. This Complaint seeks redress.

## PARTIES

18. Plaintiff Derrick Winfrey is a retired laborer who worked for the City of Chicago for 37 years. Prior to November 5, 2024, Plaintiff had never been charged with a crime, convicted of a crime, or even arrested. Plaintiff is a resident of Cook County, Illinois.

19. Defendant Village of Maywood is a municipal corporation and home-rule unit duly incorporated under the laws of the State of Illinois.

20. Defendant Jacob Nunez (#327) is a police officer employed by the Village of Maywood.

FILED DATE: 10/23/2025 11:32 AM 20244002591

21. Defendant Town of Cicero is a municipal corporation and home-rule unit duly incorporated under the laws of the State of Illinois.

22. Defendant Andres Bonilla (P2501), Defendant Nicholas Martinez (P2657), and Defendant Unknown Cicero Police Officers are police officers employed by the Town of Cicero.

**JURISDICTION**

23. This Court has jurisdiction pursuant to 735 ILCS 5/3-103.

24. Venue is proper as the events giving rise to the claims asserted herein occurred within Cook County, Illinois.

**FACTUAL BACKGROUND**

25. On November 5, 2023, Derrick Winfrey owned a black 2019 Chevrolet sports utility vehicle registered in Illinois with the license plate DT24013 and had never given permission to any other person to utilize said vehicle.

26. On that date, Defendant Maywood Police Officer Jacob Nunez reported that he observed a black 2019 Chevrolet sports utility vehicle, license plate DT24013, driving in the vicinity of 17th Avenue and Madison.[1]

27. Defendant Nunez attempted to make a traffic stop.

28. The driver of the vehicle did not comply.

29. At some point, Defendant Nunez terminated his pursuit.

30. Defendant Nunez, with no additional review, entered a felony fleeing and eluding vehicle alert into LEADS pursuant to MVC § 99.26.

31. MVC § 99.26 reads as follows:

> (A) A motor vehicle used to commit the offense of aggravated fleeing or attempting to elude a peace officer is subject to seizure and impoundment. The offense of aggravated fleeing or attempting to elude a peace officer is committed by any driver or operator of a motor vehicle who, having been given a visual or audible signal by a peace officer directing such driver or operator to bring his or her

[1] For purposes of the declaratory relief count brought under the Administrative Review Law in this Complaint, the facts as determined by the Administrative Judge are not in dispute.

FILED DATE: 10/23/2025 11:32 AM 20244002591

vehicle to a stop, willfully fails or refuses to obey such direction, increases his or her speed, extinguishes his or her lights, or otherwise flees or attempts to elude the officer, and either:

(1) drives at a rate of speed at least 21 miles per hour over the legal speed limit;

(2) causes bodily injury to any individual;

(3) causes damage in excess of $300 to property;

(4) involves disobedience of two or more official traffic control devices; or

(5) involves the concealing or altering of the vehicle's registration plate or digital registration plate. The signal given by the peace officer may be by hand, voice, siren, or red or blue light; provided that the officer giving such signal shall be in police uniform, and, if driving a vehicle, such vehicle shall display illuminated oscillating, rotating or flashing red or blue lights which, when used in conjunction with an audible horn or siren, would indicate the vehicle to be an official police vehicle. Such requirement shall not preclude the use of amber or white oscillating, rotating or flashing lights in conjunction with red or blue oscillating, rotating or flashing lights as required in Section 12-215 of Chapter 12 of the Illinois Vehicle Code (625 ILCS 5/12-215). The owner of record of any vehicle subject to seizure and impoundment under this division shall be liable to the Village for an administrative penalty in the amount of $1,000 plus any applicable fees for the towing and storage of the vehicle.

(B) Whenever a peace officer has probable cause to believe that a vehicle is subject to seizure and impoundment pursuant to this section, the peace officer shall provide for the towing of the vehicle to a facility controlled by the Village or its agents. When the vehicle is towed, the peace officer shall notify any person who is found to be in control of the vehicle at the time of the alleged violation, if there is such a person, of the fact of the seizure and of the vehicle owner's right to request a hearing pursuant to § 39.14 of this code.

(C) The provisions of § 39.14 shall apply whenever any motor vehicle is seized and impounded pursuant to this section.

FILED DATE: 10/23/2025 11:32 AM 20244002591

32. Over a month later, on December 21, 2023, Plaintiff was driving his vehicle with his friend George Woods through Cicero.

33. For reasons unknown to Plaintiff, upon information and belief, Cicero Police Officers Andres Bonilla and Nicholas Martinez ran Plaintiff's license plate through the LEADS System.

34. Upon information and belief, unknown Cicero Police Officers viewed the LEADS felony vehicle alert entered by Officer Nunez.

35. Defendants Bonilla, Martinez, and Unknown Cicero Police Officers surrounded Plaintiff's vehicle with multiple vehicles, forced Plaintiff out of his vehicle, made him kneel on the side of a busy road, handcuffed him, searched his vehicle, and detained him and Mr. Woods for approximately 45 minutes.

36. Approximately 45 minutes after Defendants Bonilla, Martinez, and Unknown Cicero Police Officers violently detained Plaintiff, he was allowed to call an Uber for himself and Mr. Woods.

37. At some point after Plaintiff and Mr. Woods left the scene, Maywood Police Officers caused Plaintiff's vehicle to be towed from Cicero to Maywood. See Ex. A.

38. Defendant Nunez made written representations, upon information and belief, in a regularly used form in the Village of Maywood to tow Plaintiff's vehicle. See Ex. A. On the form, Officer Nunez crossed out "Maywood", which is typed onto the form, and handwrote in "Cicero". Ex. A.

39. Neither Cicero nor Maywood police ever arrested Plaintiff.

40. Neither Cicero nor Maywood ever sought to charge Plaintiff for any crime.

41. Upon information and belief, none of the named Defendants initiated – nor sought to initiate – a criminal investigation into the matter through the Cook County Prosecutor's Office.

42. Throughout this entire process, Plaintiff maintained that he was not driving the vehicle; that he did not give anyone permission to drive the vehicle; and, that he was not aware that anyone was driving the vehicle on November 5, 2023 until his violent detention on December 21, 2023.

FILED DATE: 10/23/2025 11:32 AM 20244002591

43. Plaintiff was unable to recover his vehicle on December 21, 2023, as the towing company was closed for the evening by the time Plaintiff was able to travel to the Maywood Police Station.

44. Plaintiff was unable to recover his vehicle over the next few days due to the holidays.

45. On December 26, 2023, Plaintiff paid Defendant Maywood the towing fine of $1,000 as provided by MCV § 99.26(A). Ex. A.

46. On December 26, 2023, Plaintiff paid Area Towing $475 for the storage and towing of his vehicle upon Defendant's direction and control. Ex. B.

47. Defendant Maywood provided Plaintiff notice of his right to contest the violation – after payment – at Defendant's monthly administrative hearings. See MCV § 39.14. The next available administrative hearing – held the first Friday of every month – was January 5, 2024.

48. Plaintiff requested additional time to obtain Counsel.

49. Plaintiff, represented by Counsel, contested his liability under MCV § 99.26 under the applicable procedures of MCV § 39.14 on February 2, 2024.

50. At that hearing,[2] Plaintiff began by stating that he had multiple constitutional challenges to raise but was advised by Counsel for Defendant Maywood that the Administrative Court would not entertain constitutional challenges and that the proper venue for such challenges would be in the Circuit Court of Cook County.

51. Defendant Maywood presented evidence including testimony from a Maywood Detective.

52. The Detective who testified on behalf of Defendant was not involved, in any capacity, in the determination that Plaintiff's vehicle violated MVC § 99.26, nor was he involved in the towing and confiscation of Plaintiff's vehicle.

53. The Detective had no direct knowledge of any facts at issue in this matter and any purported knowledge he had was hearsay.

[2] Plaintiff acknowledges that his Counsel often speaks too quickly for court reporters but asserts that Plaintiff Counsel actually stated: "I have a few, you know, constitutional issues with this facially *and as applied* but since this is an Administrative Court, I'm going to save everyone the time." Tr. 32:8-11.

FILED DATE: 10/23/2025 11:32 AM 20244002591

54. The Detective testified that, pursuant to MCV § 99.26, when a Maywood Police Officer believes that an individual has committed aggravated fleeing and eluding of a vehicle, they enter a felony vehicle alert into LEADS.

55. The Detective testified that this was common procedure.

56. The Detective stated, in the administrative hearing, on cross examination, that there is no oversight of this determination – it is solely at an officer's discretion.

57. The Detective testified that it was common for Maywood Police to confiscate a vehicle over a month after an alleged ordinance violation – i.e., absent any exigent circumstances.

58. At summation, Plaintiff argued that – notwithstanding additional constitutional challenges – under Defendant Maywood's ordinance, Defendant Maywood's agents had the authority to impound and tow Plaintiff's vehicle: In Maywood.

59. Plaintiff argued that by entering the felony alert into LEADS and by confiscating and towing Plaintiff's vehicle in another municipality, Defendant Maywood had exceeded its home-rule authority under the Illinois Constitution.

60. The Administrative Law Judge held that Defendant Maywood had proved by a preponderance of the evidence that Plaintiff's vehicle had committed Aggravated Fleeing and Eluding of a Police Officer and was subject to towing and seizure. This is despite the fact that there was no finding of fact by the Administrative Law Judge that either Plaintiff or any authorized representative was operating Plaintiff's vehicle during the violation.

61. The Administrative Law Judge stated further that the Administrative Court would need to do additional research into Plaintiff's home-rule argument. The parties offered to submit briefs.

62. Both parties submitted briefs on the issue on March 1, 2024. Ex. C.

63. The Administrative Court issued its ruling, via email to Counsels for the parties, on March 15, 2024. Ex. D.

64. Plaintiff then filed his Complaint for Review in the Fourth District Court of Cook County.

65. Defendant Maywood sought to dismiss and strike numerous portions of the Complaint.

FILED DATE: 10/23/2025 11:32 AM 20244002591

66. That motion was denied on August 22, 2024.[3]

67. The parties then submitted a joint motion to clarify, which was granted on November 12, 2024, although the order itself does not appear to have been entered.

68. This matter was then remanded to the Administrative Court to give the Administrative Court an opportunity to rule on Plaintiff's as applied Due Process and unlawful search and seizures challenges under the Illinois Constitution.

69. The Administrative Court issued a ruling to Plaintiff on July 31, 2025 in which it held that it lacked authority to issue a ruling on either as applied challenge, despite previously doing so on Plaintiff's Home Rule challenge. Ex. D.

## COUNT I
### (Violation of Ill. Const. art. I, § 2 – Due Process)
### [As Applied Challenge to MCV § 99.26]
### {Derrick Winfrey Against Defendant Village of Maywood}

70. Plaintiff incorporates all paragraphs of this Complaint herein as if stated in full.

71. Article I, § 2 of the Illinois Constitution reads as follows: "No person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws."

72. Defendant Maywood, through application of MCV § 99.26, deprived Plaintiff of liberty and property by detaining him without probable cause, seizing his vehicle, and conditioning its release on the payment of a fine plus towing fees without providing pre-deprivation notice, a meaningful opportunity to be heard or any judicial process.

73. Defendant Maywood required Plaintiff to pay $1,000 to Defendant, in addition to $475 to a towing company hand-selected by Defendant Maywood, before returning Plaintiff's vehicle.

74. This fine was levied before Defendant Maywood afforded Plaintiff any opportunity to contest the facts in violation of art. I, § 2 of the Illinois Constitution.

---

[3] Despite denial of Defendant Maywood's Motion to Dismiss, Plaintiff conceded to some of Defendant Maywood's arguments. This amended Complaint reflects those changes.

FILED DATE: 10/23/2025 11:32 AM 20244002591

75. Further, at the February 2 hearing, Defendant did not produce the officer that made the initial report on November 5, 2023 and the subsequent towing report in December 21, 2023 – Defendant Nunez.

76. Defendant Maywood violated Plaintiff's rights under art. I, § 2 of the Illinois Constitution by denying Plaintiff the right to cross examine Officer Nunez and by holding him liable for a fine under MCV § 99.26 based on generalized testimony and documents authenticated by an uninvolved officer.

77. Defendant Maywood's application of MCV § 99.26 violates art. I, § 2 of the Illinois Constitution as applied to him.

78. Defendant's violations of art. I, § 2 of the Illinois Constitution harmed Plaintiff.

79. Plaintiff is entitled to actual damages for Defendant's constitutional violation.

Wherefore, Plaintiff requests that this Honorable Court declare that Defendant Maywood's application of MVC § 99.26 is unconstitutional under Ill. Const. art. I, § 2 as applied to Plaintiff and award him actual damages for Defendant Maywood's constitutional violation.

**COUNT II**
**(Violation of Ill. Const. art. I, § 2 – Due Process)**
**[Facial Challenge to MCV § 99.26]**
**{Derrick Winfrey Against Defendant Village of Maywood}**

80. Plaintiff incorporates all paragraphs of this Complaint herein as if set forth in full.

81. Unlike other towing ordinances that have been upheld under a due process analysis, see, e.g., *Jackson v. City of Chicago*, 2012 IL App (1st) 111044, *Bennis v. Michigan*, 516 U.S. 442 (1996),[4] MCV § 99.26 is devoid of any language requiring some type of consent from the vehicle owner, knowledge that someone was utilizing the owner's vehicle, or privity between the owner and driver.

82. The text of MVC § 99.26 holds a vehicle owner liable for *any* violation of Defendant's code regardless of individual innocence, knowledge, consent, or privity between the owner and operator.

[4] But see, Brennan, *State Constitutions and the Protections of Individual Rights*, 90 HARV. L. REV. 489, 495 (1977), *available at* https://www.law.berkeley.edu/wp-content/uploads/2017/07/Brennan-90_HVLR_489.pdf (explaining that, as early as 1977: "[M]ore and more state courts are construing state constitutional counterparts of provisions of the Bill of Rights as guaranteeing citizens of their states even more protection than the federal provisions, even those identically phrased.").

FILED DATE: 10/23/2025 11:32 AM 20244002591

83. The broad, all-encompassing language of MVC § 99.26 violates art. I, § II of the Illinois Constitution on its face. As such, MVC § 99.26 should be stricken in its entirety.

Wherefore, Plaintiff requests that this Honorable Court declare that MVC § 99.26 is unconstitutional on its face as a violation of Ill. Const. art. I, § 2.

**COUNT III**
**(Violation of Ill. Const. art. I, § 6 – Searches, Seizures, Privacy and Interceptions)**
**[As Applied Challenge to MCV § 99.26]**
**{Derrick Winfrey Against Defendant Maywood}**

84. Plaintiff incorporates all paragraphs of this Complaint herein as if set forth in full.

85. Article I, § 6 of the Illinois Constitution provides:

> The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, invasions of privacy or interceptions of communications by eavesdropping devices or other means. No warrant shall issue without probable cause, supported by affidavit particularly describing the place to be searched and the persons or things to be seized.

86. In this case, Defendant Maywood seized Plaintiff's vehicle more than a month after the alleged ordinance violation occurred.

87. In that time, Defendant Maywood did not investigate the incident; Defendant Maywood did not contact Plaintiff; Defendant Maywood did not file a criminal complaint; Defendant Maywood did not seek a grand jury indictment; nor did Defendant Maywood seek a warrant.

88. Instead, Defendant Maywood's agent, Defendant Nunez, entered Plaintiff's vehicle into the Law Enforcement Agencies Data System ("LEADS") as a felony vehicle alert.

89. This designation was improper because the alleged basis for the impoundment was not a felony under Illinois law, but rather a municipal ordinance violation.

90. Pursuant to the Illinois Criminal Identification Act, 20 ILCS 2635/3 and implementing regulations (20 Ill. Adm. Code §1240), LEADS may be used only for legitimate criminal justice purposes.

FILED DATE: 10/23/2025 11:32 AM 20244002591

91. Defendant Nunez's unilateral insertion of a municipal ordinance violation into LEADS as a felony alert was unauthorized and exceeded the lawful scope of his and Defendant Maywood's authority.

92. Based solely on the unsubstantiated statements of one Maywood Police Officer, Plaintiff's vehicle was seized by police from another municipality, without a warrant or exigent circumstances – in violation of art. I, § 6 of the Illinois Constitution.

93. Defendant's violation of art. 1, § 6 of the Illinois Constitution harmed Plaintiff.

94. Defendants' reliance on an invalid LEADS entry as a substitute for probable cause constitutes an unreasonable seizure. As a direct result, Plaintiff suffered humiliation, loss of liberty, deprivation of property, and financial harm.

95. As such, Plaintiff is entitled to actual damages.

Wherefore, Plaintiff requests that this Honorable Court declare that MCV § 99.26 is unconstitutional as applied to him under Ill. Const. art. I, § 6 and award Plaintiff actual damages for Defendant Maywood's constitutional violation.

**COUNT IV**
**(Violation of Ill. Const. art. VII, § 6(a) – Extraterritorial Enforcement of MVC § 99.26)**
**[As Applied Challenge to MCV § 99.26]**
**{Derrick Winfrey Against Defendant Maywood}**

96. Plaintiff incorporates all paragraphs of this Complaint herein as if set forth in full.

97. Article VII, § 6(a) of the Illinois Constitution provides, in relevant part:

> Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt.

98. Defendant is a home-rule unit.

99. With very few exceptions not applicable here, a home-rule unit violates its authority when it enforces its ordinances outside of its own jurisdiction. E.g., *City of Carbondale v. Van Natta*, 61 Ill. 2d 483 (1975).

100. Here, Defendant Maywood enforced its municipal ordinance outside its borders by causing Plaintiff to be detained and his vehicle seized by Cicero Police Officers, in Cicero,

FILED DATE: 10/23/2025 11:32 AM 20244002591

based solely on an improper entry into LEADS of an alleged violation of a Maywood Ordinance in violation of art. VII, § 6(a) of the Illinois Constitution.

101. By entering Plaintiff's vehicle information into LEADS without any intention of formally initiating a felony fleeing and eluding investigation, Maywood Police Officer Nunez transformed a local ordinance violation into a statewide enforcement trigger, deputizing police in other jurisdictions to act as enforcers of Maywood's civil municipal code.

102. Defendant's misuse of LEADS to achieve extraterritorial enforcement directly harmed Plaintiff who was stopped and seized by Cicero police officers in Cicero based solely on Maywood unlawful use of LEADS.

103. Plaintiff is entitled to actual damages for Defendant's constitutional violations.

Wherefore, Plaintiff requests that this Honorable Court declare that Defendant Maywood's application of MCV § 99.26 was an unconstitutional extraterritorial enforcement of home rule authority and award him actual damages for Defendant Maywood's constitutional violation.

**<u>COUNT V</u>**

**(Violation of 42 U.S.C. § 1983 – Deprivation of Fourth Amendment Rights)**
**[Derrick Winfrey against Maywood Officer Jacob Nunez, Cicero Officer Andres Bonilla, Cicero Officer Nicholas Martinez, and Unknown Cicero Officers]**

104. Plaintiff incorporates all paragraphs of this Complaint herein as if set forth in full.

105. 42 U.S. Code § 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

106. Maywood Officer Jacob Nunez, and Cicero Officers Andres Bonilla and Nicholas Martinez have, while acting under the color of state law, subjected Mr. Winfrey to deprivation of his constitutionally protected right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the United States Constitution.

FILED DATE: 10/23/2025 11:32 AM 20244002591

107. The Fourth Amendment to the United States Constitution guarantees:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

108. Maywood Officer Nunez entered Mr. Winfrey's vehicle into the felony alert system in LEADS, a state-wide data system available to law enforcement, after the alleged violation and never initiated any further felony investigation

109. Forty-six days later, Defendant Bonilla, Defendant Martinez, and unknown Cicero Police Officers subjected Mr. Winfrey to unlawful detention and seizure of his vehicle based solely on the entry of his vehicle into the LEADS system as a "felony".

110. During the forty-six days between the alleged violation and unlawful detention and seizure, upon information and belief, none of the Defendant Officers procured any warrant for a search or seizure of Mr. Winfrey's vehicle, nor did they arrest him, seek a grand jury indictment, or file any criminal complaints against Plaintiff.

111. There was no probable cause to suspect that the vehicle was involved in any criminal activity at the time that Defendant Bonilla, Defendant Martinez, and Defendant Unknown Cicero Police Officers unlawfully seized Plaintiff and his vehicle.

112. Warrantless searches and seizures are *per se* unreasonable unless an exception applies.

113. Based solely on the unsubstantiated statements of one Maywood Police Officer, Plaintiff's vehicle was seized by police from another municipality - without a warrant, probable cause, or exigent circumstances – in violation of the Fourth Amendment to the United States Constitution.

114. Defendants' violation of the Fourth Amendment to the United States Constitution harmed Plaintiff, caused him humiliation, emotional distress and financial harm

115. As such, Plaintiff is entitled to actual damages, punitive damages and attorney fees.

116. Plaintiff demands jury trial on this count.

Wherefore, Plaintiff requests that this Honorable Court award Plaintiff actual damages, punitive damages, and reasonable attorney fees.

FILED DATE: 10/23/2025 11:32 AM 20244002591

**COUNT VI:**
**(Violation of 42 U.S. Code § 1983 – Deprivation of Due Process Rights – *Monell*)**
**[Derrick Winfrey Against Defendant Maywood]**

117. Plaintiff incorporates all paragraphs of this Complaint herein as if set forth in full.

118. Plaintiff was deprived of his Fifth Amendment Due Process rights.

119. The text of Maywood Village Code ("MVC") § 99.26 holds a vehicle owner liable for *any* violation of Defendant's code regardless of individual innocence, knowledge, consent, or privity between the owner and operator.

120. There are obvious and known consequences of towing ordinances not requiring privity between the operator and the owner of the vehicle.

121. Maywood Village turned a blind eye to those consequences.

122. The plain text, and Defendant Maywood's application of MVC § 99.26, constitute a policy, practice and custom allowing for widespread violations of constitutional rights.

123. In addition to MVC § 99.26, Defendant Maywood has a widespread policy and practice of violating due process rights guaranteed under the Fifth Amendment.

124. Defendant Maywood has a widespread custom that allows for its employees and agents to violate the constitutional rights of citizens by allowing them to enter vehicles into LEADS as "felony vehicle alerts" based on municipal ordinance violations. This practice is not authorized by the Illinois Criminal Identification Act. See 20 ILCS 2635/3

125. By misusing LEADS to escalate ordinance violations into felony alerts, Maywood deprives vehicle owners of property without prior notice, judicial review, or any meaningful opportunity to contest the seizure before being forced to pay substantial fines and fees.

126. The February 2, 2025 administrative hearing record confirms this practice was "common procedure" and not subject to oversight. This systemic misuse of LEADS predictably results in widespread constitutional violations, including deprivation of Plaintiff's due process.

127. If not for Defendant Maywood's policies, practices, and customs, Plaintiff would not have been harmed.

128. Pursuant to *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), Defendant Maywood is liable for the harms and losses sustained by Plaintiff.

129. Plaintiff demands jury trial on this Count.

FILED DATE: 10/23/2025 11:32 AM 20244002591

Wherefore, Plaintiff requests that this Honorable Court award him actual damages, punitive damages, and reasonable attorney fees.

**COUNT VII:**
**(Violation of 42 U.S. Code § 1983 – Fourth Amendment Violation – *Monell*)**
**[Derrick Winfrey Against Defendant Maywood]**

130. Plaintiff incorporates all paragraphs of this Complaint herein as if set forth in full.

131. Plaintiff was deprived of his Fourth Amendment right to be free from unreasonable searches and seizures.

132. In this case, Agents of Defendant Maywood seized Plaintiff's vehicle more than a month after the alleged justification for the seizure occurred, pursuant to Defendant Maywood's policies, practices, and customs.

133. In that time, Agents of Defendant Maywood did not investigate the incident; Agents of Defendant Maywood did not contact Plaintiff; Agents of Defendant Maywood did not file a criminal complaint; Agents of Defendant Maywood did not seek a grand jury indictment; nor did Agents of Defendant Maywood seek a warrant.

134. An Agent of Defendant Maywood stated that this was a regular procedure by MPD.[5]

135. There are known and obvious consequences of failing to obtain a warrant or other justification for a search and seizure.

136. Defendant Maywood turned a blind eye to those consequences.

137. Based solely on the unsubstantiated statements of one Maywood Police Officer, Plaintiff's vehicle was seized by police from another municipality, without a warrant or exigent circumstances.

138. Defendant Maywood has a widespread policy that allows for the violation of citizens' Fourth Amendment rights.

139. Defendant Maywood has a widespread practice that allows for the violation of citizens' Fourth Amendment rights.

140. Defendant Maywood has a widespread custom that allows for the violation of citizens' Fourth Amendment rights.

---

[5] Tr 19:7-34; 20:1-24.

FILED DATE: 10/23/2025 11:32 AM 20244002591

141. Defendant Maywood's policies, practices, and customs have allowed for its agents to violated Plaintiff's rights under the United States Constitution and have caused him harm.

142. Pursuant to *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), Defendant Maywood is liable for the harms and losses sustained by Plaintiff.

143. Plaintiff demands jury trial on this Count.

Wherefore, Plaintiff requests that this Honorable Court award him actual damages, punitive damages, and reasonable attorney fees.

**COUNT VIII:**
**(Violation of 42 U.S. Code § 1983 – Deprivation of Due Process Rights – *Monell*)**
**[Derrick Winfrey against Town of Cicero]**

144. Plaintiff incorporates all paragraphs of this Complaint herein as if set forth in full.

145. Plaintiff was deprived of his Due Process Rights.

146. As described herein, Plaintiff was deprived of his property absent any due process or probable cause.

147. Defendant Town of Cicero, through its Police Department, maintains policies, practices and customs that allow its officers to rely on LEADS entries as a substitute for probable cause or judicial process and, therefore, caused Plaintiff's harm by its policies, procedures, and customs.

148. Upon information and belief, Defendant Town of Cicero promulgates policies, procedures, and customs that allow its agents to seize citizens' property absent due process and probable cause.

149. As such, Defendant Cicero is liable for Plaintiff's harm.

Wherefore, Plaintiff requests that this Honorable Court award him actual damages, punitive damages, and reasonable attorney fees against Defendant Cicero.

**COUNT IX:**
**(Violation of 42 U.S. Code § 1983 – Deprivation of Fourth Amendment Rights – *Monell*)**
**[Derrick Winfrey against Town of Cicero]**

150. Plaintiff incorporates all paragraphs of this Complaint herein as if set forth in full.

FILED DATE: 10/23/2025 11:32 AM 20244002591

151. Plaintiff was deprived of his Fourth Amendment rights to be free from unlawful search and seizure.

152. Defendant Town of Cicero, through its Police Department, maintains polices, practices, and customs that allow officers to seize vehicles and detain individuals based solely on LEADS entries, without requiring probable cause, a warrant or exigent circumstances.

153. Defendant Town of Cicero, through its policies, procedures, and practices, absent any probable cause, caused Cicero Police Officers to enforce Maywood ordinance outside of Maywood by detaining Plaintiff and searching and seizing Plaintiff's vehicle based solely on an improperly entered LEADS alert.

154. Plaintiff's constitutional violations were caused by Defendant Town of Cicero's policies, procedures, and customs that allow its agents to violate citizens' constitutional rights.

155. Defendant's violation of the Fourth Amendment to the United States Constitution harmed Plaintiff.

156. Pursuant to *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), Defendant Cicero is liable for the harms and losses sustained by Plaintiff.

157. Plaintiff demands jury trial on this Count.

Wherefore, Plaintiff requests that this Honorable Court award him actual damages, punitive damages, and reasonable attorney fees.

## CONCLUSION

WHEREFORE Plaintiff, Derrick Winfrey, respectfully moves this Honorable Court for an order:

A. Declaring that the Defendants' conduct, including the seizure of Plaintiff and his vehicle, violated Plaintiff's rights under the Illinois Constitution and the United States Constitution and Illinois law;

B. Declaring that Maywood Village Code 99.26 is unconstitutional and invalid as applied and that its enforcement through LEADS was ultra vires and contrary to Illinois statute and regulations;

C. Declaring that the Town of Cicero's reliance on invalid LEADS entries without verification is unlawful;

FILED DATE: 10/23/2025 11:32 AM 20244002591

D. Enjoining Defendants from enforcing Maywood Village Code 99.25 in its current form;

E. Enjoining Defendant Maywood from entering municipal ordinance violations into LEADS;

F. Enjoining Cicero from acting on LEADS alerts unsupported by criminal documentation or judicial process;

G. Awarding Plaintiff compensatory damages in an amount to be determined at trial for the unlawful detention, humiliation, emotional distress and deprivation of property suffered by Plaintiff;

H. Awarding Plaintiff restitution of the $1,000 ordinance penalty and $475 towing/storage fee;

I. Awarding Plaintiff punitive damages for reckless and willful disregard of Plaintiff's rights;

J. Awarding Plaintiff his attorney fee and costs;

K. Granting such other relief as this Honorable Court deems equitable and just.

Respectfully submitted,

/s/ *Michael Drake*
*One of Plaintiff's Attorneys*

FILED DATE: 10/23/2025 11:32 AM 20244002591

**VERIFICATION BY CERTIFICATION**

Under penalties of perjury as provided by law pursuant to Section 1-109 of the Code of Civil Procedure (735 ILCS 5/1-109), the undersigned certifies that the statements set forth in this instrument are true and correct, except as to such matters therein stated to be on information and belief and as to such matters, the undersigned certified as aforesaid that I verily believe the same to be true.

/s/ *Derrick Winfrey*
Plaintiff

Michael Drake
Natalie Lundak
Beyond Legal Aid
17 N. State St., #1380
Chicago, Illinois 60602
(312) 678-3508
Mdrake1@beyondlegalaid.org
nlundak@beyondlegalaid.org
65698

Filer Selected Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Courtroom, 0112
System Generated Hearing Date: 11/18/2025 11:00 AM
Location: Court Room 0112
Judge: Evans, Carl Lauras, Jr.

FILED
11/17/2025 11:21 AM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
20244002591
Courtroom, 0112
35386049

FILED DATE: 11/17/2025 11:21 AM 20244002591

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**FOURTH MUNICIPAL DISTRICT - CIVIL DIVISION**

| | | |
|---|---|---|
| **DERRICK WINFREY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.: 2024 400 2591** |
| **v.** | ) | |
| | ) | |
| **VILLAGE OF MAYWOOD, a Municipal Corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**NOTICE OF FILING**

TO: Mike Drake
Natalie Lundak
Beyond Legal Aid
17 N. State St., Suite 1380
Chicago, IL 60602
mdrake1@beyondlegalaid.org
nlundak@beyondlegalaid.org

**PLEASE TAKE NOTICE** that on **November 17, 2025** we electronically filed with the Clerk of the Circuit Court of Cook County, Illinois, **Village of Maywood's Response in Opposition to Plaintiff's Motion to Amend Complaint,** a true and correct copy of which is attached and electronically served upon you.

KLEIN, THORPE AND JENKINS, LTD.

By: */s/Kaylee Hartman*
One of their attorneys

Allen Wall (jawall@ktjlaw.com)
Kaylee M. Hartman (kmhartman@ktjlaw.com)
KLEIN, THORPE & JENKINS, LTD.
120 S. LaSalle Street, Suite 1710
Chicago, Illinois 60602
(312) 984-6400
Attorney No. 90446

FILED DATE: 11/17/2025 11:21 AM 2024L002591

**CERTIFICATE OF SERVICE**

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies as true and correct, that she served this Response and Notice, upon the parties of record by the Court's EFSP, Odyssey eFileIL on November 17, 2025.

By: */s/ Kaylee M. Hartman*
One of their attorneys

Filer Selected Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Courtroom, 0112
System Generated Hearing Date: 11/18/2025 11:00 AM
Location: Court Room 0112
Judge: Evans, Carl Lauras, Jr.

FILED
11/17/2025 11:21 AM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
20244002591
Courtroom, 0112
35386049

FILED DATE: 11/17/2025 11:21 AM 20244002591

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**FOURTH MUNICIPAL DISTRICT - CIVIL DIVISION**

| | | |
|---|---|---|
| **DERRICK WINFREY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No.: 2024 400 2591** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **VILLAGE OF MAYWOOD, a Municipal Corporation,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>VILLAGE OF MAYWOOD'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND COMPLAINT</u>**

NOW COMES the Defendant, Village of Maywood (the "Village") by and through its attorneys, Klein, Thorpe, & Jenkins, Ltd., and in opposition to Plaintiff's Motion to Amend Complaint (the "MTA"), states as follows:

**<u>INTRODUCTION</u>**

This matter arises under the Administrative Review Law ("ARL"). *See MTA*, at ¶ 6. However, despite the clear parameters of ARL, Plaintiff's MTA and the attached proposed amended Complaint ignore the provisions of the ARL and further complicates this matter. *See Mannheim School Dist. No. 83 v. Teachers' Retirement System of* Illinois, 2015 IL App (4th) 140531, ¶ 27 (stating that, "[a] party seeking to invoke a court's special statutory jurisdiction [of administrative review] must strictly comply with the procedures prescribed by the statute.").

Rather than curing the defects raised in the Defendant's initial Motion to Dismiss[1], the MTA demonstrates Plaintiff is proposing an even more defective complaint that relies on a

[1] The Village's Motion to Dismiss was denied as premature and the decision was not based on the arguments raised therein. All arguments raised in the Motion to Dismiss, particularly the opposition to Plaintiff's repeated and contumacious attempts to introduce facts outside the administrative record, persist in the proposed amendment.

FILED DATE: 11/17/2025 11:21 AM 20244002591

misinterpretation of the case law. The proposed amendment is not reasonable, is in contradiction to the ARL that Plaintiff is invoking, and, if accepted, would cause undue prejudice to the Village.

**Standard of Review**

While amendments are typically liberally construed, the ARL "is a departure from the common law; its prescribed procedures must be strictly adhered to by a reviewing court." *Rosecky v. Illinois Dept. of Public Aid*, 157 Ill.App.3d 608, 614 (1st Dist., 1987). "Parties do not have an absolute right to amend pleadings, and the decision whether to permit amendment is addressed to the sound discretion of the trial court." *Smith v. Malone*, 317 Ill.App.3d 974, 981 (4th Dist. 2000).

Illinois recognizes that, "[p]rejudice and surprise are factors to be considered in determining whether or not a motion to amend pleadings should be allowed." *Spurgeon v. Alton Memorial Hosp.*, 285 Ill.App.3d 703, 712 (5th Dist. 1996). Where the proposed amendment fails to cure defective pleadings, denial is appropriate. *Seitz-Partridge v. Loyola University of Chicago*, 409 Ill.App.3d 76, 86 (1st Dist. 2011). Denial of a motion to amend is also appropriate "if the proposed amended complaint would be subject to immediate dismissal due to some inherent defect." *Smith*, 317 Ill.App., at 981.

**Argument**

A complaint brought pursuant to the ARL, "shall contain a statement of the decision or part of the decision sought to be reviewed." 735 ILCS 5/3-108. The proposed amendment does not do this. Instead, the proposed amendment *continues* to assert facts outside the administrative record, does not identify the alleged deficiencies of the administrative decision to be reviewed, and now attempts to bring independent federal causes of actions and add defendants who were not parties to the administrative action. Plaintiff asserts the amended pleading is brought, "well before trial." There are no trials under administrative review. There is only a hearing on "questions of law and

FILED DATE: 11/17/2025 11:21 AM 20244002591

fact presented by the entire record before the court." 735 ILCS 5/3-110. The MTA should be denied because the amendment is unreasonably defective and, if granted, would cause prejudice to the Village by transforming an administrative review matter into new litigation.

**I. Plaintiff Misinterprets Case Law Regarding a Combination of ARL and Section 1983 Claims.**

The amended complaint proposes five counts under 42 U.S.C. § 1983 ("Section 1983"). Plaintiff asserts "combining challenges under the ARL and Section 1983 is permissible under Illinois precedent" with three cases cited in support. *See MTA*, at pg. 3. However, Plaintiff misinterprets each case and presents no reason to combine an ARL matter with challenges that are not against the administrative body or the administrative decision.

In *Peacock v. Board of Trustees of the Police Pension Fund*, the First District made no decision about the propriety of a Section 1983 claim combined with administrative review. 395 Ill.App.3d 644, 659 (1st Dist. 2009). The First District remanded the claim for damages under Section 1983 and stated "the circuit court had issued no ruling on the plaintiff's section 1983 claim." *Id.* Notably, the Section 1983 claim in *Peacock* was based on an alleged deprivation of due process *by the administrative body. Id.* at 651 (emphasis added).

In *Hofrichter v. City of Chicago Heights*, the plaintiff challenged the City of Chicago Heights Police and Fire Board's decision regarding promotion rosters through a Section 1983 complaint, without invoking the ARL. 2016 IL App (1st) 153106, ¶ 8. The First District ultimately found that, "we need not address the initial question of whether the [ARL] applies at all." *Id.* at ¶ 18. Contrary to Plaintiff's interpretation, *Hofrichter* did not address combining administrative review and Section 1983 claims. Again, this case alleged constitutional deprivations by the administrative body. *Id.* at ¶ 8.

FILED DATE: 11/17/2025 11:21 AM 20244002591

In *Stykel v. City of Freeport*, the Second District found that "causes of action for civil rights violations *by an administrative agency*" are not preempted by the ARL. 318 Ill.App.3d 839, 850 (2d Dist. 2001) (emphasis added). The plaintiffs challenged the decision of the administrative body to not certify them as eligible firefighters. *Id.* at 905.

Unlike *Peacock*, *Hofrichter*, or *Stykel*, Plaintiff's proposed Section 1983 claims are not related to alleged civil rights violations by the administrative agency. The ARL defines the "administrative agency" as a "person, body of persons, group, officer, board, bureau, commission or department (other than a court or judge) of the State, or of any political subdivision of the State or municipal corporation in the State, having power under law to make administrative decisions." 735 ILCS 5/3-101. The administrative agency in this matter is the Village of Maywood Ordinance Enforcement Department. *Maywood Village Code § 39.02*.

Here, Plaintiff attempts to add a Section 1983 claim against Village Police Officer Nunez – who was not a party to the administrative hearing – and several Town of Cicero police officers for deprivation of Fourth Amendment rights based on a traffic stop. *See* MTA, Ex. A, at ¶ 106 - 114. This claim is *not* related to any actions of the administrative body and has no place in a complaint for administrative review. The actions described in Count V of the proposed amendment were not taken by the administrative body – which is indisputable because the count is alleged against individual police officers who are clearly *not* an administrative agency.

Furthermore, Plaintiff's attempt to add Section 1983 *Monell* claims against the Village is not a civil rights violation that would coincide with an administrative review matter. *See MTA*, *Ex. A*, at ¶ 117 - 143. In *Peacock*, *Hofrichter*, and *Stykel*, the plaintiffs were ultimately challenging the decision of the administrative body. Under the ARL, the "administrative decision" is "any decision, order or determination of any administrative agency rendered in a particular case, which affects

FILED DATE: 11/17/2025 11:21 AM 20244002591

the legal rights, duties or privileges of parties and which terminates the proceedings before the administrative agency." 735 ILCS 5/3-101.

Plaintiff's proposed *Monell* claims focuses on ancillary matters that fall outside the administrative proceedings and have no place in this case. The amendment is severely defective to the point of unreasonableness. This is seen in paragraphs 119 through 143 of the proposed amendment, where the focus is on matters that the ARL clearly defines as *not* part of an administrative decision. Specifically, the ARL holds that an administrative decision:

> "does not mean or include rules, regulations, standards, or statements of policy of general application issued by an administrative agency to implement, interpret, or make specific the legislation enforced or administered by it unless such a rule, regulation, standard or statement of policy is involved in a proceeding before the agency and its applicability or validity is in issue in such proceeding, nor does it mean or include regulations concerning the internal management of the agency not affecting private rights or interests."

735 ILCS 5/3-101.

The proposed *Monell* claims do not address the "applicability or validity" of Maywood Village Code § 99.26, but rather challenges the rules, regulations, standards, or statements of general application to implement or interpret Maywood Village Code § 99.26. *See MTA*, Ex. A. It also challenges the "regulations concerning the internal management of the agency" by questioning the internal management of the Law Enforcement Agencies Data System ("LEADs").

Contrary to the case law provided in the MTA, Plaintiff provides no basis for amending the complaint to include *Monell* claims that do not involve the policies, practices, or customs of the administrative body. *See Bless v. Cook County Sheriff's Office*, 2016 WL 958554, at *6 (dismissing a *Monell* claim against the administrative body because it was not the policymaker). It is prejudicial to accept this unreasonable amendment that ignores the scope of the ARL, while simultaneously invoking its jurisdiction. Prejudice also arise because allowing a *Monell* claim complicates the

FILED DATE: 11/17/2025 11:21 AM 20244002591

litigation drastically. The MTA presents an inherently defective complaint that, if accepted, would introduce new parties that have no role in the administrative agency's functions.

**II. The MTA Unreasonably Proposes the Addition of Improper Defendants.**

Under Section 3-107 of the ARL, "in any action to review any final decision of an administrative agency, the administrative agency and all persons, other than the plaintiff, who were parties of record to the proceedings before the administrative agency shall be made defendants." 735 ILCS 5/3-107. The "agency" is the "final-decision maker from whose holding plaintiff appeals." *Stanley v. Department of Employment Sec.*, 235 Ill.App.3d 992, 995 (2d Dist. 1992); *see also Grady v. Illinois Dept. of Healthcare and Family Services*, 2016 IL App (1st) 152402, ¶ 13 (holding that, "[w]e must therefore conclude that 'the administrative agency' required by statute to be named a defendant is the agency that issued the challenged decision.").

Here, the agency issuing the decision was the Village of Maywood Ordinance Enforcement Department. *Maywood Village Code § 39.02*. The parties of record are those who appeared as a party in the administrative proceeding – which would be the Plaintiff and the Village. Plaintiff's MTA advances no grounds for unreasonably attempting to join Maywood Police Officer Nunez, the Town of Cicero, and several Cicero police officers who were not parties to the administrative proceedings. It is prejudicial to the Village to complicate an administrative review matter by permitting the addition of defendants who were not parties of record to the administrative proceedings. Even permitting the amendment would result in summons and involvement of non-parties, further introducing matters outside the administrative record.

**III. The Section 1983 Claims are Best Suited for Federal Jurisdiction.**

When Plaintiff filed his Complaint on April 19, 2024, he chose to invoke the jurisdiction of the ARL and seek administrative review. The attempt to add Section 1983 claims more than a

FILED DATE: 11/17/2025 11:21 AM 20244002591

year and a half into this matter destroys judicial efficiency and prejudices the Village. The Village's defense strategy was in direct response to the jurisdiction that Plaintiff invoked in April 2024. This attempt to transform an administrative review matter into federal litigation circumvents the purpose of the ARL and essentially by-passes the administrative body's decision to focus on matters outside the administrative review action.

Under the ARL, the circuit courts are vested with the jurisdiction to review final administrative decisions. 735 ILCS 5/3-104. The ARL mandates that, "[t]he court first acquiring jurisdiction of any action to review a final administrative decision shall have and retain jurisdiction of the action until final disposition of the action." *Id.* Plaintiff's proposed amendment unreasonably transforms an ARL matter to add allegations that would be properly litigated in federal court. Plaintiff could have, at any time, filed the Section 1983 claims in federal court because they are separate and distinct from the decision of the administrative body. Instead, Plaintiff invoked the ARL's jurisdiction, this Court has exercised its jurisdiction over this matter, and the ARL requires this court to retain jurisdiction until final disposition of the administrative matters. Allowing the amendment at this stage would circumvent the purpose of the ARL and bog down the judicial review of the administrative decision with matters best suited for federal court.

**WHEREFORE** Defendant, VILLAGE OF MAYWOOD, respectfully requests that this Honorable Court deny Plaintiff's Motion to Amend and grant the Village such other and further relief as the Court deems just and equitable in the circumstances.

Respectfully submitted,
VILLAGE OF MAYWOOD

By: /s/Kaylee Hartman
One of their attorneys

Allen Wall (jawall@ktjlaw.com)

FILED DATE: 11/17/2025 11:21 AM 20244002591

Kaylee M. Hartman (kmhartman@ktjlaw.com)
KLEIN, THORPE & JENKINS, LTD.
120 S. LaSalle Street, Suite 1710
Chicago, Illinois 60602
(312) 984-6400
Atty No: 90446

IN THE CIRCUIT COURT OF COOK COUNTY ILLINOIS MUNICIPAL DEPARTMENT DISTRICT 4

| | | | | | |
|---|---|---|---|---|---|
| Plaintiff V Defendant | Derrick Winfrey-vs-Village of Maywood | Courtroom: 0112<br>20244002591 | | | |
| PLAINTIFF's ATTY | Ho, Lam 6337050 | | CONTRACT | FILING FEE | ADDENDUM |
| ADDITIONAL NAMES | | COMPLAINT FILED, SUMMONS ISSUED, RETURNABLE TO CLERK OF THE CIRCUIT COURT 04/19/2024 | Administrative Review - Ordinance Violation | 0.0000 | |

| DATE | JUDGE | ORDERS ENTERED |
|---|---|---|
| | | TTAK LIC |
| Judge Patricia S. Spratt-214 SEP 2 4 2024 | | Δ 21 DAYS TO RESPOND TO MT RECONSIDER |
| | | π REPLY 21 DAYS ; 14 DAYS RESPOND; |
| | | STATUS 11/12/24 @ 9:30 OFF |
| Judge Carl Evans, Jr.-2297 NOV 1 2 2024 | | [illegible] |
| | | [illegible] |
| dge Carl Evans, Jr.-2297 DEC 1 0 2024 | | AGREED ORDER TO CLARIFY ENTERED - OFF CALL |
| dge Carl Evans, Jr.-2297 NOV 1 8 2025 | | [illegible] |
| | | [illegible] |
| | | [illegible] |
| | | |

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**FOURTH MUNICIPAL DISTRICT – CIVIL DIVISION**

| | | |
|---|---|---|
| **DERRICK WINFREY,** **Plaintiff,** v. **VILLAGE OF MAYWOOD, a Municipal Corporation,** **Defendant.** | ) ) ) ) ) ) ) ) ) | **Case No. 2024 400 2591** |

## ORDER

This matter coming before the Court on Plaintiff's, Derrick Winfrey's Motion to Amend the Complaint, counsel for the Parties present via Zoom, and the Court advised on the premises, it is hereby ordered that:

1) Plaintiff shall file his Reply in Support of His Motion to Amend within seven days of this order.
2) Defendant shall provide courtesy copies of the fully briefed Motion to Amend on or before December 3, 2025 as hard copies to Courtroom 112, Maybrook Courthouse.
3) The Court shall hear the motion to amend on December 16, 2025, at 1:30 p.m. via Zoom; Meeting ID=914 3462 0283; Password=988648.

ENTER: 11/18/25

DATE: #2297

ENTERED
Judge Carl Lauras Evans-2297
NOV 18 2025
MARIYANA T. SPYROPOULOS
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

Order prepared by:

Kaylee M. Hartman
Klein, Thorpe and Jenkins, Ltd.
120 South LaSalle Street, Suite 1710
Chicago, Illinois 60603
(312) 984-6400
Firm No. 90446
kmhartman@ktjlaw.com

Filer Selected Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Courtroom, 0112
System Generated Hearing Date: 12/16/2025 1:30 PM
Location: Court Room 0112
Judge: Evans, Carl Lauras, Jr.

FILED
11/25/2025 4:03 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
20244002591
Courtroom, 0112
35524836

FILED DATE: 11/25/2025 4:03 PM 20244002591

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**FOURTH MUNICIPAL DISTRICT**

DERRICK WINFREY,

Plaintiff,

v.

VILLAGE OF MAYWOOD,

Defendant.

Case No.: 2024 400 2591

**PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION TO AMEND**

Plaintiff, through Counsel, Beyond Legal Aid, replies to Defendant's Response opposing Plaintiff's Motion to Amend. In support of such, he states the following:

**INTRODUCTION**

Defendant, through a Response that fails to assert a clear, cognizable argument, accuses Plaintiff of "Misrepresent[ing] Case Law Regarding a Combination of [Administrative Review Law ("ARL")] ARL and Section 1983 Claims." (Def.'s Resp. to Pl.'s Mot., Filed November 17, 2025 ("Def.'s Resp."), at 3). Defendant then argues that joinder of parties is impermissible in claims under the Administrative Review Law ("ARL"), and that federal court is a better venue for such claims.[1] In addition to inaccurately accusing Plaintiff of attempting to mislead this Court, the Response makes numerous arguments – none of which are persuasive or supported by case law. Throughout the entire Response, Defendant fails to cite any authority – case law or statutory

[1] It is unclear why Defendant believes that this has any bearing on a motion to amend, because the commentary, whether accurate or not, has no implication on the pending motion.

FILED DATE: 11/25/2025 4:03 PM 20244002591

language – that supports Defendant's contention that by invoking the ARL, the rules of civil procedure are no longer applicable.

It is unclear whether Defendant is attempting to relitigate its first Motion to Dismiss, whether Defendant understands the difference between joinder of claims and joinder of parties, or whether Defendant legitimately believes that the ARL, which "does not contain any provisions that directly address the propriety of joinder of additional causes of action[,]", *Stykel v. City of Freeport*, 318 Ill. App. 3d 839, 843 (2d Dist. 2001), forecloses joinder of parties and claims.

What is clear is that Defendant's Response lacks as much merit as it does professionalism. Defendant's Response fails to even cite,[2] much less analyze, the governing statutes – 735 ILCS 5/2-405 (joinder of defendants); 735 ILCS 5/2-616(amendments); and 735 ILCS 5/2-614 (joinder of claims) – and instead attacks Plaintiff, relitigates its failed motion to dismiss, and claims that this Court is not the "best suited" forum. As such, this Court should grant Plaintiff's Motion to Amend.

## **ARGUMENT**

### I. Plaintiff does not Misstate Case Law.

Defendant accuses Plaintiff of misstating case law in furtherance of Plaintiff's Motion to Amend. (Def.'s Resp.). In support of this serious allegation, Defendant attacks three cases cited by Plaintiff. Each attack fails.

First, Defendant argues that Plaintiff improperly cites *Peacock v. Board of Trustees*, 395 Ill. App. 3d 64 (1st Dist. 2009) because "the First District made no decision about propriety of a Section 1983 claim combined with administrative review." (Def.'s Resp., at 3). Second, Defendant argues that Plaintiff improperly cites *Hofrichter v. City of Chicago Heights*, 2016 IL App (1st)

[2] Plaintiff concedes that Defendant does cite 735 ILCS 5/2-616, but only to note that is the mechanism by which Plaintiff brings his motion to amend.

FILED DATE: 11/25/2025 4:03 PM 20244002591

153106 because the First District did not have to decide whether the ARL applied at all.[3] (Def.'s Resp. at 3). Third, Defendant argues that Plaintiff improperly cites *Stykel v. City of Freeport*, 318 Ill. App. 3d 839 (2d Dist. 2001) because that only concerned alleged civil rights violations by an administrative agency. (Def.'s Resp., at 3).

Here, reflection would have served Defendant better than accusations. Plaintiff cited these three cases as mere examples of cases that show or hold that the ARL does not foreclose claims under 42 U.S.C. 1983. Indeed, in every cited case, joinder was permitted. Defendant's attempts to differentiate the cases from the case at bar are not persuasive. However, it is undisputed that invoking the ARL does not foreclose joinder of parties or claims, as both state and federal cases show. *Snow v. Chicago Transit Authority*, 2022 IL App (1st) 201217; *Cannici v. Village of Melrose Park*, 2019 IL App (1st) 181422; *Plumtree v. City of Naperville*, 22 C 6635, 2023 WL 5388979 (N.D. Ill. Aug. 22, 2023); *Brown v. City of Chicago*, 12-CV-2921, 2019 WL 861362, (N.D. Ill. Feb. 22, 2019), *aff'd*, 798 Fed. Appx. 937 (7th Cir. 2020); *Wuerffel v. Cook County Sheriff's Office*, 14 C 3990, 2016 WL 1660497 (N.D. Ill. Apr. 27, 2016); see also *Dookeran v. County of Cook, Ill.*, 719 F.3d 570, 576 (7th Cir. 2013) ("[A] federal civil-rights claim may be joined with an action in Illinois circuit court seeking judicial review of a decision by an administrative agency, which provides the full and fair opportunity to litigate necessary for claim preclusion to apply ...."); *Safari Childcare Inc. v. Penny*, 17 C 8547, 2019 WL 3554993, at *5 (N.D. Ill. Aug. 2, 2019) ("A 'final judgment' arising from DCFS enforcement proceedings—one that would bar Plaintiffs' § 1983 claims—could consist only of a judgment entered in an action brought by Plaintiffs in state court under the Illinois Administrative Review Law, 735 ILCS 5/3-101 et seq."); *Arast v. Pendelton*, 13 C 08882, 2014 WL 5469933, at *4 (N.D. Ill. Oct. 28, 2014) ("Nothing in the administrative review

[3] Defendant's argument gives no weight to the fact that the quoted portion in Plaintiff's Motion acknowledged that the ARL was not in question. See (Pl.'s Mot., at 3).

FILED DATE: 11/25/2025 4:03 PM 20244002591

law suggests that § 1983 claims cannot be asserted in other proceedings if they are related to a claim that was subject to administrative review; the impediment to splitting such claims is the claim preclusion doctrine, not the administrative review statute.”).[4]

**II. Joinder of Parties and Claims are Proper in this Matter.**

The applicable statutory text concerning joinder of defendants reads as follows:

> (a) Any person may be made a defendant who, either jointly, severally or in the alternative, is alleged to have or claim an interest in the controversy, or in any part thereof, or in the transaction or series of transactions out of which the controversy arose, or whom it is necessary to make a party for the complete determination or settlement of any question involved therein, or against whom a liability is asserted either jointly, severally or in the alternative arising out of the same transaction or series of transactions, regardless of the number of causes of action joined.

735 ILCS 5/2-405(a).

The applicable statutory text concerning joinder of claims reads as follows: “(a) Any plaintiff or plaintiffs may join any causes of action, against any defendant or defendants; and the defendant may set up in his or her answer any and all cross claims whatever, whether in the nature of recoupment, setoff or otherwise, which shall be designated counterclaims.” 735 ILCS 5/2-614(a).

Here, Plaintiff satisfies both statutes. As it applies to Defendant Maywood, the plain language of the statute allows for joinder of claims. See 735 ILCS 5/2-614(a). Because Plaintiff has raised a claim under the ARL, some claims are foreclosed (i.e., common law claims for breach of contract), but not those raised in the proposed amended complaint. See, e.g., *Stykel*, 318 Ill. App. 3d at 850 (“We are persuaded that causes of action for civil rights violations by an administrative agency and other constitutional challenges are not preempted by the Review Law and may be joined with an action for administrative review. We also believe that other common-law actions predicated upon nonconstitutional theories are preempted by the Review Law when

[4] Plaintiff notes that while numerous parties lost their claims in these cited cases, none were because it was improper to raise claims under the ARL concurrently with claims under 42 U.S.C. § 1983.

FILED DATE: 11/25/2025 4:03 PM 20244002591

the Review Law applies to the actions of an administrative agency."). Similarly, Plaintiff properly joined other Defendants in his proposed amended complaint as all named proposed defendants had a role in the transaction that gave rise to the controversy. See 735 ILCS 5/2-405(a). Defendant offers no case nor interpretation of the relevant statute to assert that joinder of parties is improper when the claims otherwise satisfy 735 ILCS 5/2-405(a).

Defendant argues that Joinder of parties is impermissible. Specifically, Defendant states: "Plaintiff's MTA advances no ground for unreasonably attempting to join Maywood Police Officer Nunez, the Town of Cicero, and several Cicero police officers that were not parties to the administrative proceedings." (Def.'s Resp., at 6). Defendant's argument is contrary to Illinois Appellate Court precedent. See *Ross v. City of Freeport*, 319 Ill. App. 3d 835, 840 (2d Dist. 2001) ("We agree with the plaintiff that the trial court erred in dismissing his fraudulent misrepresentation count as to Chief Parker and the City of Freeport. This count alleged that Chief Parker intentionally made false representations and statements to the plaintiff in order to induce him to resign. The plaintiff alleged that he relied upon these false statements in deciding to resign and suffered monetary damage. These allegations state an independent cause of action against Chief Parker and the City of Freeport unrelated to the correctness of the Board's decision regarding his claim for reinstatement as an employee. As such, they are not preempted by the Review Law, and we reverse the trial court's dismissal of count III as to these defendants.").

**III. Neither the Alleged Defectiveness of Plaintiff's Proposed Amended Complaint nor the "Best Suited Venue" are Questions Properly Before this Court.**

Defendant's Response makes numerous arguments that are not properly raised in a motion opposing amendment. For example, Defendant argues that the proposed *Monell* claims are incompatible with a complaint brought under the ARL, after admitting that constitutional claims against the administrative agency are proper. (Def.'s Resp., at 4-6). Defendant further argues that

FILED DATE: 11/25/2025 4:03 PM 20244002591

the 1983 claims are best suited for federal court. (Def.'s Resp., at 6-7). Finally, throughout the Response, Defendant makes reference to the quality of Plaintiff's proposed Complaint. See (Def.'s Resp.).

Whether or not Plaintiff's proposed Amended Complaint is legally sufficient and whether or not federal court is better suited for such claims are not questions before this Court. The question before this Court is whether or not Plaintiff should be allowed to amend his Complaint under Illinois' liberal standards regarding amending pleadings. See 735 ILCS 5/2-616. Nowhere in Defendant's Response is any argument concerning the request to amend. Defendant will have ample opportunity to challenge the sufficiency of Plaintiff's Complaint and to seek removal to federal court pursuant to 28 U.S.C. § 1446. However, a Response to a Motion to Amend is not the proper place for those arguments and this Court should not entertain such arguments. As such, this Court should grant Plaintiff's Motion to Amend.

It is axiomatic that pleadings are often allowed to be amended even up until a final verdict. Plaintiff has done everything reasonably necessary to put Defendant on notice of the claims brought against them the legal claims brough against them. Defendant cites no authority for its sweeping interpretation of the ARL as limiting joinder of parties and claims, and the statute is devoid of any language suggesting the same. Cf. 735 ILCS 5/9-106 ("Except as otherwise provided in Section 9-120, no matters not germane to the distinctive purpose of the proceeding shall be introduced by joinder, counterclaim or otherwise."). As such, Plaintiff's Motion to Amend should be granted.

FILED DATE: 11/25/2025 4:03 PM 20244002591

**WHEREFORE**, Plaintiff prays this honorable court to allow him to Amend his complaint and grant him leave to do so.

Respectfully submitted,

/s/ *Michael Drake*
*One of Plaintiff's Attorneys*

Michael Drake
Natalie Lundak
Beyond Legal Aid
17 N. State St., #1380
Chicago, Illinois 60602
(312) 678-3508
Mdrake1@beyondlegalaid.org
nlundak@beyondlegalaid.org
65698

**IN THE CIRCUIT COURT OF COOK COUNTY ILLINOIS MUNICIPAL DEPARTMENT DISTRICT 4**

**Plaintiff V Defendant** Derrick Winfrey-vs-Village of Maywood

Courtroom, 0112

20244002591

**PLAINTIFF's ATTY** Drake, Michael 6337050

**ADDITIONAL NAMES**

**COMPLAINT FILED, SUMMONS ISSUED, RETURNABLE TO CLERK OF THE CIRCUIT COURT**
04/19/2024

| CONTRACT | FILING FEE | ADDENDUM |
|---|---|---|
| Administrative Review - Ordinance Violation | 0.0000 | |

| DATE | JUDGE | ORDERS ENTERED |
|---|---|---|
| Judge Carl Evans, Jr.-2297 DEC 0 9 2025 | | P allowed to [illegible] |
| | | Amend complaint w/in 7 days. Village given 35 days |
| | | to answer / otherwise plead. CFS 1/20/26 @ 11:00 |
| | | rm 112 @ [illegible] |
| | | * Strike 12/16/25 date |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**FOURTH MUNICIPAL DISTRICT – CIVIL DIVISION**

| | | |
|---|---|---|
| **DERRICK WINFREY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 2024 400 2591** |
| **v.** | ) | |
| **VILLAGE OF MAYWOOD, a Municipal Corporation,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

This matter coming before the Court on Plaintiff's Motion to Amend, counsel for the Parties present via Zoom, and the Court advised on the premises, it is hereby ordered that:

1) Plaintiff's Motion to Amend is granted. Plaintiff to file Amended Complaint within seven days of the entry of this Order.
2) Defendant Village of Maywood is granted thirty-five days from the date Plaintiff's Amended Complaint is filed to answer or otherwise plead.
3) This matter is set for status on January 20, 2026, at 11:00 a.m. via Zoom: Meeting ID=914 3462 0283; Password=988648.

ENTER: #2291

DATE: 12/9/25

ENTERED
Judge Carl Lauras Evans-2297
DEC 09 2025
MARIYANA T. SPYROPOULOS
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

Order prepared by:

Michael Drake
Beyond Legal Aid
17 N. State St., #1380
Chicago, Illinois 60602
Mdrake1@beyondlegalaid.org
312-678-3508

Filer Selected Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Courtroom, 0112
System Generated Hearing Date: 1/20/2026 11:00 AM
Location: Court Room 0112
Judge: Evans, Carl Lauras, Jr.

FILED
12/16/2025 7:09 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
20244002591
Courtroom, 0112
35812777

FILED DATE: 12/16/2025 7:09 PM 20244002591

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**FOURTH MUNICIPAL DISTRICT**

| | | |
|---|---|---|
| DERRICK WINFREY,<br><br>Plaintiff,<br><br>vs.<br><br>VILLAGE OF MAYWOOD, TOWN OF CICERO, MAYWOOD POLICE OFFICER JACOB NUNEZ, CICERO POLICE OFFICER ANDRES BONILLA, CICERO POLICE OFFICER NICHOLAS MARTINEZ, and UNKNOWN CICERO POLICE OFFICERS,<br><br>Defendants. | ) | Case No.: 20244002591<br><br>Jury Demand |

## FIRST AMENDED COMPLAINT

Plaintiff, Derrick Winfrey by and through his attorneys, Beyond Legal Aid, seeks judicial review of an administrative judgment from Defendant Village of Maywood pursuant to 735 ILCS 5/3-103, and complains against Defendants Maywood Officer Jacob Nunez, Cicero Police Officer Andres Bonilla, Cicero Police Officer Nicholas Martinez, Unknown Cicero Police Officers, the Village of Maywood, and the Town of Cicero, as follows:

## NATURE OF ACTION

This lawsuit concerns a law-abiding Chicago resident who had his vehicle illegally seized and who was, himself, violently detained by Cicero Police Officers, based on the entry into the Law Enforcement Agencies Data System ("LEADS") of a report from one Maywood Police Officer regarding an incident that occurred 46 days prior to Plaintiff's seizure – absent any judicial oversight, criminal charges, warrant, due process, or exigent circumstances. Plaintiff seeks declaratory relief that the Maywood Ordinance that formed the basis for his detention is unconstitutional. Plaintiff raises both facial and as applied challenges to the ordinance. In addition,

FILED DATE: 12/16/2025 7:09 PM 20244002591

Plaintiff brings an action under 42 U.S.C. Section 1983 of the Civil Rights Act to hold to hold the Village of Maywood, the Town of Cicero, and certain individual police officers accountable for their unreasonable and unlawful violations of the Plaintiff's constitutional rights. Plaintiff is seeking declaratory relief, actual damages, punitive damages, and attorney fees. Plaintiff is entitled to such relief.

## INTRODUCTION

1. On November 5, 2023, an unknown individual was driving Plaintiff's vehicle through the Village of Maywood. Plaintiff was not driving his vehicle at that time, nor did Plaintiff give consent to anyone else to drive his vehicle at that time. Plaintiff denies that anyone Plaintiff has a relationship with was driving the vehicle without his permission.

2. Maywood police officer Jacob Nunez reported that he attempted to initiate a traffic stop; however, the driver did not comply. Officer Nunez terminated the pursuit and put a felony fleeing and eluding vehicle alert into the Law Enforcement Agency Data System ("LEADS").

3. Six weeks later, on December 21, 2023, Plaintiff, a 70-year-old black man, was driving through Cicero with a close friend, George Woods, a 73-year-old black man.

4. For reasons then unknown to Plaintiff, multiple Cicero police officers – including Defendants Bonilla, Martinez, and Unknown Cicero Police Officers – surrounded Plaintiff's vehicle with their police vehicles, removed Plaintiff and Mr. Woods from Plaintiff's vehicle, handcuffed Plaintiff, searched his vehicle, and detained Plaintiff and Mr. Woods for approximately forty-five (45) minutes.

5. The Cicero officers then confiscated Plaintiff's vehicle and told him that it was being seized by the Village of Maywood, even though Plaintiff was not in Maywood at the time, nor was he apprehended by Maywood officers at that time.

6. At some point after the seizure, Plaintiff and Mr. Woods were released from the officers' detention and were forced to call an Uber from the scene.

7. Maywood police officers caused Plaintiff's vehicle to be towed from Cicero to Maywood.

8. Plaintiff was never arrested or charged with any crimes.

FILED DATE: 12/16/2025 7:09 PM 20244002591

9. Five days later, when Plaintiff was able to recoup his vehicle after the holidays had passed, Plaintiff was forced to pay $1,475 as ransom for an unsubstantiated violation of a local ordinance.

10. The fabricated justification for Plaintiff vehicle's seizure was an alleged violation of Maywood Village Code ("MVC") § 99.26 which allegedly occurred 46 days prior to Plaintiff's violent detention.

11. Pursuant to the plain language and Defendant Maywood's application of MVC § 99.26, it does not matter whether the vehicle's owner was operating the vehicle at the time of the alleged violation. Nor does it matter if the vehicle's owner consented to – or had any type of privity with – the individual driving the vehicle at the time of the alleged violation.

12. Both the plain language and Defendant Maywood's application of MVC § 99.26 violate the Illinois Constitution.

13. The conduct of all Defendants violates both the United States and Illinois Constitution.

14. Defendant's constitutional violations have caused harm to Plaintiff.

15. As a direct result of Defendant's unconstitutional conduct, Plaintiff seeks damages to be made whole for Defendant's constitutional violations.

16. Further, because Defendant's constitutional violations are willful and wanton, Plaintiff seeks exemplary damages to dissuade future similar conduct by other similarly situated law enforcement officers and municipalities. Such deterrence is necessary in the Chicago area due to rampant violations of constitutional rights as highlighted by this Court's docket, as well as the docket of the United States District Court for the Northern District of Illinois.

17. This Complaint seeks redress.

## PARTIES

18. Plaintiff Derrick Winfrey is a retired laborer who worked for the City of Chicago for 37 years. Prior to November 5, 2024, Plaintiff had never been charged with a crime, convicted of a crime, or even arrested. Plaintiff is a resident of Cook County, Illinois.

19. Defendant Village of Maywood is a municipal corporation and home-rule unit duly incorporated under the laws of the State of Illinois.

20. Defendant Jacob Nunez (#327) is a police officer employed by the Village of Maywood.

FILED DATE: 12/16/2025 7:09 PM 20244002591

21. Defendant Town of Cicero is a municipal corporation and home-rule unit duly incorporated under the laws of the State of Illinois.

22. Defendant Andres Bonilla (P2501), Defendant Nicholas Martinez (P2657), and Defendant Unknown Cicero Police Officers are police officers employed by the Town of Cicero.

## JURISDICTION

23. This Court has jurisdiction pursuant to 735 ILCS 5/3-103 and 735 ILCS 5/2-209.

24. Venue is proper as the events giving rise to the claims asserted herein occurred within Cook County, Illinois.

## FACTUAL BACKGROUND

25. On November 5, 2023, Derrick Winfrey owned a black 2019 Chevrolet sports utility vehicle registered in Illinois with the license plate DT24013 and had never given permission to any other person to utilize said vehicle.

26. On that date, Defendant Maywood Police Officer Jacob Nunez reported that he observed a black 2019 Chevrolet sports utility vehicle, license plate DT24013, driving in the vicinity of 17th Avenue and Madison.[1]

27. Defendant Nunez attempted to make a traffic stop.

28. The driver of the vehicle did not comply.

29. At some point, Defendant Nunez terminated his pursuit.

30. Defendant Nunez, with no additional review, entered a felony fleeing and eluding vehicle alert into LEADS pursuant to MVC § 99.26.

31. MVC § 99.26 reads as follows:

> (A) A motor vehicle used to commit the offense of aggravated fleeing or attempting to elude a peace officer is subject to seizure and impoundment. The offense of aggravated fleeing or attempting to elude a peace officer is committed by any driver or operator of a motor vehicle who, having been given a visual or audible signal by a peace officer directing such driver or operator to bring his or her

[1] For purposes of the declaratory relief count brought under the Administrative Review Law in this Complaint, the facts as determined by the Administrative Judge are not in dispute.

FILED DATE: 12/16/2025 7:09 PM 20244002591

vehicle to a stop, willfully fails or refuses to obey such direction, increases his or her speed, extinguishes his or her lights, or otherwise flees or attempts to elude the officer, and either:

(1) drives at a rate of speed at least 21 miles per hour over the legal speed limit;

(2) causes bodily injury to any individual;

(3) causes damage in excess of $300 to property;

(4) involves disobedience of two or more official traffic control devices; or

(5) involves the concealing or altering of the vehicle's registration plate or digital registration plate. The signal given by the peace officer may be by hand, voice, siren, or red or blue light; provided that the officer giving such signal shall be in police uniform, and, if driving a vehicle, such vehicle shall display illuminated oscillating, rotating or flashing red or blue lights which, when used in conjunction with an audible horn or siren, would indicate the vehicle to be an official police vehicle. Such requirement shall not preclude the use of amber or white oscillating, rotating or flashing lights in conjunction with red or blue oscillating, rotating or flashing lights as required in Section 12-215 of Chapter 12 of the Illinois Vehicle Code (625 ILCS 5/12-215). The owner of record of any vehicle subject to seizure and impoundment under this division shall be liable to the Village for an administrative penalty in the amount of $1,000 plus any applicable fees for the towing and storage of the vehicle.

(B) Whenever a peace officer has probable cause to believe that a vehicle is subject to seizure and impoundment pursuant to this section, the peace officer shall provide for the towing of the vehicle to a facility controlled by the Village or its agents. When the vehicle is towed, the peace officer shall notify any person who is found to be in control of the vehicle at the time of the alleged violation, if there is such a person, of the fact of the seizure and of the vehicle owner's right to request a hearing pursuant to § 39.14 of this code.

(C) The provisions of § 39.14 shall apply whenever any motor vehicle is seized and impounded pursuant to this section.

FILED DATE: 12/16/2025 7:09 PM 20244002591

32. Over a month later, on December 21, 2023, Plaintiff was driving his vehicle with his friend George Woods through Cicero.

33. For reasons unknown to Plaintiff, upon information and belief, Cicero Police Officers Andres Bonilla and Nicholas Martinez ran Plaintiff's license plate through the LEADS System.

34. Upon information and belief, unknown Cicero Police Officers viewed the LEADS felony vehicle alert entered by Officer Nunez.

35. Defendants Bonilla, Martinez, and Unknown Cicero Police Officers surrounded Plaintiff's vehicle with multiple vehicles, forced Plaintiff out of his vehicle, made him kneel on the side of a busy road, handcuffed him, searched his vehicle, and detained him and Mr. Woods for approximately 45 minutes.

36. Approximately 45 minutes after Defendants Bonilla, Martinez, and Unknown Cicero Police Officers violently detained Plaintiff, he was allowed to call an Uber for himself and Mr. Woods.

37. At some point after Plaintiff and Mr. Woods left the scene, Maywood Police Officers caused Plaintiff's vehicle to be towed from Cicero to Maywood. See Ex. A.

38. Defendant Nunez made written representations, upon information and belief, in a regularly used form in the Village of Maywood to tow Plaintiff's vehicle. See Ex. A. On the form, Officer Nunez crossed out "Maywood", which is typed onto the form, and handwrote in "Cicero". Ex. A.

39. Neither Cicero nor Maywood police ever arrested Plaintiff.

40. Neither Cicero nor Maywood ever sought to charge Plaintiff for any crime.

41. Upon information and belief, none of the named Defendants initiated – nor sought to initiate – a criminal investigation into the matter through the Cook County Prosecutor's Office.

42. Throughout this entire process, Plaintiff maintained that he was not driving the vehicle; that he did not give anyone permission to drive the vehicle; and, that he was not aware that anyone was driving the vehicle on November 5, 2023 until his violent detention on December 21, 2023.

FILED DATE: 12/16/2025 7:09 PM 20244002591

43. Plaintiff was unable to recover his vehicle on December 21, 2023, as the towing company was closed for the evening by the time Plaintiff was able to travel to the Maywood Police Station.

44. Plaintiff was unable to recover his vehicle over the next few days due to the holidays.

45. On December 26, 2023, Plaintiff paid Defendant Maywood the towing fine of $1,000 as provided by MCV § 99.26(A). Ex. A.

46. On December 26, 2023, Plaintiff paid Area Towing $475 for the storage and towing of his vehicle upon Defendant's direction and control. Ex. B.

47. Defendant Maywood provided Plaintiff notice of his right to contest the violation – after payment – at Defendant's monthly administrative hearings. See MCV § 39.14. The next available administrative hearing – held the first Friday of every month – was January 5, 2024.

48. Plaintiff requested additional time to obtain Counsel.

49. Plaintiff, represented by Counsel, contested his liability under MCV § 99.26 under the applicable procedures of MCV § 39.14 on February 2, 2024.

50. At that hearing,[2] Plaintiff began by stating that he had multiple constitutional challenges to raise but was advised by Counsel for Defendant Maywood that the Administrative Court would not entertain constitutional challenges and that the proper venue for such challenges would be in the Circuit Court of Cook County.

51. Defendant Maywood presented evidence including testimony from a Maywood Detective.

52. The Detective who testified on behalf of Defendant was not involved, in any capacity, in the determination that Plaintiff's vehicle violated MVC § 99.26, nor was he involved in the towing and confiscation of Plaintiff's vehicle.

53. The Detective had no direct knowledge of any facts at issue in this matter and any testimony he provided was hearsay.

[2] Plaintiff acknowledges that his Counsel often speaks too quickly for court reporters but asserts that Plaintiff Counsel actually stated: "I have a few, you know, constitutional issues with this facially *and as applied* but since this is an Administrative Court, I'm going to save everyone the time." Tr. 32:8-11.

FILED DATE: 12/16/2025 7:09 PM 20244002591

54. The Detective testified that, pursuant to MCV § 99.26, when a Maywood Police Officer believes that an individual has committed aggravated fleeing and eluding of a vehicle, they enter a felony vehicle alert into LEADS.

55. The Detective testified that this was common procedure.

56. The Detective stated, in the administrative hearing, on cross examination, that there is no oversight of this determination – it is solely at an officer's discretion.

57. The Detective testified that it was common for Maywood Police to confiscate a vehicle over a month after an alleged ordinance violation – i.e., absent any exigent circumstances.

58. At summation, Plaintiff argued that – notwithstanding additional constitutional challenges – under Defendant Maywood's ordinance, Defendant Maywood's agents had the authority to impound and tow Plaintiff's vehicle: In Maywood.

59. Plaintiff argued that by entering the felony alert into LEADS and by confiscating and towing Plaintiff's vehicle in another municipality, Defendant Maywood had exceeded its home-rule authority under the Illinois Constitution.

60. The Administrative Law Judge held that Defendant Maywood had proved by a preponderance of the evidence that Plaintiff's vehicle had committed Aggravated Fleeing and Eluding of a Police Officer and was subject to towing and seizure. This is despite the fact that there was no finding of fact by the Administrative Law Judge that either Plaintiff or any authorized representative was operating Plaintiff's vehicle during the violation.

61. The Administrative Law Judge stated further that the Administrative Court would need to do additional research into Plaintiff's home-rule argument. The parties offered to submit briefs.

62. Both parties submitted briefs on the issue on March 1, 2024. Ex. C.

63. The Administrative Court issued its ruling, via email to Counsels for the parties, on March 15, 2024. Ex. D.

64. Plaintiff then filed his Complaint for Review in the Fourth District Court of Cook County.

65. Defendant Maywood sought to dismiss and strike numerous portions of the Complaint.

FILED DATE: 12/16/2025 7:09 PM 20244002591

66. That motion was denied on August 22, 2024.[3]

67. The parties then submitted a joint motion to clarify, which was granted on November 12, 2024, although the order itself does not appear to have been entered.

68. This matter was then remanded to the Administrative Court to give the Administrative Court an opportunity to rule on Plaintiff's as applied Due Process and unlawful search and seizures challenges under the Illinois Constitution.

69. The Administrative Court issued a ruling to Plaintiff on July 31, 2025 in which it held that it lacked authority to issue a ruling on either as applied challenge, despite previously doing so on Plaintiff's Home Rule challenge. Ex. E.

70. Plaintiff was granted leave to amend his Complaint on December 9, 2025.

**COUNT I**
**(Administrative Review – Violation of Ill. Const. art. I, § 2 – Due Process)**
**[As Applied Challenge to MCV § 99.26]**
**{Derrick Winfrey Against Defendant Village of Maywood}**

71. For the purposes of this count, and pursuant to 735 ILCS 5/3-110, Plaintiff incorporates Paragraphs 1,2,5,7,8,19,20,25-33,37,38,45,46,47,49,50,52,54,55,57-63 herein as if stated in full.[4]

72. Article I, § 2 of the Illinois Constitution reads as follows: "No person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws."

73. Defendant Maywood, through application of MCV § 99.26, deprived Plaintiff of liberty and property by detaining him without probable cause, seizing his vehicle, and conditioning its release on the payment of a fine plus towing fees without providing pre-deprivation notice, a meaningful opportunity to be heard or any judicial process.

---

[3] Despite denial of Defendant Maywood's Motion to Dismiss, Plaintiff conceded to some of Defendant Maywood's arguments. This amended Complaint reflects those changes.

[4] This Amended Complaint contains slight alterations from the draft submitted with Plaintiff's Motion to Amend because, during status on this matter on December 9, 2025, Maywood Counsel requested Plaintiff better specify which claims are brought under the Administrative Review Law. For further clarity, the only portions brought under the Administrative Review Law are the facial challenges, because it is required that those be raised at the administrative court. E.g., *Bd. of Educ. of Rich Twp. High Sch. Dist. No. 227, Cook Cnty. v. Brown*, 311 Ill. App. 3d 478, 488 (1st Dist. 1999) ("If the constitutional question raised in the administrative proceedings addresses the fairness of those proceedings or the application of constitutional principles to the facts of the case before the administrative tribunal, the court is bound by the record made at the administrative level.").

FILED DATE: 12/16/2025 7:09 PM 20244002591

74. Defendant Maywood required Plaintiff to pay $1,000 to Defendant, in addition to $475 to a towing company hand-selected by Defendant Maywood, before returning Plaintiff's vehicle.

75. This fine was levied before Defendant Maywood afforded Plaintiff any opportunity to contest the facts in violation of art. I, § 2 of the Illinois Constitution.

76. Further, at the February 2 hearing, Defendant did not produce the officer that made the initial report on November 5, 2023 and the subsequent towing report in December 21, 2023 – Defendant Nunez.

77. Defendant Maywood violated Plaintiff's rights under art. I, § 2 of the Illinois Constitution by denying Plaintiff the right to cross examine Officer Nunez and by holding him liable for a fine under MCV § 99.26 based on generalized testimony and documents authenticated by an uninvolved officer.

78. Defendant Maywood's application of MCV § 99.26 violates art. I, § 2 of the Illinois Constitution as applied to him.

79. Defendant's violations of art. I, § 2 of the Illinois Constitution harmed Plaintiff.

80. Plaintiff is entitled to actual damages for Defendant's constitutional violation.

Wherefore, Plaintiff requests that this Honorable Court declare that Defendant Maywood's application of MVC § 99.26 is unconstitutional under Ill. Const. art. I, § 2 as applied to Plaintiff and award him actual damages for Defendant Maywood's constitutional violation.

**COUNT II**
**(Violation of Ill. Const. art. I, § 2 – Due Process)**
**[Facial Challenge to MCV § 99.26]**
**{Derrick Winfrey Against Defendant Village of Maywood}**

81. Plaintiff incorporates all paragraphs of this Complaint – other than Paragraphs 71, 85, and 97 – herein as if set forth in full.

82. Unlike other towing ordinances that have been upheld under a due process analysis, see, e.g., *Jackson v. City of Chicago*, 2012 IL App (1st) 111044, *Bennis v. Michigan*, 516 U.S. 442 (1996),[5] MCV § 99.26 is devoid of any language requiring some type of consent

[5] But see, Brennan, *State Constitutions and the Protections of Individual Rights*, 90 HARV. L. REV. 489, 495 (1977), *available at* https://www.law.berkeley.edu/wp-content/uploads/2017/07/Brennan-90_HVLR_489.pdf (explaining that, as early as 1977: "[M]ore and more state courts are construing state constitutional counterparts of provisions of the Bill of Rights as guaranteeing citizens of their states even more protection than the federal provisions, even those identically phrased.").

FILED DATE: 12/16/2025 7:09 PM 20244002591

from the vehicle owner, knowledge that someone was utilizing the owner's vehicle, or privity between the owner and driver.

83. The text of MVC § 99.26 holds a vehicle owner liable for *any* violation of Defendant's code regardless of individual innocence, knowledge, consent, or privity between the owner and operator.

84. The broad, all-encompassing language of MVC § 99.26 violates art. I, § II of the Illinois Constitution on its face. As such, MVC § 99.26 should be stricken in its entirety.

Wherefore, Plaintiff requests that this Honorable Court declare that MVC § 99.26 is unconstitutional on its face as a violation of Ill. Const. art. I, § 2.

**COUNT III**
**(Administrative Review – Violation of Ill. Const. art. I, § 6 – Searches, Seizures, Privacy and Interceptions)**
**[As Applied Challenge to MCV § 99.26]**
**{Derrick Winfrey Against Defendant Maywood}**

85. For the purposes of this count, and pursuant to 735 ILCS 5/3-110, Plaintiff incorporates Paragraphs 1,2,5,7,8,19,20,25-33,37,38,45,46,47,49,50,52,54,55,57-63 herein as if stated in full.

86. Article I, § 6 of the Illinois Constitution provides:

> The people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches, seizures, invasions of privacy or interceptions of communications by eavesdropping devices or other means. No warrant shall issue without probable cause, supported by affidavit particularly describing the place to be searched and the persons or things to be seized.

87. In this case, Defendant Maywood seized Plaintiff's vehicle more than a month after the alleged ordinance violation occurred.

88. In that time, Defendant Maywood did not investigate the incident; Defendant Maywood did not contact Plaintiff; Defendant Maywood did not file a criminal complaint; Defendant Maywood did not seek a grand jury indictment; nor did Defendant Maywood seek a warrant.

89. Instead, Defendant Maywood's agent, Defendant Nunez, entered Plaintiff's vehicle into the Law Enforcement Agencies Data System ("LEADS") as a felony vehicle alert.

FILED DATE: 12/16/2025 7:09 PM 20244002591

90. This designation was improper because the alleged basis for the impoundment was not a felony under Illinois law, but rather a municipal ordinance violation.

91. Pursuant to the Illinois Criminal Identification Act, 20 ILCS 2635/3 and implementing regulations (20 Ill. Adm. Code §1240), LEADS may be used only for legitimate criminal justice purposes.

92. Defendant Nunez's unilateral insertion of a municipal ordinance violation into LEADS as a felony alert was unauthorized and exceeded the lawful scope of his and Defendant Maywood's authority.

93. Based solely on the unsubstantiated statements of one Maywood Police Officer, Plaintiff's vehicle was seized by police from another municipality, without a warrant or exigent circumstances – in violation of art. I, § 6 of the Illinois Constitution.

94. Defendant's violation of art. 1, § 6 of the Illinois Constitution harmed Plaintiff.

95. Defendants' reliance on an invalid LEADS entry as a substitute for probable cause constitutes an unreasonable seizure. As a direct result, Plaintiff suffered humiliation, loss of liberty, deprivation of property, and financial harm.

96. As such, Plaintiff is entitled to actual damages.

Wherefore, Plaintiff requests that this Honorable Court declare that MCV § 99.26 is unconstitutional as applied to him under Ill. Const. art. I, § 6 and award Plaintiff actual damages for Defendant Maywood's constitutional violation.

**COUNT IV**
**(Administrative Review – Violation of Ill. Const. art. VII, § 6(a) – Extraterritorial Enforcement of MVC § 99.26)**
**[As Applied Challenge to MCV § 99.26]**
**{Derrick Winfrey Against Defendant Maywood}**

97. For the purposes of this count, and pursuant to 735 ILCS 5/3-110, Plaintiff incorporates Paragraphs 1,2,5,7,8,19,20,25-33,37,38,45,46,47,49,50,52,54,55,57-63 herein as if stated in full.

98. Article VII, § 6(a) of the Illinois Constitution provides, in relevant part:

> Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including, but not limited to, the power to regulate for the

FILED DATE: 12/16/2025 7:09 PM 20244002591

> protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt.

99. Defendant is a home-rule unit.

100. With very few exceptions not applicable here, a home-rule unit violates its authority when it enforces its ordinances outside of its own jurisdiction. E.g., *City of Carbondale v. Van Natta*, 61 Ill. 2d 483 (1975).

101. Here, Defendant Maywood enforced its municipal ordinance outside its borders by causing Plaintiff to be detained and his vehicle seized by Cicero Police Officers, in Cicero, based solely on an improper entry into LEADS of an alleged violation of a Maywood Ordinance in violation of art. VII, § 6(a) of the Illinois Constitution.

102. By entering Plaintiff's vehicle information into LEADS without any intention of formally initiating a felony fleeing and eluding investigation, Maywood Police Officer Nunez transformed a local ordinance violation into a statewide enforcement trigger, deputizing police in other jurisdictions to act as enforcers of Maywood's civil municipal code.

103. Defendant's misuse of LEADS to achieve extraterritorial enforcement directly harmed Plaintiff who was stopped and seized by Cicero police officers in Cicero based solely on Maywood unlawful use of LEADS.

104. Plaintiff is entitled to actual damages for Defendant's constitutional violations.

Wherefore, Plaintiff requests that this Honorable Court declare that Defendant Maywood's application of MCV § 99.26 was an unconstitutional extraterritorial enforcement of home rule authority and award him actual damages for Defendant Maywood's constitutional violation.

## COUNT V
### (Violation of 42 U.S.C. § 1983 – Deprivation of Fourth Amendment Rights)
### [Derrick Winfrey against Maywood Officer Jacob Nunez, Cicero Officer Andres Bonilla, Cicero Officer Nicholas Martinez, and Unknown Cicero Officers]

105. Plaintiff incorporates all paragraphs of this Complaint – other than Paragraphs 71, 85, and 97 – herein as if set forth in full.

106. 42 U.S. Code § 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the

FILED DATE: 12/16/2025 7:09 PM 20244002591

> United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

107. Maywood Officer Jacob Nunez, and Cicero Officers Andres Bonilla and Nicholas Martinez have, while acting under the color of state law, subjected Mr. Winfrey to deprivation of his constitutionally protected right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment to the United States Constitution.

108. The Fourth Amendment to the United States Constitution guarantees:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

109. Maywood Officer Nunez entered Mr. Winfrey's vehicle into the felony alert system in LEADS, a state-wide data system available to law enforcement, after the alleged violation and never initiated any further felony investigation

110. Forty-six days later, Defendant Bonilla, Defendant Martinez, and unknown Cicero Police Officers subjected Mr. Winfrey to unlawful detention and seizure of his vehicle based solely on the entry of his vehicle into the LEADS system as a "felony".

111. During the forty-six days between the alleged violation and unlawful detention and seizure, upon information and belief, none of the Defendant Officers procured any warrant for a search or seizure of Mr. Winfrey's vehicle, nor did they arrest him, seek a grand jury indictment, or file any criminal complaints against Plaintiff.

112. There was no probable cause to suspect that the vehicle was involved in any criminal activity at the time that Defendant Bonilla, Defendant Martinez, and Defendant Unknown Cicero Police Officers unlawfully seized Plaintiff and his vehicle.

113. Warrantless searches and seizures are *per se* unreasonable unless an exception applies.

FILED DATE: 12/16/2025 7:09 PM 20244002591

114. Based solely on the unsubstantiated statements of one Maywood Police Officer, Plaintiff's vehicle was seized by police from another municipality - without a warrant, probable cause, or exigent circumstances – in violation of the Fourth Amendment to the United States Constitution.

115. Defendants' violation of the Fourth Amendment to the United States Constitution harmed Plaintiff, caused him humiliation, emotional distress and financial harm

116. As such, Plaintiff is entitled to actual damages, punitive damages and attorney fees.

117. Plaintiff demands jury trial on this count.

Wherefore, Plaintiff requests that this Honorable Court award Plaintiff actual damages, punitive damages, and reasonable attorney fees.

**COUNT VI:**
**(Violation of 42 U.S. Code § 1983 – Deprivation of Due Process Rights – *Monell*)**
**[Derrick Winfrey Against Defendant Maywood]**

118. Plaintiff incorporates all paragraphs of this Complaint – other than Paragraphs 71, 85, and 97 – herein as if set forth in full.

119. Plaintiff was deprived of his Fifth Amendment Due Process rights.

120. The text of Maywood Village Code ("MVC") § 99.26 holds a vehicle owner liable for *any* violation of Defendant's code regardless of individual innocence, knowledge, consent, or privity between the owner and operator.

121. There are obvious and known consequences of towing ordinances not requiring privity between the operator and the owner of the vehicle.

122. Maywood Village turned a blind eye to those consequences.

123. The plain text, and Defendant Maywood's application of MVC § 99.26, constitute a policy, practice and custom allowing for widespread violations of constitutional rights.

124. In addition to MVC § 99.26, Defendant Maywood has a widespread policy and practice of violating due process rights guaranteed under the Fifth Amendment.

125. Defendant Maywood has a widespread custom that allows for its employees and agents to violate the constitutional rights of citizens by allowing them to enter vehicles into LEADS as "felony vehicle alerts" based on municipal ordinance violations. This practice is not authorized by the Illinois Criminal Identification Act. See 20 ILCS 2635/3

126. By misusing LEADS to escalate ordinance violations into felony alerts, Maywood deprives vehicle owners of property without prior notice, judicial review, or any

FILED DATE: 12/16/2025 7:09 PM 20244002591

meaningful opportunity to contest the seizure before being forced to pay substantial fines and fees.

127. The February 2, 2024 administrative hearing record confirms this practice was "common procedure" and not subject to oversight. This systemic misuse of LEADS predictably results in widespread constitutional violations, including deprivation of Plaintiff's due process.

128. If not for Defendant Maywood's policies, practices, and customs, Plaintiff would not have been harmed.

129. Pursuant to *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), Defendant Maywood is liable for the harms and losses sustained by Plaintiff.

130. Plaintiff demands jury trial on this Count.

Wherefore, Plaintiff requests that this Honorable Court award him actual damages, punitive damages, and reasonable attorney fees.

**COUNT VII:**
**(Violation of 42 U.S. Code § 1983 – Fourth Amendment Violation – *Monell*)**
**[Derrick Winfrey Against Defendant Maywood]**

131. Plaintiff incorporates all paragraphs of this Complaint – other than Paragraphs 71, 85, and 97 – herein as if set forth in full.

132. Plaintiff was deprived of his Fourth Amendment right to be free from unreasonable searches and seizures.

133. In this case, Agents of Defendant Maywood seized Plaintiff's vehicle more than a month after the alleged justification for the seizure occurred, pursuant to Defendant Maywood's policies, practices, and customs.

134. In that time, Agents of Defendant Maywood did not investigate the incident; Agents of Defendant Maywood did not contact Plaintiff; Agents of Defendant Maywood did not file a criminal complaint; Agents of Defendant Maywood did not seek a grand jury indictment; nor did Agents of Defendant Maywood seek a warrant.

135. An Agent of Defendant Maywood stated that this was a regular procedure by MPD.[6]

136. There are known and obvious consequences of failing to obtain a warrant or other justification for a search and seizure.

---

[6] Tr 19:7-34; 20:1-24.

FILED DATE: 12/16/2025 7:09 PM 20244002591

137. Defendant Maywood turned a blind eye to those consequences.

138. Based solely on the unsubstantiated statements of one Maywood Police Officer, Plaintiff's vehicle was seized by police from another municipality, without a warrant or exigent circumstances.

139. Defendant Maywood has a widespread policy that allows for the violation of citizens' Fourth Amendment rights.

140. Defendant Maywood has a widespread practice that allows for the violation of citizens' Fourth Amendment rights.

141. Defendant Maywood has a widespread custom that allows for the violation of citizens' Fourth Amendment rights.

142. Defendant Maywood's policies, practices, and customs have allowed for its agents to violated Plaintiff's rights under the United States Constitution and have caused him harm.

143. Pursuant to *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), Defendant Maywood is liable for the harms and losses sustained by Plaintiff.

144. Plaintiff demands jury trial on this Count.

Wherefore, Plaintiff requests that this Honorable Court award him actual damages, punitive damages, and reasonable attorney fees.

**<u>COUNT VIII:</u>**
**(Violation of 42 U.S. Code § 1983 – Deprivation of Due Process Rights – *Monell*)**
**[Derrick Winfrey against Town of Cicero]**

145. Plaintiff incorporates all paragraphs of this Complaint – other than Paragraphs 71, 85, and 97 – herein as if set forth in full.

146. Plaintiff was deprived of his Due Process Rights.

147. As described herein, Plaintiff was deprived of his property absent any due process or probable cause.

148. Defendant Town of Cicero, through its Police Department, maintains policies, practices and customs that allow its officers to rely on LEADS entries as a substitute for

FILED DATE: 12/16/2025 7:09 PM 20244002591

probable cause or judicial process and, therefore, caused Plaintiff's harm by its policies, procedures, and customs.

149. Upon information and belief, Defendant Town of Cicero promulgates policies, procedures, and customs that allow its agents to seize citizens' property absent due process and probable cause.

150. As such, Defendant Cicero is liable for Plaintiff's harm.

Wherefore, Plaintiff requests that this Honorable Court award him actual damages, punitive damages, and reasonable attorney fees against Defendant Cicero.

**COUNT IX:**

**(Violation of 42 U.S. Code § 1983 – Deprivation of Fourth Amendment Rights – *Monell*)**
**[Derrick Winfrey against Town of Cicero]**

151. Plaintiff incorporates all paragraphs of this Complaint – other than Paragraphs 71, 85, and 97 – herein as if set forth in full.

152. Plaintiff was deprived of his Fourth Amendment rights to be free from unlawful search and seizure.

153. Defendant Town of Cicero, through its Police Department, maintains polices, practices, and customs that allow officers to seize vehicles and detain individuals based solely on LEADS entries, without requiring probable cause, a warrant or exigent circumstances.

154. Defendant Town of Cicero, through its policies, procedures, and practices, absent any probable cause, caused Cicero Police Officers to enforce Maywood ordinance outside of Maywood by detaining Plaintiff and searching and seizing Plaintiff's vehicle based solely on an improperly entered LEADS alert.

155. Plaintiff's constitutional violations were caused by Defendant Town of Cicero's policies, procedures, and customs that allow its agents to violate citizens' constitutional rights.

156. Defendant's violation of the Fourth Amendment to the United States Constitution harmed Plaintiff.

157. Pursuant to *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), Defendant Cicero is liable for the harms and losses sustained by Plaintiff.

FILED DATE: 12/16/2025 7:09 PM 20244002591

158. Plaintiff demands jury trial on this Count.

Wherefore, Plaintiff requests that this Honorable Court award him actual damages, punitive damages, and reasonable attorney fees.

## CONCLUSION

WHEREFORE Plaintiff, Derrick Winfrey, respectfully moves this Honorable Court for an order:

A. Declaring that the Defendants' conduct, including the seizure of Plaintiff and his vehicle, violated Plaintiff's rights under the Illinois Constitution and the United States Constitution and Illinois law;

B. Declaring that Maywood Village Code §99.26 is unconstitutional and invalid as applied and that its enforcement through LEADS was ultra vires and contrary to Illinois statute and regulations;

C. Declaring that the Town of Cicero's reliance on invalid LEADS entries without verification is unlawful;

D. Enjoining Defendants from enforcing Maywood Village Code § 99.25 in its current form;

E. Enjoining Defendant Maywood from entering municipal ordinance violations into LEADS;

F. Enjoining Cicero from acting on LEADS alerts unsupported by criminal documentation or judicial process;

G. Awarding Plaintiff compensatory damages in an amount to be determined at trial for the unlawful detention, humiliation, emotional distress and deprivation of property suffered by Plaintiff;

H. Awarding Plaintiff restitution of the $1,000 ordinance penalty and $475 towing/storage fee;

I. Awarding Plaintiff punitive damages for reckless and willful disregard of Plaintiff's rights;

J. Awarding Plaintiff his attorney fee and costs;

K. Granting such other relief as this Honorable Court deems equitable and just.

Respectfully submitted,

/s/ *Michael Drake*

FILED DATE: 12/16/2025 7:09 PM 20244002591

**VERIFICATION BY CERTIFICATION**

Under penalties of perjury as provided by law pursuant to Section 1-109 of the Code of Civil Procedure (735 ILCS 5/1-109), the undersigned certifies that the statements set forth in this instrument are true and correct, except as to such matters therein stated to be on information and belief and as to such matters, the undersigned certified as aforesaid that I verily believe the same to be true.

/s/ *Derrick Winfrey*
Plaintiff

Michael Drake
Natalie Lundak
Beyond Legal Aid
17 N. State St., #1380
Chicago, Illinois 60602
(312) 678-3508
Mdrake1@beyondlegalaid.org
nlundak@beyondlegalaid.org
65698

Ex. A

Filer Selected Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Courtroom, 0112
System Generated Hearing Date: 1/20/2026 11:00 AM
Location: Court Room 0112
Judge: Evans, Carl Lauras, Jr.

FILED
12/23/2025 6:53 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
20244002591
Courtroom, 0112
35915413

FILED DATE: 12/23/2025 6:53 PM 20244002591

VILLAGE OF ETERNAL LIGHT 1881

Village of
# MAYWOOD

POLICE DEPARTMENT

125 SOUTH FIFTH AVENUE • MAYWOOD, ILLINOIS 60153 • (708) 450-4470

## SEIZED & IMPOUNDED VEHICLES

Post-Tow Incident Report

**CERTIFIED MAIL** **Report #:** 23-21461

| | Register Owner Information | Arrestee's Information |
|---|---|---|
| NAME Last, First | WINFREY, DERRICK | |
| Address | 1977 N. 19TH APT# 2 | |
| City/State/Zip | MELROSE PARK, IL 60160 | |

## POST-TOW NOTICE

You, DERRICK WINFREY, are listed as the Registered Owner or you are the person entitled to possession of the following described vehicles:

| | Vehicle Description | TOW COMPLETED BY |
|---|---|---|
| License Plate/State | DT24013 | Officer Name: Toft #271 / OFC. Nunez |
| Year | 2019 | Badge: 271 / 327 |
| Make | CHEVY | Duty Supervisor: Dent |
| Model | SUV | *Certified Letter date sent:* 12-22-23 |
| VIN # | 2GNAZZEVIK6223002 | *Mailed by:* H. Refuten |

Which is impounded at: ☑ **Area Towing**—1401 N. 1st Ave., Melrose Park, IL 60160

*(Please Check the box that applies)* ☐ ______________________

*(Other location)*

The vehicle was towed from [scribbled out] CICERO, ~~Maywood, IL 60153 on~~

*(Location of the vehicle for the tow)*

21 / DEC / 23 at (Time): 1539 HRS.

By authority of the Village of Maywood, as an unlawful vehicle, for the following reasons:

______________________

(Synopsis of facts forming of tow)

The towing was authorized by ______ 99. 26 ______, which provides that:

(Ordinance of Statutory Action)

AGG. FLEEING + ELUDING

**OFFICER REQUESTING TOW SIGNATURE/BADGE:** Toft #271

**ORDINANCE FEE AMOUNT TO BE PAID:** $ 1,000.00 **AMOUNT PAID:** $1000.00

**FEES RECEIVED BY/NAME & BADGE:** L. Toft #271 **PAYMENT DATE:** 26 DEC 23

**You have the rights and payment obligations as set forth in Chapter 99 of the Maywood Village Code. If you want to request a hearing to contest this vehicle seizure and impoundment, contact the Administrative Hearings Clerk at (708) 450-4414, Monday thru Friday between the hours of 8:30 a.m. until 5:00 p.m. Also attached is a memo regarding the steps to follow for a Vehicle Impoundment Hearing.**

| White—**Original Copy, Records** | Yellow—**Case Jacket** | Pink—**Owner Copy, to be mailed** | Gold—**Court Officer** |
|---|---|---|---|

353106_1

Ex. A

FILED DATE: 12/23/2025 6:53 PM 2024L002591

# MAYWOOD POLICE DEPARTMENT
# TOWED VEHICLE RELEASE FORM

**The release of this vehicle indicates that the Maywood Police Department no longer has an interest in the vehicle. The vehicle may be redeemed from the tow company with the proper identification, Owner's License and insurance.**

**Date Vehicle Released:** 26 DECEMBER 23 **Case #:** 23-21461

**Tow Company:** AREA TOWING

| | Vehicle Description |
|---|---|
| License Plate/State | DT 24013 |
| Year | 2019 |
| Make | CHEVY |
| Model | SUV |
| Vin # | 2GNAZZEV1K6223002 |

| | Registered Vehicle Owner |
|---|---|
| Name | WINFREY, DERRICK |
| Address | 1977 N. 19TH APT #2 |
| City, State, Zip | MELROSE PARK, IL 60160 |
| Telephone # | X (773) 473-0825 or (708) 368-3600 CELL NO 312-538-2460 |

**Owner Signature:** X Derrick Winfrey **Officer Releasing Signature:** [signature] #271

**Supervisor Name/Badge:** LT. E. DENT #271

**Date Removed from LEADS:** ______________________

**Removed from LEADS by:** ______________________

| ATTACH DRIVER'S LICENSE HERE TO MAKE COPY<br><br>**OTHER VALID DRIVER** | ATTACH DRIVER'S LICENSE HERE TO MAKE COPY<br><br>**REGISTERED OWNER** |
|---|---|

Ex. B

FILED DATE: 12/23/2025 6:53 PM 20244002591

# Area Towing, Inc.

1401 N. 1st Avenue, Melrose Park IL 60160
Phone: (708) 345-4665

Impoun...

Pri...

| | | | |
|---|---|---|---|
| Released To | DERRICK WINFREY | 1977 N 19TH AVE MELROSE PK IL 60160 | |
| Call # | 27082 | Reason for Impound | Arrest |
| Stock # | 17043784 | VIN Number | 2GNAXXEV1K6223002 |
| Account | Maywood PD | Model | 2019 Chevrolet Equinox (Black) |
| Date/Time Impounded: | 12/21/2023 12:00 AM | License Plate | DT24013 (IL) |
| Date/Time Released: | 12/26/2023 2:50 PM | Drivable | Yes |
| Days Held in Impound | 6 days | Keys | Yes |
| | | Towed from | 5900 ROOSEVELT ROAD CICERO |
| | | Stored at | Main Location<br>1401 N 1st Ave, Melrose Park IL 60160 |

| Storage charges | Quantity | Price | Line Total |
|---|---|---|---|
| (Storage - Administrative Fees) Admin Fee | 1 | $40.00 | $40.00 |
| (Storage) Standard Storage Rates | 5 | $40.00 | $200.00 |

| Towing charges | Quantity | Price | Line Total |
|---|---|---|---|
| (Towing) Maywood Regular Tow | 1 | $170.00 | $170.00 |
| (Towing) Maywood Village Service Fee | 1 | $25.00 | $25.00 |
| (Towing) Flatbed | 1 | $40.00 | $40.00 |

| | |
|---|---|
| Towing SubTotal | $235.00 |
| Storage SubTotal | $200.00 |
| Storage - Administrative Fees SubTotal | $40.00 |
| Subtotal | $475.00 |
| Taxes | $0.00 |
| Grand Total | $475.00 |
| **Amount Due:** | **$475.00** |

Area Towing, Inc. appreciates your business; if you have any questions regarding this invoice, please contact us at (708) 345-4665.

Signature: ______________________ Date: ______________

PAID

Ex. C

FILED DATE: 12/23/2025 6:53 PM 20244002591

**IN THE VILLAGE OF MAYWOOD, ILLINOIS**
**DEPARTMENT OF ADMINISTRATIVE HEARINGS**

In re: Derrick Winfrey
Tow Hearing

This brief is submitted by the Village of Maywood ("Village") by and through their attorneys, Klein, Thorpe & Jenkins, Ltd. and, in support of the Village's position that the Court should deny Derrick Winfery's ("Winfrey" or "Respondent") request for a refund of towing fees and costs, state as follows:

***Introduction***

The narrow and limited issue before this Court is if the Village of Maywood Police Department ("MPD") had the right to tow and/or order the vehicle owned by Winfrey, with license plate DT24013 (the "Vehicle") from Cicero on December 21, 2023 and if Winfrey is responsible for the costs of the tow. Pursuant to Illinois law, because a law enforcement agency authorized the tow, the owner, Derrick Winfrey, is responsible for the costs of the tow. See 625 ILCS 5/4-203(g)(2).

This brief is presented by order of Administrative Hearing Officer Megan Lafata ("Hearing Officer" or "Hearing Officer Lafata") on the narrow issue of the Village's authority to tow the Vehicle from another jurisdiction. On February 2, 2024, Hearing Officer Lafata found the following facts: that the Vehicle was used to elude and flee Village police on November 5, 2023 pursuant to the elements of eluding and fleeing set forth in the Maywood Village Code ("MVC") §99.26(a)(4)[1]; due to the use of the vehicle to elude and flee police, the Vehicle met the definition of a "hazardous vehicle" as set forth in MVC §99.01; and the Village possessed the authority to tow pursuant to MVC §99.02(A)(1) and §99.26(a).

[1] Maywood Village Code §99.26(a)(4) mirrors the definition of fleeing and eluding police under the Illinois Vehicle Code. See 625 ILCS 5/11-204.1.

FILED DATE: 12/23/2025 6:53 PM 20244002591

Village's **Exhibit 1**, which the Hearing Officer entered as evidence at the hearing is attached to this brief. Village's **Exhibits 2 through 7** are audio recordings from the date the Vehicle was used to flee and elude police. Those Exhibits are not attached, nor referred to in this brief, as the Court has determined the Vehicle was used to flee and elude police.

## ***Argument***

This brief will explain the law which authorizes the tow, why Winfrey is responsible for the cost of the tow, and MPD's relationship with the Law Enforcement Data System.

### ***1. Derrick Winfrey is Responsible for the Fee Associated with the Tow.***

When a tow authorized by a law enforcement agency, "the owner of the vehicle shall be responsible for all towing and storage charges." 625 ILCS 5/4-203(g)(2). Here, a law enforcement agency, the MPD, authorized the tow. Therefore, Winfrey's request to be refunded the fee associated with the tow should be denied.

While the matter of *King Auto Sales, Inc. v. Act Now Towing*, concerns a civil lawsuit, the court in that matter examined the language contained in the Illinois Vehicle Code, specifically 625 ILCS 5/4-203(g)(2), which provides that if a law enforcement agency authorized a tow, the owner of the vehicle is responsible for the tow and storage charges. *King Auto Sales, Inc. v. Act Now Towing*, 2021 IL App (5th) 200143, ¶19. The court determined the language of 203(g)(2) is "clear and unambiguous." *Id*. at ¶26. "There is no language limiting the provision of based on the purpose for which law enforcement authorized the tow." *Id.* Further, "[r]eading subsection (g) in its entirety, it is clear that the legislature intended each paragraph to only have the distinct limitations stated within the paragraph." *Id*. at ¶21.

When examining the language of a statute, the court is to use the plain and ordinary meaning of the language. *Lintzeris v. City of Chicago*, 2023 IL 1277547, ¶26 (citation omitted).

FILED DATE: 12/23/2025 6:53 PM 20244002591

When the language of a statute is clear and unambiguous, the court should not consider exceptions, conditions, or limitations not included in the statute. *Id*. It is clear and unambiguous that the language of 625 ILCS 5/4-203(g)(2) requires the owners of vehicles towed with the authorization of a law enforcement agency to be responsible for the costs and fees.

The Village is a home rule jurisdiction. See attached **Exhibit 8**, Resolution No. R-2022-53, A Resolution Ratifying the Approval and Execution of Understanding (MOU) with the Illinois State Police for Transmittal, Receiving and Storing of LEADS, NCIC and SOS Information and Data (the "Resolution"). The Resolution, with the attached and agreed Memorandum of Understanding ("MOU") is attached as **Exhibit 8**. The Village asks this Court to admit **Exhibit 8**, into the record as evidence, as a public resolution and a MOU concerning agreements between law enforcement agencies would be relied upon by a reasonable person. Evidence, including hearsay, may be admitted in an administrative court if it is "a type commonly relied upon by reasonably prudent persons in the conduct of their affairs." 65 ILCS 5/1-2.1-6; see also *Zollar v. City of Chicago Department of Administrative Hearings*, 2015 IL App (1st) 143426, ¶6.

The powers of home rule units should be construed liberally. Ill. Const. 1970, art. VII, §6(m); see also *Lintzeris*, 2023 IL 1277547 at ¶5. Home rule units, like the Village, are permitted to enact ordinances which require a fee for the cost of a tow. *Lintzeris*, 2023 IL 1277547, ¶34-35; see also 625 ILCS 5/11-208.7(a). Home rule units may adopt traffic regulations, like those related to the towing of vehicles, as long as the regulations do not conflict with the Illinois Vehicle Code. *Id*. at ¶7-8.

The MPD's power to authorize the tow of the Vehicle is derived from MVC §99.02(A)(1), which provides that the Village Code Enforcement and the MPD may tow any

FILED DATE: 12/23/2025 6:53 PM 20244002591

vehicle which meets the definition of a "hazardous vehicle" as defined in MVC §99.01. A "hazardous vehicle" includes any vehicle which, among other things, "presents an immediate danger to the health, safety or welfare of the members of the public." MVC §99.01. A vehicle used to flee and elude the police or a law enforcement agency in Maywood is subject to seizure and impoundment. MVC §99.26(a). This Court determined the Vehicle was used to flee and elude the police. Therefore, under the MVC, the authorization of the tow of the Vehicle was proper.

There is nothing within 625 ILCS 5/4-203(g)(2) which limits the jurisdiction of a tow or that prevents a municipality from entering another jurisdiction to tow a vehicle or that prevents one municipality ordering or causing a vehicle to be towed on behalf of another municipality. There is no language which requires an arrest of the owner or a conviction of the owner – merely that law enforcement authorized the tow. There is no question the MPD authorized the tow of the Vehicle. See **Ex. 1**, Department of Police Tow Report. The law is clear – the owner of the vehicle is responsible for the tow and storage charges if any law enforcement agency authorizes the tow and therefore, Winfrey's request to be refunded the tow fee should be denied.

### 2. *The Maywood Police Department Participates in the Law Enforcement Agency Data System*

One fact established during the hearing is that the Vehicle was entered into the Law Enforcement Agency Data System ("LEADS"), which lead to the tow of the Vehicle from Cicero. LEADS "is a statewide, computerized telecommunications system designed to provide services, information and capabilities to law enforcement and criminal justice community in the State of Illinois." 20 Ill. Adm. Code 1240.10; Illinois LEADS Reference Manual 2021, page REGS-1. (The LEADS Reference Manual is available online at isp.illinois.gov or can be

FILED DATE: 12/23/2025 6:53 PM 20244002591

provided to the Court upon request). Data entry and maintenance by law enforcement agencies in LEADS is required by several sections of the Illinois Criminal Code. (See e.g. the Illinois Domestic Violence Act of 1986, 750 ILCS 60/302; the Sex Offender Registration Act, 730 ILCS 150/8). Law enforcement, like police officers, are required only to use LEADS for law enforcement purposes, as misuse of the system could result in a criminal felony charge. See 20 Ill. Adm. Code § 1240.80 and *People v. Samel*, 115 Ill.App.3d 905, 908, 912 (2nd Dist. 1983). Additionally, if a law enforcement agency uses LEADS services in a manner non-compliant with laws, rules, regulations, or procedures, the Department of Law Enforcement may suspend all or any portion of LEADS service. See 20 Ill. Adm. Code § 1240.110. The Department of Law Enforcement may conduct routine audits of any agency participating in LEADS to ensure compliance with rules, regulations, and laws. See 20 Ill. Adm. Code § 1240.120. LEADS records in the computerized files "must be supported by an investigative document, active warrant, or complaint." See 20 Ill. Adm. Code § 1240.60(a)(2). The records in the system must be available to any LEADS terminal operator at all times for several purposes, including verification and validation. See Id. Therefore, LEADS is a reliable system for law enforcement use.

Illinois law "evidences a public policy of encouraging municipalities to agree to assist one another in carrying out law enforcement objectives." *People v. Vargas*, 277 Ill.App.3d 289, 297 (1st Dist. 1995). The Village of Maywood participates in LEADS and was a participant on November 5, 2023 (the date Mr. Winfrey's vehicle was used to elude police) through December 21, 2023 (the date of the legal tow). The Village's President and Board of Trustees, operating as a home rule entity, approved the Resolution, which ratified the approval and execution of the MOU. See **Exhibit 8**. The Village Clerk certified the Resolution on December 7, 2022. See **Id.**

FILED DATE: 12/23/2025 6:53 PM 20244002591

There is no expiration date for the MOU and per testimony presented at the hearing, the Village Police Department continues to utilize LEADS.

Any objection or argument Winfrey presents in opposition of the use of LEADS should be rejected, as the MPD has the authority to utilize the system. Additionally, there is a public interest in allowing municipalities to assist one another in carrying out law enforcement objectives. Prohibiting municipalities and law enforcement agencies from utilizing LEADS to tow vehicles from outside jurisdictions would frustrate the purpose of LEADS and would go against the public interest. It was proper for the Vehicle to be towed from Cicero and Winfrey should therefore be responsible for the fee associated with the tow.

## ***Conclusion***

It is undisputed Derrick Winfrey's Vehicle was used to flee and elude police on November 5, 2023. This Court has already determined that Maywood Police Department possessed the authority to authorize the tow of the vehicle. The Maywood Police Department had the authority to utilize LEADS in the investigation of the fleeing and eluding incident. As the authorization of the tow was proper, Derrick Winfrey, as the owner, is responsible for the tow fees and charges and therefore should not be refunded the money he paid to retrieve the Vehicle.

Respectfully submitted,
VILLAGE OF MAYWOOD

By: *Carrie A. Winteregg*
One of its Attorneys

Carrie A. Winteregg (cawinteregg@ktjlaw.com)
KLEIN, THORPE AND JENKINS, LTD.
120 S. LaSalle Street, Suite 1710
Chicago, Illinois 60602
(312) 984-6400
Atty No: 90446

FILED DATE: 12/23/2025 6:53 PM 20244002591

FILED DATE: 12/23/2025 6:53 PM 20244002591

**IN THE VILLAGE OF MAYWOOD, ILLINOIS**
**DEPARTMENT OF ADMINISTRATIVE HEARINGS**

| | | |
|---|---|---|
| Village of Maywood, | ) | |
| Plaintiff, | ) | |
| v. | ) | Report No.: 23-21561 |
| Derrick Winfrey, | ) | |
| Respondent. | ) | |

**RESPONDENT'S BRIEF IN SUPPORT OF DISMISSAL**

NOW COMES Respondent, Derrick Winfrey, by and through Counsel, Beyond Legal Aid, and moves this Administrative Court for dismissal. In support of such, he states the following:

**INTRODUCTION**

A hearing on this matter was held on February 2, 2024, at the Village of Maywood ("the Village") Police Station. There, this Court held that the Village had proved its case by a preponderance of the evidence but requested that the parties provide briefs on whether the Village had the authority to tow the vehicle from Cicero. Thus, no facts are in dispute at this time.

The relevant facts for the purposes of this brief are as follows. On November 5, 2023, Officer Nunez of the Maywood Police Department entered a Felony Vehicle Alert in the Law Enforcement Agency Data System ("LEADS") for a vehicle owned by Respondent. On December 21, 2023, Respondent was pulled over and detained in Cicero by officers of the Cicero Police Department. Officers from the Maywood Police Department then towed the vehicle from Cicero to Maywood. The vehicle was released to Respondent on December 26, 2023, after Respondent paid the fine. Respondent was never arrested by either police department.

FILED DATE: 12/23/2025 6:53 PM 20244002591

## ARGUMENT

Respondent raises a single argument in this brief: The Village exceeded its home-rule authority by enforcing MVC § 99.26 extraterritorially. As such, this matter should be dismissed, and Respondent should be fully refunded for his fine and other fees related to towing and storage.

Article VII, section 6(a) of the Illinois Constitution provides, in relevant part:

> Except as limited by this Section, a home rule unit may exercise any power and perform any function pertaining to its government and affairs including but not limited to, the power to regulate for the protection of the public health, safety, morals and welfare; to license; to tax; and to incur debt.

Ill. Const., art. VII, § 6(a). A home-rule municipality[1] does not have the authority to enforce its ordinances outside of its jurisdictional limits. *Village of Sauget v. Cohn*, 241 Ill. App. 3d 640, 645 (5th Dist. 1993). "'[A]n examination of the [Record of Proceedings of the Sixth Illinois Constitutional Convention] shows that the intention was not to confer extraterritorial sovereign or governmental powers directly on home-rule units. The intendment shown is that whatever extraterritorial governmental powers home-rule units may exercise were to be granted by the legislature.'". *Village of Orland Hills v. Citizens Utilities Co.*, 347 Ill. App. 3d 504, 520-21 (1st Dist. 2004) (quoting *City of Carbondale v. Van Natta*, 61 Ill. 2d 483, 485 (1975)).

Here, the Village enforced MVC § 99.26 extraterritorially. The Village contends that it had authority under MVC § 99.26 to impound Respondent's vehicle and charge him the relevant fine. Respondent does not dispute that is the case[2] *within the limits of Maywood.* However, in

---

[1] There is no dispute that Maywood is a home-rule municipality.

[2] While Respondent has multiple constitutional issues with the ordinance in question, Respondent is assuming that the ordinance is valid for the purposes of the February 2, 2024 administrative hearing and this brief as Respondent was advised that this was the improper venue for constitutional challenges.

FILED DATE: 12/23/2025 6:53 PM 20244002591

this matter, Maywood police officers entered Cicero after Cicero Police Officers detained Respondent and impounded his vehicle pursuant to MVC § 99.26.

The Village does not contend that it had authority to tow Respondent's vehicle from Cicero under any state law – only by Village ordinance. Outside of an applicable state law, the Village cannot tow vehicles extraterritorially. Indeed, the Village's "Seized and Impounded Vehicles" form recognizes this. See Ex. 1. On the form the Village provided to Respondent, "Maywood, IL 60153" is crossed out and "Cicero" is handwritten in as the location of the vehicle for the tow. Ex. 1. By providing "Maywood, IL 60153" as the standard ending of the location of the tow in the form, the Village shows that it assumes vehicles towed under its ordinance are done so within its jurisdiction. That is not that case here. Because the Village exceeded its home-rule authority by towing Respondent's vehicle outside of its jurisdiction, this matter should be dismissed, and the Village should provide Respondent with a full refund for all fines and fees he incurred.

WHEREFORE, Respondent, Derrick Winfrey, respectfully moves this Administrative Court for an order dismissing the ordinance violation and refunding him all money paid in fines and fees.

Respectfully submitted,

/s/ Michael Drake
*Attorney for Respondent*

Michael Drake
Beyond Legal Aid
17 N. State St., #1380
Chicago, Illinois 60602
(312) 678-3508
Mdrake1@beyondlegalaid.org
65698

 Ex. D

FILED DATE: 12/23/2025 6:53 PM 20244002591

**IN THE VILLAGE OF MAYWOOD, ILLINOIS**

**DEPARTMENT FO ADMINISTRATIVE HEARINGS**

| | | |
|---|---|---|
| **Village of Maywood,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Report No.: 23-21561** |
| | ) | |
| **v.** | ) | |
| **Derrick Winfrey,** | ) | |
| | ) | |
| **Respondent** | ) | |

**ORDER**

After a hearing on February 2, 2024, Administrative Hearing Officer Lafata found that the vehicle in question was used to flee and elude police Village Police Officer's within the Village of Maywood and therefore granting the Village of Maywood the authority to tow the vehicle pursuant to MVC §99.02(A)(1) and §99.26(a). The Administrative Hearing Officer sought time to determine if the Village of Maywood's authority to tow the vehicle was limited to the city limits of Maywood, or if the Village had the authority to tow the vehicle from Cicero, a neighboring jurisdiction.

After reviewing briefs submitted by both parties, the Hearing Officer finds that the plain language of the 625 ILCS 5/4-203(g)(2), is clear and unambiguous. The statute reads, "when a vehicle removal from either public or private property is authorized by a law enforcement agency, the owner of the vehicle shall be responsible for all towing and storage charges". The statute does not specify that the tow must take place within the city limits of where the violation was committed.

It would seem to frustrate the purpose of the statute to determine that because an individual operating the motor vehicle in question was able to successfully use the motor vehicle to flee and elude a law enforcement agency, they should not be responsible for the costs of a tow authorized by those actions.

For the foregoing reasons, the Hearing Officer finds that the Village of Maywood had the authority to tow the Respondent's vehicle, regardless of the location of the vehicle at the time of the tow, as it was used to flee and elude Maywood Police Officers and pursuant to 625 ILCS 5/4-203(g)(2), Respondent shall be responsible for all towing and storage charges.

**Entered: March 15, 2024**

Megan Lafata
**Administrative Hearing Officer Megan Lafata**

 Ex. E

FILED DATE: 12/23/2025 6:53 PM 20244002591

IN THE VILLAGE OF MAYWOOD, ILLINOIS
DEPARTMENT OF ADMINISTRATIVE HEARINGS

| | | |
|---|---|---|
| Village of Maywood, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Report No. 23-21561 |
| | ) | |
| Derrick Winfrey | ) | |
| | ) | |
| Respondent. | ) | |

ORDER

This matter having been remanded pursuant to an order entered on December 17, 2024 in the matter Derrick Winfrey v. Village of Maywood, Cook County case no. 2024400259 ("Remand Order"). Pursuant to the Remand Order, a hearing was conducted to determine: (a) was Plaintiff denied due process throughout the administrative proceedings, as constitutionally required by the Illinois Constitution, Article I, Section 2 and (b) did the Village illegally seize the vehicle, in violation of the Illinois Constitution, Article I, Section 6. Further pursuant to the Remand Order, the hearing on remand was limited to the current administrative record. On March 7, 2025, an order was entered requesting the parties submit briefs on the authority of an administrative hearing officer to determine the issues presented by the Remand Order and argument on the issues. The parties submitted briefs, and they have been reviewed.

The powers of a hearing are limited to those specially enumerated in the Illinois Municipal Code. They are (1) hearing testimony and accepting evidence that is relevant to the existence of the code violation; (2) issuing subpoenas directing witnesses to appear and give relevant testimony at the hearing, upon the request of the parties or their representatives; (3) preserving and authenticating the record of the hearing and all exhibits and evidence introduced at the hearing;(4) issuing a determination, based on the evidence presented at the hearing, of whether a code violation exists. The determination shall be in writing and shall include a written finding of fact, decision, and order including the fine, penalty, or action with which the defendant must comply; and (5) imposing penalties consistent with applicable code provisions and assessing costs upon finding a party liable for the charged violation, except, however, that in no event shall the hearing officer have authority to (i) impose a penalty of incarceration, or (ii) impose a fine in excess of $50,000, or at the option of the municipality, such other amount not to exceed the maximum amount established by the Mandatory Arbitration System as prescribed by the Rules of the Illinois Supreme Court from time to time for the judicial circuit in which the municipality is located. The maximum monetary fine under this item (5), shall be exclusive of costs of enforcement or costs imposed to secure compliance with the municipality's ordinances and shall not be applicable to cases to enforce the collection of any tax imposed and collected by the municipality. (65 ILCS5/1-2.1-4)

Both Petitioner and Respondent concede that an administrative hearing officer's authority is limited regarding its ability to determine constitutional issues. Neither party provided any applicable caselaw which would permit this hearing officer to issue an opinion regarding the

FILED DATE: 12/23/2025 6:53 PM 20244002591

conduct of the previous hearing officer and the due process afforded as evidenced by the administrative record. Notwithstanding, the administrative record from the February 2, 2025, hearing is clear that the hearing officer afforded the Respondent the opportunity to present any arguments or present any evidence during the hearing. Further, Respondent never made any objections to the testimony or documents admitted by the Petitioner. Therefore, to the extent that I have the authority to determine if [Respondent] was denied due process throughout the administrative proceedings, as constitutionally required by the Illinois Constitution, Article I, Section 2, I find that he was not.

Similarly, as to the issue of whether the Village illegally seized the vehicle, in violation of the Illinois Constitution, Article I. Section 6, the parties have not provided applicable caselaw which would permit this hearing officer to issue an opinion on the issue. Notwithstanding, the administrative record is clear that the previous hearing officer found that towing of respondent's vehicle was lawful and authorized. Therefore, to the extent that I have the authority to determine the Village illegally seized the Respondent's vehicle, in violation of the Illinois Constitution, article I. section 6, I find that the Village did not.

Entered July 31, 2025



Administrative Hearing Officer Thomas J. Condon, Jr.

Filer Selected Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Courtroom, 0112
System Generated Hearing Date: 1/20/2026 11:00 AM
Location: Court Room 0112
Judge: Evans, Carl Lauras, Jr.

FILED
1/6/2026 4:37 PM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
20244002591
Courtroom, 0112
36049504

FILED DATE: 1/6/2026 4:37 PM 20244002591

# SUMMONS

IN THE STATE OF ILLINOIS, CIRCUIT COURT

☐ **Alias Summons**

*Check if this is not the 1st Summons issued for this Defendant/Respondent.*

**COUNTY:** Cook
*County Where You Are Filing the Case*

*Enter the case information as it appears on your other court documents.*

**PLAINTIFF/PETITIONER OR IN RE:** Derrick Winfrey
*Who started the case.* — *First, Middle, and Last Name, or Business Name*

**DEFENDANTS/RESPONDENTS:** Cicero; Maywood; Cicero Police Officer Andres Bonilla;Cicero ~~Officer Nicholas Martinez;~~ Maywood Officer Jacob Nunez
*Who the case was filed against.* — *First, Middle, and Last Name, or Business Name*

20244002591
**Case Number**

## The Defendant/Respondent named above has been sued. Read this form for information about how to respond to this lawsuit. Also see page 4 for next steps.

**For the person filling out this form: Read all instructions in this box.**

This *Summons* can only be used for certain types of cases. See the *How To Serve a Summons* Instructions for more information: ilcourts.info/how-to-summons.

Check 1 if this is a 30-day summons or check 2 if this is a date certain summons. Fill in all the information in 1 or 2.

- Use a **date certain summons** if you are asking for money of $50,000 or less or recovery of your personal property that you think the Defendant has, and for some mandatory arbitration cases. In 2, fill in your court date and how to go to court. You may get the court date when you e-file or you may need to ask the Circuit Clerk's office.
- Use a **30-day summons** for most other case types.

Complete the rest of the form with the Defendant/Respondent's information and information about the lawsuit.

**If you are suing more than 1 Defendant/Respondent**, attach an *Additional Defendant/Respondent Address and Service Information* form for **each** additional Defendant/Respondent.

### ☑ 1. 30-DAY SUMMONS

To participate in this case, you must **file** your *Appearance* and *Answer/Response* forms with the court within 30 days after you are served with this *Summons* (not counting the day of service) by e-filing or at:

Court Address: 1500 Maybrook Drive, RM #082LL, Maywood, IL 60153
*Courthouse Street Address*

**- or -**

### ☐ 2. DATE CERTAIN SUMMONS

*Your court date is listed below. Information about getting a court date and how to attend is available from the Circuit Clerk. You can find their contact information at ilcourts.info/clerks.*

To respond to this *Summons*, you must **attend court** in one of the ways checked below on:

______________________ at ____________ ☐ a.m. ☐ p.m. in ______________.
*Month, Day, Year* — *Time* — *Courtroom Number*

FILED DATE: 1/6/2026 4:37 PM 20244002591

*Case Number* 20244002591

## Going to Court for a Date Certain Summons

Court dates may be in-person, remote, or a combination of in-person and remote.

☐ **In person** at: ______________________________
*Courtroom Address* *Courtroom Number*

☐ **Remotely** (video or telephone)

**By video conference** at: ______________________________
*Video Conference Website*

Log-in information: ______________________________
*Video Conference Log-in Information, Meeting ID, Password, etc.*

**By telephone** at: ______________________________
*Call-in Number for Telephone Remote Appearance*

To find out more about remote court options:

Phone: ____________________ or Website: ______________________________
*Circuit Clerk's Phone Number* *Website URL*

## 3. ADDITIONAL INFORMATION ABOUT THE LAWSUIT

a. I am asking for the following amount of money in my *Complaint/Petition*: $ 1,475.00.
*(Enter 0 if you are not asking for money)*

b. I am asking for the return of tangible personal property (items in the Defendant/Respondent's possession) in my *Complaint/Petition*.

☐ Yes ☑ No

## 4. DEFENDANT/RESPONDENT'S INFORMATION

a. Number of Defendants/Respondents being served:

☐ I am having 1 Defendant/Respondent served and their information is on this form below.

☑ I am having more than 1 Defendant/Respondent served. The first is listed below. I have attached *Additional Defendant/Respondent Address and Service Information* forms for the following number of additional Defendants/Respondents: 3.
*Number*

b. First Defendant/Respondent's **primary address/information** for service:

Name: Town of Cicero
*First, Middle, and Last Name, or Business Name*

Registered Agent's Name *(if you are serving the Registered Agent of a business)*:

Maria Punzo-Arias
*First, Middle, and Last Name*

Street Address: 4949 W Cermak Road
*Street, Apt #*

City, State, ZIP: Cicero IL 60804
*City* *State* *Zip*

Telephone: 7086563600 Email: marias@thetownofcicero.com

FILED DATE: 1/6/2026 4:37 PM 20244002591

Case Number 20244002591

c. **Second address** for this Defendant/Respondent:
☑ I do **not** have another address where the Defendant/Respondent might be found.
☐ I have another address where this Defendant/Respondent might be found. It is:

Street Address: ______________________
*Street, Apt #*

City, State, ZIP: ______________________
*City* *State* *Zip*

Telephone: ______________ Email: ______________

d. Person who will serve your documents on this Defendant/Respondent:
☑ Sheriff in Illinois ☐ Special process server ☐ Licensed private detective

☐ Sheriff outside Illinois: ______________________
*County & State*

## PLAINTIFF/PETITIONER INFORMATION:

*Enter your information below.*

Name Derrick Winfrey
*First, Middle and Last Name*

Registered Agent's name, if any ______________________
*First, Middle and Last Name*

Street Address 5447 W Potomac Avenue, Apt #1
*Street, Apt #*

City, State, ZIP: Chicago, IL 60651
*City* *State* *Zip*

Telephone: ______________ Email: mdrake@beyondlegalaid.org

Be sure to **check your email every day** so you do not miss important information, court dates, or documents from other parties.

STOP The Circuit Clerk and officer or process server will fill in this section.

**To be filled in by the Circuit Clerk:**

Witness this Date: ______________________

Clerk of the Court: 1/6/2026 4:37 PM Mariyana T. Spyropoulos

*Seal of Court*

CIRCUIT COURT OF COOK COUNTY, ILLINOIS

**To be filled in by an officer or process server:**

Date of Service: ______________________

*Fill in the date above and give this copy of the Summons to the person served.*

**Note to officer or process server:**

- If **1** is checked, this is a 30-day *Summons* and must be served within 30 days of the witness date.
- If **2** is checked, this is a date certain *Summons* and must be served at least 21 days before the court date, unless 3b is checked yes.
  - If **2** is checked **and 3b** is checked yes, the *Summons* must be served at least 3 days before the court date.
- Fill in the date above and give this copy of the *Summons* to the person served.
- You must also complete the attached *Proof of Service* form and file it with the court or return it to the Plaintiff.

FILED DATE: 1/6/2026 4:37 PM 20244002591

Case Number 20244002591

# WHAT'S NEXT

## NEXT STEPS FOR PERSON FILLING OUT THIS FORM:

When you file a lawsuit, you must notify the person or business you are suing of the court case by having the *Summons* and Complaint or Petition delivered to them. This is called "serving" them.

File your *Summons* and Complaint or Petition with the Circuit Clerk in the county where your court case should be filed. The Circuit Clerk will "issue" the *Summons* by putting a court seal on the form.

Have the sheriff or a private process server serve the *Summons* and a copy of the Complaint or Petition on the Defendant/Respondent. You cannot serve the *Summons* yourself.

Learn more about each step in the process and how to file in the instructions: ilcourts.info/how-to-summons.

## NEXT STEPS FOR PERSON RECEIVING THIS DOCUMENT:

**You have been sued:**

- Read all documents attached to this *Summons*.
- All documents referred to in this *Summons* can be found at ilcourts.info/forms. Other documents may be available from your local Circuit Court Clerk's office or website.
- You may be charged filing fees, but if you cannot pay them, you can file an *Application for Waiver of Court Fees (Civil)*.
- When you go to court, it is possible that the court will allow you to attend the first court date in this case in-person or remotely by video or phone. Contact the Circuit Court Clerk's office or visit the Court's website to find out whether this is possible and, if so, how to do this.

**If Section 1 on page 1 of this *Summons* is checked (30-day summons)**:

- You **must** file official documents called an *Appearance* and an *Answer/Response* with the court within 30 days of the date you were served with this *Summons*.
- If you do not file an *Appearance* and *Answer/Response* on time, the judge may decide the case without hearing from you. This is called "default." As a result, you could lose the case.
- After you fill out the necessary documents, you need to electronically file (e-file) them with the court. To e-file, you must create an account with an e-filing service provider. For more information, go to ilcourts.info/efile. If you cannot e-file, you can get an exemption that allows you to file in-person or by mail.
- You should be notified of any future court dates.

**If Section 2 on page 1 of this *Summons* is checked (date certain summons):**

- You **must** attend court on the date listed in Section 2 of this *Summons.*
- If you do not attend that court date, the judge may decide the case without hearing from you. This is called "default." As a result, you could lose the case.

**Need Help? ¿Necesita ayuda?**

- Call or text Illinois Court Help at 833-411-1121 or go to ilcourthelp.gov for information about going to court, including how to fill out and file documents.
- Llame o envíe un mensaje de texto a Illinois Court Help al 833-411-1121, o visite ilcourthelp.gov para obtener información sobre los casos de la corte y cómo completar y presentar formularios.
- You can also get free legal information and legal referrals at illinoislegalaid.org.
- If there are any words or terms that you do not understand, please **visit Illinois Legal Aid Online** at ilao.info/glossary. You may also find more information, resources, and the location of your local legal self-help center at: ilao.info/lshc-directory.

FILED DATE: 1/6/2026 4:37 PM 20244002591

*Case Number* 20244002591

# PROOF OF SERVICE OF SUMMONS AND COMPLAINT/PETITION

IN THE STATE OF ILLINOIS, CIRCUIT COURT

☐ **Alias Summons**

*Check if this is not the 1st Summons issued for this Defendant/Respondent.*

**COUNTY:** Cook
*County Where You Are Filing the Case*

*Enter the case information as it appears on your other court documents.*

**PLAINTIFF/PETITIONER OR IN RE:** Derrick Winfrey
*Who started the case.* *First, Middle, and Last Name, or Business Name*

**DEFENDANTS/RESPONDENTS:** Cicero; Maywood; Cicero Police Officer Andres Bonilla;Cicero ~~Officer Nicholas Martinez;~~ Maywood Officer Jacob Nunez
*Who the case was filed against.* *First, Middle, and Last Name, or Business Name*

20244002591
**Case Number**

STOP Do not complete the rest of the form. **The sheriff or special process server will fill in the form.** Give them one copy of this blank *Proof of Service* form for each Defendant/Respondent who will be served.

My name is ______________________________ and I state:
*Officer/Process Server First, Middle, Last Name*

## SERVICE INFORMATION

Defendant/Respondent: ______________________________
*First, Middle, Last Name, or Business Name*

☐ I was not able to serve the *Summons* and Complaint/Petition on the Defendant/Respondent named above.

**- or -**

☐ I served the *Summons* and Complaint/Petition on the Defendant/Respondent named above as follows:

☐ **Personally** on the Defendant/Respondent:

☐ Male ☐ Female ☐ Non-Binary Approx. Age: ________ Race: ____________

On this date: ______________ at this time: ______________ ☐ a.m. ☐ p.m.

Address, Unit#: ______________________________

City, State, ZIP: ______________________________

☐ On **someone else at the Defendant/Respondent's home** who is at least 13 years old and is a family member or lives there:

Name of person served: ______________________________
*First, Middle, Last Name*

☐ Male ☐ Female ☐ Non-Binary Approx. Age: ________ Race: ____________

On this date: ______________ at this time: ______________ ☐ a.m. ☐ p.m.

Address, Unit#: ______________________________

City, State, ZIP: ______________________________

and by sending a copy to this Defendant/Respondent in a postage-paid, sealed envelope to the above address on this date: ______________.

FILED DATE: 1/6/2026 4:37 PM 20244002591

*Case Number* 20244002591

☐ On the **Business's agent:** ______________________________
*First, Middle, Last Name*

☐ Male ☐ Female ☐ Non-Binary Approx. Age: __________ Race: ______________

On this date: ______________ at this time: ______________ ☐ a.m. ☐ p.m.

Address, Unit#: ____________________________________________

City, State, ZIP: ____________________________________________

## SERVICE ATTEMPTS

I made the following attempts to serve the *Summons* and Complaint/Petition on the Defendant/Respondent:

**First Attempt:** On this date: ______________ at this time: ____________ ☐ a.m. ☐ p.m.

Address, Unit#: ____________________________________________

City, State, ZIP: ____________________________________________

Other information about service attempt:

____________________________________________

____________________________________________

____________________________________________

**Second Attempt:** On this date: ______________ at this time: ____________ ☐ a.m. ☐ p.m.

Address, Unit#: ____________________________________________

City, State, ZIP: ____________________________________________

Other information about service attempt:

____________________________________________

____________________________________________

____________________________________________

**Third Attempt:** On this date: ______________ at this time: ____________ ☐ a.m. ☐ p.m.

Address, Unit#: ____________________________________________

City, State, ZIP: ____________________________________________

Other information about service attempt:

____________________________________________

____________________________________________

____________________________________________

## SIGN

I certify under 735 ILCS 5/1-109 that:

1) everything in this document is true and correct, or I have been informed or I believe it to be true and correct, and

2) I understand that making a false statement on this form is perjury and has penalties provided by law.

Your Signature /s/____________________ Print Your Name ____________________

You are: ☐ Sheriff in Illinois ☐ Special process server

☐ Sheriff outside Illinois: ______________ ☐ Licensed private detective, license number: ______________
*County and State* *License number*

**FEES:**

Service and Return: $__________ Miles: $__________ Total: $ 0.00

FILED DATE: 1/6/2026 4:37 PM 20244002591

# ADDITIONAL DEFENDANT/RESPONDENT ADDRESS AND SERVICE INFORMATION

IN THE STATE OF ILLINOIS, CIRCUIT COURT

**COUNTY:** Cook
*County Where You Are Filing the Case*

*Enter the case information as it appears on your other court documents.*

**PLAINTIFF/PETITIONER OR IN RE:** Derrick Winfrey
*Who started the case.* *First, Middle, and Last Name or Business Name*

20244002591
**Case Number**

**DEFENDANTS/RESPONDENTS:** Cicero; Maywood; Cicero Police Officer Andres Bonilla; Cicero Officer Nicholas Martinez; Maywood Off. Jacob Nunez
*Who the case was filed against.* *First, Middle, and Last Name or Business Name*

Use this form only if you are serving more than one Defendant/Respondent. Attach this document to the *Summons*.

## NEXT DEFENDANT/RESPONDENT'S INFORMATION

*Enter the name and address of the next person who will be served with the* Summons.

A. Defendant/Respondent's **primary address/information** for service:

Name: Andres Bonilla
*First, Middle, and Last Name, or Business Name*

Registered Agent's Name *(if you are serving the Registered Agent of a business)*:
______________________
*First, Middle, and Last Name*

Street Address 4901 W Cermak Rd
*Street, Apt #*

City, State, ZIP: Cicero, IL 60804
*City* *State* *Zip*

Telephone: 708-652-2130 Email: ______________

B. **Second address** for this Defendant/Respondent:

☑ I do **not** have another address where the Defendant/Respondent might be found.
☐ I have another address where this Defendant/Respondent might be found. It is:

Street Address ______________________
*Street, Apt #*

City, State, ZIP: ______________________
*City* *State* *Zip*

Telephone: ______________ Email: ______________

C. Person who will serve your documents on this Defendant/Respondent:

☑ Sheriff in Illinois ☐ Special process server ☐ Licensed private detective
☐ Sheriff outside Illinois: ______________________
*County & State*

FILED DATE: 1/6/2026 4:37 PM 20244002591

# ADDITIONAL DEFENDANT/RESPONDENT ADDRESS AND SERVICE INFORMATION

IN THE STATE OF ILLINOIS, CIRCUIT COURT

**COUNTY:** Cook
*County Where You Are Filing the Case*

*Enter the case information as it appears on your other court documents.*

**PLAINTIFF/PETITIONER OR IN RE:** Derrick Winfrey
*Who started the case.* *First, Middle, and Last Name or Business Name*

20244002591
**Case Number**

**DEFENDANTS/RESPONDENTS:** Cicero; Maywood; Cicero Police Officer Andres Bonilla; Cicero Officer Nicholas Martinez; Maywood Off. Jacob Nunez
*Who the case was filed against.* *First, Middle, and Last Name or Business Name*

Use this form only if you are serving more than one Defendant/Respondent. Attach this document to the *Summons*.

## NEXT DEFENDANT/RESPONDENT'S INFORMATION

*Enter the name and address of the next person who will be served with the* Summons.

A. Defendant/Respondent's **primary address/information** for service:

Name: Nicholas Martinez
*First, Middle, and Last Name, or Business Name*

Registered Agent's Name *(if you are serving the Registered Agent of a business)*:

______________________________
*First, Middle, and Last Name*

Street Address 4901 W Cermak Rd
*Street, Apt #*

City, State, ZIP: Cicero, IL 60804
*City* *State* *Zip*

Telephone: 708-652-2130 Email: ______________________

B. **Second address** for this Defendant/Respondent:

☑ I do **not** have another address where the Defendant/Respondent might be found.
☐ I have another address where this Defendant/Respondent might be found. It is:

Street Address ______________________________
*Street, Apt #*

City, State, ZIP: ______________________________
*City* *State* *Zip*

Telephone: ______________________ Email: ______________________

C. Person who will serve your documents on this Defendant/Respondent:

☑ Sheriff in Illinois ☐ Special process server ☐ Licensed private detective
☐ Sheriff outside Illinois: ______________________
*County & State*

FILED DATE: 1/6/2026 4:37 PM 20244002591

# ADDITIONAL DEFENDANT/RESPONDENT ADDRESS AND SERVICE INFORMATION

IN THE STATE OF ILLINOIS, CIRCUIT COURT

**COUNTY:** Cook
*County Where You Are Filing the Case*

*Enter the case information as it appears on your other court documents.*

**PLAINTIFF/PETITIONER OR IN RE:** Derrick Winfrey
*Who started the case.* *First, Middle, and Last Name or Business Name*

**DEFENDANTS/RESPONDENTS:** Cicero; Maywood; Cicero Police Officer Andres Bonilla; Cicero Officer Nicholas Martinez; Maywood Off. Jacob Nunez
*Who the case was filed against.* *First, Middle, and Last Name or Business Name*

20244002591
**Case Number**

Use this form only if you are serving more than one Defendant/Respondent. Attach this document to the *Summons*.

## NEXT DEFENDANT/RESPONDENT'S INFORMATION

*Enter the name and address of the next person who will be served with the* Summons.

A. Defendant/Respondent's **primary address/information** for service:

Name: Jacob Nunez
*First, Middle, and Last Name, or Business Name*

Registered Agent's Name *(if you are serving the Registered Agent of a business)*:
______________________
*First, Middle, and Last Name*

Street Address 125 S 5th Ave
*Street, Apt #*

City, State, ZIP: Maywood IL 60153
*City* *State* *Zip*

Telephone: 708-4504450 Email: ______________________

B. **Second address** for this Defendant/Respondent:

☑ I do **not** have another address where the Defendant/Respondent might be found.
☐ I have another address where this Defendant/Respondent might be found. It is:

Street Address ______________________
*Street, Apt #*

City, State, ZIP: ______________________
*City* *State* *Zip*

Telephone: ______________________ Email: ______________________

C. Person who will serve your documents on this Defendant/Respondent:

☑ Sheriff in Illinois ☐ Special process server ☐ Licensed private detective
☐ Sheriff outside Illinois: ______________________
*County & State*

**IN THE CIRCUIT COURT OF COOK COUNTY ILLINOIS MUNICIPAL DEPARTMENT DISTRICT 4**

**Plaintiff V Defendant** Derrick Winfrey-vs-Village of Maywood

Courtroom, 0112

20244002591

**PLAINTIFF's ATTY** Drake, Michael 6337050

**ADDITIONAL NAMES**

**COMPLAINT FILED, SUMMONS ISSUED, RETURNABLE TO CLERK OF THE CIRCUIT COURT**
04/19/2024

| **CONTRACT** | **FILING FEE** | **ADDENDUM** |
|---|---|---|
| Administrative Review - Ordinance Violation | 0.0000 | |

| DATE | JUDGE | ORDERS ENTERED |
|---|---|---|
| dge Carl Evans, Jr.-2297 | DEC 0 9 2025 | P allowed to [illegible] Amend Complaint within 7 days. Village given 35 days to answer/otherwise plead. CFS 1/20/26 @ 11:00 in 112 ON |
| | | X Strike 12/16/25 Date |
| Judge Carl Evans Jr.-2297 | JAN 2 0 2026 | CFS of Service + motion to Remand to [illegible] Court 2/24/26 @ 11:00 am |
| | | |
| | | |
| | | |
| | | |
| | | |

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**FOURTH MUNICIPAL DISTRICT – CIVIL DIVISION**

| | | |
|---|---|---|
| **DERRICK WINFREY,**<br><br>**Plaintiff,**<br><br>**v.**<br>**VILLAGE OF MAYWOOD, a Municipal Corporation,**<br><br>**Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No. 2024 400 2591** |

**ORDER**

This matter coming before the Court on January 20, 2026 for Status, counsel for the Parties present via Zoom, and the Court advised on the premises. Plaintiff's Amended Complaint has been filed, and parties are awaiting service on the additional Defendants. It is hereby ordered that:

1) Defendant Village of Maywood is granted leave to file a motion to remove to federal court, pending service of additional defendants.
2) This matter is set for status on February 24, 2026, at 11:00 a.m. via Zoom: Meeting ID=914 3462 0283; Password=988648.

ENTERED
Judge Carl Lauras Evans-2297
JAN 20 2026
MARIYANA T. SPYROPOULOS
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

ENTER: #2297

DATE: 1/20/26

Order prepared by:

Natalie Lundak
Beyond Legal Aid
17 N. State St., #1380
Chicago, Illinois 60602
nlundak@beyondlegalaid.org
464-300-7689